## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                   )

US AIRWAYS MASTER EXECUTIVE    )
COUNCIL, AIR LINE PILOTS              )
ASSOCIATION, INT'L, et al.           )
                                                   )

Plaintiffs,                          )
                                                   )

v.                                   )    Case No. 07-1309 (EGS)
                                                   )

AMERICA WEST MASTER EXECUTIVE )
COUNCIL, AIR LINE PILOTS             )
ASSOCIATION, INT'L, et al.           )
                                                   )

Defendants.                       )
_____ )

### MOTION TO COMPEL JOINDER OF AIR LINE PILOTS ASSOCIATION AS NECESSARY PARTY PURSUANT TO FED. R. CIV. P. 19(a)

Defendants America West Master Executive Council, Air Line Pilots Association, Int'l ("America West MEC") and John McIlvenna, in his capacity as America West MEC Chairman ("McIlvenna"), move, pursuant to Fed. R. Civ. P. 19(a) to compel joinder of Air Line Pilots Association ("ALPA") as a defendant in this action. Joinder is sought on the grounds that the claim asserted by plaintiff in this action seeks relief that, in ALPA's absence, cannot be accorded by those already parties to this action, and that ALPA's interest relating to Plaintiffs' claim arising out of ALPA's Merger Policy will be severely impaired and impeded if Plaintiffs are permitted to proceed in this litigation without ALPA's ability to defend against plaintiffs' claim.

Pursuant to Rule 19, joinder of ALPA is both necessary and feasible. On August 8, 2007 counsel for Defendants conferred by telephone with counsel for Plaintiffs to

determine whether Plaintiffs would consent to join ALPA as a defendant in this action and Plaintiffs indicated that they will oppose this Motion.

A memorandum of points and authorities and a proposed order accompany this Motion.

Respectfully submitted,

_____/s/_____
Jeffrey R. Freund (D.C. Bar No. 163881)
Leon Dayan (D.C. Bar No. 444144)
Robert Alexander (D.C. Bar No. 465673)
Abigail V. Carter (D.C. Bar No. 474454)
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W.
Washington, D.C.  20005
Tel: (202)842-2600
Fax: (202)842-1888

Dated: August 8, 2007.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br>US AIRWAYS MASTER EXECUTIVE )<br>COUNCIL, AIR LINE PILOTS )<br>ASSOCIATION, INT'L, )<br>and, )<br>JOHN A. STEPHAN, in his capacity as )<br>MEC Chairman, )<br> )<br>   Plaintiffs, )<br> )<br>   v. )<br> )<br>AMERICA WEST MASTER EXECUTIVE )<br>COUNCIL, AIR LINE PILOTS )<br>ASSOCIATION, INT'L, )<br>and, )<br>JOHN MCILVENNA, in his capacity )<br>as MEC Chairman, )<br> )<br>   Defendants. )<br>_____ ) | Case No. 07-1309 (EGS) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL JOINDER OF AIR LINE PILOTS ASSOCIATION AS A
NECESSARY PARTY PURSUANT TO FED. R. CIV. P. 19(a)**

### INTRODUCTION

Defendants America West Master Executive Council, Air Line Pilots Association, Int'l
("America West MEC") and John McIlvenna, in his capacity as America West MEC Chairman
("McIlvenna"), have moved, pursuant to Federal Rule of Civil Procedure 19(a), to compel
joinder of the Air Line Pilots Association ("ALPA" or the "Union") as a defendant in this action.
This case centers around current collective bargaining negotiations between ALPA and US

Airways ("Company") in the wake of the merger between the former US Airways[1] and America West Airlines ("America West").  More specifically, this case arises out of the policies and procedures implemented by ALPA to determine ALPA's negotiating position with the merged Company with respect to its bargaining the seniority list of pilots of the now merged carriers (all of whom are represented by ALPA) in what will become a new post-merger collective bargaining agreement between the Company and the Union.

The process of merging separate seniority lists from two employers into an integrated single list for a merged employer is often a complex process, as there are an infinite number of ways of accomplishing such integration, ranging from simple "endtailing"—meaning taking all of the employees of one former employer and deeming them hired on the date of the merger, so that they are at the bottom of the seniority list—to any number of methods of "dovetailing"— meaning placing at least some of the employees of one former employer both ahead of and behind the employees of the other former employer.  *See generally Humphrey v. Moore*, 375 U.S. 335 (1964).

In this case, Plaintiffs US Airways Master Executive Council ("US Airways MEC") and its Chairman John Stephan purport to speak for those pilots who were employed by the former US Airways, and they claim in this lawsuit that if ALPA were to propose to the Company in collective bargaining negotiations that the Company accept an integrated seniority list recently generated by a board of neutral decisionmakers pursuant to ALPA's written merger policy, the result would be a seniority system that, according to Plaintiffs, would be unfair to the former US Airways pilots.

---

[1] The merged company does business under the name "US Airways."  Although that is the same name as one of the two pre-merger companies, it is a new and entirely different entity then the pre-merger company of the same name.  In this memorandum, we refer to the new entity as the "Company," and the pre-merger entity as "US Airways."

Although it is *ALPA*, not the defendant America West MEC, that serves as the exclusive representative of all of the Company's pilots in connection with collective bargaining negotiations with the Company, and although it is the *ALPA* merger policy that Plaintiffs contend has generated an unfair seniority list, Plaintiffs have oddly chosen not to sue ALPA and instead to sue only the America West MEC and its Chairman, neither of whom has authority to negotiate with US Airways. Plaintiffs, moreover, have made this choice of defendants notwithstanding that the ALPA merger policy that Plaintiffs invoke expressly states that *ALPA* is required to defend the seniority list generated by the board of neutrals, and is required to present it as the Union's position to the Company.

As we explain below, it is plain both that Plaintiffs' claim is in substance a claim against ALPA seeking to interfere with ALPA's obligations as Plaintiffs' bargaining representative, and that as a practical matter only ALPA could provide Plaintiffs the relief they seek. Moreover, ALPA, as bargaining representative of both Plaintiffs and Defendants in connection with merger negotiations with the Company, has an interest in the merger proposal that is presented to the Company and in the efficacy and proper application of the methods that ALPA has developed to carry out its representational obligations to the pilots of two merged carriers, all of whom the Union represents. In the absence of ALPA as a party to this suit, there is no possibility of the Court affording complete relief or protecting the substantial interest ALPA has in its own negotiating methodology.

## BACKGROUND

### 1.    General Background

ALPA is the certified bargaining representative under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*., for approximately 60,000 pilots who fly for 39 U.S. and Canadian airline

carriers.  Declaration of John McIlvenna ("McIlvenna Decl."), attached hereto as Exhibit A, ¶ 2.

Decisions within ALPA are made through a democratic process that begins at the level of the

pilot group, which is the term for to all pilots at a given airline carrier.  McIlvenna Decl. ¶ 3.  As

both a political and administrative matter, each pilot group is represented within ALPA by that

pilot group's Master Executive Council (MEC).  McIlvenna Decl. ¶ 3.  The MEC is comprised of

Local Council Status Representatives, who are elected by the pilots who are based in each of the

respective airlines' pilot domiciles.  McIlvenna Decl. ¶ 3.  The Local Council Status

Representatives, in turn, elect MEC officers, including an MEC Chair.  McIlvenna Decl. ¶ 3.

    The MECs are ALPA's administrative presence at each airline.  McIlvenna Decl. ¶ 4.

They do not set or collect their own dues or otherwise raise their own funds.  McIlvenna Decl. ¶

4.  Rather, their funding comes from ALPA, to which pilot members pay their dues and from

which budgeted money is provided either directly or indirectly to the MEC to fund its operations.

McIlvenna Decl. ¶ 4.  The MECs are charged by ALPA's Constitution and Bylaws with such

administrative functions as making final decisions as to problems of ALPA members within the

pilot group, approving a strike vote by the membership, and establishing committees as

necessary to conduct business.  McIlvenna Decl. ¶ 4; Attach. A to McIlvenna Decl. at 39.

Additionally, they are ALPA's eyes and ears at the airlines and have certain defined authority to

process grievances under the governing collective bargaining agreement.  McIlvenna Decl. ¶ 4.

Nevertheless, while the MEC is responsible for providing certain services to members, ALPA

alone, and not the MECs, is the certified bargaining representative for the pilots of each airline

under the RLA.  McIlvenna Decl. ¶¶ 2, 4; Plf's Application to Vacate Arbitration Award

("Application") ¶ 5; Application Ex. 1 at 2, 9.  As such, it is ALPA who is responsible for

negotiating collective bargaining agreements ("CBAs") with carriers—*i.e.,* who has the

exclusive authority to determine and present proposals to the carrier as to wages and other terms and conditions of employment and who has the exclusive authority to form a binding and enforceable collective bargaining agreement with the carrier on behalf of the represented pilots. McIlvenna Decl. ¶ 2.  And, it is ALPA, not any MEC, who is the signatory to the CBA. McIlvenna Decl. ¶ 2; Attach. A to McIlvenna Decl. at 84 ("Any and all agreements, contracts, or documents of any and every character whatsoever shall not become effective, binding or operative unless and until they bear the signature of the [ALPA] President."); *see also Air Wisconsin Pilots Prot. Comm. v. Sanderson*, 909 F.2d 213, 219 (7th Cir. 1990) (recognizing that ALPA and not the MEC is the collective bargaining representative).

In the event of a merger between two ALPA-represented carriers, ALPA negotiates a new single carrier CBA with the merged airline.  McIlvenna Decl. ¶ 5.  Among the most important issues negotiated by ALPA in its first contract with the newly merged airline carrier is pilot seniority, as seniority is the sole factor in determining pilot promotions, routes, type of aircraft flown (all of which determine a pilot's pay), schedule, and job security (layoffs and recalls). McIlvenna Decl. ¶ 6; *see also* Application ¶ 5.  As a result of its significance, seniority is not only one of the most important issues to ALPA members, but because in the event of a merger the seniority lists from the two pre-merger carriers must be combined into a single list, it is also one of the most potentially contentious among ALPA members.  McIlvenna Decl. ¶ 6.

When ALPA negotiates seniority provisions in a collective bargaining agreement as the pilots' exclusive bargaining agent, it owes all pilots a "duty of fair representation," as it and all unions do whenever they negotiate terms and conditions of employment.  *See Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65 (1991); *Humphrey v. Moore*, *supra*.  In order to ensure that its duty of fair representation is carried out to all pilots in the newly merged carrier and to avoid the

appearance of favoring one pilot group over another, ALPA has established a detailed policy by
which it arrives at a fair and integrated seniority list to propose to the carrier in bargaining.
McIlvenna Decl. ¶ 7.  That policy is known as ALPA's Merger and Fragmentation Policy
("Merger Policy").

Under Merger Policy, which is attached to Plaintiffs' Application as Exhibit 1, when it is
determined that there is a reasonable probability of a merger being consummated, seniority list
integration procedures commence.  Application Ex. 1 at 3.  Under these procedures, each of the
two pilot groups is represented by a Merger Committee, which is comprised of two or three
merger representatives elected by each MEC.  Merger Policy specifically provides that it is the
Merger Committees themselves that are responsible for determining and advancing the positions
each will take during the process: "These representatives shall have complete and full authority
to act for and on behalf of the flight deck crew members of their respective airlines for the
purpose of concluding a single flight deck crew member seniority list, which shall not be subject
to ratification."  Application Ex. 1 at  3; *see also id.* at 8 ("The merger representatives of the
affected airlines shall be charged with the preparation of their contentions regarding the merger
and their subsequent presentation before the Arbitration Board.").

The Merger Committees of the affected airlines first meet and attempt to negotiate a
mutually satisfactory method of integration and compilation of a single seniority list.
Application Ex. 1 at 6.  In doing so, the respective Merger Committees are to apply the standards
set out in Merger Policy, which describes the process in the following terms:

> In joint session, the merger representatives should attempt to match equities to various
> methods of integration until a fair and equitable agreement is reached, keeping in mind
> the following goals, in no particular order:
>
>    a.   Preserve jobs.
>
>    b.   Avoid windfalls to either group at the expense of the other.

  c. Maintain or improve pre-merger pay and standard of living.

  d. Maintain or improve pre-merger pilot status.

  e. Minimize detrimental changes to career expectations.

Application Ex. 1 at 6.  If the merger representatives are unable to reach an agreement, the areas

of disagreement are to be reduced to writing and resolved by mediation-arbitration procedures.

Application Ex. 1 at 6

   Merger Policy provides for both mediation and arbitration.  Mediation is to be conducted

by the Chair of the Arbitration Board, who is selected from a list of arbitrators approved by

ALPA.  Application Ex. 1 at 7.  If the parties are unable to reach an agreement with the

assistance of the Mediator or if the merger representatives mutually agree to waive mediation,

the seniority integration issue goes to arbitration.  Application Ex. 1 at 7.  Issues to be decided at

arbitration are heard by a three-person Arbitration Board, which includes the Chair as well as

two non-voting ALPA members chosen from a Master List of Pilot Neutrals created and

maintained by ALPA.[2]  Application Ex. 1 at 7.   The Arbitration Board has authority under

Merger Policy to establish necessary rules of procedures and time limits, and to specify the scope

of evidence to be presented.  Application Ex. 1 at 8.  After the arbitration hearing has concluded,

the Arbitration Board must issue a written opinion and award.  Application Ex. 1 at 9.  The

Award contains the integrated seniority list.  Application Ex. 1 at 9.

   According to Merger Policy, the award of the Arbitration Board "shall be final and

binding on all parties to the arbitration and shall be defended by ALPA."  Application Ex. 1 at 9.

Merger Policy also provides that the "merged seniority list will be presented to management and

ALPA will use all reasonable means at its disposal to compel the company to accept and

---

[2] Pilot Neutrals are ALPA members (although not members of the pilot groups at issue) who
have consented to serve as non-voting members of a seniority integration Arbitration Board.
Application Ex. 1 at 8-9.  Under Merger Policy, ALPA's Executive Council shall select and
maintain at all times a list of no less than fifty potential pilot neutrals. Application Ex. 1 at 8.

implement the merged seniority list."  Application Ex. 1 at 9; *see also* Application Ex. 1 at 10

("The arbitration award issued after proceedings … shall be the position of ALPA with

management.").   Neither Merger Policy, nor ALPA's Constitution and By-laws provide any role

for the MEC (either the pre-merger or post-merger MEC) in altering or challenging the

arbitration award or in negotiating with the airline carrier as to the post-merger CBA.  McIlvenna

Decl. ¶¶ 5, 11.  Indeed, Merger Policy specifically provides that: "Any attempt by a member or

members of ALPA to obtain an agreement which would operate to frustrate the objectives of this

policy shall be considered an act contrary to the best interests of ALPA and its members."

Application Ex. 1 at 16.

Throughout this entire process, in the interest of maintaining evenhandedness, ALPA's

role is limited to providing the procedures and infrastructure necessary to carry out a process that

results in the integrated list that becomes ALPA's bargaining position with the mergerd airline.

Specifically, Merger Policy provides that: "Responsibility for the merged seniority list falls upon

the respective merger representatives with ALPA National in a neutral position on the merits."

Application Ex. 1 at 2.  Merger Policy also recognizes the obvious—that on issues as contentious

as seniority, agreement on what is "fair" never comes easily.  As Merger Policy puts it: "It must

be understood that what appears to be truly 'fair and equitable' often differs depending upon the

eyes of the beholder and that there may be no consensus of what is 'fair and equitable.'"

Application Ex. 1 at 2.

### 2.    *The US Airways and American West Airlines Merger*

On May 19, 2005, US Airways and America West Airlines announced that they would

merge, taking the name US Airways.  Application Ex. 2 at 1.  ALPA, as the representative of the

pilots of both pre-merger carriers, agreed to a transitional CBA with the new Company, and

prepared to negotiate a new single carrier CBA.   McIlvenna Decl. ¶ 8.  As part of its preparation

for negotiating a new CBA, ALPA instituted its Merger Policy to determine its bargaining

position as to the integrated seniority list.  McIlvenna Decl. ¶ 8; Application Ex. 2 at 1.

Pursuant to Merger Policy, the MECs for the pre-merger US Airways and America West

pilot groups selected Merger Committees and began negotiations over an integrated seniority list.

McIlvenna Decl. ¶ 9.  Despite extensive negotiating efforts, the Merger Committees were unable

to reach an agreement and, accordingly, invoked the Mediation-Arbitration process under

Merger Policy, selecting George Nicolau as the Board Chairman.  McIlvenna Decl. ¶ 9;

Application Ex. 2 at 2.  Mr. Nicolau, whose resume is attached hereto as Exhibit B, is a

distinguished neutral who has more experience in seniority integration matters than any other of

the neutrals on the ALPA approved list.  McIlvenna Decl. ¶ 9.

After five days of mediation, the parties were still unable to reach an agreement and

proceeded to arbitration.  Application Ex. 2 at 2.  After each Committee selected a Pilot Neutral

from ALPA's Pilot Neutral Master List and agreed to ground rules, the two Merger Committees

each presented evidence at an arbitration hearing, which was held over eighteen days in

December of 2006 and January and February of 2007.  Application Ex. 2 at 3.  At this hearing,

both sides were represented by counsel who were afforded a full opportunity to offer evidence

and argument, and to present, examine and cross-examine witnesses.  Application Ex. 2 at 3.

Indeed, the parties presented 20 witnesses and 14 volumes of exhibits in the course of generating

3102 pages of hearing transcript.  Application Ex. 2 at 3.  The parties also submitted

comprehensive post-hearing briefs.  Application Ex. 2 at 3.  Thereafter, the Board met in a

number of executive sessions to weigh the arguments and reach its conclusions.  Application Ex.

2 at 3.

On May 1, 2007, the Board rendered its opinion and award.  Application Ex. 2.  Under

Merger Policy, the Nicolau Board decision, which includes the Integrated US Airways Seniority

List, Ex. A to Application Ex. 2, is final and binding and becomes ALPA's bargaining position,

and ALPA is obligated to present that position to the Company in collective bargaining

negotiations.  Application Ex. 1 at 10; McIlvenna Decl. ¶ 11.

The pre-merger US Airways MEC, which represents the majority of pilots in the new

post-merger US Airways pilot group, however, is displeased with the integrated seniority list

developed through ALPA's Merger Policy.  *See, e.g.,* Application ¶¶ 49-62.  Accordingly, the

pre-merger US Airways MEC has brought suit seeking to vacate the Nicolau Board decision and,

effectively, to prevent ALPA from presenting the integrated seniority list to the Company in

bargaining.  At the same time, the US Airways MEC has approached ALPA directly in an

attempt to forestall ALPA from presenting the integrated seniority list to the carrier.  McIlvenna

Decl. ¶ 12; Attach. B to McIlvenna Decl.

### 3.    *Procedural Background*

On June 26, 2007, Plaintiffs filed an action in the nature of an "Application to Vacate

Arbitration Award" in Superior Court of the District of Columbia.  In doing so, Plaintiffs

attempted to style their case as an attack on an arbitrator's decision resolving a contract dispute

under District of Columbia law, claiming that the Nicolau Board's decision was not consistent

with ALPA's Merger Policy and that Plaintiffs were therefore entitled to have it vacated.

On July 24, 2007, Defendants removed this case from Superior Court to the United

States District Court for the District of Columbia.  As set forth in the Notice of Removal, the

Plaintiffs' claim here, although dressed up in the language of District of Columbia law, is in

reality a claim arising under the provision of the federal Railway Labor Act that imposes on

unions such as ALPA a "duty of fair representation." *See Air Line Pilots Ass'n v. O'Neill, supra.* The claim is that the bargaining position that the Nicolau Board prescribed for ALPA as the exclusive bargaining agent of all the pilots employed by the merged carrier— a bargaining position that ALPA's governing documents require the Union to defend—is a position that is not fair or equitable to the subgroup of members within the union to which the Plaintiffs belong. Application ¶¶ 50-62. As Defendants explained in the Notice of Removal, such allegations describe precisely a claim alleging breach of the duty of fair representation. Notice of Removal at 3-4; *see also Nellis v. Air Line Pilots Ass'n*, 15 F.3d 50, 51 (4th Cir. 1994) ("adopt[ing]" the decision in *Nellis v. Air Line Pilots Association,* 805 F. Supp. 355, 360 (E.D. Va. 1992), which held, with respect to counts styled as state-law claims for "breach of contract" and for "quasi contractual" relief, that "[i]n essence, the claim in each of these counts is that the plaintiffs were not fairly represented by the Union," *id.*). As such, the claim arises under the RLA and is removable to federal court under the "complete preemption" doctrine. Notice of Removal at 4-5.

Nonetheless, in framing this action Plaintiffs have chosen to name as Defendants only the America West MEC and its Chairman in his official capacity. Because Plaintiffs have not named ALPA as a defendant in this action—nor sought to enjoin ALPA from presenting the integrated seniority award to the Company as its proposal, notwithstanding that the gravamen of their claim is a challenge to ALPA's bargaining proposal—Defendants must now move to join ALPA as a necessary party to this action under Rule 19.

## ARGUMENT

Under Rule 19 of the Federal Rules of Civil Procedure, a necessary party is one (a) who "in the person's absence complete relief cannot be accorded among those already parties," or (b) who has an interest related to the subject of the action "and is so situated that the disposition of

the action in the person's absence may (i) as a practical matter impair or impede the person's

ability to protect that interest or (ii) leave any of the persons already parties subject to a

substantial risk of … inconsistent obligations." Fed. R. Civ. P. 19(a).  In this case, ALPA is a

necessary party both because in its absence the Court will not be able to provide any effective

relief regarding the integrated seniority list (assuming it were to conclude that relief was

warranted), and because ALPA has important interests in both the interpretation of its Merger

Policy and its role as collective bargaining representative, both of which will be impaired and

impeded by this action should it not be joined.[3]

### 1. The Court Will Not Be Able to Provide Meaningful Relief Without Joining ALPA

Absent the joinder of ALPA, this Court will be unable to provide Plaintiff any relief

(assuming it were to decide that relief was warranted) regardless of whether Plaintiffs' claim is

framed as a duty of fair representation violation claim or as an effort to prevent the current

integrated seniority list from being presented to the Company as part of ALPA's collective

bargaining proposal.

As is set forth in Defendants' Notice of Removal, Plaintiffs' Application is really alleging

that ALPA is (or will be) violating its duty of fair representation ("DFR") by putting forth the

seniority list prescribed by the Nicolau Board decision as its bargaining proposal in negotiations

with the Company because, according to Plaintiffs, the decision unfairly and inequitably harms

Plaintiffs and is inconsistent with ALPA Merger Policy.  *See* Notice of Removal; Application ¶¶

50-62.  The only proper defendant in a DFR claim, however, is the certified bargaining

---

[3] This is not one of those situations where joining ALPA will destroy this Court's jurisdiction.
As the Notice of Removal states, jurisdiction here is not based upon diversity jurisdiction, but
upon federal-question jurisdiction, and ALPA, which is headquartered in Washington, DC,
would be subject to service of process in this judicial district.  Joinder is thus feasible under Rule
19(a).

representative, which is the entity charged under the federal labor laws with fairly representing its members in connection with collective bargaining. *See, e.g., Baker v. Newspaper & Graphic Communications Union, Local 6*, 628 F.2d 156, 165 (D.C. Cir. 1980) (dismissing international union from DFR claim where it was "neither the bargaining representative nor a party to the collective bargaining agreement"); *Teamsters Local 30 v. Helms Express, Inc.*, 591 F.2d 211, 217 (3d Cir. 1979) (upholding dismissal of DFR case brought against a joint union-employer committee that was not a party to the CBA); *Carr v. Local Union 1593*, *IEBW*, 371 F. Supp. 2d 1097, 1103-04 (D.N.D. 2005) (listing cases dismissing international union from DFR lawsuits on ground that international was not the certified bargaining representative); *Reardon v. American Postal Workers Union*, 43 Fair Empl. Prac. Case 1348, 1254 (D.N.J. 1986) ("The only proper defendant in a fair representation case, however, is the union entity which was a party to the collective bargaining agreement under which the duty arises."); *see also Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 204 (1944) (explaining that the RLA duty of fair representation is corollary of union's right to bargain and contract on behalf of members).

Here, only ALPA, not the pre-merger America West or US Airways MECs, is the exclusive certified bargaining representative and the sole entity with an obligation to fairly represent members of the US Airways MEC in connection with collective bargaining. Application ¶ 5, Ex. 1 at 2, 9; *see generally Sanderson*, 909 F.2d at 219 (only ALPA, and not an MEC, is an employee representative with authority to adopt and/or bargain merged seniority lists with the carrier). Accordingly, if this Court concludes that ALPA would violate its duty of fair representation in adopting the Nicolau Board integrated seniority list and presenting that list to the Company at the bargaining table, it is only ALPA, and not the America West MEC, that can be ordered to provide the necessary relief for such a violation.

13

Similarly, because ALPA is the only entity authorized to make and accept offers and otherwise bargain with the Company, it is the only party that can provide Plaintiffs the relief that would be the ultimate consequence of their Application—*i.e.*, the presentation of a different (and more favorable) integrated seniority list proposal to the Company.  The America West MEC and its Chairman, the defendants in this action, can neither affect nor determine the bargaining proposal made to the Company.  Not only is it clear that ALPA, and not any MEC, is the certified bargaining representative of the pilots at US Airways and America West, *see supra*, but Merger Policy specifies that ALPA, not the pre-merger or post-merger MEC, is charged with making proposals to the Company.  *See, e.g.,* Application Ex. 1 at 10 ("The arbitration award issued after proceedings … shall be the position of ALPA with management."); Application Ex. 1 at 9 (providing that "merged seniority list will be presented to management and ALPA will use all reasonable means at its disposal to compel the company to accept and implement the merged seniority list").  Therefore, absent ALPA, the Plaintiffs will not be able to affect or modify the Union's bargaining position with the Company, which is the ultimate consequence of the Nicolau Board's decision.[4]  For this reason, ALPA is a necessary party.  *See, e.g., Underwood v. Maloney*, 256 F.2d 334, 338 (3d Cir. 1958) (holding that the international union was a necessary and indispensable party to the lawsuit, as it was the only entity that could grant relief sought by plaintiffs; dismissing lawsuit because joinder would have destroyed jurisdiction).

## 2. *Significant Interests of ALPA Will Be Impaired and Impeded If ALPA Is Not Made A Party.*

In addition to being necessary to afford complete relief, ALPA is necessary because it has two separate and important interests in this litigation that cannot be protected unless it is joined

---

[4] Plaintiffs, by their actions, recognize as much.  As noted *supra*, Plaintiffs have approached ALPA directly, seeking to persuade ALPA not to present the integrated seniority list to the carrier.  Attach. B to McIlvenna Decl.

as party: its interest in its own Merger Policy and its interest in its role as collective bargaining representative.

(a)    As expressly stated in its Application, Plaintiffs are challenging the validity of the Nicolau Board's integrated seniority list established under ALPA's Merger Policy, necessarily implicating the proper interpretation and scope of that ALPA-promulgated policy.  *See* Application ¶ 50 ("The Nicolau Award violates ALPA Merger Policy and exceeds the powers of the Board of Arbitration under ALPA Merger Policy").  While Plaintiffs have attempted to keep ALPA out of this litigation through artful pleading, courts have recognized that where a lawsuit implicates the interpretation or possible invalidation of union policies or regulations, the union should be joined as a necessary party.  *See Fitzgerald v. Haynes*, 241 F.2d 417, 419 (3d Cir. 1957) (where court's inquiry involved interpretation of union regulations and agreements, local unions were necessary parties as "[s]uch an inquiry cannot lead to an adequate dispositive adjudication unless the local whose internal affairs are the matter in controversy shall be a party to the litigation"); *Krulikowsky v. Metro. Dist. Council of Phil. & Vicinity*, 270 F. Supp. 122 (E.D. Pa. 1967) (where judgment in favor of plaintiff would necessarily require invalidation of union's governing statutes, union is indispensable party); *Keenan v. Metro. Dist. Council of Phil.*, 266 F. Supp. 497, 499 (E.D. Pa. 1966) (union has "a definite interest in maintaining the integrity of the laws of its organization" and is thus an indispensable party where judgment in favor of plaintiffs would hold part of these laws invalid); *cf. Martin v. Local 147, Int'l Bhd. of Painters & Allied Trades*, 775 F. Supp. 235, 237 (N.D. Ill. 1991) (holding that in case alleging election misconduct the international union was a necessary party because it was intimately involved in the procedures at issue and because its absence might be harmful to the local).

ALPA has a clear interest in the interpretation and scope of its own Merger Policy. Not only did ALPA promulgate Merger Policy, it did so to serve its vital interest in internal union peace and in dealing with its members in an even-handed and impartial manner. These carefully balanced policies—including the finality of the Merger integration award and seniority list—are of great importance to ALPA, and a lawsuit that seeks to undermine the finality of the award interferes fundamentally with the integrity of such policies. Application Ex. 1 at 2; McIlvenna Decl. ¶¶ 6-7. Thus, under these circumstances, litigating these issues in the absence of ALPA will as a practical matter impede and impair ALPA's ability to protect its own interest in its own union policies.

    **(b)**    ALPA also is a necessary party because resolving Plaintiffs' claim in its absence will impair and impede ALPA's interest as collective bargaining representative with the Company. Plainly, where a lawsuit will affect or implicate the union's role as collective bargaining representative, the union is a necessary party to the case. *See Ware v. City of Buffalo*, 186 F. Supp. 2d 324, 330 (W.D.N.Y. 2001) (union was necessary party where plaintiff was challenging policy signed by city and union because "the union, as the bargaining representative of its members, has a great interest in the court's determination" as to whether the policy was null and void); *Local 1351 Int'l Longshoremen's Ass'n v. Sea-Land Serv.,* 214 F.3d 566, 570 (5th Cir. 2000) (holding that union is necessary party where case will affect the number of workers at a job site because union has an interest in how work will be allocated to its members); *cf. McCooe v. Town of Manchester*, 101 F.R.D. 339 (D. Conn. 1984) (union is necessary party in litigation over pension ordinance where adjudication of the claim necessarily would adjudicate the union's right to enforce the contract it negotiated).

Here, as discussed *supra*, if Plaintiffs are successful in vacating or otherwise challenging the Nicolau Board's decision and seniority list, ALPA will have to change its bargaining position with the Company as to its seniority proposal.  *See* Application Ex. 1 at 10 ("The arbitration award issued after proceedings … shall be the position of ALPA with management.").  A judgment in favor of Plaintiffs will directly affect the bargaining relationship both between ALPA and the Company and between ALPA and its own members.  Accordingly, just as collective bargaining representatives were necessary parties to actions adjudicating terms and conditions of employment in *Ware* and *Local 1351*, ALPA is clearly a necessary party in this case, one in which Plaintiffs seek to alter ALPA's bargaining proposal on a crucial term of pilots' employment.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court compel joinder of ALPA as a defendant in this action as a necessary party under Federal Rule of Civil Procedure 19, and order Plaintiffs to file and serve process of an amended complaint on ALPA, pursuant to Federal Rule of Civil Procedure 4.

Respectfully submitted,

_____/s/_____
Jeffrey R. Freund (D.C. Bar No. 163881)
Leon Dayan (D.C. Bar No. 444144)
Robert Alexander (D.C. Bar No. 465673)
Abigail V. Carter (D.C. Bar No. 474454)
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W.
Washington, D.C.  20005
Tel: (202)842-2600
Fax: (202)842-1888

Dated: August 8, 2007.

# Exhibit A
# (McIlvenna Declaration)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| US AIRWAYS MASTER EXECUTIVE ) | |
| COUNCIL, AIR LINE PILOTS ) | |
| ASSOCIATION, INT'L, ) | |
| and, ) | |
| JOHN A. STEPHAN, in his capacity as ) | |
| MEC Chairman, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 07-1309 |
| ) | |
| AMERICA WEST MASTER EXECUTIVE ) | |
| COUNCIL, AIR LINE PILOTS ) | |
| ASSOCIATION, INT'L, ) | |
| Two Gateway, 432 North 44th Street ) | |
| Phoenix, AZ  85008 ) | |
| and, ) | |
| JOHN MCILVENNA, in his capacity ) | |
| as MEC Chairman, ) | |
| Two Gateway, 432 North 44th Street ) | |
| Phoenix, AZ  85008, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## Declaration of John McIlvenna

I, John McIlvenna, am over the age of eighteen years old and am competent to testify on the matters stated below.

1.      Since 1998 I have been a pilot at America West Airlines ("America West").  I am currently the Chairman of the America West Master Executive Council ("MEC") and as such serve on the Executive Board of the Air Line Pilots Association ("ALPA").  Prior to serving as Chairman, I served as Vice-Chairman, and before that I was a status representative on the MEC. During my time with America West and at my prior carrier, I served on various pilot committees,

1

including serving as Chairman of the Merger Committee, Chairman of the Negotiating Committee, and Vice-Chairman of the Retirement and Insurance Committee.

2.      ALPA is the certified bargaining representative for the approximately 60,000 pilots who fly for 39 different U.S. and Canadian airline carriers, including the nearly 1,900 pilots who flew for America West prior to its merger with US Airways in 2006.  As such, ALPA is the signatory to the various carriers' collective bargaining agreements ("CBAs") and is responsible for negotiating the agreements with carriers—*i.e.,* ALPA has the exclusive authority to determine and present proposals to the carrier as to wages and other terms and conditions of employment and to form binding and enforceable collective bargaining agreements with the carrier on behalf of the represented pilots.  A copy of ALPA's Constitution and By-Laws are attached hereto as Attachment A.

3.      Decisions within ALPA are made through a democratic process that begins at the level of the pilot group, which is the term given to all pilots at a given airline carrier.  As both a political and administrative matter, each pilot group is represented within ALPA by that pilot group's MEC.  The MEC is comprised of Local Council Status Representatives (i.e. Captains and First Officers from each pilot base), who are elected by the pilots who are based in each of the respective airlines' pilot domiciles.  The Local Council Status Representatives, in turn, elect MEC officers, including an MEC Chair.

4.      Although they are not the certified bargaining representative, the MECs provide ALPA an administrative presence at each airline.  MECs do not set or collect their own dues or otherwise raise their own funds.  Rather, their funding comes from ALPA, to which pilot members pay their dues and from which budgeted money is provided either directly or indirectly to the MEC to fund its operations.  The MECs are charged by ALPA's Constitution and Bylaws

with such administrative functions as making final decisions as to problems of ALPA members within the pilot group, approving a strike vote by the membership, and establishing committees as necessary to conduct business.  Additionally, they are ALPA's eyes and ears at the airlines and have certain defined authority to process grievances under the governing collective bargaining agreement.

5.      In the event of a merger between two ALPA-represented carriers, ALPA negotiates a new single carrier CBA with the merged airline.  Neither ALPA's written policy governing mergers nor its Constitution and By-laws provide any role for the MEC (either the pre or post-merger MEC) in negotiating with the airline carrier as to the post-merger CBA.

6.      Among the most important issues negotiated by ALPA in its first contract with a newly merged airline is pilot seniority, as seniority is the sole factor in determining pilot promotions, routes, type of aircraft flown (all of which determine a pilot's pay), schedule, and job security (layoffs and recalls). Thus, seniority is one of the most important issues to ALPA members.  It is also one of the most potentially contentious among ALPA members in the event of a merger because in a merger the seniority lists from the two pre-merger carriers must be combined into a single list.

7.      When ALPA negotiates seniority provisions in a collective bargaining agreement as the pilots' exclusive bargaining agent, it owes all pilots a "duty of fair representation."  In order to ensure that this duty is carried out to all pilots in the newly merged carrier and to avoid the appearance of favoring one pilot group over another, ALPA has established an extensive policy by which it arrives at a fair and integrated seniority list to propose to the carrier in bargaining.  That policy is known as ALPA's Merger and Fragmentation Policy ("Merger Policy").

8.      On May 19, 2005, US Airways and America West announced that they would merge, taking the name US Airways.  ALPA, as the representative of the pilots of both pre-merger carriers, agreed to a transition agreement with the new Company, and prepared to negotiate a new single carrier CBA.   ALPA also instituted its Merger Policy to determine its bargaining position with the carrier as to the integrated seniority list.

9.      Consistent with Merger Policy, the MECs for the pre-merger US Airways and America West pilot groups selected Merger Committees and those Committees began negotiations over an integrated seniority list.  Despite extensive negotiating efforts, the Merger Committees were unable to reach an agreement and invoked the Mediation-Arbitration process under the Merger Policy, selecting George Nicolau as the Board Chairman.  Mr. Nicolau was selected, in part, because he had more experience in seniority integration matters than any other of the neutrals on the ALPA approved list.

10.     After five days of mediation, the parties were still unable to reach an agreement and proceeded to arbitration.  Accordingly, each Committee selected a Pilot Neutral from ALPA's Pilot Neutral Master List, agreed to ground rules, and proceeded to an arbitration hearing.  The arbitration was conducted over eighteen days in December of 2006 and January and February of 2007.  On May 1, 2007, Arbitrator Nicolau rendered his Opinion and Award.

11.     Under Merger Policy, the Board's Award, which includes the Integrated US Airways Seniority List, is final and binding.  Nothing in either Merger Policy or ALPA's Constitution and Bylaws provides any role for the MEC (either the pre-merger or post-merger MECs) to alter or challenge the Board's Award.  The Board's Award also becomes ALPA's bargaining position in its current negotiations with the carrier for a unified post-merger collective

bargaining agreement, and ALPA is obligated to present that position to the Company in the collective bargaining negotiations.

12.     Notwithstanding that the Board's Award is final and binding under Merger Policy, the US Airways MEC is attempting to prevent ALPA from presenting the integrated seniority list to the new merged carrier.  Not only has the US Airways MEC filed this lawsuit, but it has at the same time approached ALPA directly in an attempt to forestall ALPA from adopting the Award as ALPA's bargaining position and presenting the integrated seniority list to the carrier in negotiations.  A copy of a letter sent by the Chair of the US Airways MEC to ALPA is attached hereto as Attachment B.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Date:   August 8, 2007                    ____/s/_____

                                          John McIlvenna

# Attachment A
# to McIlvenna Declaration

CONSTITUTION AND BY-LAWS
TABLE OF CONTENTS
AS OF JUNE 7, 2006

HISTORY ...................................................................................................................5
ARTICLE I - GENERAL ..........................................................................................6
    SECTION  1 - NAME ...............................................................................6
    SECTION  2 - DEFINITIONS .................................................................6
    SECTION  3 - HOME OFFICE LOCATION............................................6
    SECTION  4 - DURATION ......................................................................6
    SECTION  5 - DISSOLUTION ................................................................6
    SECTION  6 - SCOPE OF AUTHORITY AND OBJECTIVES.................7
    SECTION  7 - OFFICERS AND OATH OF OFFICE ..............................8
    SECTION  8 - ASSOCIATION SEAL......................................................8
    SECTION  9 - FISCAL YEAR..................................................................8
    SECTION 10 - BILLS, NOTES, CHECKS, NEGOTIABLE INSTRUMENTS........8
    SECTION 11 - CHARTERS AND AFFILIATIONS .................................9
    SECTION 12 - MEMBERSHIP CREDENTIALS.....................................9
    SECTION 13 - AMENDMENTS TO THE CONSTITUTION AND BY-LAWS .........9
    SECTION 14 - REPRESENTATION OF ALL MEMBERS .....................9
    SECTION 15 - PROXIES - GENERAL ...................................................9
    SECTION 16 - ROLL CALL VOTING...................................................10
    SECTION 17 - CLARIFICATION OF STATUS REPRESENTATION......10
    SECTION 18 - OBLIGATION OF MEMBERS TO THE ASSOCIATION.................10
    SECTION 19 - DISTRIBUTION OF CAMPAIGN LITERATURE............10
    SECTION 20 - PARLIAMENTARY LAW AND RULES OF ORDER........10
    SECTION 21 - ELECTION AND BALLOT CERTIFICATION BOARD ..................11
    SECTION 22 - REBALLOTING..............................................................12
    SECTION 23 - SUSPENSION OF SERVICE..........................................12
ARTICLE II - MEMBERS ........................................................................................13
    SECTION  1 - ELIGIBILITY FOR MEMBERSHIP ................................13
    SECTION  2 - CLASSIFICATIONS ........................................................13
    SECTION  3 - DESCRIPTION OF CLASSES .........................................13
    SECTION  4 - APPLICATIONS AND APPROVALS OF APPRENTICE AND
    ACTIVE MEMBERS ...............................................................................16
    SECTION  5 - TRANSFER OF INACTIVE MEMBERS TO ACTIVE
    MEMBERSHIP .........................................................................................18
    SECTION  6 - TRANSFER OF EXECUTIVE MEMBERS TO ACTIVE
    MEMBERSHIP .........................................................................................18
    SECTION  7 - TERMINATION OF MEMBERSHIP ...............................19
    SECTION 8 - ASSOCIATE MEMBERS.................................................19
ARTICLE III - LOCAL COUNCILS AND LOCAL EXECUTIVE COUNCILS .....................21
    SECTION  1 - ORGANIZATION.............................................................21
    SECTION  2 - LOCAL COUNCIL REPRESENTATIVES AND OFFICERS ...........23
    SECTION  3 - LOCAL COUNCIL MEETINGS........................................27
    SECTION  4 - LOCAL EXECUTIVE COUNCIL.....................................29
    SECTION  5 - LOCAL EXECUTIVE COUNCIL COMMITTEES............29
    SECTION  6 - LOCAL EXECUTIVE COUNCIL MEETINGS .................30
    SECTION  7 - NOMINATION OF REPRESENTATIVES.........................30
    SECTION  8 - ELECTION PROCEDURES..............................................32
    SECTION  9 - ELECTION GROUPS .......................................................34
    SECTION 10 - ESTABLISHMENT AND DISSOLUTION OF LOCAL
    COUNCILS ..............................................................................................37

ARTICLE IV - MASTER EXECUTIVE COUNCIL..............................................................39
    SECTION  1 - ORGANIZATION ........................................................................39
    SECTION  2 - JURISDICTION AND DUTIES OF MASTER EXECUTIVE
    COUNCIL.......................................................................................................39
    SECTION  3 - MASTER EXECUTIVE COUNCIL MEETINGS ................................40
    SECTION  4 - ATTENDANCE AND QUORUM .......................................................40
    SECTION  5 - VOTING ....................................................................................41
    SECTION  6 - REPRESENTATION AT MEC MEETINGS .......................................41
    SECTION  7 - PROXIES ...................................................................................42
    SECTION  8 - MEETING RECORDS AND MINUTES..............................................42
    SECTION  9 - OFFICERS .................................................................................42
    SECTION 10 - ELECTION OF OFFICERS.............................................................42
    SECTION 11 - VACANCY IN OFFICE .................................................................43
    SECTION 12 - JURISDICTION AND DUTIES OF MASTER EXECUTIVE
    COUNCIL OFFICERS .....................................................................................44
    SECTION 13 - RECALL....................................................................................45
    SECTION 14 - BOND.......................................................................................45
    SECTION 15 - ESTABLISHMENT OF A NEW MASTER EXECUTIVE
    COUNCIL.......................................................................................................45
    SECTION 16 - SINGLE COUNCIL AIRLINE ........................................................45
ARTICLE V - EXECUTIVE BOARD...........................................................................47
    SECTION  1 - ORGANIZATION ........................................................................47
    SECTION  2 - JURISDICTION AND DUTIES .......................................................47
    SECTION  3 - MEETINGS ................................................................................47
    SECTION  4 - ATTENDANCE AND QUORUM .......................................................49
    SECTION  5 - VOTING ....................................................................................49
    SECTION  6 - REPRESENTATION AT EXECUTIVE BOARD MEETINGS...........49
    SECTION  7 - PROXIES ...................................................................................49
    SECTION  8 - CREDENTIALS COMMITTEE........................................................50
    SECTION  9 - MEETING RECORDS AND REPORTS .............................................50
ARTICLE VI - EXECUTIVE COUNCIL.......................................................................51
    SECTION  1 - ORGANIZATION ........................................................................51
    SECTION  2 - JURISDICTION AND DUTIES .......................................................51
    SECTION  3 - MEETINGS ................................................................................51
    SECTION  4 - ATTENDANCE AND QUORUM .......................................................51
    SECTION  5 - REPRESENTATION AT EXECUTIVE COUNCIL MEETINGS.......52
    SECTION  6 - PROXIES ...................................................................................52
    SECTION  7 - MEETING RECORDS AND MINUTES..............................................52
ARTICLE VII - BOARD OF DIRECTORS.....................................................................53
    SECTION  1 - ORGANIZATION ........................................................................53
    SECTION  2 - JURISDICTION AND DUTIES .......................................................53
    SECTION  3 - REGULAR MEETINGS .................................................................53
    SECTION  4 - AGENDA SUBMISSION PROCEDURES...........................................54
    SECTION  5 - SPECIAL MEETINGS ...................................................................54
    SECTION  6 - ATTENDANCE AND QUORUM .......................................................55
    SECTION  7 - VOTING ....................................................................................55
    SECTION  8 - REPRESENTATION AT BOARD OF DIRECTORS MEETINGS.....56
    SECTION  9 - PROXIES ...................................................................................56
    SECTION 10 - NOMINATION AND ELECTION OF OFFICERS .............................56
    SECTION 11 - COMMITTEES--BOARD OF DIRECTORS MEETINGS.................57
    SECTION 12 - CREDENTIALS COMMITTEE........................................................57
    SECTION 13 - STEERING COMMITTEE .............................................................57
    SECTION 14 - NATIONAL COMMITTEES............................................................58
    SECTION 15 - MEETING RECORDS AND REPORTS .............................................59

ARTICLE VIII - HEARING AND APPEAL PROCEDURES ..................................................60
    SECTION  1 - HEARING OF MEMBERSHIP CASES.............................................60
    SECTION  2 - GRIEVANCE PROCEDURE ...............................................................60
    SECTION  3 - HEARING PROCEDURE.....................................................................60
    SECTION  4 - APPEAL PROCEDURE .......................................................................62
    SECTION  5 - STATUS OF AN ACCUSED MEMBER ............................................62
    SECTION  6 - HEARING BOARD ..............................................................................62
    SECTION  7 - APPEAL BOARD .................................................................................63
ARTICLE IX - MEMBERSHIP FINANCIAL OBLIGATIONS .........................................65
    SECTION  1 - GENERAL ............................................................................................65
    SECTION  2 - INITIATION FEE .................................................................................65
    SECTION  3 - ANNUAL DUES ...................................................................................65
    SECTION  4 - INCOME EXEMPT FROM DUES ......................................................66
    SECTION  5 - ANNUAL DUES ADJUSTMENT .......................................................67
    SECTION  6 - ARRANGEMENT PLANS ..................................................................68
    SECTION  7 - ASSESSMENTS ..................................................................................68
    SECTION  8 - MONETARY FINES ............................................................................69
    SECTION  9 - ASSOCIATION-SPONSORED FINANCE PLAN...............................70
    SECTION 10 - LATE PAYMENT CHARGE ..............................................................70
    SECTION 11 - DEFAULTED LOAN OBLIGATIONS...............................................70
    SECTION 12 - BAD STANDING AND EXPULSION ................................................70
    SECTION 13 - BASIC NET WORTH AND RESERVES ...........................................71
    SECTION 14 - MAJOR CONTINGENCY FUND .....................................................71
    SECTION 15 - DUES REFUND ..................................................................................72
    SECTION 16 - SPECIAL RESERVE ACCOUNT......................................................72
    SECTION 17 - FISCAL RESPONSIBILITY ..............................................................73
ARTICLE X - PRESIDENT.................................................................................................74
    SECTION  1 - ELIGIBILITY AND ELECTION ........................................................74
    SECTION  2 - TERM OF OFFICE ..............................................................................74
    SECTION  3 - VACANCY IN OFFICE .......................................................................74
    SECTION  4 - JURISDICTION AND DUTIES ..........................................................74
    SECTION  5 - SALARY ...............................................................................................75
    SECTION  6 - PRESIDENTIAL COMMITTEES .......................................................75
    SECTION  7 - BOND ...................................................................................................75
ARTICLE XI - FIRST VICE PRESIDENT ........................................................................76
    SECTION  1 - ELIGIBILITY AND ELECTION ........................................................76
    SECTION  2 - TERM OF OFFICE ..............................................................................76
    SECTION  3 - VACANCY IN OFFICE .......................................................................76
    SECTION  4 - JURISDICTION AND DUTIES ..........................................................76
ARTICLE XII - VICE PRESIDENT-ADMINISTRATION/SECRETARY ............................77
    SECTION  1 - ELIGIBILITY AND ELECTION ........................................................77
    SECTION  2 - TERM OF OFFICE ..............................................................................77
    SECTION  3 - VACANCY IN OFFICE .......................................................................77
    SECTION  4 - JURISDICTION AND DUTIES ..........................................................77
ARTICLE XIII - VICE PRESIDENT - FINANCE/TREASURER..........................................79
    SECTION  1 - ELIGIBILITY AND ELECTION ........................................................79
    SECTION  2 - TERM OF OFFICE ..............................................................................79
    SECTION  3 - VACANCY IN OFFICE .......................................................................79
    SECTION  4 - JURISDICTION AND DUTIES ..........................................................79
    SECTION  5 - BOND ...................................................................................................80
ARTICLE XIV - EXECUTIVE VICE PRESIDENTS .........................................................81
    SECTION  1 - ELIGIBILITY AND ELECTION ........................................................81
    SECTION  2 - TERM OF OFFICE ..............................................................................81
    SECTION  3 - VACANCY IN OFFICE........................................................................82

3

SECTION 4 - JURISDICTION AND DUTIES ...........................................................83
SECTION 5 - EXECUTIVE VICE PRESIDENTIAL ELECTION GROUPS AND
SUB-GROUPS ..................................................................................................83
SECTION 6 - RECALL.....................................................................................83
ARTICLE XV - EXECUTIVE ADMINISTRATOR .....................................................85
SECTION 1 - ELIGIBILITY .............................................................................85
SECTION 2 - APPOINTMENT, JURISDICTION AND DUTIES.........................85
SECTION 3 - REMOVAL ................................................................................85
SECTION 4 - SALARY ....................................................................................85
ARTICLE XVI - RECALL OF OFFICERS ..............................................................86
SECTION 1 - RECALL OF OFFICERS ............................................................86
ARTICLE XVII – COMPENSATION AND EXPENSES ..............................................87
SECTION 1 - PRESIDENT................................................................................87
SECTION 2 – FIRST VICE PRESIDENT, VICE PRESIDENT-
FINANCE/TREASURER, VICE PRESIDENT-ADMINISTRATION/SECRETARY 87
SECTION 3 – EXECUTIVE VICE PRESIDENTS .....................................................87
SECTION 4 – MASTER EXECUTIVE COUNCILS AND REPRESENTATIVES
OR MEMBERS ASSIGNED TO DUTY WITH THE ASSOCIATION.......................87
SECTION 5 – PRINCIPLES FOR COMPENSATION POLICY ...............................87
SECTION 6 – EXPENSES ...............................................................................87
ARTICLE XVIII - AGREEMENT APPROVAL AND VALIDATION ....................................88
SECTION 1 - COLLECTIVE BARGAINING ....................................................88
SECTION 2 - RATIFICATION..........................................................................88
ARTICLE XIX - TRUSTEESHIPS AND WITHDRAWAL OF REPRESENTATION ...........89
SECTION 1 - TRUSTEE ACTION TO PROTECT THE ASSOCIATION................89
SECTION 2 - APPEAL AND REVIEW .............................................................89
SECTION 3 - DUTIES, RIGHTS AND OBLIGATIONS OF TRUSTEES ...............90
SECTION 4 - TERMINATION OF TRUSTEESHIP............................................90
SECTION 5 - REPRESENTATION....................................................................90
SECTION 6 - REVIEW ....................................................................................90
ARTICLE XX - CREW COMPLEMENT - CREW REQUIREMENTS ...................................91
SECTION 1 - MANDATORY CREW MANNING POLICY ....................................91
SECTION 2 - SUPPORT OF ALPA...................................................................91
SECTION 3 - CONTRARY CONTRACTS AND AGREEMENTS...........................91
ARTICLE XXI - CUSTODIANSHIP.......................................................................92
SECTION 1 - AUTHORIZATION......................................................................92
SECTION 2 - CUSTODIAN REPRESENTATIVES..............................................92
SECTION 3 - HEARING BEFORE EXECUTIVE COUNCIL.................................92
SECTION 4 - APPEAL AND REVIEW .............................................................93
SECTION 5 - ATTENDANCE AT EXECUTIVE BOARD AND BOARD OF
DIRECTORS MEETINGS ................................................................................93
SECTION 6 - TERMINATION OF CUSTODIANSHIP...........................................93
SECTION 7 - ACTION UNDER ARTICLE XIX.................................................93
ARTICLE XXII - CANADA BOARD.......................................................................94
SECTION 1 - ORGANIZATION .......................................................................94
SECTION 2 - JURISDICTION AND DUTIES ...................................................94
SECTION 3 - MEETINGS ...............................................................................94
SECTION 4 - CANADA BOARD PRESIDENT ..................................................95
SECTION 5 - CANADA BOARD VICE PRESIDENT/IFALPA DIRECTOR AND
CANADA BOARD SECRETARY-TREASURER ......................................................95
SECTION 6 - VACANCY IN OFFICE................................................................96
INDEX .........................................................................................................97

## HISTORY

Conceived and Unofficially Organized:  1930
Organizational Structure Officially Established and Ratified:
July 27, 1931

Revised October 29, 1934; October 27, 1935; October 19, 1936; November 15, 1938; December 4, 1939; November 29, 1940; December 1, 1942; December 4, 1944; February 18, 1947; November 9, 1948; October 31, 1950; July 16, 1951; October 25, 1952; May 26, 1953; October 1, 1953; November 14, 1954; November 12, 1956; November 9, 1958.

A revised ALPA structure embracing a separate Pilot Division and Steward and Stewardess Division, adopted November 23, 1960.

Pilot Division Constitution and By-Laws revised June 6, 1962; November 23, 1964; November 29, 1966; November 26, 1968; November 25, 1970; December 4, 1972; December 27, 1973.

The Steward and Stewardess Division in December 1973 became an autonomous organization, the Association of Flight Attendants, and was granted a Charter of Affiliation by the Air Line Pilots Association.  In 1984 the Association of Flight Attendants was granted an independent Charter by the AFL-CIO.

The Canadian Air Line Pilots Association maintained an affiliation with ALPA from April 18, 1943 to January 31, 1997. Effective February 1, 1997, the Canadian Air Line Pilots Association merged with the Air Line Pilots Association, as approved by the 1996 Board of Directors.

ALPA Constitution and By-Laws revised November 27, 1974; November 21, 1976; November 6, 1978; July 10, 1979; November 13, 1980; November 17, 1982; November 14, 1984; June 30, 1985; November 19, 1986; *May 7, 1987; *November 12, 1987; *May 12, 1988; October 30, 1988; *May 10, 1989; *May 24, 1990; October 27, 1990; *May 23, 1991; *October 10, 1991; October 23, 1992; *May 18, 1993; *October 19, 1993; *May 10, 1994; October 21, 1994; *May 10, 1995; November 1, 1996; *May 15, 1997; *May 21, 1998; October 23, 1998; *May 20, 1999; *November 4, 1999; *May 25, 2000; October 20, 2000; *May 23, 2001; *October 24, 2001; *May 22, 2002; October 24, 2002; *May 21, 2003 with amendments effective upon BOD ratification and amendments effective March 1, 2004; *October 22, 2003 with amendments effective April 1, 2004; *May 26, 2004; October 20, 2004; *May 25, 2005; *October 26, 2005; *June 7, 2006.

*= as adopted by the Executive Board and ratified by the Board of Directors by Mail Ballot.

### Affiliations

American Federation of Labor:  August 10, 1931
British Air Line Pilots Association and the
International Federation of Air Line Pilots Associations:
May 6, 1948

### Official Seal of the Association

(Article I, Section 8)

## ARTICLE I - GENERAL

### SECTION 1 - NAME

The name of this organization is "AIR LINE PILOTS ASSOCIATION."

### SECTION 2 - DEFINITIONS

A.    The words "CONSTITUTION AND BY-LAWS" when used herein mean the Constitution and By-Laws of the Air Line Pilots Association.

B.    The word "ASSOCIATION" (or "ALPA") when used herein means the Air Line Pilots Association.

C.    The word "PILOT" when used herein shall mean Captain, First Officer, or Second Officer.

D.    "CAPTAIN" when used herein means a pilot in command of the aircraft.

E.    "FIRST OFFICER" when used herein means a pilot second in command of the aircraft.

F.    "SECOND OFFICER" when used herein means a flight deck operating crew member other than Captain or First Officer who is assigned to duties aboard the aircraft.

### SECTION 3 - HOME OFFICE LOCATION

The Home Office of the Association shall be located in or adjacent to the City of Washington, District of Columbia, U.S.A., or in such city within the continental limits of the United States as the Executive Council may recommend, subject to the approval of the Board of Directors by a two-thirds (2/3) majority vote at any duly convened meeting thereof.

### SECTION 4 - DURATION

The duration of the Association shall be perpetual, or until it is dissolved as provided in the Constitution and By-Laws.

### SECTION 5 - DISSOLUTION

A.    The Association may be dissolved at any time by a majority vote of all the Active members thereof in good standing, such vote to be conducted by the Executive Council.

B.    The Executive Council shall promptly conduct such a vote as provided above by a ballot on the request by petition to the Vice President-Administration/Secretary by twenty-five percent (25%) of the Active members in good standing, or on the written request addressed to the Vice President-Administration/Secretary by three-fourths (3/4) of the members of the Board of Directors.

C.    In the event of such dissolution, the Executive Council shall act as agent for the members and dispose of all physical assets of the Association by public auction, private sales, or otherwise, and any and all questions relating thereto shall be decided by a majority vote of the Executive Council. All the liquid assets shall then be prorated to the Active members of record in good standing at the time of such dissolution, in proportion to the dues then being paid by each of such members.

## SECTION 6 - SCOPE OF AUTHORITY AND OBJECTIVES

### A.    SCOPE OF AUTHORITY

(1)    To operate as a nonprofit employee representing association, not for pecuniary gain.

(2)    To purchase, hold, acquire, lease, mortgage and convey real estate and personal property of every kind, nature and description, for the convenient conduct and execution of the Association's business, including the purchasing, leasing and maintaining of equipment, buildings, and improvements which may be necessary, directly or indirectly, in connection with any of the business and objectives of the Association.

(3)    To levy initiation fees, dues, and assessments upon its members to provide the funds with which to carry on the business and objectives of the Association, including the payment of all expenses, emergency or otherwise relating thereto, and to establish an ample basic net worth for the current and future protection of its members.

(4)    To consider and if desirable make mutual benefit affiliations with other employee organizations of local, state, national, or international jurisdiction.

(5)    To do any and all other acts consistent with and in furtherance of the policies and purposes herein declared.

### B.    OBJECTIVES

(1)    To provide representation for all members of the airline piloting profession; to promote the interests of that profession; and to safeguard the rights, individually and collectively, of its members.

(2)    To safeguard, with ceaseless vigilance, the safety of scheduled air transportation in recognition of the high degree of public trust, confidence, and responsibility placed on the members.

(3)    To further scheduling with safety in any practical manner.

(4)    To advance and promote the professional image of the airline pilot in the business and educational communities, and with the public at large.

(5)    To establish and exercise the right of collective bargaining for the purposes of making and maintaining employment agreements covering rates of pay, rules, and working conditions for the members of the Association, and to settle promptly disputes and grievances which may arise between such members and their employers.

(6)    To establish fair rates of compensation, maximum hours of employment, and uniform principles of seniority for members of the Association, and to seek the adoption and perpetuation thereof.

(7)    To obtain suitable health, retirement, and disability benefits for all members of the Association through legislation, collective bargaining, and other means.

(8)    To disseminate news in any manner to keep Association members alert and well informed in all matters relating to their profession.

(9)    To provide a means for participation by members of the Association in resolution of issues that affect the piloting profession.

(10)   To urge, support, and sponsor the passage of legislation and regulations affecting members of the Association which will improve, protect, and increase the safety of their working conditions or otherwise advance their professional interests.

(11)   To develop, administer, and make available to members of the Association services that will provide protection and/or assistance in unforeseen circumstances which may jeopardize their continued employment in the piloting profession.

(12)   To develop, administer and make available to members of the Association benefit programs designed to satisfy specific needs not adequately provided for by their respective employers.

(13)   To participate in or sponsor research in aviation-related matters that will contribute to the advancement of the airline piloting profession.

(14)   To participate in appropriate efforts to preserve, document, and memorialize noteworthy events and achievements in aviation history.

(15)   To provide suitable and effective support services to the Association's officers, representatives, and staff, and to its governing bodies and technical committees.

(16)   To foster an environment that encourages respect for the dignity, the rights, and the human concerns of all members and employees of the Association, and to provide motivation for those individuals to strive for the best of which they are capable.

## SECTION  7 - OFFICERS AND OATH OF OFFICE

A.     The officers of the Association shall be the President of the Association, the First Vice President, the Vice President-Administration/Secretary, and the Vice President-Finance/Treasurer.

B.     After the election of any of the officers of the Association the following oath of office shall be administered by the President of the Association or his designee:

> I hereby pledge on my honor to accept the responsibilities of this office and perform the attendant duties to the best of my ability; to uphold faithfully the Constitution and By-Laws of the Air Line Pilots Association; to comply with and advance the policies of the Association; to bear true allegiance to and uphold the principles of the Air Line Pilots Association and conduct myself and this office in such a manner so as to bring credit to the Association, its members and the airline piloting profession.

## SECTION  8 - ASSOCIATION SEAL

The official seal shall be as shown on the Table of Contents History page.

## SECTION  9 - FISCAL YEAR

The fiscal year shall commence on the first (1st) day of January and expire on the thirty-first (31st) day of December of each year.

## SECTION 10 - BILLS, NOTES, CHECKS, NEGOTIABLE INSTRUMENTS

A.     All bills payable, notes, checks, or other negotiable instruments of the Association shall be made in the name of the Association.

B.    The President shall sign and the Vice President-Finance/Treasurer shall countersign all such negotiable instruments; however, the President and Vice President-Finance/Treasurer may from time to time transfer such sums of money to administrative accounts, including payroll accounts, petty cash accounts and such other accounts as may be necessary to meet administrative and current obligations of the Association.

C.    The President and Vice President-Finance/Treasurer may jointly designate properly bonded employees to sign checks for and draw upon such administrative accounts.  All persons authorized to sign any negotiable instruments for the Association shall be bonded in an amount consistent with the amount of funds over which they may have control.

D.    No officer or agent of the Association, either singly or jointly with others, shall have the power to make any bill payable, note, check, draft or warrant, or other negotiable instrument nor endorse the same in the name of the Association nor contract or cause to be contracted any debt or liability in the name of or in behalf of the Association except as expressly prescribed and provided in the Constitution and By-Laws.

## SECTION 11 - CHARTERS AND AFFILIATIONS

The Executive Council shall process all matters in connection with charters and affiliations.  The Executive Council is empowered to and may issue charters and make affiliations.  Such action shall be submitted for ratification at the next regular session of either the Board of Directors or the Executive Board, whichever occurs first.  The Executive Council shall modify or terminate such charters or affiliations as directed by the Board of Directors or the Executive Board.

## SECTION 12 - MEMBERSHIP CREDENTIALS

Every member shall be issued a membership card by the Vice President-Administration/Secretary bearing the Seal of the Association.  This credential shall contain the name of the member, class of membership, period of validity, and such additional information as may be deemed necessary.

## SECTION 13 - AMENDMENTS TO THE CONSTITUTION AND BY-LAWS

Except as provided in Article V, Section 2, and Article VI, Section 2C, the Constitution and By-Laws may be amended, added to or any part or parts thereof may be repealed by an affirmative two-thirds (2/3) majority vote of the Board of Directors at any meeting of the Board of Directors.

## SECTION 14 - REPRESENTATION OF ALL MEMBERS

Representation of all members of the Association at any duly called meeting of the Board of Directors, Executive Board and Master Executive Council is mandatory.  Elected representatives may be considered as acting against the best interest of the Association if they fail to represent, or arrange for representation of their constituents.

## SECTION 15 - PROXIES - GENERAL

Proxies at any Association meeting shall be used only in a manner specifically provided for in the Constitution and By-Laws and shall not be given when the duly elected officer or member is personally present.

## SECTION 16 - ROLL CALL VOTING

Whenever a roll call vote is taken, a representative shall vote all the members in good standing he represents.

## SECTION 17 - CLARIFICATION OF STATUS REPRESENTATION

The Sections of the Constitution and By-Laws specifying certain conditions with regard to the representation of Captains, First Officers or Second Officers shall not be binding on the Councils having no such members.

## SECTION 18 - OBLIGATION OF MEMBERS TO THE ASSOCIATION

A.    A member of the Association shall accept and agree to abide by the Constitution and By-Laws of the Association as they are in force at the time he is accepted for membership, or as they may be thereafter amended, changed, modified or adopted by the Board of Directors.

B.    It is a member's obligation to maintain a current mailing address with the Home Office Membership Department and with his Council Chairman.  Failure to do so relieves the Association of any responsibility concerning its inability to establish due notice in any case, and the dispatch of mail to a member's last known address will constitute adequate service.

C.    Members of the Association are specifically prohibited from the acts enumerated and set forth in Article VIII, Section 1A.

## SECTION 19 - DISTRIBUTION OF CAMPAIGN LITERATURE

A.    The Home Office shall comply with all reasonable requests of any candidate for Association office to distribute by mail, or otherwise, at the candidate's expense, campaign literature in aid of such person's candidacy to all members in good standing entitled to vote in such candidate's election or who are included in the constituency of the delegates voting in the particular election.  There shall be no discrimination in favor of or against any candidate with respect to costs or the use of lists of members and whenever campaign literature is distributed, by mail or otherwise, on behalf of any candidate, similar distribution at the request of any other bona fide candidate shall be made, with equal treatment as to the expense of such distribution.  The cost of distribution of all campaign literature shall be borne by the candidate or by any member or a group of members acting in a candidate's behalf.  Nothing in this Section shall imply the Association is responsible for the production of campaign material.

B.    Prior to distribution, by mail or otherwise, of any campaign literature, the candidate, or member, or group of members requesting such distribution, will be furnished with the estimated cost by the Home Office.  In any case, the individual acting as spokesman for such request will agree to assume the actual cost of such distribution prior to such distribution taking place.

## SECTION 20 - PARLIAMENTARY LAW AND RULES OF ORDER

At any meeting of members or their elected representatives held under the provisions of this Constitution and By-Laws, all questions of parliamentary laws and rules of order not specifically provided for in the Constitution and By-Laws shall be decided according to the principles laid down in the most current published edition of ROBERT'S RULES OF ORDER as published by the trustee for the Robert's Rules Association, except that, when voting by roll call the secret ballot provision shall not apply.

**SECTION 21 - ELECTION AND BALLOT CERTIFICATION BOARD**

A.     An Election and Ballot Certification Board (EBCB) shall be established, consisting of nine (9) members, appointed by the Executive Council, who reside in the area adjacent to the Home Office location, with the appointee's term to run for three (3) years. The Board shall elect a Chairman and a Vice Chairman from among its members. In the absence of the Chairman, the Vice Chairman shall serve as Chairman for that meeting. In addition, the Vice President-Administration/Secretary may from time to time appoint up to three (3) alternate members to serve for a particular election certification or protest when three (3) EBCB members are not immediately available. The EBCB shall sit in panels of three (3) members, including alternate members where appropriate, and decisions shall be by majority vote of the sitting panel. The EBCB shall administer the election balloting and voting procedures in accordance with the Constitution and By-Laws and Association Voting Procedures, and shall certify the results of all ballots conducted by the Vice President-Administration/Secretary.

B.     The Election and Ballot Certification Board shall hear all protests from members concerning any ballot issued by the Vice President-Administration/Secretary and certified by the EBCB.

(1)     Such protests shall be directed to the Vice President-Administration/Secretary in writing and shall be sufficiently specific as to the alleged acts which constitute the basis of the protest and the provisions of the Constitution and By-Laws and/or Association Voting Procedures and/or Title IV of the Labor Management Reporting and Disclosure Act of 1959, as amended (if applicable), allegedly violated.

(2)     Such protests may be filed with the Vice President-Administration/Secretary at any time but in no event more than forty-five (45) days after the date that the results of the ballot in question were certified to the Vice President-Administration/Secretary by the EBCB.

(3)     Upon receipt by the Vice President-Administration/Secretary of any such protest, the Vice President-Administration/Secretary shall promptly distribute a copy of the protest to the EBCB. The EBCB will hold a hearing on the protest at a regular or special meeting. The EBCB shall, in writing, notify the Vice President-Administration/Secretary and the member(s) filing such protests and all other members who may be affected by the protest, of the date, place and time of the hearing, such notification to be made to the last known home address of the member(s) at least ten (10) days in advance of the hearing date.

(4)     The member(s) filing such protest and all other members who may be affected by the protest has the right to appear at the hearing or to designate and be represented at the hearing by any Active member in good standing.

(5)     The EBCB shall hold the hearing on the protest and issue a written decision to the Vice President-Administration/Secretary and to all affected members within forty-five (45) days of the date that such protest was received, unless the time limit is extended by the EBCB for cause after notice to the protesting member(s) and other members who have appeared.

 (6)     The decisions of the EBCB on a protest concerning the certification of the results of an election conducted under Article III, Section 8, or a recall ballot conducted under Article III, Section 2F, may be appealed to the Appeal Board established by Article VIII, Section 7A, by any of the parties involved in the protest before the EBCB by filing an appeal within fifteen (15) days of the receipt of the decision on the protest. The Appeal Board shall follow the procedures set forth in Article VIII, Section 4, except that its decision shall be issued no later than ninety (90) days from the date the protest was initially filed with the Vice President-Administration/Secretary, unless the time limit is

extended by the Appeal Board for cause after notice to the protesting member(s) and other members who have appeared.  The decision of the Appeal Board shall be final and binding.

## SECTION 22 - REBALLOTING

A.      A reballot may be directed by the EBCB or Appeal Board for good and sufficient cause as a remedy after hearing a protest or appeal under Section 23 above.

B.      A reballot may be conducted of a ballot which is not subject to protest under Section 23 above only after a determination by the authorizing body that there is good and sufficient cause.

C.      Prior to EBCB certification of a ballot for an election conducted under Article III, Section 8 or for a recall conducted under Article III, Section 2F, under circumstances where an erroneous inclusion or exclusion of a candidate or an error in issuing ballots may affect the outcome of the ballot, the Vice President-Administration/Secretary, for good and sufficient cause, may cause (1) nominations to be rerun, (2) a nominated member to be included on or removed from an election ballot, or (3) a new ballot to be issued.

## SECTION 23 - SUSPENSION OF SERVICE

When a suspension or withdrawal of service is called for in compliance with the requirements of the Constitution and By-Laws or the Policy Manual, the members will be balloted before such action may be taken.  Association general balloting procedures will be used.

## ARTICLE II - MEMBERS

### SECTION 1 - ELIGIBILITY FOR MEMBERSHIP

Any person of lawful age and of good moral character who is actively engaged as a pilot in commercial air transportation, shall be eligible for membership in the Association in accordance with the stipulations in this Article and elsewhere in the Constitution and By-Laws.

### SECTION 2 - CLASSIFICATIONS

There shall be seven (7) classes of members:  (a) Active, (b) Apprentice, (c) Executive, (d) Inactive, (e) Retired, (f) Honorary and (g) Reactivated Member.

### SECTION 3 - DESCRIPTION OF CLASSES

A.    ACTIVE MEMBER

An Active member is a pilot employed by an airline for whom the Association is the bargaining representative, who has met the qualifications of Section 1 of this Article and has been approved for such status in accordance with Sections 4 and 5 of this Article.  Except as provided in Article IX, Section 7, an Active member in good standing shall be entitled to all the rights and privileges of the Association including the right to vote and to assume and hold elective and appointive office.  A member shall remain active until:

(1)    he is transferred to another classification;

(2)    he resigns or is expelled under any provision of the By-Laws, provided that during the period of appeal, if any, he shall remain in Active status;

(3)    he is terminated from his airline, provided that he shall remain in Active status during all procedures incident to the final decision under his employment agreement, relating to the termination;

(4)    he is furloughed from his airline;

(5)    he is disabled and has received all available sick income on which dues are required to be paid under Article IX, Section 3, provided that a member who (a) has received less than three years of such sick leave income and exhausted his right to such income, (b) retains seniority rights, and (c) has not during his sick leave transferred to Inactive status under Section 3D(2) of this Article, will remain Active for a continuous period of three years from the date that he begins receiving sick leave income on which dues are required to be paid under Article IX, Section 3;

(6)    he reaches retirement age.

A pilot employed by a Canadian air carrier who possesses all the requirements for Active membership, with the exception of having completed his required company probationary period, shall be classified as an Active member.

B.    APPRENTICE MEMBER

An Apprentice member is a pilot who possesses all the requirements for Active membership with the exception of having completed his required company probationary period stipulated in his employment agreement, or who need not be represented by the Association under his employment agreement and whose application for such status has been approved in accordance with Sections 4

and 5 of this Article. Such member will not be required to assume any financial obligation until becoming eligible for Active membership. An Apprentice member shall be entitled to all the rights and privileges of the Association except that he shall not be entitled to vote or assume elective office. An Apprentice member may be appointed to an LEC committee at the discretion of the Local Council Chairman.

C.    EXECUTIVE MEMBER

(1)    Any member employed by his company in an executive, managerial or supervisory capacity may request classification as an Executive Active or Executive Inactive member. Any member may be placed in the classification of Executive Inactive membership by a majority vote of his Master Executive Council. The Executive Active or Inactive classification of a member may be rescinded by a majority vote of his Master Executive Council. A change in classification to Executive Active or Executive Inactive membership requires the approval of both the Vice President-Administration/Secretary and the Master Executive Council of the airline involved. If the Vice President-Administration/Secretary or the Master Executive Council disapproves the change, the member may appeal to the Executive Council which shall be the final arbiter in the matter. The effective date of classification, in cases where the application bears a postmark within thirty (30) days of the date of the member's assumption of his executive or managerial duties, shall be the date on which he assumed such managerial or executive duties. In all other cases, except where modified by the Executive Council, the effective date shall be that of the postmark of the letter bearing the application.

(2)    An Executive Active member in good standing shall be entitled to all the rights and privileges of the Association, including the right to vote and hold appointive office, but excluding the right to assume or hold elective office. He shall be subject to all the provisions of the Constitution and By-Laws, except that such member shall not be subject to those policies of the Association which specifically apply solely to Active members.

(3)    An Executive Inactive member shall be entitled to all of the rights and benefits of Active membership except that such member shall not have the right to vote, to assume or hold elective or appointive office including committee assignment, attend Association meetings, or be on the Active membership mailing list of the Association. Such member shall not be subject to those policies of the Association which specifically apply solely to Active members.

D.    INACTIVE MEMBER

(1)    Any member in good standing, including an Apprentice member, shall become an Inactive member automatically when:

(a)    he is placed on involuntary furlough.

(b)    he takes a personal (including family medical) or military leave of absence in excess of ninety (90) days.

(c)    he is disabled and no longer qualified to remain an Active member under Section 3A(5) of this Article.

(d)    his employment is severed and the Vice President-Administration/Secretary is so notified of this fact. This paragraph shall not apply to any member who is placed on involuntary furlough, leave of absence or whose employment is severed by reason of temporary cessation of his airline's flight operations resulting from a work stoppage.

(2)    Any Active member whose financial obligations are current and who has been on thirty (30) continuous days of sick or medical leave may, by notification to the Vice President-Administration/Secretary, elect to become an Inactive member.

(3)    Obligations for dues and assessments owed to the Association by an Inactive member, with the exception of a member taking a voluntary leave of absence, shall be considered deferred and restored to the member's account for collection upon eligibility for Active membership and become due in accordance with ALPA policy.  An Inactive member who changes classification to Retired, or the estate of a deceased member shall not be liable for such deferred dues.

(4)    An Inactive member shall not be able to vote, hold or assume elective or appointive office including committee assignment, provided however that a member who becomes Inactive in accordance with Section 3D(2) above shall be entitled to hold or assume the office of President.

E.    RETIRED MEMBER

A Retired member is a member who retires as an airline pilot at normal retirement age under the terms of his working agreement or who elects early voluntary retirement under the terms of his Company retirement plan, or who elects early retirement under his Company retirement plan for medical reasons, or who has been removed from the Pilots' Seniority List as a result of involuntary early or normal age retirement and who is a member in good standing at such time.

Such member shall not have the right to vote or to serve in elective or appointive office, except as President of the Association in accordance with Article X or as First Vice President, Vice President-Administration/Secretary or Vice President-Finance/Treasurer in accordance with Articles XI, XII, and XIII, provided, however, he shall be entitled to retain those insurance benefits in which he was enrolled at the time of retirement if coverage is available under the insurance program between the Association and the underwriter.

F.    HONORARY MEMBER

An Honorary member is any person who, by a three-fourths (3/4) majority vote of the Board of Directors, has been granted Honorary membership in the Association.  There shall not be more than three (3) such Honorary memberships granted in any one (1) year, and posthumous awards may be made.  Such memberships may be rescinded in the same manner as they are granted, by a three-fourths (3/4) majority vote of the Board of Directors.

G.    REACTIVATED MEMBER

(1)    Any member who has the status of Active member at the time he is terminated from employment by virtue of the dissolution or bankruptcy of his airline, or if furloughed, or resigned, shall, upon being employed by another airline whose pilots are represented by ALPA, adopt the status of Reactivated member during the probationary period required by the new employer airline. Such member will not be required to assume any financial obligations until becoming eligible for Active membership.

(2)    Such member shall be entitled to all the rights and privileges of ALPA except that he shall not be entitled to vote or assume elective office.  A Reactivated member may be appointed to a LEC Committee.

(3)    Upon completion of the probationary period, and if application is made, the member will be eligible to be reclassified as an Active member in accordance with Article II of the Constitution and By-Laws.  Upon eligibility for Active membership, any unpaid obligation for dues and assessments, incurred during a period of prior membership, shall be restored to the member's account and due in accordance with Association policy.

## SECTION  4 - APPLICATIONS AND APPROVALS OF APPRENTICE AND ACTIVE MEMBERS

A.    All applications for membership shall be on a standard form provided for that purpose by the Vice President-Administration/Secretary.  Each applicant, by becoming a member of the Association, agrees and subscribes, without reservation, to all the provisions, conditions and stipulations in the Constitution and By-Laws currently in effect or as they may be added to, repealed or amended from time to time as specified in the Constitution and By-Laws.  The making of willful misstatements or the entering of untrue or misleading information or the withholding of essential or pertinent information on an application for membership in ALPA shall be cause for rejection, disciplinary action, or expulsion.

B.    Each applicant for Apprentice or Active membership shall be thoroughly investigated by the Local Council having jurisdiction with the aid and advice of the Vice President-Administration/Secretary, irrespective of the fact that the applicant may have previously held membership on another airline.  A Reactivated member under Article II, Section 3G of the Constitution and By-Laws shall be subject to this requirement in connection with his transfer to Active membership. The investigation of an applicant shall be completed within sixty (60) days, unless the Vice President-Administration/Secretary certifies that there are extenuating circumstances requiring a delay.

C.    Application for Apprentice or Active membership shall be subject to approval in the following manner.

(1)    Active:    By the Local Executive Council having jurisdiction and the Vice President-Administration/Secretary, provided that, except as to an application subject to an extended investigation under Paragraph B above or to Paragraphs D or E below:

(a)    the Local Executive Council shall act on approval or disapproval of Active membership no later than sixty (60) days after eligibility for Active membership or within ninety (90) days of the date of an application filed at a later time, unless the application is subject to approval under subparagraphs C(1)(b) or C(1)(c) below.

(b)    the Local Executive Council may submit approval of Active membership to a convened meeting of the Local Council held within the time periods set forth in subparagraph C(1)(a) above.

(c)    the Local Executive Council will submit approval of Active membership to the next regular convened meeting of the Local Council if a request for such action as to a named applicant is made by a member of the Local Council.

(d)    Where the Local Executive Council does not act in a timely manner or there is no established Local Council, the application shall be subject to approval by the Vice President-Administration/ Secretary.

(2)    Apprentice:    By the Local Council Chairman having jurisdiction or his approved designee (another Local Council Officer or a Membership Committee member), as well as the Vice President-Administration/Secretary.

In both instances, however, if the investigation required by Paragraph B above or other information reveals that the application is subject to the provisions of Paragraphs D or E, below, the application shall be approved in accordance with those paragraphs, provided, however, that nothing in those Paragraphs D E shall be construed as giving any mandatory right to any applicant.

D.    If the required investigation of an applicant or other information reveals that an applicant for Apprentice or Active membership has never previously been an Apprentice or Active member of ALPA on his airline or another airline but has allegedly engaged in any of the actions specified in Article VIII, Section 1A, the applicant shall not be accepted for membership until approved by the Local Council and Master Executive Council having jurisdiction, the Vice President-Administration/Secretary, and the Appeal Board, subject to such conditions or fines as the Appeal Board may fix.  An Apprentice member who was approved for Apprentice membership under this paragraph and who satisfied any conditions or fines imposed by the Appeal Board shall not be required to undergo MEC and Appeal Board approval in connection with his transfer to Active membership.

E.    If the required investigation or other information reveals that an applicant for Apprentice or Active membership is a former member who is subject to any of the following Subparagraphs, this application shall be subject to the approvals required by the following Subparagraph or Subparagraphs as applicable:

(1)    Any former member who has been charged and found guilty of any actions under the provisions of Article VIII, Section 1A, resulting in expulsion from ALPA, shall not be accepted for membership until approved by the Local Council and Master Executive Council having jurisdiction, the Vice President-Administration/Secretary and by action of the Executive Board, at a meeting, subject to such conditions or fines as the Executive Board may fix.

(2)    Any former member who has allegedly engaged in any of the actions specified, in Article VIII, Section 1A, shall not be accepted for membership until approved by the Local Council and Master Executive Council having jurisdiction, the Vice President-Administration/Secretary and the Appeal Board, subject to such conditions or fines as the Appeal Board may fix.

(3)    Any former member who has been expelled for nonpayment of dues, assessments, fines, penalties or financial obligations to ALPA, resulting in expulsion from ALPA, shall not be accepted for membership until approved by the Master Executive Council having jurisdiction and the Vice President-Administration/Secretary.

(4)    Any former member who voluntarily resigned while continuing actively in his profession, shall not be accepted for membership until approved by the Master Executive Council having jurisdiction and the Vice President-Administration/Secretary.

(5)    Any former member who has been approved for membership in accordance with the provisions of this Paragraph E of this Section shall become a member in good standing upon payment of all of his outstanding indebtedness to ALPA as of the time his former membership ceased; in addition, he shall be required to pay an amount equal to the sum total of all dues and assessments he would have paid as an Active member in good standing, from the time of termination of his former membership until the time of his membership reinstatement, and also a reinstatement fee equal to the initiation fee specified in Article IX, Section 2C; however, this reinstatement fee may be waived by action of his Master Executive Council.

(6)    An Apprentice member who was approved for Apprentice membership under this Paragraph E and who has satisfied any condition or fines imposed shall not be required to undergo MEC, Appeal Board, or Executive Board approval in connection with his transfer to Active membership.

F.    Whenever under Paragraphs B, C, D or E of this Section 4 action by a Local Council or Master Executive Council is specified, and none is yet established, the specified action shall be taken by the other persons as required in those Paragraphs.

G.    An applicant for Active membership shall have completed his company's required probationary period and be eligible for representation by ALPA in accordance with his employment agreement before action on his application for such membership can become final, and the day following completion of such probationary period shall be the date of the applicant's Active membership, subject to approval of his application in accordance with this Section.

(1)    Where an airline has no established probationary period, an applicant is eligible for consideration for Active membership upon date of hire, but shall not be subject to Section 4I until the first day of the month following the expiration of nine months after date of hire.

H.    The Vice President-Administration/Secretary shall immediately notify an applicant for Apprentice or Active membership and his Local Council of his acceptance or rejection.

I.    Any pilot failing to apply for membership upon becoming eligible for such membership shall be deemed to have accepted the benefits of ALPA without assuming any of the obligations thereof, and as a prerequisite to his being accepted as an Active member, he shall be required to pay, in addition to the regular initiation fee, all of the annual dues, levies and assessments which would have accrued had he been an Active member of ALPA when he first became eligible for membership.  A pilot shall be deemed eligible for membership as provided above, or upon the day ALPA is certified as a bargaining representative by the National Mediation Board, or is so recognized by the company.

J.    An Apprentice member failing to receive the necessary approval for transfer to Active status shall be automatically terminated as a member.  A terminated Apprentice member or disapproved applicant for Active membership may reapply for Active membership at any time following the completion of a six month period after the denial of the most recent request for membership at a Local Council meeting.  In the event the reapplication for Active membership is subsequently approved, the applicant's eligibility date will be the date of approval for membership or the end of the six month period from the date of request for transfer or application for Active membership was last denied, whichever comes first.

## SECTION  5 - TRANSFER OF INACTIVE MEMBERS TO ACTIVE MEMBERSHIP

A.    An Active member who transferred to Inactive membership is immediately eligible for Active membership upon return to line pilot status with his carrier.  He shall apply in writing to the Vice President-Administration/Secretary for transfer to Active membership within ninety (90) days after the date the condition or conditions causing his Inactive status are removed.  Dues, assessments, and penalties shall begin to accrue as of the date of eligibility for transfer to Active membership.

B.    When application for transfer from Inactive membership to Active membership is not made within ninety (90) days from the date of eligibility therefore, the privilege of transfer without payment of another initiation fee shall expire, and his membership in the Association shall be automatically terminated.  To regain membership status, he shall be bound by the provisions of Sections 4 and 5 of this Article.

## SECTION  6 - TRANSFER OF EXECUTIVE MEMBERS TO ACTIVE MEMBERSHIP

A.    An Active member who transferred to Executive Active membership is immediately eligible for Active membership upon return to line pilot status with his carrier and notification to the Vice President-Administration/Secretary.

B.    An Active member who transferred to Executive Inactive membership shall, upon return to line pilot status with his carrier, apply in writing to the Vice President-Administration/Secretary within ninety (90) days for transfer to Active membership.  Such transfer shall be contingent upon receipt of majority approval of the member's Master Executive Council.  The Active membership financial obligations of the member shall begin to accrue as of the date of eligibility for transfer to such Active status.  Should Master Executive Council approval for Active membership not be granted, charges shall be filed under the provisions of Article VIII and heard by his Master Executive Council at its first regular meeting and a decision rendered at that meeting, affirming or reversing its initial decision.  He may appeal therefrom to the Appeal Board, utilizing the procedures of Article VIII.

C.    When application for transfer from Executive Inactive membership to Active membership is not made within ninety (90) days from the date of eligibility therefore, the privilege of transfer without payment of another initiation fee shall expire, and his membership in the Association shall be automatically terminated.  To regain membership status, he shall be bound by the provisions of Sections 4 and 5 of this Article.

## SECTION 7 - TERMINATION OF MEMBERSHIP

A.    Membership shall be terminated by expulsion when a member remains in bad standing for a period of two (2) consecutive months because of nonpayment of his dues, assessments, or fines, as provided in Article IX, or when he is expelled as provided in Article VIII, or when terminated as provided in this Article; or by voluntary resignation submitted in writing by the member (recommended via certified mail/return receipt) to the Vice President-Administration/Secretary of the Association.

B.    A voluntary resignation will be subject to a thirty (30) day administrative processing period but, after processing, will be effective retroactive to the date it was first received by the Vice President-Administration/Secretary of the Association.  A resigning member shall not incur further membership obligations after the date his written resignation is received by the Vice President-Administration/Secretary of the Association.  A member who withdraws his resignation will be fully subject to all financial and other requirements of membership that accrued during the period his resignation was being processed.  The Vice President-Finance/Treasurer of the Association shall take all lawful actions to collect outstanding obligations due at the time of a member's resignation.

## SECTION 8 - ASSOCIATE MEMBERS

A.    A person who holds a valid U.S. or Canadian commercial pilot certificate and is employed as a pilot shall be eligible to apply for and hold associate membership in accordance with the Articles of Association and By-Laws of ALPA's associate organization, as approved by the Executive Council, provided that such person;

(1)    is not a member of ALPA (in any classification);

(2)    is not eligible for ALPA membership (in any classification); and

(3)    is not represented by ALPA for collective bargaining purposes.  Members of such associate organization shall be associate members of ALPA, and will be eligible to participate in the programs of the associate organization and ALPA established for associate members, upon payment of appropriate dues and qualification for such programs.

B.  The associate organization shall be governed by its By-Laws, as approved by the Executive Council.  The associate organization shall not become or function as the collective bargaining representative of any group of employees nor deal with or attempt to deal with any employer concerning grievances, labor disputes, rates of pay, hours or other terms and conditions of employment.  Associate membership shall not confer eligibility to run for or vote for national or other offices in ALPA or to otherwise vote in ALPA.

## ARTICLE III - LOCAL COUNCILS AND LOCAL EXECUTIVE COUNCILS

### SECTION 1 - ORGANIZATION

A.    Local Councils shall be established and dissolved as provided in Section 10 of this Article.

(1)    Each Local Council shall have one (1) or more Status Representatives.

(2)    The Local Council(s) on an airline shall, where applicable, be organized with Captain, First Officer and Second Officer Status Representatives, or with Seniority Block Status Representatives, or with an Instructor Status Representative, all of whom are referred to as Status Representatives. All Local Councils on an airline shall be organized using the same system, except that a Local Council composed solely of Instructors may be organized under either system.

(a)    When requested by a Master Executive Council, a Seniority Block Status Representative system for the Local Council(s) on an airline may be established and implemented upon approval of the Executive Council, which shall consider and take into account the recommendations of the Master Executive Council as to the number of Local Councils, size and number of uniform seniority blocks, number of Status Representatives, and related matters.

B.    Each Local Council, except a Local Council organized under Section 1C or Section 1D below, shall have one (1) Status Representative for each pilot status in that Local Council, said Status Representative(s) to be a member of his airline Master Executive Council and the Board of Directors of the Association.

(1)    A one (1) status Local Council, with only Captains, or Instructors, or one seniority block, shall have one Status Representative who shall also serve as Local Council Chairman.  In addition, that Local Council shall have a Vice Chairman and a Secretary-Treasurer who are not Status Representatives.

(2)    A two (2) status Local Council, with only Captains and First Officers or two seniority blocks, shall have a Captain Representative and a First Officer Representative or two Seniority Block Status Representatives, who shall each be eligible for election as Local Council Chairman and Vice Chairman.  In addition, that Local Council shall have a Secretary-Treasurer who is not a Status Representative.

(3)    Except in a Local Council subject to Section 2C(1)(d)(i) below, a three (3) status Local Council with Captains, First Officers and Second Officers, or a Local Council with three or more seniority blocks, shall have a Captain Representative, a First Officer Representative and a Second Officer Representative or three or more Seniority Block Status Representatives, who shall each be eligible for election as Local Council Chairman, Vice Chairman and Secretary-Treasurer.

C.    Each two (2) status or three (3) status Local Council on a single Council airline (organized with Captain, First Officer and, where applicable, Second Officer Status Representatives) with over one thousand (1000) Active members, at the time of mailing of nominating ballots in accordance with Section 7 of this Article for a regular term of office, shall have two (2) Status Representatives for each pilot status in that Local Council, said Status Representatives to be members of their airline Master Executive Council and the Board of Directors of the Association, unless the Executive Council, taking into account the recommendation of the Master Executive Council, determines that the airline should be organized under Section 1B above.  The Executive Council, taking into account

the recommendation of the MEC, may further determine that a Local Council on a single Council airline which grows to over one thousand (1000) Active members during a term of office should be subject to this provision for the remainder of a term of office, or that a Local Council on a single Council airline which no longer has one thousand (1000) members should be subject to Section 1B above, and establish transition procedures.

(1)   A two (2) status Local Council, with only Captains and First Officers, shall have two Captain Representatives and two First Officer Representatives who shall each be eligible for election as Local Council Chairman, Vice Chairman and Secretary-Treasurer.

(2)   A three (3) status Local Council, with Captains, First Officers and Second Officers, shall have two Captain Representatives, two First Officer Representatives and two Second Officer Representatives who shall each be eligible for election as Local Council Chairman, Vice Chairman and Secretary-Treasurer.

D.   A two (2) status or three (3) status Local Council on a multi-Council airline (organized with Captain, First Officer and, where applicable, Second Officer Status Representatives) with (i) over one thousand (1000) Active members who constitute twenty-five percent (25%) or more of the Active membership on the airline, at the time of mailing of nominating ballots in accordance with Section 7 of this Article for a regular term of office or (ii) over five hundred (500) Active members who constitute fifty percent (50%) or more of the Active membership on the airline, at the time of mailing of nominating ballots in accordance with Section 7 of this Article for a regular term of office, may with prior approval of the Master Executive Council by a three-quarters (3/4) majority vote and by majority of the Executive Council, have two (2) Status Representatives for each pilot status in that Local Council, said Status Representatives to be members of their airline Master Executive Council and the Board of Directors of the Association.   The Executive Council, taking into account the recommendation of the MEC by a three-quarters (3/4) majority vote, may further determine that a Local Council which grows in size to meet the requirements of this provision during a term of office should be subject to this provision for the remainder of that term of office, or that a Local Council which no longer meets the requirements of this provision should be subject to Section 1B above, and establish transition procedures.

(1)   A two (2) status Local Council, with only Captains and First Officers, shall have two Captain Representatives and two First Officer Representatives who shall each be eligible for election as Local Council Chairman, Vice Chairman and Secretary-Treasurer.

(2)   A three (3) status Local Council, with Captains, First Officers and Second Officers, shall have two Captain Representatives, two First Officer Representatives and two Second Officer Representatives who shall be eligible for election as Local Council Chairman, Vice Chairman and Secretary-Treasurer.

E.   The Chairman, Vice Chairman and Secretary-Treasurer shall comprise the Local Executive Council, except that the Local Executive Council for a Local Council subject to Section 1C or Section 1D of this Article or with more than three Seniority Block Status Representatives shall also include all Status Representatives who are not Local Council officers.

F.   On airlines where employment of Professional Flight Engineers is permitted in accordance with Article XX, Section 1A(1), Second Officer Representatives may be designated at the option of the MEC and with the approval of the Vice President-Administration/Secretary as "Second Officer/Professional Flight Engineer Representatives" without change in function or qualifications for office.  The MEC will promptly inform the Vice President-Administration/Secretary of its decision to select or rescind such designation.

**SECTION  2 - LOCAL COUNCIL REPRESENTATIVES AND OFFICERS**

A.    The nomination of Local Council Representatives and Officers shall be in accordance with Section 7 of this Article.

B.    The election of Local Council Representatives and Officers shall be in accordance with Section 8 of this Article.

C.    ELIGIBILITY REQUIREMENTS FOR LOCAL COUNCIL REPRESENTATIVES AND OFFICERS

(1)    Eligibility requirements for Local Council Representatives:

(a)    In any Local Council with Captain members or composed solely of Instructors, any Active member of that Local Council in Captain status or Instructor status at the time of nomination shall be eligible for election as Captain or Instructor Representative.

(b)    In any Local Council with First Officer members, any Active member of that Local Council in First Officer status at the time of nomination shall be eligible for election as First Officer Representative.

(c)    In any Local Council with Second Officer members, any Active member of that Local Council in Second Officer status at the time of nomination shall be eligible for election as Second Officer Representative.

(d)    In any Local Council where no pilot in First Officer or Second Officer status is eligible for Active membership or where no Active member in the appropriate status is willing to serve, Active members in a higher status at the time of nomination shall be eligible for election as First Officer Representative or Second Officer Representative having previously flown in such status.

(i)    In the event that there is no eligible member under Section 2C(1)(c) or Section 2C(1)(d) above who is  willing to serve as Second Officer representative, the Local Council shall be organized as a two (2) status Local Council under Section 1B(2) above for the term of office or remainder of the term of office, and the First Officer Representative shall hold the votes of the members in Second Officer status for purposes of roll call voting as a member of the Master Executive Council and Board of Directors.

(e)    In any Local Council on an airline with Seniority Block Status Representatives, any Active member of that Local Council shall be eligible for election as Status Representative for his seniority block at the time of nomination.

(f)    A change of status subsequent to nomination shall not preclude election to, assumption of, or retention of office.

(g)    Status means the candidate's flight crew position at the time of nomination (except by involuntary assignment) or, where a Seniority Block Status Representative system has been established, position on the seniority list within the seniority block at the time of nomination.  If a candidate's status cannot be clearly determined by applicable Constitution and By-Laws, such status will be determined by a majority vote of those present at the Local Council Nominating Meeting.

(2)    Eligibility requirements for Local Council Officers:

(a)    In a one (1) status Council, the elected Status Representative shall automatically become the Local Council Chairman.  In addition, any Active member of the Local Council in good standing at time of nomination and election, who is not a Status Representative, shall be eligible for election to the office of Vice Chairman or the office of Secretary-Treasurer.

(b)    In a two (2) status Council, the Chairman and the Vice Chairman must be duly elected Status Representatives.  In addition, except in a Council organized under Section 1C or Section 1D above, any Active member of the Local Council in good standing at the time of nomination and election, who is not a Status Representative, shall be eligible for election to the office of Secretary-Treasurer.

(c)    In a three (3) status Local Council, or a Local Council with three or more Seniority Block Status Representatives, or a Local Council organized under Section 1C or Section 1D above, the Chairman, Vice Chairman and the Secretary-Treasurer must be duly elected Status Representatives.

(3)    All candidates for office must be in good standing at the time of nomination and election.

D.    TERM OF OFFICE

(1)    The terms of office for Local Council Representatives and Officers shall commence and conclude in accordance with each Local Council's Election Group placement as delineated in Section 9 of this Article and shall be for thirty-six (36) months, except during the transition terms delineated in Section 9.

(2)    A Local Council Representative or Officer shall hold office for the term elected to said office provided he remains a member in good standing of that Local Council, or until recalled in accordance with the Constitution and By-Laws, vacates the office for any other reason or until his successor is elected and takes office pursuant to the provisions of this Article; provided, however, that when newly elected representatives have assumed office, the Officer's term of office shall expire.  In a two (2) status Council, except a Council organized under Section 1C or Section 1D above, the Representatives receiving the most number of votes and the least number of votes in the Representative election shall be certified as Acting Council Chairman and Acting Vice Chairman, respectively, by the Election and Ballot Certification Board pending completion of Officer elections.

In a three (3) status Council, or a Local Council with three or more Seniority Block Status Representatives, or a Local Council organized under Section 1C or Section 1D above, the Representatives receiving the most votes, the second highest number of votes and the third highest number of votes in the Representative election shall be certified as Acting Council Chairman, Acting Council Vice Chairman and Acting Council Secretary-Treasurer, respectively, by the Election and Ballot Certification Board, pending completion of Officer elections.

(3)    A Local Council Officer and Representative who vacates the office of Status Representative or Council Officer under the provision of (2) above shall thereby simultaneously vacate both offices.

E.    VACANCY IN OFFICE OF LOCAL COUNCIL REPRESENTATIVE OR OFFICER

When the Vice President-Administration/Secretary is advised in writing of any Local Council Representative or Officer vacancy or is advised in writing of the future effective date of the resignation of a Local Council Representative or Officer, he shall initiate all of the following appropriate actions:

(1)     If a Local Council Representative vacancy occurs twelve (12) months or more (or two hundred and forty (240) days or more for remaining transition terms of two years) prior to the expiration of the term, such vacancy shall be filled for the balance of the term by an election in accordance with Sections 7 and 8A of this Article.  Pending the election of a representative, the vacancy shall be filled by election of an Interim Status Representative as provided in subparagraph (3).

(a)     Any Local Council Officer vacancy created by the vacating representative shall be temporarily filled in accordance with subparagraph (5).

(b)     Should the vacated office be that of Chairman, an officer election will be conducted as provided in Section 8B of this Article.

(c)     Should the vacated office be that of Vice Chairman in a Local Council with a Second Officer Representative and/or subject to Section 1C or Section 1D of this Article or with three or more Seniority Block Status Representatives, an officer election will be conducted as provided in Section 8B of this Article.

(d)     Should the vacated office be that of Vice Chairman in a Local Council with no Second Officer Representative and not subject to Section 1C or Section 1D of this Article or with less than three Seniority Block Status Representatives, the newly elected Local Council Status Representative or member, whichever is applicable, shall assume the office of Vice Chairman.

(e)     Should the vacated office be that of Secretary-Treasurer, the newly elected Local Council Status Representative or member, whichever is applicable, shall assume the office of Secretary-Treasurer, except that an officer election will be conducted as provided in Section 8B of this Article in a Local Council subject to Section 1C or Section 1D of this Article or in a Local Council with more than three Seniority Block Status Representatives.

(2)     If a vacancy occurs less than twelve (12) months (or less than two hundred and forty (240) days for remaining transition terms of two years) prior to the expiration of the term, it shall be filled by an Interim Status Representative as provided in subparagraph (3).  Any vacated office shall be filled for the balance of the term as provided in subparagraph (5).

(3)     When a vacancy occurs as in (1) and (2) above, it shall be filled by election of an Interim Status Representative as follows:  The Local Council Chairman shall call a Local Council meeting for the purpose of nominating and electing an Interim Status Representative.  The Local Council, at that session, shall nominate and shall elect by secret ballot such Interim Status Representative to temporarily fill the existing vacancy.

(4)     The Interim Status Representative upon election shall become a representative for the Local Council and shall be a member of the Local Executive Council, Master Executive Council and Board of Directors, and shall have all the rights and privileges of a regularly elected representative.  He shall be spokesman for the status he represents and shall not be an officer of the Local Council, except in a one status Local Council.  Upon completion of a Local Council Status Representative election in accordance with Sections 7 and 8 of this Article, the term of the Interim Status Representative shall terminate.

(5)     Pending election of Local Council Status Representatives or Officers in accordance with Sections 7 and 8 of this Article, the following order of Council Officer succession for the balance of the term(s) shall be implemented.

(a)     In the event of a Chairman vacancy only, the Vice Chairman shall act as Chairman and the Secretary-Treasurer shall act as Vice Chairman as well as Secretary-Treasurer.

(b)    In the event of a Vice Chairman vacancy only, the Secretary-Treasurer shall act as Vice Chairman as well as Secretary-Treasurer.

(c)    In the event of a Secretary-Treasurer vacancy only, the Vice Chairman shall act as Secretary-Treasurer as well as Vice Chairman.

(d)    In the event of simultaneous vacancies of Local Council Chairman and Vice Chairman, the Secretary-Treasurer shall function as Temporary Local Council Chairman for the purpose of conducting an election for Interim Status Representatives.  The Temporary Chairman shall call a Local Council meeting and at that meeting the Local Council members shall nominate and shall elect by secret ballot Interim Status Representatives.  At that meeting the Local Council members shall determine by election which of the Interim Status Representatives shall be Temporary Chairman and Temporary Vice Chairman, except that in a Local Council subject to Section 1C or Section 1D of this Article or with three or more Seniority Block Status Representatives, the members shall elect the Temporary Chairman and Vice Chairman from among the incumbent Permanent Status Representatives and the Interim Status Representatives.  Upon completion of Local Council Representational and Officer elections conducted in accordance with Sections 7 and 8 of this Article, the term of Interim Status Representatives (Temporary Chairman and Vice Chairman) shall terminate.

(e)    In the event an established Local Council has no elected officers, or in the event a probationary Local Council is established by the Executive Council on an airline with a functioning Council or Councils, the Master Executive Council Chairman shall appoint an Active member in good standing of that Council to function as Temporary Local Council Chairman for the purpose of conducting an election for Interim Status Representatives and, where applicable, Secretary-Treasurer.    The Temporary Local Council Chairman shall call a Local Council meeting and at that meeting the Local Council members shall nominate and shall elect by secret ballot their Interim Status Representatives, and in a Local Council where there are no Second Officers or less than three Seniority Block Status Representatives, a Secretary-Treasurer.  At that meeting the Local Council members shall determine by election which of their elected representatives shall be Temporary Chairman, Temporary Vice Chairman and in a Local Council where there are Second Officers or more than two Seniority Block Status Representatives, Secretary-Treasurer, provided that in a Local Council subject to Section 1C or Section 1D of this Article, or with more than three Seniority Block Status Representatives, any incumbent Permanent Status Representatives shall be eligible for election as Temporary Chairman, Temporary Vice Chairman and, where applicable, Temporary Secretary-Treasurer.  Upon completion of Local Council Representational and Officer elections conducted in accordance with Sections 7 and 8 of this Article, the term of Interim Status Representative (Temporary Chairman and Vice Chairman) shall terminate.

(f)    In the event there is no Master Executive Council Chairman to make such appointment under subparagraph (e) above, the Vice President-Administration/Secretary, with the approval of the President, shall appoint an Active member in good standing of such Council to function as Temporary Chairman to conduct Interim Status Representative and Officer elections as provided in subparagraph (5) above.  Such action shall be reported to the Executive Council at its next meeting and be subject to its review.  Any affected member may appeal such action to the Executive Council.

(g)    In the event that an airline with one (1) Local Council subject to Section 1C of this Article becomes a multi-Council airline, the procedures set forth in Sections 2E(5)(e) and 2E(5)(f) above shall be applicable to the newly established Local Council(s).  Upon election of the Interim Status Representatives and Officers in the newly established Local Council(s), the prior existing Local Council shall be subject to Section 1B of this Article.  The Status Representatives in the original Local Council in each status who received the greatest number of votes in their election as Status Representatives shall continue in office as representatives and officers for the remainder of their terms, and any vacancy in office shall be filled in accordance with Section E of this Article.

F.    RECALL OF LOCAL COUNCIL REPRESENTATIVE OR OFFICER

At a Local Council meeting, which has been called to consider, among other things, a recall, such Local Council, by a majority vote of the Active members in good standing of that council then present, and valid proxies, may request the Vice President-Administration/Secretary to initiate and circulate a ballot among the Active members of such Local Council for the removal of a Local Council Status Representative or Officer, said ballot to be conducted under Association Voting Procedures. Such ballots shall be validated and tallied under the supervision of the Election and Ballot Certification Board who shall certify the results and notify the Vice President-Administration/Secretary. The Vice President-Administration/Secretary shall promptly mail a copy of the certification of results to the members of the Local Council.

G.    BOND

The Local Council Chairman and any Local Council officer or member who may be entrusted with Local Council funds shall be bonded in the amounts specified in the Labor Management Reporting and Disclosures Act of 1959, as amended (if applicable), or as it may be amended in the future. The Chairman, in any event, shall be accountable for such funds.

## SECTION 3 - LOCAL COUNCIL MEETINGS

A.    Local Council meetings shall be the forum of the general membership of the Association.

B.    REGULAR LOCAL COUNCIL MEETINGS

Regular meetings of the Local Council shall be called at least once every three (3) months by the Chairman, or by the Vice Chairman at the direction of the Chairman. The following shall be complied with during Local Council meetings: where applicable, due to the size of the Council, or availability of membership, and in order to allow the maximum number of members to attend a meeting, the meeting may be divided into two (2) or more sessions. Each meeting having more than one session shall discuss the same items on the published agenda, and in case of new business at the first session, such new business shall be discussed at the remaining sessions of the meetings. Any vote taken on any matter of business must be a compilation of the voting on that matter of business of all sessions. Voting at second or subsequent sessions must be confined to the issues voted upon at the first session, including votes to table, amend, etc. Any action to amend or to otherwise dispose of an item at a second or subsequent session requires that said decision be placed on the published agenda of the next regular meeting of the Council. In case of a tie vote, the Local Executive Council shall vote the issue and their vote shall be the decision of the Council. Items of business not discussed at all sessions shall revert to the next Local Council meeting for final decision.

C.    SPECIAL LOCAL COUNCIL MEETINGS

A special meeting of the Local Council may be called by the Chairman at any time, and shall be called by the Chairman upon written request by the Master Executive Council, the President of the Association, or two or more Local Council Officers. The Officer or Officers requesting such special meeting shall state the agenda for inclusion in the Chairman's published notice. When the President of the Association is petitioned in writing by thirty percent (30%) of the Active members in good standing of a Local Council, he shall, within fifteen (15) days, direct the Vice President-Administration/Secretary to call a special meeting. The Vice President-Administration/Secretary shall publish notice of the time and place of the meeting, and the agenda items included in the petition. Such meeting shall be convened within forty five (45) days of receipt of the petition by the President.

D.    NOTICE OF MEETINGS

(1)    Notice of all regular Local Council meetings shall be given by written notice as far in advance as is practicable and shall be in receipt of the member not less than twenty-four (24) hours before the time designated for such meetings, except as provided in subparagraph (2) below.  Such notice shall include the time, place and agenda for the meeting.  Any Active member in good standing may submit agenda items to the Local Council Chairman for inclusion in the published agenda in the meeting notice.  Such items shall be in writing. Any agenda item may be introduced by a member at a regular Council meeting.

(2)    Notice of regular Local Council meetings called to consider Nomination of Representatives, as provided in Section 7B of this Article, or to consider Nomination and Election of an Interim Status Representative, as provided in Section 2E of this Article, or to consider recall of a Local Council Representative or Officer, as provided in Section 2F of this Article, or to vote on a Local Council assessment in accordance with Article IX, Section 7B, shall be mailed by the Vice President-Administration/Secretary to each member at his last known home address not less than fifteen (15) days prior to the date of such meeting.

(3)    Subject to the requirements of subparagraph (4) immediately hereafter, notice of all special Local Council meetings shall be given as in paragraph (1) above except that in an emergency a special meeting may be called verbally or on less than twenty-four (24) hours notice.  All notices shall include the business to be brought before such meetings, and no business other than that specified shall be transacted.

(4)    Notice of special Local Council meetings called to consider Nomination of Representatives, Nomination and Election of Interim Status Representatives, the recall of a Local Council Representative or Officer, or to vote on a Local Council assessment shall be mailed by the Vice President-Administration/Secretary to each member at his last known home address not less than fifteen (15) days prior to the date of such meeting.

E.    VOTING

At all meetings of a Local Council, all questions coming before such Council shall be decided by a majority vote of the Local Council members in attendance (including valid proxies except as provided in the following sentence) and each Active Local Council member in good standing shall have one (1) vote.  Proxies may not be used for secret ballots required in Article III, Section 2E(3) (Interim Status Representatives); Article III, Section 7A(1) (Nomination of Representatives); Article IV, Section 2B (Strike Votes); Article IX, Section 7B (Assessments), and ALPA's contract ratification procedures.

F.    QUORUM

At all regular or special meetings of a Local Council, the Active members in good standing who remain in attendance shall constitute a quorum for the transaction of business, except that at any special meeting called verbally or on less than twenty-four (24) hours notice, a quorum shall consist of twenty percent (20%) of the Active members of the Council.

G.    PROXIES

Proxies for a Local Council meeting must be in writing, from an Active member in good standing, and for the specific subjects listed on the published agenda.  Stated on the proxy must be the name of the person issuing the proxy, the person to whom issued, and the subjects covered by the proxy.  No member shall be able to vote more than three (3) proxies.  Proxies may be used in any vote by secret ballot in a Local Council meeting except those votes enumerated in Section 3E of this Article.

## H.    MEETING RECORDS AND MINUTES

Minutes and a record of attendance shall be kept of all meetings, both regular and special, and a copy of such minutes and attendance records shall be sent to the Home Office within thirty (30) days, and distribution of the minutes shall be made as the Local Executive Council directs.

## SECTION 4 - LOCAL EXECUTIVE COUNCIL

### A.    GENERAL DUTIES OF THE LOCAL EXECUTIVE COUNCIL

The Local Executive Council is charged with and responsible for the proper management of the affairs and business of the Local Council of which it is a part.  All Local Executive Council business shall be conducted in duly called, regularly convened meetings.  Said Local Executive Council may adopt such rules of procedure for the management of its affairs as it deems proper and which are consistent with the Constitution and By-Laws.

### B.    JURISDICTION AND DUTIES OF LOCAL COUNCIL OFFICERS

#### (1)    CHAIRMAN

The Chairman of the Local Council shall preside at all meetings thereof and at all meetings of the Local Executive Council, except as he may otherwise specifically direct in accordance with paragraph B(2) of this Section.  He shall cause to be called all regular and special meetings of the Local Executive Council and of the Local Council in accordance with the Constitution and By-Laws.  He shall be responsible for the expeditious processing of complaints and grievances of his Council members and promoting their interests locally in whatever way possible.  He shall be charged with and responsible for implementing, administering and explaining the policies of his Local Executive Council and Master Executive Council, the Board of Directors and Executive Board as they pertain to his Local Council.  He shall be a member of the Master Executive Council of the airline and a Director of the Association.

#### (2)    VICE CHAIRMAN

In the absence of the Chairman, the Vice Chairman shall perform all of the duties of the Chairman as provided in paragraph B(1) of this Section and such other duties that, from time to time, may be specifically assigned to him by the Chairman.  In addition, he shall be a member of the Master Executive Council of the airline and a Director of the Association, except that the Vice Chairman of a single status Local Council shall not be a member of the Master Executive Council or a Director of the Association.

#### (3)    SECRETARY-TREASURER

The Secretary-Treasurer of the Local Council shall assist the Chairman in administering Local Council funds, maintaining Council records and perform such other duties that the Council Chairman may assign to him.  If he is also a Local Council Status Representative, he will be a member of the Master Executive Council of the airline and a Director of the Association.

## SECTION 5 - LOCAL EXECUTIVE COUNCIL COMMITTEES

The Local Executive Council shall establish such Committees and appoint Committee Chairmen as may be necessary for proper conduct of Local Council business consistent with Association and Local Council policy.

**SECTION  6 - LOCAL EXECUTIVE COUNCIL MEETINGS**

A.    GENERAL

(1)    Regular meetings of the Local Executive Council shall be called by the Chairman prior to each regular or special Local Council meeting.

(2)    Special meetings of the Local Executive Council may be called by the Chairman at any time, and shall be called by him upon the written request of the President of the Association, the Master Executive Council or one (1) member of that Local Executive Council.

(3)    Any Local Executive Council meeting where every member is present shall be considered a regular meeting and any or all business may be transacted.

B.    NOTICE OF MEETINGS

Notice of all regular or special Local Executive Council meetings shall be given in accordance with Section 3D of this Article.

C.    MEETING RECORDS AND MINUTES

Minutes and a record of attendance shall be kept of all meetings, both regular and special, and a copy of such minutes and attendance records shall be retained by the Secretary-Treasurer of the Local Council.

D.    QUORUM

At all regular or special meetings of a Local Executive Council, the members who remain in attendance shall constitute a quorum for the transaction of business.

E.    VOTING

At all meetings of a Local Executive Council, all questions shall be decided by a majority vote of the Local Executive Council members in attendance, with each member having one (1) vote.

**SECTION  7 - NOMINATION OF REPRESENTATIVES**

A.    (1) Nomination of Local Council Representatives and Officers shall be conducted by secret ballot.

(2)    The Vice President-Administration/Secretary shall cause nominating ballots to be mailed to all Active members of all Local Councils scheduled for election as provided in Section 9 of this Article, said ballots to be mailed no later than the tenth (10th) day of that month which precedes the commencement date of the term of office, as specified in Section 2D(1) of this Article, by six (6) months.

(3)    At the time nominating ballots are mailed to Active members, the Vice President-Administration/Secretary shall mail a Nomination Certificate and related nominating forms to the Local Council Chairman and designate a reasonable deadline on which the nomination results shall be received by the Vice President-Administration/Secretary.

B.    The Local Council Chairman shall call a regular Council meeting, duly announced in accordance with Section 3D of this Article, with the "Nomination of Representatives" published on the agenda, allowing sufficient time to meet the deadline date designated by the Vice President-Administration/Secretary.

C.    (1)    Each Active member in good standing may nominate one (1) candidate for the office of Captain Representative, First Officer Representative (or Vice Chairman in a single status Council) and Second Officer Representative (or Secretary-Treasurer in a one or two status Council), or nominate one candidate for each Seniority Block Status Representative position (or Vice Chairman in a single status Council and Secretary-Treasurer in a one or two status Council), or nominate one candidate for Instructor Status Representative (in a Local Council composed solely of Instructors), except that each Active member in good standing in a Local Council subject to Section 1C or Section 1D of this Article may nominate two (2) candidates for the office of Captain Representative, First Officer Representative and, where applicable, Second Officer Representative.

(2)    Each Active member in a one status Council may nominate one (1) candidate for the office of Chairman, Vice Chairman and Secretary-Treasurer.

(3)    The member shall be responsible for determination of his nominee's willingness to serve prior to nomination.

(4)    A member must declare his willingness to serve in writing to the Local Council Chairman or his designee prior to the adjournment of the Council meeting in order to appear on the election ballot.  A declaration by fax or email or completion and return of the willingness-to-serve on the nominating ballot will be acceptable.

D.    The deadline date for return of the nomination ballots to the Local Council Chairman, or his designee, shall be not later than the date and time of the Local Council meeting duly announced in accordance with Section 3D of this Article, with the "Nomination of Representatives" published on the agenda.  Secret floor nomination ballots shall be accepted from any Active member in good standing of that Council present at the meeting.

E.    (1) Nominating ballots shall be certified and tallied under the supervision of a Ballot Certification Committee appointed by the Chairman and composed of Active members in good standing of that Council present at that meeting.

(2)    Ties shall be broken by secret ballot of the Active members present at the meeting where such nominating ballots are tallied.

F.    (1)    The Local Council Chairman or his designee shall determine each nominee's willingness to serve as an elected representative or officer and if the member has been nominated to more than one (1) such office shall require the member to make a choice.

(2)    Vacancies occurring as a result of choice shall be filled by the nominee receiving the next highest number of nominating ballots to that office.

G.    (1)    The names of the two (2) nominees for each elective office receiving the most votes shall be announced to the Council by the Local Council Chairman, except that, in a Local Council subject to Section 1C or Section 1D of this Article, the names of the four (4) nominees for each elective office receiving the most votes shall be announced to the Council by the Council Chairman.  After all nominations have been completed, and the appropriate names and votes entered onto the Nomination Certificate, the Nomination Certificate shall then be validated by the signatures of the Ballot Certification Committee members and the Local Council Chairman.  Any protest lodged at the meeting must be resolved by the Local Council prior to such announcement and validation.  Each

Council Tally Sheet used during the meeting shall also be validated by the members of the Ballot Certification Committee.

(2)    The Nomination Certificate and the Tally Sheet(s) shall be placed in the preaddressed envelope provided, sealed at the meeting, and mailed by the Local Council Chairman at the earliest opportunity after the conclusion of the meeting.

H.    Within five (5) days after said nomination meeting, the Chairman shall cause the ballots and all related balloting material to be returned to the Vice President-Administration/Secretary to be preserved under his supervision for a period of at least one (1) year.

I.    The Vice President-Administration/Secretary, upon receipt of the Nomination Certification Form, the ballots, and all related material, shall publish the results of the nomination to all Active members of that Local Council.  This publication will be included in the Local Council Election Ballot described in Section 8A (2) of this Article.

## SECTION 8 - ELECTION PROCEDURES

A.    (1)  Election of Local Council Representatives and Officers shall be conducted by secret ballot, using a telephone and/or internet balloting system.

(2)    The Vice President-Administration/Secretary shall cause election balloting notices to be mailed to all Active members of those Local Councils scheduled for elections as provided in Section 9 of this Article, said notices to be mailed no later than the tenth (10th) day of that month which precedes by four (4) months the commencement date of the term of office, as specified in Section 2D(1) of this Article.  The election balloting notice shall list the names of the nominees for each elective office in alphabetical order.  Each Active member in good standing may vote for one (1) candidate for each elective office and the successful candidate for each office shall be that eligible candidate receiving the greatest number of election votes, except that each Active member in good standing in a Local Council subject to Section 1C or Section 1D of this Article may vote for two (2) candidates for each elective office in an election for Status Representatives (except in an election to fill a single vacancy in office), and the successful candidates in such elections (except an election to fill a single vacancy in office) shall be those two (2) eligible candidates receiving the greatest number of election votes.  Nothing herein shall prohibit the write-in and election of an eligible member for elective office, except when electing the Local Council Chairman and Vice Chairman for two (2) status Councils, or except when electing the Local Council Chairman, Vice Chairman and Secretary-Treasurer for three (3) status or more than three (3) status Councils or Councils organized under Section 1C or Section 1D above.

(3)    Election balloting by Active members in good standing shall be conducted in accordance with Association Voting Procedures on dates established by the Vice President-Administration/ Secretary.  The results of balloting shall be reported to the Election and Ballot Certification Board, which shall certify the results of the election and notify the Vice President-Administration/Secretary. The Vice President-Administration/Secretary shall promptly mail a copy of the certification to the successful candidates and to their respective Local Executive Councils.  The Vice President-Administration/Secretary shall publish the results of said election to all members of that Local Council.  This publication will be included in the election balloting notice described in Section 8B(1) of this Article.  The balloting records and all related material shall be preserved under the supervision of the Vice President-Administration/Secretary for a period of at least one (1) year.

(4)    In cases where ties develop in the election process, the candidate who received the greater number of votes in the nominating process shall be the successful candidate.

B.    (1) The Vice President-Administration/Secretary shall cause election balloting notices for the office of Chairman, Vice Chairman and, where applicable, Secretary-Treasurer to be mailed to all Active members of those multi-status Local Councils scheduled for elections as provided in Section 9 of this Article, said ballots to be mailed no later than the tenth (10th) day of that month which precedes by two (2) months the commencement date of that term of office, as specified in Section 2D(1) of this Article.

(2)    The names of the duly elected Captain Representative, First Officer Representative and, where applicable, Second Officer Representative, or of the duly elected Seniority Block Status Representatives, shall be on the election balloting notices in alphabetical order under the heading Chairman/Vice Chairman Election Balloting.  In those Councils that have three (3) or more Status Representatives the Officer Election Balloting notice shall be constructed so as to provide the membership the ability to vote for both Chairman and Vice Chairman, and the ability to vote for Secretary-Treasurer if required by Section 8B(5) below.

(3)    Each Active member in good standing of such Local Councils may vote for one (1) of the candidates on the ballot for Council Chairman, and in those Councils with a Second Officer Representative, or three (3) or more Status Representatives, each member in good standing shall have one (1) vote on each of three (3) or more, where applicable, options for Vice Chairman, and the ability to vote for Secretary-Treasurer if required by Section 8B(5) below.

(4)    Council Chairman, Vice Chairman and, where applicable, Secretary-Treasurer election balloting by Active members in good standing of such Local Councils shall be conducted in accordance with Association Voting Procedures on dates established by the Vice President-Administration/Secretary.

(5)    The candidate receiving the highest number of votes for Council Chairman shall be the Local Council Chairman.  The candidate receiving the next highest number of votes shall be the Local Council Vice Chairman, except in those Councils with a Second Officer Representative or subject to Section 1C or Section 1D of this Article or with three (3) or more Seniority Block Status Representatives, where the position of Vice Chairman will be filled by the candidate (who was not elected Chairman) who receives the highest number of votes for Vice Chairman.  The remaining candidate in a three (3) status Council shall be named the Local Council Secretary-Treasurer, except in a Local Council subject to Section 1C or Section 1D of this Article or with more than three (3) Seniority Block Status Representatives, where the position of Secretary-Treasurer will be filled by the candidate (who was not elected Chairman or Vice Chairman) who receives the highest number of votes for Secretary-Treasurer.

(6)    In cases where ties develop in the election process, the Officer election in question shall be reballoted according to Association Voting Procedures.

(7)    The results of balloting shall be reported to the Election and Ballot Certification Board, which shall certify the results of the elections and notify the Vice President-Administration/Secretary.  The Vice President-Administration/Secretary shall promptly mail a copy of the certification to the successful candidates and to their respective Local Executive Councils.  The Vice President-Administration/Secretary shall publish the results of said election to all members of that Local Council.  This publication may be included in Local Council Minutes or any other mailing sent to that Local Council.  The balloting records and all related material shall be preserved under the supervision of the Vice President-Administration/Secretary for a period of at least one (1) year.

C.    The election of Local Council Chairman, Vice Chairman and, where applicable, Secretary-Treasurer, shall be completed and all candidates notified no later than fifteen (15) days prior to the new term of office.  If the election has not been completed by the effective date of the term of office, Section 2D(2) of this Article will apply.

## SECTION 9 - ELECTION GROUPS

A.    Each Local Council shall be assigned to an Election Group.  On airlines having more than one (1) Local Council, said Councils shall be assigned among the Election Groups as evenly as possible. The Master Executive Council may request and the Vice President-Administration/Secretary, with the approval of the President, is empowered to change the Election Group to which a Local Council is assigned.  Such action shall be reported to the Executive Council at its next meeting and be subject to its review.  Any affected member may appeal such action to the Executive Council.

B.    <u>Election Group I:</u>

(1)    The following Local Councils will be included in Election Group IA, with a term of office of thirty-six (36) months, commencing March 1, 2003 through February 28, 2006.

| Name of Airline | Councils | Domicile |
|---|---|---|
| Air Canada Jazz (ACJ) | 215 | London, Canada |
| Air Wisconsin (ARW) | 50 | Appleton, WI |
| Alaska (ALA) | 63 | Los Angeles, CA |
| Allegheny (ALG) | 78 | LaGuardia, NY |
|  | 95 | Harrisburg, PA |
| Aloha (ALO) | 80 | Honolulu, HI |
| America West (AWA) | 62 | Phoenix, AZ |
| ATA Airlines (ATA) | 96 | Chicago, IL |
| Continental (CAL) | 170 | Newark, NJ |
| Delta (DAL) | 47 | Ft. Worth, TX |
| Federal Express (FDX) | 26 | Memphis, TN |
| Kelowna Flightcraft (KFC) | 206 | Vancouver, Canada |
| Mesa Air Group (MAG) | 84 | Phoenix, AZ |
| Mesaba (MSA) | 107 | Minneapolis, MN |
| Northwest (NWA) | 1 | Minneapolis, MN |
| Pinnacle (PCL) | 129 | Minneapolis, MN |
| Polar Air Cargo (PAC) | 23 | Chicago, IL |
| Ross (ROS) | 75 | Albuquerque, NM |
| Ryan International (RYN) | 46 | Denver, CO |
| United (UAL) | 11 | Washington, DC |
|  | 34 | San Francisco,CA |

(2)    The following Local Councils will be included in Election Group IB, with a transition term of office of twenty-four (24) months, commencing March 1, 2004 through February 28, 2006.

| Name of Airline | Councils | Domicile |
|---|---|---|
| Air Canada Jazz (ACJ) | 218 | Quebec, Canada |
|  | 223 | Toronto, Canada |
| Air Wisconsin (ARW) | 51 | Chicago, IL |
| American Eagle (EGL) | 83 | Dallas/Ft.Worth, TX |
|  | 121 | New York, NY |
| Calm Air (CMA) | 213 | Thompson |
| Continental (CAL) | 173 | Guam |
| Delta (DAL) | 16 | Los Angeles, CA |
|  | 48 | Atlanta/Instructors |
| ExpressJet Airlines (XJT) | 176 | Cleveland, OH |

| | | |
|---|---|---|
| Federal Express (FDX) | 99 | Subic Bay, PI |
| Gemini Air Cargo (GEM) | 117 | Dulles Airport, VA |
| Mesa Air Group (MAG) | 89 | Tampa, FL |
| Midwest Express (MEA) | 30 | Milwaukee, WI |
| Piedmont (PDT) | 35 | Charlotte, NC |
| Trans States (TSA) | 38 | Richmond, VA |
| US Airways (AAA) | 41 | Philadelphia, PA |
| | 135 | LaGuardia, NY |

(3)    Effective March 1, 2006, the term of office for Election Group I shall commence March 1 and at each thirty-six (36) month interval thereafter.

C.    Election Group II:

(1)    The following Local Councils will make up Election Group II, with a transition term of office of twenty-four (24) months, commencing March 1, 2003 through February 28, 2005.

| **Name of Airline** | **Councils** | **Domicile** |
|---|---|---|
| Air Canada Jazz (ACJ) | 220 | Montreal, Canada |
| | 228 | Halifax, Canada |
| Air Transat (TSC) | 200 | Montreal, Canada |
| Alaska (ALA) | 64 | Anchorage, AK |
| American Eagle (EGL) | 126 | Miami, FL |
| | 155 | Boston, MA |
| Astar Air Cargo (DHL) | 17 | Cincinnati, OH |
| ATA Airlines (ATA) | 98 | SFO/LAX |
| Atlantic Southeast (ASA) | 113 | Dallas, TX |
| Calm Air (CMA) | 205 | Winnipeg, Canada |
| Champion (CHA) | 25 | Minneapolis, MN |
| Comair (CMR) | 37 | Cincinnati, OH |
| Continental (CAL) | 172 | Cleveland, OH |
| Delta (DAL) | 66 | New York, NY |
| | 108 | Cincinnati, OH |
| ExpressJet Airlines (XJT) | 177 | Newark, NJ |
| DHL Airways (DHL) | 17 | Cincinnati, OH |
| Federal Express (FDX) | 22 | Memphis, TN |
| | 100 | Los Angeles, CA |
| Independence Air (ACO) | 141 | Dulles Airport, VA |
| Kitty Hawk Air Cargo (KHA) | 111 | Fort Wayne, IN |
| Mesa Air Group (MAG) | 86 | Little Rock, AR |
| | 88 | Washington, DC |
| | 115 | Pittsburgh, PA |
| Mesaba (MSA) | 104 | Memphis, TN |
| Northwest (NWA) | 74 | Memphis, TN |
| Pan American (PAL) | 36 | Portsmouth, NH |
| Piedmont (PDT) | 28 | Norfolk/Newport News, VA |
| Pinnacle (PCL) | 128 | Detroit, MI |
| PSA (PSA) | 61 | Dayton, OH |
| | 73 | Philadelphia, PA |
| Skyway (SYX) | 60 | Milwaukee, WI |
| Spirit (SPA) | 109 | Ft. Lauderdale, FL |
| United (UAL) | 12 | Chicago, IL |
| | 27 | Seattle, WA |

|  | 33 | Denver, CO |
|---|---|---|
| US Airways (AAA) | 32 | Boston, MA |
|  | 94 | Pittsburgh, PA |

(2)    Effective March 1, 2005, the term of office for Election Group II shall commence March 1 and at each thirty-six (36) month interval thereafter.

D.    <u>Election Group III</u>:

(1)    The following Local Councils will make up Election Group III, with a term of office of thirty-six (36) months, commencing March 1, 2004 and at each thirty-six (36) month interval thereafter.

| **Name of Airline** | **Councils** | **Domicile** |
|---|---|---|
| Air Canada Jazz (ACJ) | 226 | Calgary, Canada |
|  | 231 | Vancouver, Canada |
| Air Wisconsin (ARW) | 53 | Denver, CO |
| Alaska (ALA) | 67 | Seattle, WA |
| American Eagle (EGL) | 105 | San Juan, PR |
|  | 131 | Los Angeles, CA |
|  | 133 | Chicago, IL |
| ATA Airlines (ATA) | 97 | Indianapolis/JFK |
| Atlantic Southeast (ASA) | 112 | Atlanta, GA |
| Atlas Air Inc (AAI) | 72 | New York |
| Bearskin (BRS) | 219 | Thunder Bay |
| Continental (CAL) | 171 | Houston, TX |
|  | 178 | Houston TRI |
| Delta (DAL) | 44 | Atlanta, GA |
|  | 81 | Salt Lake City, UT |
| ExpressJet Airlines (XJT) | 175 | Houston |
|  | 179 | Houston TRI |
| Federal Express (FDX) | 7 | Memphis, TN |
|  | 79 | Anchorage, AK |
| Hawaiian (HAL) | 65 | Honolulu, HI |
| Island Air (AIS) | 146 | Honolulu, HI |
| Kelowna Flightcraft (KFC) | 212 | Hamilton |
| Mesa Air Group (MAG) | 85 | Denver, CO |
|  | 87 | Philadelphia, PA |
| Mesaba (MSA) | 106 | Detroit, MI |
| Northwest (NWA) | 20 | Detroit, MI |
|  | 55 | Anchorage, AK |
| Piedmont (PDT) | 29 | Charlottesville, VA |
| Pinnacle Airlines, Inc (PCL) | 130 | Memphis, TN |
| PSA (PSA) | 70 | Knoxville, TN |
| Spirit (SPA) | 18 | Detroit, MI |
| Sun Country (SCA) | 15 | Minneapolis, MN |
| Trans States (TSA) | 39 | St. Louis, MO |
| United (UAL) | 52 | New York, NY |
|  | 57 | Los Angeles, CA |
|  | 93 | Denver, CO |
| US Airways (AAA) | 90 | Charlotte, NC |
|  | 138 | Washington, DC |

**SECTION 10 - ESTABLISHMENT AND DISSOLUTION OF LOCAL COUNCILS**

A.    The number and location of Local Councils on an airline shall be determined by taking into account the geographical extent of the airline, the route system, domicile locations and stability, number of members involved, need for local representation, size of the resulting Master Executive Council and sound fiscal practices.  Multi-domicile Local Councils, including a single Local Council for a multi-domicile airline, may be established when deemed appropriate.  Not more than one (1) Local Council on any one (1) airline shall be located in any one (1) city, town, or village, except when the operation of a part or parts of the airline are of a character presenting a marked difference which justifies such action or the Local Councils on the airline are organized using the Seniority Block Status Representative system, in which event more than one (1) Local Council may, with the consent of the Executive Council, be so established.  The number and location of Local Councils on an airline shall be subject to review and change from time to time, taking into account the foregoing factors.

B.    Unless requested by the member and approved by the Master Executive Council, a member must belong to the Local Council for the domicile where the member holds a bid.  If no Local Council exists for a domicile, the Master Executive Council shall assign such members to a Local Council.

C.    The Executive Council shall have the authority to establish Local Councils for purposes of representation and assign Local Councils to Election Groups.  The number and location of Local Councils shall be recommended by the Master Executive Council and final determination shall be made by the Executive Council.

D.    Initial approval for a Local Council shall be for two (2) years.  During such probationary period, the Executive Council may dissolve the Local Council if its members diminish to less than ten (10), or if circumstances related to establishment of the probationary Local Council are no longer applicable.

E.    A Local Council shall be automatically dissolved when the domicile or domiciles for the Local Council cease to exist or when the Association ceases to be the bargaining representative for the pilots of the carrier.

F.    In addition to automatic dissolution, as provided for in Section 10E above, and dissolution as provided for in Section 10D above:

(1)    The Executive Council shall have the authority to recommend that a Local Council be dissolved, taking into account the factors set forth in Section 10A, and to dissolve a Local Council with concurrence of the Master Executive Council.

(2)    The Executive Council may, in its own discretion, dissolve a Local Council or Local Councils on an airline if Article IX, Section 17B or Section 17C, Article XIX or Article XXI has been implemented.

G.    For the purpose of initial representation when there is neither an MEC nor a Local Council, or Councils, as provided for in Articles III, IV and VII of the Constitution and By-Laws, the Executive Council shall promptly establish a probationary Local Council or Councils and appoint the requisite temporary Local Council officers.  Should the Executive Council not be scheduled to meet within thirty (30) days, the Vice President-Administration/Secretary shall effect the above.

(1)    The Executive Council or the Vice President-Administration/Secretary, as provided above, shall appoint a Captain Representative, a First Officer Representative or Vice Chairman and a Second Officer Representative or Secretary-Treasurer, or, where applicable, one or more Seniority Block Status Representatives or officers, or two (2) Status Representatives for each position if the Executive Council determines that the Local Council shall be subject to Section 1C or Section 1D of

this Article.  In a three (3) status Local Council, the appointed Status Representatives shall decide unanimously who will serve as Chairman, Vice Chairman and Secretary-Treasurer.  In a two (2) status Local Council, the two Status Representatives shall decide who will serve as Chairman and Vice Chairman.  In a one (1) status Local Council, the Status Representative shall serve as Chairman and appoint the other officers.  In the event that the appointed Status Representatives cannot decide the question unanimously, the Captain Representative or senior Seniority Block Status Representative shall be the Local Council Chairman, the First Officer Representative or next senior Seniority Block Status Representative shall be the Local Council Vice Chairman and either the Second Officer Representative or next senior Seniority Block Status Representative or the third pilot, whichever is applicable, shall be the Local Council Secretary-Treasurer, provided that, in a Local Council subject to Section 1C or Section 1D of this Article or with more than three Seniority Block Status Representatives, the respective Status Representatives who are senior in seniority and willing to serve shall be designated as the Council officers in the same manner.  Such appointees shall serve until successors are elected in accordance with the provisions of Sections 7 and 8 of this Article.    Election   procedures   shall   be   promptly   initiated   by   the   Vice   President-Administration/Secretary.

(2)    Such appointees shall have the same jurisdiction and duties as provided in Section 4 of this Article.

(3)    Temporary Local Council Officers shall have the same privileges with respect to nomination and election as all other eligible members.

(4)    The Vice President-Administration/Secretary of the Association shall cause the Temporary MEC to be convened for the purpose of electing a Temporary Chairman, Temporary Vice Chairman, and Temporary Secretary-Treasurer of the MEC to serve until the election of permanent Local Council representatives has been accomplished in accordance with the provisions of Sections 7 and 8 of this Article at which time the Temporary Master Chairman shall, within fifteen (15) days, convene the permanent Master Executive Council for the purpose of electing MEC officers in accordance with Article IV, Sections 9 and 10, of the Constitution and By-Laws.

## ARTICLE IV - MASTER EXECUTIVE COUNCIL

### SECTION 1 - ORGANIZATION

A.    On an airline having one (1) Local Council, except a Local Council subject to Article III, Section 1C, the Local Executive Council shall be the Master Executive Council except when the membership of a Local Council, at a duly called meeting and with the subject having been on the published agenda for the meeting, approves, the Local Executive Council of a single-council airline may elect, by unanimous vote, with the consent of the Executive Council, any Active member in good standing on their airline to serve as MEC Chairman.

B.    On an airline having two (2) or more Local Councils or an airline having one (1) Local Council subject to Article III, Section 1C, all of the Captain Representatives, First Officer Representatives and, where applicable, Second Officer Representatives, or all of the Seniority Block Status Representatives, shall be members of the Master Executive Council.

C.    Only the Chairman of a single status Local Council shall be a member of the Master Executive Council.

### SECTION 2 - JURISDICTION AND DUTIES OF MASTER EXECUTIVE COUNCIL

A.    The Master Executive Council shall function as a coordinating Council for the membership on that airline. Its activities shall be proportionate to and in accordance with the demands made upon it by the Local Councils. All normal or routine local Association business shall, however, be conducted by the individual Local Councils.

B.    The approval by a majority vote of the Master Executive Council on an airline, with the advice of the President, is mandatory before a strike vote of the members of an airline may be taken. This membership strike vote shall be by secret ballot. If taken by mail, strike ballots executed by Active members in good standing of the airline shall be returned in accordance with Association Voting Procedures on or before a deadline date established by the Vice President-Administration/Secretary. The strike ballots shall be validated and tallied under the supervision of the Election and Ballot Certification Board who certify the results of the ballot and notify the Vice President-Administration/Secretary. The Vice President-Administration/Secretary shall promptly mail a copy of the certification to the members of that airline's Master Executive Council. A simple majority of the valid ballots returned shall govern.

C.    The Master Executive Council of an airline is empowered to make the final decision on any problem or problems of the members of that airline, except as provided elsewhere in the Constitution and By-Laws. The decisions of the Master Executive Council shall be considered as the decisions of the members of the airline and shall be acted upon accordingly. However, nothing in this Section shall authorize any Master Executive Council to initiate any action that is inconsistent with this Constitution and By-Laws or with the best interests of the Association or the general membership.

D.    The Master Executive Council shall establish committees and appoint committee chairmen as may be necessary for conducting Master Executive Council business consistent with Association and MEC policy.

E.    Each Master Executive Council shall develop an annual allocation of their Master Executive Council Controllable Budget not later than the close of the first regular Master Executive Council meeting following the Executive Council approval of an Association budget. The Vice President-Finance/Treasurer of the Association shall provide monthly comparative data, relative to that MEC's constructed budget, to any MEC requesting such information.

## SECTION  3 - MASTER EXECUTIVE COUNCIL MEETINGS

A.    REGULAR MASTER EXECUTIVE COUNCIL MEETINGS

Master Executive Council shall hold at least two (2) meetings a year. It is suggested that these meetings be held not more than forty-five (45) days prior to May 1 and November 1 of each year.

B.    NOTICE OF MEETINGS

Written notice of all regular Master Executive Council meetings shall be in receipt of each Master Executive Council member not less than fifteen (15) days prior to the date established by the Master Executive Council Chairman.  Such notice shall list the time, place and proposed agenda for the meeting.

C.    AGENDA

(1)    Agenda items submitted by MEC members shall be in writing and shall become part of the published notice of meeting if in receipt of the Master Chairman prior to issuance of such notice. Deadline dates for submission of agenda items and provisions for inclusion of late agenda items on an agenda shall be determined by MEC policy.

(2)    The Chairman will endeavor to comply with subparagraph (1) above, but may submit any agenda items at any time prior to the close of the meeting.

D.    SPECIAL MEETINGS

(1)    A special meeting of the Master Executive Council may be called at any time by the Chairman or by the President.

(2)    A special meeting shall be called by the Chairman or the President upon the written request of thirty percent (30%) of the members of the Master Executive Council.  Such written request to the Chairman or President for a special meeting shall list the time, place, and items to be discussed at the meeting.

(3)    The President and all members of the Master Executive Council shall be in receipt of written notice at least twenty-four (24) hours in advance of such special meeting, and the notice shall set forth the agenda for the meeting.

(4)    No business other than that specified in the written notice shall be conducted at any special meeting of the Master Executive Council, except that when all members, or their legal proxies, are present, any business may be conducted, with at least a three-fourths (3/4) majority approval.

(5)    All meetings of the Master Executive Council shall be open meetings unless declared closed by the Master Executive Council.

## SECTION  4 - ATTENDANCE AND QUORUM

A.    At any duly called meeting of the Master Executive Council, each Local Council shall be represented by its Captain Representative and First Officer Representative and, where applicable, its Second Officer Representative, or by its Seniority Block Status Representative(s).  Each single status Local Council shall be represented by its Chairman.

B.    At any meeting of the Master Executive Council, a majority of its members shall constitute a quorum for the transaction of business.  When a quorum is not present, a lesser number of its members shall adjourn.

## SECTION  5 - VOTING

A.    On a multi-council airline or an airline having one (1) Local Council subject to Article III, Section 1C, a majority vote shall be required for election of officers, with each member of the Master Executive Council having one (1) vote.

B.    (1)    All issues submitted to the Master Executive Council at any meeting shall be decided by a majority vote, with each member having one (1) vote.  On issues other than election of officers, a request may be made by any member for a roll call vote.  Each member shall have one (1) vote for each Active member in good standing represented by him, provided that on an airline having one (1) Local Council subject to Article III, Section 1C or Section 1D, each member shall have one-half of the votes for the Active members in his status and the member who received the largest number of votes in election as Status Representative shall have one (1) additional vote in the event of an odd number of Active members in his status.   For the purpose of roll call voting, the Vice President-Administration/Secretary, upon request by the MEC Chairman, shall provide a current report of the number of Active members in good standing represented by each MEC member.

(2)    When voting by roll call, a secret ballot shall not be conducted.

(3)    On a single Council airline which is not subject to Article III, Section 1C, the Secretary-Treasurer, if not a Local Council Representative, may vote on voice votes and "Show of Hands" votes.  On roll call votes, he may cast one (1) vote, with the member present representing the same category having his roll call vote reduced by one (1).

C.    A Master Chairman, or acting Chairman, who is not also a Local Council Representative, shall vote only in the event of a tie, except that he shall not vote to break a tie for election of Master Executive Council Officers.

D.    An MEC Vice Chairman, Secretary-Treasurer or, where applicable, Secretary or Treasurer, who is not also a Local Council Representative shall have no vote.

## SECTION  6 - REPRESENTATION AT MEC MEETINGS

If for any reason a Local Council Captain Representative, First Officer Representative, or Second Officer Representative, where applicable, or a Seniority Block Status Representative, or an Instructor Status Representative, is unable to attend a Master Executive Council meeting, he may designate in writing his duly elected successor in office to attend and act as his proxy, who will then have all of the rights and privileges of the original representative.  He may designate, in writing, the Vice Chairman or the Secretary-Treasurer of his Council or another member of the MEC who has been elected by a secret ballot of his membership.  Such proxy will then have all the rights and privileges of the original representative.  He may designate, in writing, a member from his own Council and status to attend, who will then have all the rights and privileges of the original representative, except that such proxy may not participate in the election and/or recall of MEC officers, or in levying an MEC assessment.

## SECTION 7 - PROXIES

If a Master Executive Council remains in session beyond the last day specified in the notice for such meeting, or prior to such time a member can show cause to the Master Executive Council Chairman that he is unable to remain in attendance, a member may designate, in writing, any other member of the Master Executive Council to act as his proxy, who will then have all the rights and privileges of the original representative. A proxy may not be transferred when a proxyholder finds it necessary to depart a meeting.

## SECTION 8 - MEETING RECORDS AND MINUTES

Minutes and a record of attendance shall be kept of all meetings, both regular and special, and such minutes and records shall be a part of the Master Executive Council's records and files. A copy of such minutes and records shall be sent to the Home Office within thirty (30) days, and distribution made as the Master Executive Council Chairman directs.

## SECTION 9 - OFFICERS

A.    Each Master Executive Council shall have the following elected officers: a Chairman, a Vice Chairman and a Secretary-Treasurer or a Secretary and a Treasurer if such option is chosen under subparagraph A(1) below.

(1)    On an airline having two (2) or more Local Councils or an airline having one (1) Local Council subject to Article III, Section 1C, the Master Executive Council may elect, by majority vote at a meeting held at least thirty (30) days prior to an election for the office of Secretary-Treasurer, to establish separate elected offices of Secretary and Treasurer. A Master Executive Council which elects to establish such separate offices of Secretary and Treasurer shall not recombine such offices into a single office of Secretary-Treasurer except at a meeting held at least thirty (30) days prior to an election for the offices of Secretary and Treasurer. Any action taken by a Master Executive Council to separate or recombine such offices shall be reported in writing by the Master Chairman to the Vice President Administration/Secretary within ten (10) days.

B.    There shall be no salary in connection with any office of a Master Executive Council.

## SECTION 10 - ELECTION OF OFFICERS

A.    ELIGIBILITY

(1)    The eligibility requirements for any Master Executive Council officer of a single-council airline, except that as defined in Section 1A of this Article, shall be as prescribed in Article III.

(2)    The Chairman, Vice Chairman and Secretary-Treasurer or, where applicable, the Secretary and Treasurer, of the Master Executive Council must be Active members of the airline in good standing at the time of nomination and election.

(3)    Notwithstanding the provisions of A(2) above, the Master Executive Council may require that the Vice Chairman of the Master Executive Council must be an Active member of the airline in good standing at the time of the nomination and election, of a different status than the Master Chairman at the time of nomination. A change of pilot status subsequent to nomination shall not preclude election to, assumption of, or retention of office.

B.    TERM OF OFFICE

(1)    Unless elected as a Master Chairman or Master Chairman at Large on a single-council airline, except a single-Council airline organized under Article III, Section 1C, the term of office of the Master Chairman shall be for twenty-four (24) months from the effective date of election or reelection, or until his successor has been elected in accordance with the Constitution and By-Laws. In the conduct of its officer elections, a Master Executive Council may elect a successor within the ninety (90) day period immediately prior to the expiration of the term of office of the incumbent, said successor to then take office at the expiration of the twenty-four (24) month term.  The term of office of a Master Chairman or Master Chairman at Large on a single-council airline, except a single-Council airline organized under Article III, Section 1C, will parallel that of the LEC of the Council.

(2)    The term of office of the Vice Chairman shall be for twenty-four (24) months, concurrent with the term of office of the Master Chairman.

(3)    The term of office of Secretary-Treasurer or, where applicable, the Secretary and Treasurer, shall be for twenty-four (24) months, concurrent with the term of office of the Master Chairman.

(4)    The Secretary-Treasurer or, where applicable, the Secretary, shall notify the Vice President-Administration/Secretary of the names of newly elected officers and the date upon which their term of office commenced.

## SECTION 11 - VACANCY IN OFFICE

A.    The Vice Chairman shall become Acting Master Chairman of the Master Executive Council when the office of Chairman is vacant.

B.    When the office of Master Chairman becomes vacant for any reason, the Acting Master Chairman shall call a meeting of the Master Executive Council within sixty (60) days for the purpose of electing a new Master Chairman.

C.    When the office of Vice Chairman is vacant for any reason, the Secretary-Treasurer or, where applicable, the Secretary, shall become acting Vice Chairman.  The vacant office of Vice Chairman shall be filled by election at the next meeting.

D.    When the office of Secretary-Treasurer or, where applicable, the office(s) of Secretary and Treasurer, are vacant for any reason, the Vice Chairman shall fill the office(s) on an acting basis. The vacant office(s) will be filled by election at the next meeting.  When the office of Secretary or Treasurer is vacant for any reason, the other officer shall become Acting Secretary or Acting Treasurer and the office will be filled by election at the next meeting.

E.    If the offices of Master Chairman and Vice Chairman become vacant simultaneously for any reason, the Secretary-Treasurer or, if applicable, the Secretary shall become Acting Master Chairman, and shall call a special meeting within ten (10) days for the election of such officers.  If, where applicable, the office of Secretary is also vacant, the Treasurer shall become Acting Master Chairman and shall call a special meeting within ten (10) days for the election of such officers.

F.    In the event simultaneous vacancies in all Master Executive Council offices occur, a temporary Chairman shall be appointed by the Vice President-Administration/Secretary, with the approval of the President.  The President of the Association shall thereupon call a Master Executive Council meeting for the purpose of electing officers.

G.    Any vacancy in office of the Master Executive Council of a single-council airline, except an airline having one (1) Local Council subject to Article III, Section 1C, shall be filled in accordance with Article III.

H.    When the office of Master Chairman on a single-council airline, having been created under the provisions of Section 1A of this Article, is vacant for any reason, the Local Council Chairman will assume the office of Master Chairman for the balance of the term of office, or until a new Master Chairman is elected under the provisions of Section 1A of this Article.

## SECTION 12 - JURISDICTION AND DUTIES OF MASTER EXECUTIVE COUNCIL OFFICERS

A.    The Master Chairman shall be:

(1)    The chief executive officer of his Master Executive Council.

(2)    Charged with, and responsible for, administering the policies of his Master Executive Council.

(3)    Responsible for expeditious processing of members' complaints and grievances.

(4)    The Association representative on his airline for the purpose of furthering and implementing the objectives and policies of the Board of Directors and Executive Board.

(5)    Charged with, and responsible for, coordinating and compiling Local Council policy, review reports and recommendations and submitting such material to the appropriate committees of the Association.

(6)    An ex officio member of the Negotiating Committee.

(7)    An ex officio member of the Board of Directors, if not also a Local Council Representative.

B.    The Master Chairman at Large on a single council airline, except an airline having one (1) Local Council subject to Article III, Section 1C, shall be limited to the jurisdiction and duties of Master Chairman as specified in paragraph A of this Section, and shall not encroach upon those of the Local Council Chairman as defined in Article III, Section 4B(1).

C.    The Vice Chairman of the Master Executive Council shall:

(1)    Assist the Master Chairman by performing such duties that may be specifically assigned to him by the Master Chairman.

(2)    Perform the duties of the Master Chairman in his absence.

D.    The Secretary-Treasurer of the Master Executive Council shall:

(1)    Assist the Chairman in administering Master Executive Council funds.

(2)    Maintain Master Executive Council records.

(3)    Perform such other duties that may be specifically assigned by the Master Chairman.

E.    When the Master Executive Council has separate offices of Secretary and Treasurer, the Secretary shall perform the duties set forth in Section 12D(2) and D(3) above and the Treasurer shall perform the duties set forth in Section 12D(1) and D(3) above.

## SECTION 13 - RECALL

A.    (1)    Any officer of the Master Executive Council, including a Master Chairman at Large on a single council airline, may be recalled from office at any time with or without cause, by a two-thirds vote of the Master Executive Council conducted by secret ballot with each member casting one vote, provided that in the case of a single council airline, except an airline having one (1) Local Council subject to Article III, Section 1C, a Master Executive Council officer may only be removed as prescribed in Article III, Section 2F.

(2)    Where, in a recall vote under subparagraph (1), at least fifty percent but less than two-thirds of the Master Executive Council has voted in favor of recall, a motion may be offered from the floor requesting a second vote on the recall motion using the roll call voting procedure.  This motion to conduct a roll call vote on the recall motion must be allowed, if requested, as the next order of business following the first recall vote, and shall require a simple majority of the MEC.

(3)    A simple majority of roll call votes in favor of recall shall be sufficient to effect the recall of an MEC officer.

B.    An affirmative vote for removal of an officer of the Master Executive Council shall not remove the officer from membership on the Master Executive Council if he is still qualified for membership thereon as a Local Council Representative or Officer.

C.    A member of the Master Executive Council shall be removed from membership thereon as a result pursuant to Article III, Section 2F.

D.    When a Master Chairman is removed from office, the Master Executive Council may elect a new Master Chairman at that meeting or apply Section 11 of this Article.

## SECTION 14 - BOND

The Master Executive Council Chairman or any Master Executive Council officer or member who may be entrusted with Master Executive Council funds shall be bonded in the amounts specified in the Labor Management Reporting and Disclosure Act of 1959, as amended, or as it may be amended in the future.  The Master Chairman, in any event, shall be accountable for such funds.

## SECTION 15 - ESTABLISHMENT OF A NEW MASTER EXECUTIVE COUNCIL

For the purpose of initial representation, Local Council Officers established in accordance with Article III, Section 10C and D,  shall form the temporary Master Executive Council.  The Vice President-Administration/Secretary shall cause the temporary Master Executive Council to be convened for the purpose of electing its Chairman, Vice Chairman and Secretary-Treasurer to serve until the election of Local Council Representatives has been accomplished in accordance with Article III, Sections 7 and 8, at which time the temporary Master Chairman shall, within fifteen (15) days, convene the Master Executive Council for the purpose of electing the Master Executive Council Chairman, Vice Chairman and Secretary-Treasurer in accordance with Sections 9 and 10 of this Article.

## SECTION 16 - SINGLE COUNCIL AIRLINE

A.    In the case of an airline with only one (1) Council, except an airline having one (1) Local Council subject to Article III, Section 1C, the Local Council Chairman shall also be Master Chairman, unless a Master Chairman is elected under the provisions of Section 1A of this Article, provided that if it expands to a multi-council airline, the Local Council Chairman of the initial

Council shall continue in office as Master Chairman.  When officers have been elected in the new Council or Councils, he shall promptly call a meeting of the Master Executive Council for the purpose of electing officers under the provisions of Section 10 of this Article.

B.     In case a multi-council airline shrinks to a single-council airline, the officers of the remaining Local Council shall remain in office and assume the offices of the Master Executive Council pursuant to Section 1A and 10A(1) of this Article.  If more than twelve months remains in the terms of the officers of the remaining Local Council, the Vice President-Administration/Secretary shall immediately initiate the process for nomination and election of Local Council Representatives and Officers under the provisions of Article III, Sections 7 and 8, for the remainder of the term of office, with the meeting for nominations under Section 7D to be held within thirty (30) days.  Upon the completion of such Representative and Officer elections, the terms of the prior representatives and officers shall terminate.  If less than twelve months remains in the terms of the officers of the remaining Local Council, then such officers will remain in office through the end of their terms.

C.     In case an airline having one (1) Local Council subject to Article III, Section 1C expands to a multi-council airline, the MEC officers shall continue in office.  When officers have been elected in the new Council or Councils, and the original Local Council is subject to Article III, Section 1B pursuant to Article III, Section 2E(5)(g), the MEC Chairman shall promptly call a meeting of the Master Executive Council for the purpose of electing officers under the provisions of Section 10 of this Article.

## ARTICLE V - EXECUTIVE BOARD

### SECTION 1 - ORGANIZATION

A.    The Executive Board shall be composed of the Chairman of the Master Executive Council of each airline.

B.    The members of the Executive Council shall be ex officio members of the Executive Board.

### SECTION 2 - JURISDICTION AND DUTIES

A.    The Executive Board in session shall have the power and authority to control the Association, its general management and business affairs, subject to the provisions of the Constitution and By-Laws. It may establish or change policy to be followed by the Association and its members. It may change policies previously announced by the Board of Directors. It may interpret the Constitution and By-Laws but shall not have the power to change the Constitution and By-Laws, the dues structure of the Association, or to levy assessments. It shall receive interim reports from Association Officers and committees authorized by the Board of Directors and Executive Board, and may implement such recommendations as do not require Constitution and By-Laws changes. It shall provide guidance to the National Officers and the Executive Council in the furtherance of Executive Board and Board of Directors' objectives contained both in policy and in the Constitution and By-Laws. It shall carry out the duties specifically mentioned elsewhere in the Constitution and By-Laws. It may call the Board of Directors into special session. It may ballot the Board of Directors on any matter provided that a ballot for proposed changes to the Constitution and By-Laws shall be conducted in accordance with Section 2C below. It may appoint such Committees as may be necessary for the proper conduct of Association business.

B.    When required, it shall nominate and elect members to fill vacancies in the offices of the First Vice President, Vice President-Administration/Secretary, or Vice President-Finance/Treasurer, in accordance with the provisions of Article XI, XII, or XIII, whichever is applicable.

C.    The Executive Board in session may by a two-thirds (2/3) majority vote adopt proposed changes to the Constitution and By-Laws, subject to approval by a two-thirds (2/3) majority on a roll call basis of valid ballots returned by the Board of Directors by a ballot conducted under Association Voting Procedures.

### SECTION 3 - MEETINGS

A.    REGULAR MEETINGS

Regular meetings of the Executive Board shall be held twice annually during the periods April/May and September/October but not less than 30 days prior to a Regular Board of Directors meeting. All meetings of the Executive Board shall convene at an appropriate facility within the Washington, D.C., area. The date, site and location of the meetings shall be determined by the Executive Council at least six (6) months in advance.

B.    NOTICE OF MEETINGS

Written notice of all regular Executive Board meetings shall be sent to each Executive Board member at least forty-five (45) days before the date thereof by the President of the Association. Such notice shall list the time and place of the meeting, and shall be accompanied with the advance agenda.

C.    AGENDA

As a minimum, the agenda for each regular meeting of the Executive Board shall consist of a report from the President, the First Vice President, the Vice President-Administration/Secretary and Vice President-Finance/Treasurer, the Executive Council, and the Committees of the Board of Directors, the Executive Board, and the Executive Council.

(1)    Agenda Items may be submitted by the President of the Association, members of the Executive Council, the Executive Council, or members of the Executive Board.  Any item to become a part of the agenda for a regular Executive Board meeting must be submitted in writing and shall become part of the published notice of meeting if in receipt of the Vice President-Administration/Secretary ten (10) days prior to issuance of such notice.

(2)    Any Agenda Item received after the deadline date shall be treated as a Late Agenda Item. Late Agenda Items may be submitted during the first day by any member of the Executive Board or the Executive Council with approval by a majority vote of the Executive Council, each member having one (1) vote.  The President may submit Agenda Items at any time.

(3)    The Executive Council may submit an agenda item at any time up until the commencement of the meeting of the Executive Board.  Submissions by the Executive Council thereafter shall be treated as a late agenda item and require approval by majority vote of the Executive Board.

D.    SPECIAL MEETINGS

Special meetings of the Executive Board may be called at any time by the President or by a majority vote of the Executive Council.  Any three (3) members of the Executive Board may petition the President to ballot the Executive Board by mail for the purpose of calling a special meeting.  A special meeting will be called if thirty percent (30%) of the Executive Board members or Executive Board members representing thirty percent (30%) of the Active membership agree.  In addition, thirty percent (30%) of the Executive Board members or Executive Board members representing thirty percent (30%) of the Active membership may call a special meeting directly by written request to the President.  Any request for a special meeting shall include the time and agenda for such meeting.  Written notice of such meeting shall be sent to each member of the Executive Board not less than five (5) days prior to such meeting, and shall include the time, place, and agenda of such meeting, except that in unusual circumstances a meeting may be called by telegram with twenty-four (24) hours notice.  At any meeting called among other things for the election of a First Vice President, Vice President-Administration/Secretary or Vice President-Finance/Treasurer to fill an interim vacancy for the unexpired portion of a term of office, additional items may be placed on the agenda by a majority vote of the Executive Board.

E.    All meetings of the Executive Board are open to all Active members of the Association and invited guests; provided, however, that the Executive Board may declare any session to be a closed session and exclude any or all persons who are not duly accredited members of the Executive Board.

F.    Order of Business.  The order of business for each meeting shall be:

(1)    Call to Order by Chairman
(2)    Roll Call of Delegates
(3)    Announcements of Unrepresented Airlines
(4)    Reports of Officers
(5)    Ratification of Delegate Committee Assignments

(6)    Late Agenda Item Submissions
(7)    Nomination and Election of Officers, when required
(8)    Action on Agenda Items
(9)    Adjournment

G.    The Executive Board may change the Order of Business by a majority vote.

## SECTION 4 - ATTENDANCE AND QUORUM

A.    At any meeting of the Executive Board, each airline shall be represented by its Master Chairman, or his duly appointed proxy.

B.    A majority of the Executive Board members representing more than fifty percent (50%) of the Active members of the Association in good standing shall constitute a quorum for convening and transacting business at a meeting of the Executive Board.

## SECTION 5 - VOTING

A.    Decisions on all questions, including election of officers, brought before the Executive Board shall be determined by a majority vote unless otherwise specified in the Constitution and By-Laws. All voting shall be viva voce, except that a standing vote or roll call vote shall be taken at the request of any member of the Executive Board.

B.    When voting by roll call, each member of the Executive Board shall have one (1) vote for each member in good standing that he represents.  The Vice President-Administration/Secretary shall furnish a roll call as a part of his report to each Executive Board meeting.

## SECTION 6 - REPRESENTATION AT EXECUTIVE BOARD MEETINGS

If a member of the Executive Board is unable to attend a meeting of that body, he shall designate, in writing, the MEC Vice Chairman to attend in his stead, who will have all the rights and privileges of the original representative.  In the event the MEC Vice Chairman is unable to attend, the Master Chairman will designate in writing the MEC Secretary-Treasurer or any member of his MEC to attend in his stead, who will then have all the rights and privileges of the original representative.  If no member of his MEC is able to attend, he shall designate an Active member in good standing of his airline to attend in his stead, who will then have all the rights and privileges of the original representative.  If no member of his airline is able to attend, he shall designate any other member of the Executive Board as a proxy, who will then have all the rights and privileges of the original representative.  A member of the Executive Board who has designated a representative to attend a meeting of the Executive Board in his stead shall revoke his designation if he subsequently attends.

## SECTION 7 - PROXIES

A.    If for any reason a member of the Executive Board is unable to remain at a meeting of the Executive Board, he may designate in writing his MEC Vice Chairman, MEC Secretary-Treasurer, any member of his MEC, or any member of the Executive Board as a proxy with all the rights and privileges of the original representative.  A proxy may not be transferred when a proxyholder finds it necessary to depart a meeting.

B.    A member of the Executive Board may revoke his proxy once at any Executive Board meeting. Any subsequent designation of a proxy shall be final and binding.

## SECTION 8 - CREDENTIALS COMMITTEE

A.    The Credentials Committee shall consist of not less than three (3) members of the Executive Board appointed by the Vice President-Administration/Secretary, with the approval of the President. Such action shall be reported to the Executive Council at its next meeting and be subject to its review. Any affected member may appeal such action to the Executive Council.

B.    The Credentials Committee shall certify the credentials of members of the Executive Board, their designated representatives and proxies.

## SECTION 9 - MEETING RECORDS AND REPORTS

A transcript of all meetings, both regular and special, shall be kept on file at the Home Office by the Vice President-Administration/Secretary. A compilation of actions shall be distributed to each member of the Executive Board and the Board of Directors as soon as possible after each Executive Board meeting, but in no case later than twenty-one (21) days after adjournment.

# ARTICLE VI - EXECUTIVE COUNCIL

## SECTION 1 - ORGANIZATION

The Executive Council shall be composed of and the members shall be the President, the First Vice President, the Vice President-Administration/Secretary, the Vice President-Finance/Treasurer and the Executive Vice Presidents.

## SECTION 2 - JURISDICTION AND DUTIES

A.     The Executive Council shall attend all meetings of the Board of Directors and the Executive Board.  It shall act in consultation and cooperation with the President in furthering the objectives and policies announced by the Board of Directors or the Executive Board.  It  may interpret the Constitution and By-Laws and Policy.  The Executive Council shall act in the capacity of owners' representatives and general trusteeship of the Association's business and funds, and shall effect loans or guarantee notes as necessary for the implementation of approved programs.  In addition, the Executive Council shall perform any duties mentioned elsewhere in the Constitution and By-Laws.

B.     Action taken by the Executive Council under paragraph A above shall be subject to review by the Executive Board in session upon the application of three (3) members of the Executive Council, unless the applicants agree that a ballot of the Executive Board is sufficient.  Such actions of the Executive Council are effective until such time as the appeal is determined.

C.     Subject to approval by the Executive Board in session, the Executive Council may adopt policy or initiate changes to the Constitution and By-Laws for approval by the Board of Directors.

## SECTION 3 - MEETINGS

A.     REGULAR MEETINGS

Regular meetings of the Executive Council shall be held every three (3) months.

B.     SPECIAL MEETINGS

Special meetings may be called at any time by the President.  If any other member of the Executive Council desires to call a special meeting thereof, he may so request of the President, indicating the item or items he wishes to place on the agenda.  The President shall within seven (7) days ballot the Executive Council on whether or not a special meeting shall be called.  A special meeting shall then be called if thirty percent (30%) or more of the Executive Council members so vote.

## SECTION 4 - ATTENDANCE AND QUORUM

A.     A quorum consisting of no fewer than two National Officers and four Executive Vice Presidents and in no case less than seven total shall be required for the consideration of and action upon the following matters:

(1)     interpretation of the Constitution and By-Laws
(2)     adoption of policy
(3)     initiation of Constitution and By-Laws changes
(4)     adoption of Association-wide immediate or long term planning
(5)     institution of Association-wide action
(6)     national budget approval or modification
(7)     OCF or MCF expenditures

B.    A quorum consisting of no fewer than two National Officers and three Executive Vice Presidents shall be required for the consideration or action on all business brought before the Executive Council on matters other than those enumerated in Section 4A above.

C.    Each member of the Executive Council, including National Officers, on matters coming before it shall have one vote.

## SECTION  5 - REPRESENTATION AT EXECUTIVE COUNCIL MEETINGS

Should an Executive Vice President be unable to attend a meeting of the Executive Council, he shall select a personal representative from an airline within his Executive Vice Presidential Election Group to attend the meeting in his stead.    Should the First Vice President, Vice President-Administration/Secretary or Vice President-Finance/Treasurer be unable to attend an Executive Council meeting, such officer may designate a personal representative from among the Active membership to attend the meeting in his stead.

## SECTION  6 - PROXIES

A member in attendance at an Executive Council meeting, should a member find it necessary to depart such meeting prior to its adjournment, may designate another member in attendance, by written proxy, to represent him in his absence.    A proxy may not be transferred when a proxyholder finds it necessary to depart a meeting.

## SECTION  7 - MEETING RECORDS AND MINUTES

A.    The Executive Council shall report to and through the Executive Board.

B.    A report from the Vice President-Administration/Secretary on the discussions, recommendations and actions of the Executive Council shall be distributed to all members of the Board of Directors, Executive Board, and to all Master Executive Council Vice Chairmen within twenty-one (21) days after adjournment of each meeting of the Executive Council, or within twenty-one (21) days after recessing, if such meeting is not resumed within seven (7) days.    Such report shall include, as a minimum, the minutes; the names of Executive Council members present; every resolution acted upon, whether approved, disapproved, or tabled; the disposition of each question; and the manner in which each member voted.

C.    Whenever two (2) or more of the members of the Executive Council (including personal representatives) do not agree with the opinion of the majority on any matter at any meeting of the Council, they shall have the right of submitting a minority report to all members of the Board of Directors, Executive Board, and to all Master Executive Council Vice Chairmen.

## ARTICLE VII - BOARD OF DIRECTORS

### SECTION 1 - ORGANIZATION

The Board of Directors shall consist of the Captain, First Officer, and, where applicable, the Second Officer Representative(s) or all of the Seniority Block Status Representatives or the Instructor Status Representative of each Local Council. The President, First Vice President, Vice President-Administration/Secretary, Vice President-Finance/Treasurer, Executive Vice Presidents, and Master Chairmen, if not also a Local Council Status Representative, shall be ex officio members of the Board of Directors.

### SECTION 2 - JURISDICTION AND DUTIES

The Board of Directors is the highest governing body of the Association. It shall be vested with the control of the Association, its general management and business affairs. Its decision, whether rendered by ballot or in session, shall be the final governing decision of the Association and shall be binding on the Executive Board, the Executive Council, the Officers, and all members of the Association, subject to action of the Executive Board pursuant to Article V, Section 2, of this Constitution and By-Laws. The Vice President-Administration/Secretary of the Association shall ballot the Board of Directors on any issue when petitioned by fifteen percent (15%) of the Board of Directors. In the event of any dispute arising out of the meaning or intent of these Constitution and By-Laws, the Board of Directors shall have the power to interpret the Constitution and By-Laws and such interpretation shall govern the Association in the conduct of its business and affairs.

### SECTION 3 - REGULAR MEETINGS

A. A regular meeting of the Board of Directors shall be held once every two (2) years. The Executive Council shall set the meeting date, which shall be no earlier than October 1st and no later than November 10th and shall convene on a Monday. Every reasonable effort will be made to schedule and conduct the Board of Directors meeting so as not to exceed four (4) days. If the Executive Council deems it necessary to hold the Board meeting at some other time of that year, it may ballot the Board of Directors by mail, specifying the date on which it desires the meeting to be held. A majority vote of the Board of Directors shall be necessary to change the date of such regular meeting.

B. Regular meetings of the Board of Directors shall be held at a site and location designated by the Executive Council.

C. NOTICE OF MEETINGS

Notice of Regular Board of Directors meetings shall be sent by Certified Mail, Return Receipt Requested, and shall be in receipt of each member of the Board of Directors not less than sixty (60) days prior to the beginning date of said Regular meeting.

D. Subject to the provisions of Section 10 of this Article, the order of business at Regular Board of Directors Meetings normally shall be:

(1) Call to Order by Chairman
(2) Roll Call of Delegates
(3) Announcement of Unrepresented Local Councils
(4) Reports of Officers
(5) Ratification of Delegate Committee Assignments

(6)    Late Agenda Item Submissions
(7)    Nomination and Election of Officers
(8)    Action on Agenda Items
(9)    Adjournment

E.    The Board of Directors may change the order of business by majority vote.

## SECTION  4 - AGENDA SUBMISSION PROCEDURES

A.    At all Regular meetings of the Board of Directors, the following procedure shall apply with respect to submission of Agenda Items:

(1)    All Agenda Items must be in writing.

(2)    Agenda Items may be submitted by a Local Council, a Master Executive Council, the Executive Board, the Executive Council, or the President of the Association.

(3)    All Agenda Items submitted by a Local Council or a Master Executive Council shall be submitted to the Vice President-Administration/Secretary and be received by or bear a postmark date not later than fifty (50) days prior to the first day of the Board of Directors meeting.

(4)    Not later than thirty (30) days prior to the Board of Directors meeting, the Vice President-Administration/Secretary shall transmit to the members of the Board of Directors the items which have been placed on the agenda, and shall furnish members of the Board of Directors their individual Committee assignments, and each Committee's known Agenda Items.

(5)    Agenda Items shall be published as submitted.  No additions, deletions or editing may be made without the permission of the sponsor.

(6)    Late Agenda Items may be submitted by a delegate prior to the close of business on the first day of the Board of Directors meeting with approval of his Master Executive Council.  Late Agenda Items may also be submitted by a Master Executive Council.  Acceptance of late Agenda Items shall be approved by a two thirds (2/3) majority vote of the Board of Directors.

(7)    The Executive Board or the Executive Council may submit an Agenda Item at any time up until the commencement of the meeting of the Board of Directors.  Submissions by the Executive Council or the Executive Board thereafter shall be treated as a late Agenda Item and require approval of a two-thirds (2/3) majority vote of the Board of Directors.

(8)    The President may submit an Agenda Item at any time.

B.    Any properly submitted Agenda Item may be cosponsored by any Master Executive Council. Such endorsement shall be prior to the end of the second day of the meeting and shall be in writing.

C.    An Agenda Item may be withdrawn from the agenda if all sponsors concur.

## SECTION  5 - SPECIAL MEETINGS

A.    Special meetings of the Board of Directors may be called at any time by the Executive Council, the Executive Board, or by the President.

B.    Whenever thirty percent (30%) of the Active membership petitions the Vice President-Administration/Secretary requesting that the Board of Directors be called into session, he shall within seven (7) days ballot the Active membership on the question of whether or not the Board of Directors shall be called into session.  Said ballot shall state the issue or issues upon which the petitioners desire the Board of Directors to act and shall state a reasonable deadline date for the return of the ballot.  If a majority of the Active members of the Association vote in favor of calling the Board of Directors into session, the Vice President-Administration/Secretary shall within seven (7) days from said deadline notify each member of the Board of Directors by Certified Mail, Return Receipt Requested.  Such notice shall be in receipt of the member not less than seven (7) days nor more than fourteen (14) days prior to the date fixed for convening such meeting and shall specify the date, place and agenda for the meeting.

C.    The Board of Directors in special meetings may adopt any order of business it deems necessary, provided that any deviation from the announced agenda shall require a two thirds (2/3) majority vote by the Board of Directors.

## SECTION  6 - ATTENDANCE AND QUORUM

A.    At all meetings of the Board of Directors, each Local Council shall be represented by its Captain Representative, First Officer Representative, and, where applicable, Second Officer Representative, or by its Seniority Block Status Representative(s), or by its Instructor Status Representative, except as provided in Article III, Section 4B(2) and Section 8, of this Article.

B.    All meetings of the Board of Directors are open to all Active members of the Association and invited guests, provided, however, that the Board of Directors may declare any session to be a closed session and exclude any or all persons who are not duly accredited members of the Board of Directors.

C.    At any meeting of the Board of Directors, a majority of the Board of Directors shall constitute a quorum for the transaction of business.

## SECTION  7 - VOTING

A.    Decisions on all questions, including election of National Officers, brought before the Board of Directors shall be determined by a majority vote unless otherwise specifically stipulated in the Constitution and By-Laws.  All voting, except election of National Officers and Executive Vice Presidents, shall be viva voce, except that a standing vote or roll call vote shall be taken at the request of any member of the Board of Directors.

B.    When voting by roll call, each member of the Board of Directors shall have one (1) vote for each Active member in good standing that he represents, provided that on an airline having one (1) Local Council subject to Article III, Section 1C or Section 1D, each member shall have one-half of the votes for the Active members in his status and the member who received the largest number of votes in election as Status Representative shall have one (1) additional vote in the event of an odd number of Active members in his status.

C.    An Officer of the Association shall not vote at meetings of the Board of Directors unless he is also an elected member of the Board of Directors.  The Chairman of the meeting, however, may vote to break a tie.

D.    The election of National Officers shall be conducted by secret roll call ballot, utilizing an electronic (multiple purpose terminal) system and in accordance with ALPA Voting Procedures.

E.    The election of Executive Vice Presidents shall be conducted by secret roll call ballot in the Election Caucus Groups, as provided in Article XIV, Section 1.

## SECTION 8 - REPRESENTATION AT BOARD OF DIRECTORS MEETINGS

If for any reason a Local Council Representative is unable to attend, he will designate, in writing, his duly elected successor in office to attend and act as his proxy who will then have all the rights and privileges of the original representative.  In the event his duly elected successor in office is not able to act as his proxy, he may designate, in writing, the Vice Chairman or Secretary-Treasurer of his Council, if not already a Director, or another elected delegate, being a member of the Board of Directors, from his airline to attend and act as his proxy who will then have all the rights and privileges of the original representative.  In the event no such other elected delegate, being a member of the Board of Directors, from his airline is available to act as his proxy, he may designate, in writing, any other elected delegate, being a member of the Board of Directors, to attend and act as his proxy who will then have all the rights and privileges of the original representative.

## SECTION 9 - PROXIES

A.    If for any reason a member of the Board of Directors is unable to remain at a meeting of the Board of Directors, he may designate, in writing, any other member of the Board of Directors, in attendance, to act as his proxy, with all the rights and privileges of the original representative.  A proxy may not be transferred when a proxyholder finds it necessary to depart a meeting.

B.    A member of the Board of Directors may revoke his proxy once at any Board of Directors meeting.  Any subsequent designation of a proxy shall be final and binding.

## SECTION 10 - NOMINATION AND ELECTION OF OFFICERS

A.    The nomination and election of the President, First Vice President, Vice President-Administration/Secretary and Vice President-Finance/Treasurer, and the election of Executive Vice Presidents shall be scheduled as the first order of business on the third (3rd) day of the Regular Board of Directors Meeting.  Elections, as required, shall be conducted in the following order:

(1)    President
(2)    First Vice President
(3)    Vice President-Administration/Secretary
(4)    Vice President-Finance/Treasurer
(5)    Executive Vice Presidents

B.    The nomination and election of Executive Vice Presidents will be conducted in Election Caucuses as provided in Article XIV, Section 1 following the regular election of the Vice President-Finance/Treasurer, if any.

C.    At all meetings of the Board of Directors at which officers are to be elected, the Nominations Committee established pursuant to Section 11 of this Article shall nominate candidates for the offices of President, First Vice President, Vice President-Administration/Secretary and Vice President-Finance/Treasurer, with any member of the Board of Directors entitled to make additional nominations from the floor.

D.    The Chairman, during the nomination and election of officers, shall relinquish the chair to the Chairman of the Nominations Committee.

**SECTION 11 - COMMITTEES--BOARD OF DIRECTORS MEETINGS**

A.    Delegate Committees for Board of Directors meetings shall, in the first instance, be established by the Executive Council.  The number of Delegate Committees and the assignment of Delegates shall be determined by the Executive Council in accordance with the provisions of the ALPA Administrative Manual.

B.    Each Delegate to a Board of Directors Meeting shall be placed on a Delegate Committee and all Agenda Items will be assigned to a Delegate Committee.

C.    The Executive Council shall designate a chairman and an alternate for each Delegate Committee.  In the event that neither the chairman nor the alternate is able to serve, the Vice President-Administration/Secretary shall appoint the chairman.

D.    Assignment of members to such committees by the Executive Council to serve during Board of Directors meetings shall be ratified by the Board of Directors.

E.    The function of the Delegate Committees is to present to the Board of Directors in plenary session, a proposed resolution on each Agenda Item assigned to it.

F.    Delegate Committee #1 shall be established as the Nominations Committee.

**SECTION 12 - CREDENTIALS COMMITTEE**

A.    The Credentials Committee shall consist of not less than three (3) members of the Board of Directors appointed by the Vice President-Administration/Secretary with the approval of the President.  Such action shall be reported to the Executive Council at its next meeting and be subject to its review.  Any affected member may appeal such action to the Executive Council.

B.    The Credentials Committee shall certify the credentials of members of the Board of Directors, their designated representatives and proxies.

**SECTION 13 - STEERING COMMITTEE**

A.    A Steering Committee for Board of Directors meetings shall be established by the Executive Council composed of not less than three (3) Active members in good standing of ALPA who are not Delegates.

B.    The Steering Committee shall:

(1)    Instruct Delegate Committee Chairmen on the steps and procedures to be followed in processing Agenda Items.

(2)    Review Delegate Committee recommendations on assigned Agenda Items prior to floor action from the standpoint of form, clarity, possible conflict or need for correlation with recommendations of other Delegate Committees, as well as in the area of possible conflict or need for correlation with pertinent ALPA policy.  Suggested revisions of a policy nature are to be referred back to the Delegate Committee for approval.

(3)    Coordinate with the Agenda Office on the status of completed agenda work to facilitate the smooth flow of business.

C.    For a Special Board of Directors Meeting, the Steering Committee shall be composed of one Active member in good standing of ALPA, who is not a Delegate.

**SECTION 14 - NATIONAL COMMITTEES**

A.    The President shall oversee all ALPA Committees personally or by delegation to other ALPA Officers.  A Committee or its members may be called upon for specialized services by the President, as needed, in furtherance of ALPA projects and goals.

B.    The Board of Directors or Executive Board may establish National Committees as deemed necessary.  They normally shall charge such committees, specify the number of members and method of appointment and recall, and determine the life of the committee and establish the budget for said committees.  Absent any specific instructions relating to the foregoing, the Executive Council shall assume those responsibilities.  Such National Committees may be either a Continuing Committee or a Special Committee.

(1)    CONTINUING:

Unless otherwise specified by the Board of Directors or Executive Board, a Continuing Committee shall not have a time limitation on its life.  Such committee shall be responsible to the President and the Executive Council, either of whom may require reports upon thirty (30) days' notice.  A Continuing Committee shall submit written reports to the Board of Directors.  It shall submit interim reports to the Executive Board or Executive Council, if requested by the Executive Council.

(2)    SPECIAL:

A Special Committee may be created and shall terminate upon conclusion of its charge, or at the next regular Board of Directors or Executive Board meeting, unless otherwise specified by the Board of Directors, Executive Board or Executive Council.  It shall submit reports, either written or oral, to the Board of Directors, or the Executive Board, if requested by the Executive Council.

C.    Unless otherwise specified by the Board of Directors or Executive Board, the Executive Council shall:

(1)    Appoint members, remove or replace members or fill vacancies on all National Committees and annually review the membership of each Committee.

(2)    Establish budgetary amounts for newly created National Committees, if not already covered by the ALPA Budget.

(3)    Determine which National Committee members will attend Board of Directors or Executive Board meetings.

(4)    Monitor each National Committee's progress as to the completion of its assigned tasks and the completion of any required written reports.

(5)    Recommend to the Board of Directors or Executive Board those ALPA National Committees which can be terminated.

(6)    Select the chairman of each committee.

D.    The names and addresses of the chairman and members of all Board of Directors committees shall be published in the ALPA Administrative Manual.

E.    All National Committees directed to report in writing to the Board of Directors or Executive Board must have their reports completed in time to be printed and mailed to each member of the

Board of Directors, Executive Board and Executive Council not later than ninety (90) days prior to the opening day of that Board of Directors meeting, or not later than thirty (30) days prior to that Executive Board meeting.  Any reports not transmitted in compliance with these deadlines shall require a two-thirds (2/3) vote of that Board in session to be received.

F.    Air Safety Committees are established and dissolved by the Executive Air Safety Chairman, with the approval of the President and the Steering/Oversight Committee.  Members will be appointed by the Executive Air Safety Chairman with the approval of the President.  Air Safety Technical Committees shall report to the President through the Executive Air Safety Chairman.

G.    Subcommittees of the Executive Council are established by the Executive Council with the manning and reporting requirements of any such Committees left to the discretion of that authorizing body.

H.    Presidential Committees are established by the President under the authority of Article X, Section 6.

## SECTION 15 - MEETING RECORDS AND REPORTS

A.    The actions taken at each meeting of the Board of Directors shall be compiled and issued to all members of the Board of Directors, the Executive Board and the Executive Council within twenty-one (21) days of such meeting.

B.    A copy of the transcripts of each meeting of the Board of Directors shall be available to the Active membership at the Home Office and made available to each Field Office upon request.

## ARTICLE VIII - HEARING AND APPEAL PROCEDURES

### SECTION 1 - HEARING OF MEMBERSHIP CASES

A.    Any member (including any Inactive member) may be disciplined, fined, or expelled for any of the following acts:

(1)    Willful violation of this Constitution and By-Laws.

(2)    Making a false statement or withholding material information when applying for membership.

(3)    Disobeying or failing to comply with a decision of the Board of Directors, the Executive Board, the Executive Council, his Master Executive Council, or his Local Council.

(4)    Misappropriating money or property of the Association.

(5)    Performing work for or assisting an airline during a period when the members of this Association are on strike against such airline.

(6)    Entering into an employment agreement, or any contract which might injure the Association.

(7)    Improperly disclosing confidential matter of the Association.

(8)    Refusing or willfully neglecting to pay dues, assessments, fines or financial obligations to the Association.

(9)    Acting in any manner to circumvent, defeat or interfere with collective bargaining between the Association and an employer or with existing collective bargaining agreements.

(10)    Doing any act contrary to the best interests of the Association or its members.

B.    A charge or charges may be preferred against any member (including any Inactive member) within the Association by resolution of:  Local Councils, Local Executive Councils, or Master Executive Councils; or by Local Council Chairmen; Master Executive Council Chairmen, or by any National Officer of the Association, except as provided in subparagraph C of this Section.

C.    National Officers of the Association, i.e., President, First Vice President, Vice President-Administration/Secretary and Vice President-Finance/Treasurer, may not be charged under the provisions and procedures set forth in this Article for acts of omission or commission as a result of their duties in their offices, but shall be subject to the provisions of Article XVI.

### SECTION 2 - GRIEVANCE PROCEDURE

A.    Any member or group of members on an airline having a dispute with the Association concerning interpretation of the Constitution and By-Laws or interpretation of policies adopted by the Board of Directors, as outlined in Section 1A of this Article, has the same right of hearing before the Hearing Board and the same privileges as to appeal before the Appeal Board as is accorded under this Article.

### SECTION 3 - HEARING PROCEDURE

A.    Such charges shall be preferred in writing and shall be sufficiently specific as to the identity of the charged party and the alleged acts which constitute the basis of the charges and the provisions of the Constitution and By-Laws allegedly violated.  The accused member shall be supplied with a copy

thereof, sent to him by Registered Mail, Return Receipt Requested, or Certified Mail, at his last known address. If the letter is refused by the addressee, this nevertheless shall be deemed sufficient notice of the proceedings. It shall be the duty of the members of the Local Council to provide the correct address. The Vice President-Administration/Secretary on the same date shall be mailed a copy of the registered or certified letter bearing the charges.

B.   Such charges to be heard must be filed within ninety (90) days after the accuser becomes aware of the alleged offense, but in no case more than one (1) year after the alleged offense.

C.   Such charges shall be heard by the accused member's Local Executive Council and a decision published not less than fifteen (15) days nor more than sixty (60) days after receipt by the accused of the charges against him, provided, that by mutual consent, such hearing may be held sooner than fifteen (15) days but not later than sixty (60) days from the date of receipt of charges. If application to the Hearing Board is made by either party to hear the case in the initial instance, the Local Executive Council shall not conduct a hearing pending announcement by the Hearing Board of its decision as set forth in subparagraph E hereof. If the Hearing Board accepts jurisdiction in the first instance, the hearing shall be held not later than sixty (60) days following receipt by the Hearing Board of the request that the Hearing Board hear the charges in the initial instance after receipt by the accused of the charges against him and a decision published as soon as possible thereafter, but no later than fifteen (15) days from the date of the hearing.

D.   Both the accused member and the accuser shall have the right, both at the original hearing and at any appeal taken therefrom, to designate and be represented by an Active member of the Association in good standing. Whether or not the accused member appears at the hearing or any adjourned date thereof, evidence either for or against such member may be received. If the accused or the party preferring charges fails to appear at such hearing, or fails to request a hearing as provided in Section 4A of this Article, he shall be deemed to have waived his rights to an appeal from the decision of the hearing body, provided that if he shows good cause for not appearing at the hearing, his rights to appeal shall not be denied as provided hereinafter.

E.   Either the party charged or making the charges may apply to the Hearing Board to hear such case in the first instance. If in the opinion of the Hearing Board good cause is shown for such request, said Board may then hear the case initially. If the accuser makes such application, it shall be directed to the Hearing Board at the time the charges are filed. If the accused makes such application, such request that the Hearing Board hears the charges in the initial instance must be made no later than fifteen (15) days from date of receipt of the charges. Announcement of the Hearing Board's decision on whether or not it will hear the charges must be made within fifteen (15) days of the receipt of the request from the accuser or accused and published to the parties concerned, i.e., the accused, accuser, and the Local Executive Council concerned, by Registered Mail, Return Receipt Requested, or Certified Mail.

F.   Should the accused member be a Local Executive Council member or an officer of the Association, or should the accused member not have any Active affiliation with any Local Council, then such charges shall be tried by the Hearing Board in the first instance. When accused members from more than one (1) Local Council are jointly charged, such charges shall be heard by the Hearing Board in the first instance.

G.   The Local Executive Council or the Hearing Board, as the case may be, subject to the time limitations in Paragraph C of this Section, shall designate the time and place and any adjournments for the hearing of such charges and shall keep a copy or resume of the evidence presented. Notice of hearing shall be sent Registered Mail, Return Receipt Requested, or Certified Mail.

H.    When it is mutually agreed that a stenographic report is to be taken of the hearing, in whole or in part, the cost will be equally borne by both parties. In the event it is not mutually agreed that a stenographic report of the hearing be taken, any written record available which was taken during such hearing by either of the parties shall be furnished to the other party of the dispute on request, provided that the cost of such record so requested, shall then be borne by both parties to the dispute.

I.    Upon the conclusion of a hearing conducted before a Local Executive Council or the Hearing Board, such body shall render its decision, subject to the time limitations in Paragraph C of this Section, sustaining or dismissing the charges in whole or part, and shall affix penalties or direct disciplinary action as it deems proper.  Such decision shall be in writing, sent Registered Mail, Return Receipt Requested or Certified Mail, with a copy furnished to the accused member, the person or body making the charges, and the Vice President-Administration/Secretary for the permanent records at the Home Office.

## SECTION  4 - APPEAL PROCEDURE

A.    The accused member or the party making the charge, being aggrieved by the decision, may appeal therefrom to the Appeal Board.  This appeal shall be by written request within fifteen (15) days from the date of receipt of the written decision from which such appeal is taken.

B.    When the Appeal Board receives an appeal request, they shall obtain a copy or resume of the evidence and the decision rendered from the previous hearing body.

C.    The Appeal Board may hear appeals solely upon the evidence and decision submitted to it.  Upon application of any party, or upon its own motion, the Appeal Board may take additional evidence as it deems proper.  The Appeal Board shall designate a time and place and any adjournments for the hearing of charges, with notice of the hearing sent Registered Mail, Return Receipt Requested or by Certified Mail.  The Appeal Board shall issue its decision no later than sixty (60) days following the Appeal Board's receipt of an appeal from a hearing decision in the initial instance.

D.    The decision of the Appeal Board shall be final and binding.  It shall be in writing, sent Registered Mail, Return Receipt Requested or Certified Mail, and shall be furnished to the accused member and to the person or body making the charge, and a copy also furnished to the Vice President-Administration/Secretary for the permanent records at the Home Office.

## SECTION  5 - STATUS OF AN ACCUSED MEMBER

The status of an accused member in good standing may not be changed until all actions, hearings and appeals set forth in Sections 3 and 4 of this Article have been completed and final adjudication provided, or the time limit for any appeal has expired.  A member in such cases shall be afforded full protection and services of the Association, provided that his financial obligations to the Association remain current.

## SECTION  6 - HEARING BOARD

A.    A Hearing Board shall be established to hear cases in the initial instance under the procedure provided in Section 3 of this Article.

B.    The Hearing Board shall be composed of three (3) regular and six (6) alternate members who shall be Active members in good standing appointed by the Executive Council from a list of candidates furnished by each Master Executive Council.

C.    On or about January 1 each year, the Vice President-Administration/Secretary shall forward a list of those members serving on the Hearing Board and Appeal Board, as well as a roster of current nominees for Hearing Board and/or Appeal Board service, to all Master Chairmen for the purpose of obtaining revalidation, redesignation or replacement of its member(s) on the Hearing Board and/or Appeal Board and Nominee Roster.  The names of candidates furnished to the Vice President-Administration/Secretary shall be members on an MEC's airline who are willing to serve on such Hearing Board or on the Appeal Board provided by Section 7 of this Article.  The number of names submitted shall equal the number of Councils on the airline.  It is not necessary each Council be represented.  Absent any response, current members and nominees will be considered as revalidated.

D.    Appointments to the Hearing Board shall be made at the first regular Executive Council meeting following the deadline for submission of candidates as specified in paragraph C of this Section.

E.    The term of office for the members and alternates shall be for three (3) years, until reappointed, or until their successors have been selected in accordance with Paragraph G of this Section.  Hearing Board members whose terms have expired will nevertheless continue as members of the Board for the purpose of concluding matters pending before such Board at the time of expiration of their terms.

F.    The members of the Hearing Board shall elect one (1) of their number as Chairman.

G.    Vacancies on the Hearing Board shall be filled by the Executive Council from candidates on the panel or from among the alternates.  Vacancies among the alternates shall be filled by appointment from the candidates on the panel.

## SECTION  7 - APPEAL BOARD

A.    An Appeal Board shall be established to hear cases appealed to it under the procedure provided in Section 4 of this Article, as well as appeals of a member or members under the procedures provided in Article I, Section 23B(6).

B.    The Appeal Board shall be composed of five (5) regular and five (5) alternate members who shall be Active members in good standing appointed by the Executive Council from the list of candidates furnished by each Master Executive Council pursuant to Section 6C of this Article.

C.    Appointments shall be made at the first regular Executive Council meeting following the deadline for submission of candidates as specified in Section 6C of this Article.

D.    The term of office for the members and alternates shall be for two and one half (2 1/2) years, until reappointed, or until their successors have been selected in accordance with Paragraph G of this Section.  Appeal Board members whose terms have expired will nevertheless continue as members of the Board for the purpose of concluding matters pending before such Board at the time of expiration of their terms.

E.    The members of the Appeal Board shall elect one (1) of their number as Chairman.

F.    No less than ten (10) days prior to each hearing before the Appeal Board, either the accused or the party preferring the charges shall have the right of challenging a member of the Appeal Board.  When such challenge is exercised, one of the alternates selected by the challenger shall become a regular member of the Board for hearing the subject case.  If both parties in a case indicate a desire to challenge a regular member of the Board, the accused shall be given the first right of challenge.

G.     Vacancies on the Appeal Board shall be filled by the Executive Council from the candidates on the panel or from among the alternates.  Vacancies among the alternates shall be filled by appointment from the candidates on the panel.

## ARTICLE IX - MEMBERSHIP FINANCIAL OBLIGATIONS

### SECTION  1 - GENERAL

All fiscal obligations of a member to the Association are due and payable as provided in this Article IX and, subject to the provisions hereof.  All membership financial obligations and information requests are due by the published due date.

### SECTION  2 - INITIATION FEE

A.    Each applicant accepted by the Association for Active membership shall be required to pay an initiation fee, except that an initiation fee shall not be required by any applicant whose membership or representation is transferred from an affiliate Association or any other recognized union representing pilots and flight officers, or is a reactivated member as in Article II, Section 3.

B.    When application for membership is submitted within ninety (90) days after the applicant's date of eligibility for Active membership, the initiation fee, based upon the applicant's status at the time of eligibility for membership, shall be:

| STATUS | INITIATION FEE |
| --- | --- |
| Captains | $  50.00 |
| First Officers and Second Officers | $  25.00 |

C.    When application for membership is submitted later than ninety (90) days after the applicant's date of eligibility for Active membership, the initiation fee, based upon the applicant's status at the time of application for membership, shall be:

| STATUS | INITIATION FEE |
| --- | --- |
| Captain | $ 200.00 |
| First Officers and Second Officers | $  50.00 |

### SECTION  3 - ANNUAL DUES

A.    All airline income of a member is subject to dues so long as he remains on his Company seniority list, except as provided in Section 4 of this Article. The Association's dues year shall be the calendar year.  Annual dues are due and payable in advance by January 1 of each year subject to the payment method provisions set forth in Paragraph D(1) of this Section.

B.    ANNUAL DUES ESTIMATE

On or about January 1 of the dues calendar year, the Vice President-Finance/Treasurer shall furnish each Active, Executive Active, and Executive Inactive member, not paying dues in accordance with D(1)(a), with an estimated dues billing predicated upon each member's previous year's adjusted dues status with provision for selection of the method of dues payment.  Because of anticipated changes in annual income, such member may revise this dues billing estimate, provided that the revised billing estimate and appropriate payments are made under the payment method outlined in D(1)(b) of this Section and provided that such estimate is reasonable and accurate when taking into account prior year earnings and other known adjustments to airline income figures.   The Vice President-Finance/Treasurer shall have the authority to review and reject an unreasonable estimate and reset the estimate on which monthly billings will be based.   The member has the right to appeal the adjusted estimate to the Executive Council.   The reset estimate will be in effect during the appeal process.

C.    (1)  DUES RATE (ACTIVE AND EXECUTIVE ACTIVE MEMBERS).  The dues rate for Active and Executive Active members shall be 1.95% of estimated airline income.

(2)    DUES RATE (EXECUTIVE INACTIVE MEMBERS).  The dues rate for Executive Inactive members shall be 1.45% of estimated airline income.

D.    (1)  DUES PAYMENT METHODS.  Two (2) methods of payment are available to each Active, Executive Active and Executive Inactive member.  He may pay his dues:

(a)    Monthly by dues check-off through his airline when available through his employment agreement.

(b)    Monthly to the Association under an Association-sponsored finance plan.

E.    DUES ON FLIGHT PAY LOSS.  Dues on flight pay loss payments to a member shall be withheld by the Association and credited to his membership dues account.

## SECTION 4 - INCOME EXEMPT FROM DUES

The following income shall be exempt from dues, subject to verification and approval by the member's Local Executive Council:

A.    Sick leave income in excess of that provided by sick leave provisions of an employment agreement or company sick leave policy.

B.    Income received from his company for services in a different job classification while physically unable to perform as a pilot or flight officer.

C.    Special bonus or merit award income, provided that a general bonus to all members of an airline shall not be exempt.

D.    Income received for services to the Company not requiring flight crewman qualifications while on furlough status from a flight crew position.

E.    Allowances received for foreign cost of living.

F.    Furlough income received by a member under the terms of his employment agreement.

G.    Premium payments by a carrier on behalf of a member for specified excess life insurance coverage or for other insurance benefits and the value of travel benefits, which are reported to him under IRS or applicable Canadian regulations as taxable income, and it is the member's obligation to advise the Association of such amounts when:

(1)    The member does not participate in dues check-off, and

(2)    Such amounts are included in his W-2 or T-4 form, as applicable.

H.    Income received after retirement for vacation.

I.    Income received in the form of corporate securities.

J.    In order to compensate for the perceived difference in dues assessments for those pilots whose only pension program is the 401K Plan or Canadian equivalent plan, that portion of wages deferred

by those pilots to the 401K Plan or applicable Canadian equivalent plan will be excluded from ALPA dues calculations.

K.    Company-paid moving expenses and allowances included on his W-2 or T-4   form, as applicable, and it is the member's obligation to advise the Association of such amounts when:

(1)    The member does not participate in dues check-off, and

(2)    Such amounts are included in his W-2 or T-4 form, as applicable.

L.    Per diem, and it is the member's obligation to advise the Association of such amounts when:

(1)    The member does not participate in dues check-off, and

(2)    Such amounts are included in his W-2 or T-4 form, as applicable.

## SECTION 5 - ANNUAL DUES ADJUSTMENT

A.    (1)  Except in cases where a member is exempt from dues adjustment as defined by paragraph C of this Section, the Vice President-Finance/Treasurer shall furnish each Active, Executive Active and Executive Inactive member a Dues Adjustment Review Form or W-2 or T-4 Request Form, as applicable, during the first calendar quarter of each year or as soon thereafter as practicable.

(2)    In cases where company pilot pay rosters are not furnished or member's pay is not included on company pilot pay rosters, such member will declare his airline income for the previous calendar year by providing a copy of his W-2 or T-4 forms, as applicable, including any compensation earned, receipt of which he has deferred to a post-retirement period.

(3)    Each such Active and Executive Active member's dues for the preceding calendar year will be calculated and adjusted by applying the effective percentage rate of 1.95% against his verified airline income.  A similar computation will be made for each such Executive Inactive member utilizing the 1.45% dues rate. Should the member fail to comply with Section 5A(2), above, the Vice President-Finance/Treasurer shall establish the verified airline income in his best judgment, using information available to him.

(4)    Any resultant overpayment will be credited to the member.   The Vice President-Finance/Treasurer will bill the member for dues owed to the Association at the rate of 2.15% for Active and Executive Active members and at the rate of 1.60% for Executive Inactive members.

B.    In any case where a company pilot annual pay roster is furnished to the Association, said roster will serve as the basis for a member's income verification and dues adjustment calculations for the previous year and for the ensuing year's estimated dues billing.  To be eligible for dues determination purposes, such pay roster must incorporate total airline income, including any salary amounts, receipt of which a member may have voluntarily agreed to defer to a post retirement period.  Should a company fail to meet this deferred salary reporting requirement, the Vice President-Finance/Treasurer is empowered to make such determination in his best judgment, using information available to him.  In the event of pay roster error, a member may submit his W-2 or T-4 form, as applicable, to the Vice President-Finance/Treasurer, requesting adjustment of the estimated dues billing amount.

C.    A member who paid dues under a dues check-off agreement during the entire period of the dues calendar year shall have fulfilled the requirements of this Section, provided that the salary base utilized meets the requirements of paragraph B of this Section.

D.    Irrespective of the provisions of subparagraphs B and C above, income verification and any required dues adjustment will be processed for members receiving income directly from the Association in the form of flight pay loss reimbursement.

E.    Any dispute over a member's dues and/or assessments shall be settled by the Vice President-Finance/Treasurer.  The member may appeal the decision of the Vice President-Finance to the Executive Council and the decision therefrom shall be binding.

## SECTION  6 - ARRANGEMENT PLANS

A.    By special arrangement with the Vice President-Finance/Treasurer, in accordance with personal hardship guidelines established by the Executive Council, a delinquent member or former member with an accrued delinquent obligation, may execute an agreement acknowledging his outstanding obligation and may arrange to repay said obligation over a period not to exceed five (5) years, or by twelve (12) months prior to normal retirement from his airline, whichever date is earliest, with a minimum monthly payment of one dollar ($1.00) per month for each one thousand dollars ($1,000.00) of annual airline income on the outstanding obligation, plus the ALPA finance charge at a rate equal to the rate to be paid by ALPA for all borrowing from ALPA's primary lending institutions shall be billed to each such member.  The minimum finance charge to be billed shall be established at one percent (1%) per month.  No such arrangement plans shall be permitted during the last twelve (12) months of employment prior to date of normal retirement.   Any such arrangement plans shall be subject to approval by the MEC Chairman on the pilot's airline.  If the member disagrees with the decision of the MEC Chairman the member may appeal to the Executive Council.

B.    Such payments shall be in addition to other regular ALPA financial obligations.  In the event a member becomes sixty (60) days delinquent in payment of his arrangement plan, he shall be considered to be in default of the arrangement plan and will assume the status he held as of the date the arrangement plan was executed.  With the concurrence of the MEC Chairman, the Vice President-Finance/Treasurer is empowered to extend payment limits if extenuating circumstances warrant, including execution of another arrangement plan.  If the member disagrees with their decision, the member may appeal to the Executive Council.

C.    Any arrangement plan extending special consideration to groups of members shall be subject to annual review to adjust monthly payments to current pay.

## SECTION  7 - ASSESSMENTS

A.    (1)    All Strike Benefit assessments or General assessments shall be due and payable when billed and shall be prorated according to the dues payments for a recent period (of at least three (3) months) considered by the Executive Council to be representative of the members' current earnings.

(2)    Strike Benefit assessments may be levied on all Active members to pay strike benefits to pilots deprived of airline income due to being involved in a lockout or a primary or supporting strike approved by the membership of the airline and the President. Approval of the strike benefits shall be accomplished as follows:

(a)    The authority for the first 90 days of the strike benefits shall be by a 2/3 majority of the Board of Directors voting on a roll call basis, unless the President makes a determination that the best interests of the Association will be served by balloting the entire Active membership in good standing.  The Board of Directors members of the airline who would receive benefits shall not be eligible to vote.  The vote may be either by the Board of Directors in session or by ballot in accordance with Association Voting Procedures. If the President makes a determination to ballot the membership, this shall be done by secret ballot under ALPA Voting Procedures with a majority of

the valid ballots returned required for authority to pay benefits and to levy an assessment.  In the event of a membership ballot, the members of the airline who would receive benefits shall not be eligible to vote.

(b)    The authority for subsequent 90-day periods shall be by the entire Active Membership in good standing balloted by secret ballot under ALPA Voting Procedures with a majority of the valid ballots returned required for authority to pay benefits and to levy an assessment.  The members of the airline receiving benefits shall not be eligible to vote.

(c)    Such approval shall be obtained before such expenditures are made.

(3)    General assessments may be levied by the Board of Directors or Executive Board on all Active members to cover extraordinary expenses provided such assessments are approved by a majority of the valid ballots returned by the Active members in good standing by ballot, conducted under Association Voting Procedures, and provided that such approval is obtained before such expenditures are made.

(4)    Appeal may be made by any Member so assessed to the Local Executive Council and the Vice President-Finance/Treasurer that there is an unusual hardship in paying the assessment that is based on a recent decrease in airline earnings.

(5)    In those cases where members of an airline experience a sharp reduction in earnings during an assessment period, and where prompt action is justified, upon request by the MEC Chairman of an airline to the Vice President-Finance/Treasurer, the Vice President-Finance/Treasurer, with the concurrence of the Executive Council, may make immediate assessment adjustments for the members of that airline.

B.    Assessments may be levied on members of a Local Council to cover extraordinary expenses for any strike or other benefit purposes, and for any other lawful trade union purpose, by a majority vote by secret ballot of the members in good standing of said Council, voting at a regular or special membership meeting, after fifteen (15) days' notice of intention to vote on such question is mailed to each member of that Local Council at his last known home address, or by a majority vote of the valid ballots returned by the Active members in good standing voting in a membership referendum conducted by secret ballot under Association Voting Procedures.  Proxies may not be used in any such balloting.

C.    Assessments may be levied on the members in the employ of any airline by the respective Master Executive Council to cover extraordinary expenses for any strike or other benefit purposes, and for any other lawful trade union purpose, by a majority vote by secret ballot of the members of such Master Executive Council, or by a majority vote of the valid ballots returned of the membership of such airline voting in a membership referendum conducted by secret ballot under Association Voting Procedures.

D.    An assessment levied under paragraphs B and C of this Section shall be owing to the Association and placed on the member's account for collection.  Except as provided in Section 17B, the proceeds of such assessments shall be returned to the assessing body.

E.    Executive Active and Executive Inactive members shall be obligated for the  payment of all assessments.

F.    Members on newly organized ALPA carriers shall not be liable for assessments as defined in Section 7A(1), (2), (3), and (4) until the date that their first working agreement has been signed.

## SECTION  8 - MONETARY FINES

All fines levied against and collected from a member shall be remitted to the Association. The Vice President-Finance/Treasurer shall be copied on all notices of such fines, decisions thereon, and shall establish procedures for collection and receipt thereof.

## SECTION  9 - ASSOCIATION-SPONSORED FINANCE PLAN

A.    (1)    Any Active, Executive Active or Executive Inactive Member may pay his annual dues through a dues check-off program available with his carrier, or pay one-twelfth (1/12) monthly directly to the Association without finance charges. If a member paying dues does not remit payment by the published due date, then the Association late payment charge as determined by the Executive Council will be applied to the member's account.

(2)    Initiation fees, dues adjustments, assessments, and fines chargeable to a member will be incorporated in his monthly statement, but may not be amortized on a monthly payment basis.

## SECTION 10 - LATE PAYMENT CHARGE

Any member failing to remit a billed obligation by the published due date established under the provisions of Section 1 of this Article will be billed a late payment charge as determined by the Executive Council.

## SECTION 11 - DEFAULTED LOAN OBLIGATIONS

The total amount of the defaulted obligation of any member incurred under an ALPA guaranteed loan program involving a private lending institution shall be transferred to the member's Association account for collection under the finance plan provisions of Section 9 or, with the concurrence of the Vice President-Finance/Treasurer, under the arrangement plan provisions of Section 6, with disposition of the obligation subject to the time limits set forth in this Article.

## SECTION 12 - BAD STANDING AND EXPULSION

A.    Any Active, Executive Active or Executive Inactive member who fails to submit his W-2 or T-4 Form, as applicable, along with his Dues Adjustment Report Form to the Home Office by the published due date for receipt established under the provisions of Section 1 of this Article shall be placed in bad standing. Further, a member who has not paid his dues, dues adjustment, assessments, monetary fines, arrangement plan obligations, a defaulted loan obligation, or the applicable finance charges thereon, prior to the published payment deadline date established under the provisions of Section 1 of this Article or who has not made satisfactory arrangement with the Vice President-Finance/Treasurer for payment thereof prior to such date, shall become a member in bad standing. For the period of such bad standing, he shall be deprived of all rights to participate in any activities of the Association and shall be denied all rights, privileges and benefits of membership in the Association.

B.    Any member who remains in bad standing for a period of two (2) consecutive months shall be expelled, unless, in the discretion of his Local Executive Council Chairman, acting in concert with the Master Executive Council Chairman, there are extenuating circumstances. If the Vice President-Administration/Secretary of the Association determines that extenuating circumstances exist on more than one airline, he may delay expulsion. In either case, the Executive Council will review the decision at its next meeting and will be the final authority.

C.    Any member who has paid his financial obligations to the Association, or made satisfactory arrangements in accordance with the provisions of this Constitution and By-Laws, shall be a member in good standing and entitled to all of the rights, privileges and benefits of membership.

**SECTION 13 - BASIC NET WORTH AND RESERVES**

The amount of the basic net worth required in Article I, Section 6A(3), shall be determined on the basis of two (2) times the annual dues income averaged over the previous three (3) years. As part of such basic net worth, an investment account shall be maintained consisting of U.S. bonds and high grade corporate and municipal bonds and equities. This investment account shall provide suitable income returns, and be easily liquidated in the event of unanticipated emergencies.

**SECTION 14 - MAJOR CONTINGENCY FUND**

A.    When, in the judgment of the Executive Council and the Executive Board, the Major Contingency Fund will drop below a sixty-five million dollar ($65,000,000) cash balance within ninety (90) days, dues contributions to the Major Contingency Fund may be reinstituted by approval of the Board of Directors by two-thirds (2/3) majority vote either by ballot initiated by the Executive Council or at a regular or special meeting of the Board of Directors based on an agenda item submitted in accordance with Article VII, Section 4 or Section 5. The foregoing cash balance shall be increased to sixty-six million dollars ($66,000,000) on January 1, 2006 and be increased by one million dollars ($1,000,000) each January 1 thereafter until January 1, 2010 when the foregoing cash balance shall be seventy million dollars ($70,000,000). The Board of Directors shall set the dues rate. Any such decision made by ballot or at a special meeting of the Board of Directors shall be reviewed at the next regular meeting of the Board of Directors and such dues contributions continued thereafter only if approved by the Board of Directors. Any such dues contribution shall cease when the Major Contingency Fund reaches a maximum cap of a one hundred fifty million dollar ($150,000,000) cash balance or such lesser amount as is set by the Board of Directors.

B.    The Major Contingency Fund shall be maintained as Association Funds to be separately accounted for, with earnings and appreciation thereon to be a part of such Fund. The Major Contingency Fund shall not be utilized under any conditions as a source of funding for past or current budgeted operational expenses, unless specifically authorized by the Executive Board as a result of loss of dues revenue due to a work stoppage. Such Fund may be utilized only for the following purposes:

(1)    To treat issues of urgent concern that significantly and adversely affect the airline piloting profession and which cannot be funded by normal Association budgeting practices and policies, including defense of the integrity of the Association.

(2)    The payment of such benefits as are authorized by the Board of Directors or the membership. When, in the judgment of the Executive Council and Executive Board, the payment of benefits should be conditioned upon reinstituting or increasing dues contributions to the Major Contingency Fund, the Board of Directors, without regard to the cash balance of the Major Contingency Fund, may authorize reinstituting or increasing dues contributions to the Major Contingency Fund, in accordance with the procedures set forth in Section 14A above, to replace any monies drawn from the Major Contingency Fund for payment of benefits. The Board of Directors or the membership may authorize assessments to replace any monies drawn from the Major Contingency Fund or the basic net worth of the Association for payment of benefits.

C.    Expenditures from the Major Contingency Fund may be made only in accordance with the following procedures:

(1)    Except when authorization of the Board of Directors or membership is required under Section 14B(2) above, the President or the Executive Council may recommend such use to the Executive Board. Approval by the Executive Board shall require a two-thirds (2/3) majority vote (included shall be the initial expenditure authorized).

(2)    Following the Executive Board approval and prior to payment out of the Major Contingency Fund the Executive Council must approve by a two-thirds (2/3) vote the financial operating plan contemplated for such use.

D.    The Vice President-Finance/Treasurer is directed to report the status of the Major Contingency Fund to the Board of Directors and the entire membership using the following guidelines:

(1)    MCF cash balance above the applicable figure stated in the first two sentences of Section 14 A:

(a)    Annually to the membership.
(b)    Quarterly to the Board of Directors.

(2)    MCF cash balance below the applicable figure stated in the first two sentences of Section 14 A:

(a)    Quarterly to the membership.
(b)    Monthly to the Board of Directors.

(3)    The MCF Report will be distributed by the most cost effective method as determined by the Vice President-Finance/Treasurer.

(4)    The MCF Report will include at least the following information:

(a)    Total income in the fund.
(b)    Projects authorized money from the fund and the amount authorized.
(c)    Amount expended per project to date.
(d)    Balance of uncommitted money in the fund.

## SECTION 15 - DUES REFUND

All net income in excess of the maximum provided in Section 14, above, for the Major Contingency Fund shall be returned to those members whose financial obligations are current and to those persons with Agency Shop obligations whose Agency Shop financial obligations are current in the form of a prorated refund as of March 31 of the following calendar year.  Proration shall be on the basis of total payments for the preceding calendar year.  Such refund shall be payable not later than May 15 of the same calendar year.

## SECTION 16 - SPECIAL RESERVE ACCOUNT

A.    Dues paid by Active, Executive Active and Executive Inactive members in the amount of thirty-five one hundredths percent (0.35%) of airline income shall be placed in a Special Reserve Account.

B.    Dues placed or remaining in the Special Reserve Account which have been paid by pilots on an airline that has a deficit balance in its spending limit account at the end of any calendar quarter shall be transferred to the MEC account of that airline in the amount of the deficit.  Dues placed or remaining in the Special Reserve Account at the end of a year [starting with October 1, 1987 through December 31, 1988, as the initial year; thereafter calendar years] shall be returned to those members whose financial obligations are current and to those persons whose Agency Shop financial obligations are current in the form of a refund as of July 1 of the following calendar year, under the following conditions:

(1)    The pilots on any airline which has exceeded its budget or spending limit (including loans) shall not be entitled to any refund, except to the extent that dues of such pilots placed or remaining

in the Special Reserve Account are greater than the amount by which the budget or spending limit (including loans) has been exceeded; provided that there shall be no refunds if the Major Contingency Fund totals less than $25,000,000 cash balance at the end of the calendar year to the extent that the Executive Board authorizes transfer of any or all monies in the Special Reserve Account to the Major Contingency Fund (to the extent necessary to bring the Major Contingency Fund to $25,000,000 cash balance).  A 2/3 vote of the ALPA Executive Board shall be required to authorize the recapitalization of the Major Contingency Fund from the MEC Special Reserve Account.

(2)    All monies in the Special Reserve Account not transferred to the Major Contingency Fund and not subject to refund shall be transferred to the general reserves of the Association.  Proration for such dues refunds shall be calculated on the basis of total payments for the preceding calendar year, in accordance with uniform implementing policies to be established by the Executive Board.  Such refunds shall be payable not later than July 15 of the next calendar year.

## SECTION 17 - FISCAL RESPONSIBILITY

A.    Sound fiscal practices and budgeting are declared to be integral to the strength and effectiveness of the MECs and the Association.  Further expenditures shall not be authorized from National budgeting accounts which have exhausted their annual budgeted funds without approval of the Executive Council.

B.    The Executive Board is specifically authorized to levy assessments on the members in the employ of any airline, in order to assure fiscal responsibility by compliance with the requirements and conditions of the Spending Limit Policy.  Such assessments may be levied in any situation where policy provides for an MEC assessment of the members and the MEC does not levy such assessment within a reasonable time.  Any assessment levied by an MEC or the Executive Board for purposes of compliance with the Spending Limit Policy shall be due and owing to the Association.

C.    In the event written reports, plans or acts required of the MEC by the Spending Limit Policy, as now or hereinafter adopted, dealing with the MEC Account balance are not provided within the required time or in the event that any of the other requirements or conditions of the Spending Limit Policy are not satisfied or done by the MEC, then upon notification by the Vice President-Finance/Treasurer, ALPA shall not disburse any funds in excess of the then current quarter account balance and shall notify the MEC and MEC Officers that any such excess expenditures or obligations may be considered to be a violation covered by the provisions of Article XIX, Section 1A, of the Constitution and By-Laws.

D.    Dues paid by Active, Executive Active and Executive Inactive members in the amount of ten one hundredths percent (0.10%) of airline income shall be placed in the Administrative and Support Account, prior to application of Spending Limit Plan Policy allocations.

# ARTICLE X - PRESIDENT

## SECTION 1 - ELIGIBILITY AND ELECTION

A.    Active members in good standing of the Association, Retired members as defined in Article II, Section 3E, and Inactive Members as defined in Article II, Section 3D(2), shall be eligible to hold the office of President. The Board of Directors of the Association, by two-thirds (2/3) majority vote, may declare anyone eligible to hold the office.

B.    When required, the delegates in attendance at a Regular Board of Directors meeting shall nominate and shall elect the President.

C.    The member elected to this position shall not serve as a member or officer of his MEC during the term of the office of President.

## SECTION 2 - TERM OF OFFICE

A.    The regular term of office for President of the Association shall be four (4) years and shall commence the first day of January following his election.

B.    The term of office of the President, if elected as a result of a vacancy in the office for any reason, shall be for the balance of the unexpired term and shall commence immediately upon election.

## SECTION 3 - VACANCY IN OFFICE

A.    When a vacancy in the office of President occurs, such vacancy shall be filled by the First Vice President as provided in Article XI. The Executive Council shall call a special meeting of the Board of Directors within three (3) months from the date the vacancy occurred unless a regularly scheduled Regular Board meeting is to be held within six (6) months.

B.    Upon leaving the office of President, each former President shall be given the title of "President Emeritus."

## SECTION 4 - JURISDICTION AND DUTIES

A.    The President shall be the Chief Executive and Administrative Head of the Association. He shall supervise the affairs of the Association, its functions and shall coordinate its activities. He shall be responsible for and supervise the managerial functions within the Association. The President shall consult with and be assisted by the First Vice President, Vice President-Administration/Secretary, Vice President-Finance/Treasurer and the Executive Council in furthering the objectives and policies of the Board of Directors and the Executive Board. He shall have such other administrative assistants he may deem necessary.

B.    The President shall determine and implement the organizational structure of the Home Office in accordance with the declared policies of the Board of Directors and Executive Board.

C.    The President is charged with carrying out the policies of the Board of Directors and the Executive Board. He shall, unless otherwise provided in this Constitution and By-Laws, serve as Chairman of the Board of Directors, the Executive Board, and the Executive Council.

D.    The President shall provide an annual report to each member immediately following the annual audit which shall include, but shall not be limited to, the following:  Report of the President on the state of the Association; reports by major ALPA Committees; income/expense statement and balance sheet, all of which shall be presented in a manner which is useful to the membership.  The report shall be posted to ALPA's official Internet site, www.alpa.org, with the financial information available to members only via the Intranet.  This electronic posting shall fulfill the President's reporting requirement except to those members who have elected to receive their ALPA communications via U.S. Mail.

E.    The President may ballot the Board of Directors or the Executive Board for any cause he deems necessary.  Should flight security problems of an international, regional or operational character require, or for any other reason in which only a portion of the membership is concerned, the President may ballot the Master Executive Councils involved.  Should these flight security problems be of such a serious nature that the President may desire to call withdrawal of service of all carriers, he shall be so authorized after he conducts a ballot of the Executive Board.

F.    The President shall be required to ballot the Board of Directors as provided in Part 2B of the Strike Policy.

G.    Additionally, the President shall perform any duties mentioned elsewhere in the Constitution and By-Laws.

## SECTION  5 - SALARY

The Presidency of the Association shall be a full-time position with an annual salary.  The salary of the President and method of payment shall be established by the Board of Directors during the meeting at which he is elected or reelected.  His salary may be adjusted or supplemented by retirement, annuity payments, or other monetary benefits approved by the Board of Directors in session.

## SECTION  6 - PRESIDENTIAL COMMITTEES

The President may establish, charge, and appoint committees for services as needed in the furtherance of Association projects.  Such committees shall be known as Presidential Committees and shall report directly to the President. The President may terminate Presidential Committees at any time.

## SECTION  7 - BOND

The President shall be bonded for an amount determined by the Executive Council.

## ARTICLE XI - FIRST VICE PRESIDENT

### SECTION 1 - ELIGIBILITY AND ELECTION

A.    Any Active member in good standing of the Association shall be eligible to hold the office of First Vice President; provided that an incumbent First Vice President who becomes a Retired member as defined in Article II, Section 3F with sixteen months or less remaining in his regular term of office shall be eligible to hold the office of First Vice President for the remainder of that term.

B.    The Association representatives in attendance at a Regular Board meeting shall nominate and shall elect the First Vice President.

C.    The member elected to this position shall not serve as a member or officer of his MEC during the term of the office of First Vice President.

### SECTION 2 - TERM OF OFFICE

A.    The regular term of office for First Vice President shall be four (4) years and shall commence the first day of January following his election.

B.    The term of office of the First Vice President, if elected as a result of a vacancy in office, shall be for the balance of the unexpired term and shall commence immediately upon election.

### SECTION 3 - VACANCY IN OFFICE

When a vacancy in the office of First Vice President occurs, such vacancy shall be filled by the Vice President-Administration/Secretary as provided in Article XII. Either the Executive Board or Board of Directors, whichever is first convened, shall nominate and elect the First Vice President. Vacancies in office filled by the Executive Board shall be subject to ratification by ballot to the Board of Directors using ALPA Voting Procedures.

### SECTION 4 - JURISDICTION AND DUTIES

A.    The First Vice President shall:

(1)    Function under the jurisdiction of the President in carrying out the policies of the Board of Directors and the Executive Board.

(2)    Perform such other representing and coordinating duties assigned to him by the President.

(3)    Perform such other functions as may be assigned to him by the President, the Executive Board, the Executive Council or the Board of Directors.

B.    In the event the office of President becomes vacant for any reason, the First Vice President shall become acting President, assuming those jurisdictions and duties provided in Article X.

## ARTICLE XII - VICE PRESIDENT-ADMINISTRATION/SECRETARY

### SECTION 1 - ELIGIBILITY AND ELECTION

A.    Any Active member in good standing of the Association shall be eligible to hold the office of Vice President-Administration/Secretary; provided that an incumbent Vice President-Administration/Secretary who becomes a Retired member as defined in Article II, Section 3F with sixteen months or less remaining in his regular term of office shall be eligible to hold the office of Vice President-Administration/Secretary for the remainder of that term.

B.    The Association representatives in attendance at a Regular Board meeting shall nominate and shall elect the Vice President-Administration/Secretary.

C.    The member elected to this position shall not serve as a member or officer of his MEC during the term of the office of Vice President-Administration/Secretary.

### SECTION 2 - TERM OF OFFICE

A.    The regular term of office for Vice President-Administration/Secretary shall be four (4) years and shall commence the first day of January following his election.

B.    The term of office of the Vice President-Administration/Secretary, if elected as a result of a vacancy in office, shall be for the balance of the unexpired term and shall commence immediately upon election.

### SECTION 3 - VACANCY IN OFFICE

When a vacancy in the office of Vice President-Administration/Secretary occurs, such vacancy shall be filled by the Vice President-Finance/Treasurer as provided in Article XIII. Either the Executive Board or Board of Directors, whichever is first convened, shall nominate and elect the Vice President-Administration/Secretary. Vacancies in office filled by the Executive Board shall be subject to ratification by ballot to the Board of Directors using ALPA Voting Procedures.

### SECTION 4 - JURISDICTION AND DUTIES

A.    The Vice President-Administration/Secretary shall:

(1)    Function under the jurisdiction of the President in carrying out the policies of the Board of Directors and the Executive Board.

(2)    Act as custodian of the Association's documents, contracts, leases, deeds to Association property and general records other than those required to be kept by the Vice President-Finance/Treasurer.

(3)    Maintain current membership records, and shall, upon request, provide accurate records for the purpose of roll call voting at meetings of the Board of Directors, Executive Board and Master Executive Councils.

(4)    Be an ex officio member of the Election and Ballot Certification Board and shall conduct Association voting and election procedures and shall announce results.

(5)    Be responsible for keeping minutes of the meetings of the Board of Directors, the Executive Board and Executive Council.

(6)    Attend to Association correspondence including inquiries from members and the public concerning matters of general policy.

(7)    File Association reports prescribed by Federal, State and other governmental authorities.

(8)    Make arrangements for and give notice of meetings of the Board of Directors, the Executive Board and the Executive Council in accordance with this Constitution and By-Laws.

(9)    Maintain a current panel of candidates for Hearing Board and Appeal Board membership and shall notify the Executive Council when vacancies occur on the Hearing and Appeal Boards.

(10)    Maintain a current panel of candidates for membership on Seniority Integration Arbitration Boards and shall notify the Executive Council when vacancies occur.

(11)    Record and publish membership of committees of the President, the Executive Council, the Executive Board and the Board of Directors.

(12)    Sign Association documents and affix the Association's seal which will be in his custody.

(13)    Issue membership cards.

(14)    Exhibit Association records to any Director, Officer or member in good standing within a reasonable period of time upon application at the Home Office.

(15)    Be an ex officio member of the Board of Directors and Executive Board Credentials Committees.

(16)    Approve applications for membership.

(17)    Perform such other functions assigned to him by the President, Executive Board, Executive Council and the Board of Directors.

(18)    Perform such other duties mentioned elsewhere in the Constitution and By-Laws.

B.    In the event the office of First Vice President becomes vacant for any reason, the Vice President-Administration/Secretary shall become acting Vice President, assuming those jurisdictions and duties provided in Article XI.

C.    When the Vice President-Finance/Treasurer is unable to execute his duties and perform the functions stipulated in Article XIII, the Vice President-Administration/Secretary shall become acting Vice President-Finance/Treasurer and perform the duties of both Vice President-Administration/Secretary and Vice President-Finance/Treasurer.

## ARTICLE XIII - VICE PRESIDENT-FINANCE/TREASURER

### SECTION  1 - ELIGIBILITY AND ELECTION

A.      Any Active member in good standing of the Association shall be eligible to hold the office of Vice President-Finance/Treasurer; provided that an incumbent Vice President-Finance/Treasurer who becomes a Retired member as defined in Article II, Section 3F with sixteen months or less remaining in his regular term of office shall be eligible to hold the office of Vice President-Finance/Treasurer for the remainder of that term.

B.      The Association representatives in attendance at a Regular Board meeting shall nominate and shall elect the Vice President-Finance/Treasurer.

C.      The member elected to this position shall not serve as a member or officer of his MEC during the term of the office of Vice President-Finance/Treasurer.

### SECTION  2 - TERM OF OFFICE

A.      The regular term of office for the Vice President-Finance/Treasurer shall be four (4) years and shall commence the first day of January following his election.

B.      The term of office of the Vice President-Finance/Treasurer, if elected as a result of a vacancy in office, shall be for the balance of the unexpired term and shall commence immediately upon election.

### SECTION  3 - VACANCY IN OFFICE

When a vacancy in the office of Vice President-Finance/Treasurer occurs, such vacancy shall be filled by the Vice President-Administration/Secretary as provided in Article XII.  Either the Executive Board or Board of Directors, whichever is first convened, shall nominate and elect the Vice President-Finance/Treasurer.  Vacancies in office filled by the Executive Board shall be subject to ratification by ballot to the Board of Directors using ALPA Voting Procedures.

### SECTION  4 - JURISDICTION AND DUTIES

A.      The Vice President-Finance/Treasurer shall:

(1)     Function under the jurisdiction of the President in carrying out the policies of the Board of Directors and the Executive Board.

(2)     Be responsible for the general financial and fiscal administration of the Association.

(3)     Be accountable for the custodianship of cash funds, financial assets, and fiscal records of the Association.

(4)     Cause a modern accounting system to be maintained.

(5)     Cause the reserves of the Association to be maintained at an acceptable level in the form of negotiable interest bearing securities, and stocks and bonds, as allowed by law and, further, be responsible for the selection and monitoring of the Trustee(s) to manage these reserves, subject to the approval of the Executive Council.

(6)     Cause a combined financial report for January and February and a monthly financial report thereafter to be submitted to the Executive Board.  Said report shall be submitted quarterly to the Board of Directors.

(7)    Provide each Master Chairman with a monthly "How Goes It" report comparing expenses to budget on his airline.

(8)    Under the direction of the President, the Vice President-Finance/Treasurer shall cause a budget and financial reports to be prepared for the Association in line with modern budgetary and accounting principles for presentation to the Executive Council for review and approval.  Said budget shall encompass all Departments of the Association and allow for the establishment and maintenance of adequate reserves and basic net worth.

(a)    A one year budget will be submitted by the Vice President-Finance/Treasurer so as to be received by the Executive Council at least fifteen (15) days prior to the meeting called for the purpose of approval of the budget.

(b)    Such approved budget shall be the subject of consultation with the Executive Board in session at its regular September/October meeting.

(c)    The budget, which has been approved by the Executive Council and reviewed by the Executive Board is to be mailed first class mail to the Board of Directors at least twenty (20) days prior to the Board of Directors meeting.

(d)    In the years between Board of Directors meetings, the one year budget shall be mailed first class mail to the Board of Directors no later than November 1.

(9)    Review plans for maintenance of adequate funds to meet outstanding and planned commitments and may recommend studies of general economic, business, and financial developments insofar as they affect operations or policies and the annual budget.

(10)    Cause a certified financial audit of the books and accounts each year to be prepared by a firm of Certified Public Accountants and cause such audit report and recommendations of the auditors, if any, to be presented to the Executive Council, the Executive Board and the Board of Directors.  He may authorize a special audit at any time.

(11)    The Vice President-Finance/Treasurer may hire (and/or discharge) a properly qualified Internal Auditor.  The Internal Auditor shall report to the Vice President-Finance/Treasurer.

(12)    The Vice President-Finance/Treasurer shall be responsible to develop with a Certified Public Accountant a format in accordance with standard accounting procedures to be used to provide adequate disclosure of ALPA assets and liabilities to the membership.

(13)    Exhibit the books and accounts to any Officer or Active member in good standing of the Association upon application at the Home Office during business hours.

(14)    Maintain adequate and suitable insurance on Association property.

(15)    Perform such other functions as are assigned to him by the President, the Executive Board, the Executive Council, and the Board of Directors.

(16)    Perform such other duties required elsewhere in the Constitution and By-Laws.

## SECTION  5 - BOND

The Vice President-Finance/Treasurer shall be bonded in such amount as the Executive Council may determine.

## ARTICLE XIV - EXECUTIVE VICE PRESIDENTS

### SECTION 1 - ELIGIBILITY AND ELECTION

A.     Any Active member in good standing of the Association shall be eligible to hold the position of Executive Vice President in accordance with paragraphs B, C and D, of this Section 1.

B.     On the third day of a Board of Directors meeting, and following the regular election of the Vice President-Finance/Treasurer, if one is held, each airline in Election Group A, the airlines in Election Sub-Group B-1 as a group, the airlines in Election Sub-Group B-2 as a group, the airlines in Election Sub-Group B-3 as a group, the airlines in Election Sub-Group B-4 as a group, and the airlines in Election Group C as a group will hold election caucuses consisting of their Board of Directors members and proxies under Article VII, Sections 8 and 9, to elect Executive Vice Presidents. Three-fourths of the persons eligible to attend a caucus, including proxies, will constitute a quorum for that caucus. The chairman of each single-airline caucus will be the highest-ranking MEC officer who is not a candidate. The chairman of each multi-airline caucus will be the MEC Chairman who has the longest continuous tenure in that office and who is not a candidate, or if all are candidates, a member of the caucus who is elected by the majority of the persons voting. In each caucus, nominations of candidates from the airline or airlines in the caucus may be made by any MEC Chairman or Board of Directors member of an airline in the caucus, including proxies.

C.     In order to provide a fair opportunity for election as Executive Vice President, the following conditions apply to elections in Election Sub-Groups B-1, B-2, B-3 and B-4 when they contain two or more airlines:

(1)     Members of the same airline may not be elected Executive Vice President from the same Election Sub-Group at consecutive regular Board of Directors meetings if that airline holds the roll call majority in the Election Sub-Group (as determined under Article XIV, Section 5D) in both elections. This provision shall be applicable when the Election Sub-Group at the time of the first election contained one or more airlines.

(2)     The condition specified in sub-paragraph 1. may be waived for a current election by secret ballot roll call majority vote of the combined airline or airlines in the Election Sub-Group caucus, not including the majority airline.

D.     Upon close of nominations, the members of the Board of Directors in each caucus, including proxies, will elect an Executive Vice President. Each member of the Board of Directors in a caucus, including proxies, will vote for one nominee for each position. The nominee, in the case of each caucus, receiving a majority of votes cast on a roll call basis, will be certified to and acknowledged by the Board of Directors as Executive Vice Presidents responsible to the Association at large.

(1)     In the event that no one nominee receives a majority of votes cast on the first roll call ballot, a runoff roll call ballot will be conducted between the two nominees receiving the highest number of votes. In the event that there is a tie for second place in the balloting, a runoff election shall be conducted between the nominees who are tied to determine which nominee will be on the next roll call ballot.

### SECTION 2 - TERM OF OFFICE

A.     The term of office for each Executive Vice President shall be for two (2) years and shall commence on January 1 following adjournment of the Regular Board of Directors meeting at which he was elected.

B.    In the event of a vacancy in office, the elected successor shall take office immediately upon election and serve for the balance of the unexpired term.

## SECTION  3 - VACANCY IN OFFICE

A.    When a vacancy in office occurs less than sixty (60) days prior to the date for commencement of the Regular Board of Directors meeting, said office shall be left vacant to be filled for the remainder of the term by the Executive Vice President elected at the regularly scheduled biennial meeting of the Board of Directors, provided that a vacancy in a position elected from Election Group A, or from any single-airline Election Group, may be filled for the remainder of the term in accordance with the procedures set forth in Section 3B(1) below.

B.    When a vacancy in the office occurs more than sixty (60) days prior to the date for commencement of the Regular Board of Directors meeting, the Vice President-Administration/Secretary, when advised in writing of such vacancy, shall immediately initiate procedures applicable for filling such vacancy, as set forth in the following subparagraphs:

(1)    If there is a vacancy in a position elected from Election Group A or from any single-airline Election Group or Sub-Group, the Vice President-Administration/Secretary will immediately notify the MEC Chairman and MEC members of the affected airline and the MEC Chairman will appoint an Interim Executive Vice President.  The members of the MEC of that airline (including proxies eligible to vote for MEC officers) will elect a successor on an open roll call vote at the next regular or special meeting of the MEC.  The nomination and election procedures set forth in Section 1 above shall otherwise govern.  The nominee who is elected will take the oath of office specified in Article I, Section 7 to be administered by the President or his designee.

(2)    If there is a vacancy in a position elected from a multi-airline Election Group or Sub-Group other than Group A, the Vice President-Administration/Secretary will immediately notify the MEC Chairmen and MEC members from the affected airlines.  The MEC Chairmen of those airlines will each be entitled to nominate one candidate from any airline in the Election Group or Sub-Group, to fill the vacancy, provided that if the vacated position was held by a member from a non-majority airline under the provisions of Section 1C(1), above, the nominees may only be members from a non-majority airline.  The members of the MECs from the airlines in the Election Group or Sub-Group will elect a successor from among those candidates by open roll call vote by a ballot initiated by the Vice President-Administration/Secretary within fifteen (15) days after notice of the vacancy was provided to the MECs.  The nominee who receives the greatest number of votes will be elected and take the oath of office specified in Article I, Section 7 to be administered by the President or his designee.

C.    An Executive Vice President from an Election Group A airline or any single-airline Election Group or Sub-Group who accepts employment at a different airline or an Executive Vice President from any multi-airline Election Group or Sub-Group other than Group A who accepts employment at an airline in a different Election Group or Sub-Group shall notify the Vice President-Administration/Secretary in writing within ten (10) days.

(1)    Upon receipt of such notification more than 180 days prior to the expiration of a regular term of office for an Executive Vice President from Election Group A or from any single-airline Election Group or Sub-Group, the Vice President-Administration/Secretary will immediately notify the MEC Chairman and MEC members of the affected airline.  The members of the MEC of that airline, including proxies eligible to vote for MEC officers, will determine by roll call vote whether or not to declare a vacancy in the position.  If a vacancy is declared, the vacancy will be dealt with in accordance with Sections 3A and 3B of this Article.

(2)    Upon receipt of such notification more than 180 days prior to the expiration of a regular term of office for an Executive Vice President from a multi-airline Election Group or Sub-Group other than Group A, the Vice President-Administration/Secretary will immediately conduct a referendum among the MEC members from the affected Election Group or Sub-Group, by roll call vote to determine whether or not the position should be declared vacant.  If a vacancy is declared, the vacancy will be dealt with in accordance with Sections 3A and 3B of this Article.

## SECTION  4 - JURISDICTION AND DUTIES

The Executive Vice Presidents shall serve as members of the Executive Council and as such shall be responsible to the Association at large.  Each Executive Vice President who is elected during the Board of Directors meeting shall subscribe to the oath of office in Article I, Section 7, to be administered by the President of the Association or his designee in open session of the Board of Directors.

## SECTION  5 - EXECUTIVE VICE PRESIDENTIAL ELECTION GROUPS AND SUB-GROUPS

| A. | Executive Vice Presidential Election Group | Member Airlines by Active Membership and Dues Income |
|---|---|---|
| | Group A | All U.S. airlines with either 4000 or more Active Members in Good Standing or with projected annualized dues income of $10,000,000 or more. |
| | Group B | All U.S. airlines with less than 4000 Active Members in Good Standing and with projected annualized dues income of under $10,000,000, divided into four sub-groups. |
| | Group C | All Canadian airlines |

B.    There shall be one (1) Executive Vice President elected by each airline in Election Group A and one Executive Vice President elected by each other Election Group or Sub-Group.

C.    For the purpose of Executive Vice President elections, airlines shall be assigned by the Vice President-Administration/Secretary to Election Groups A and B based upon their number of Active members in good standing, or in the case of Election Group A their projected annual dues income, as of September 1 immediately preceding the Regular meeting of the Board of Directors.

D.    For the purpose of determining the four Sub-Groups for Election Group B, the Vice President-Administration/Secretary shall prepare a list of all airlines in Election Group B in order of Active membership in good standing, largest to smallest, showing the number of Active members in good standing for each airline in the Election Group.  The first, second, third and fourth largest airlines on the Election Group B list shall be assigned by the Vice President-Administration/Secretary to Election Sub-Groups B-1, B-2, B-3 and B-4 respectively, followed by assignment to each such Sub-Group of the fifth, sixth, seventh and eighth largest airlines respectively, followed by further assignment of airlines on the Election Group B list in the same manner until all airlines on the Election Group B list have been assigned to Sub-Groups.

E.    A change in Active membership of an airline or projected annual dues income subsequent to such assignment shall not change the Election Group or Sub-Group of an airline for that term of office or preclude an Executive Vice President from completing a term of office.

## SECTION  6 - RECALL

A.    Recall of  Executive Vice Presidents from Group A and Sub-Groups B-1, B-2, B-3 and B-4, with or without cause, shall be initiated by majority vote of the Executive Board in session, or by the Board of Directors.

B.    Upon initiation of recall under Section 6A above by the Executive Board, the Vice President-Administration/Secretary shall within fourteen (14) days distribute by mail a recall ballot to all members of the Board of Directors covering the recall of the Executive Vice President involved.  Such ballot shall be conducted on a roll call basis.  A simple majority returned shall govern on the recall issue.

C.    The Executive Vice President from Group C may be recalled from office with or without cause either pursuant to the procedures set forth in Sections 6A and 6B above or pursuant to the procedures set forth in Article XVI, Section 1B applied exclusively to Active members in good standing from Canadian (Group C) airlines.  Any action, vote or ballot to recall from office the Executive Vice President from Group C shall also constitute simultaneous action, voting and balloting to remove such individual from office as Canada Board President.

## ARTICLE XV - EXECUTIVE ADMINISTRATOR

### SECTION  1 - ELIGIBILITY

Any member of the Association shall be eligible to hold the office of Executive Administrator.  In addition, any person of lawful age with appropriate qualifications and experience will be eligible for appointment to this office.

### SECTION  2 - APPOINTMENT, JURISDICTION AND DUTIES

The President, with the advice and approval of the Executive Council, shall appoint an Executive Administrator who shall assist the President in the performance of the President's duties generally, including assistance in the administration of the various departments of the Association, the maintenance of active liaison between the Home Office and all departments, councils, members and in all functions of the Association, and to perform such other duties as the President and the Executive Council may assign.

### SECTION  3 - REMOVAL

The Executive Administrator may be removed from office by the President at any time, subject to a review and hearing of such action by the Executive Council if requested within fifteen (15) days. When such removal is reviewed by the Executive Council, the reasons for its actions and its final determination shall be reported to the next meeting of the Executive Board or Board of Directors.

### SECTION  4 - SALARY

The amount and nature of the compensation and the basis of employment of the Executive Administrator shall be fixed by the President, subject to the approval of the Executive Council.

# ARTICLE XVI - RECALL OF OFFICERS

## SECTION 1 - RECALL OF OFFICERS

A.     Any officer of the Association, either with or without cause, may be recalled or removed from office by action of the Board of Directors.

(1)    For the purpose of recall, Directors representing seventy-five percent (75%) of the members in good standing shall constitute a quorum.

(2)    Recall shall require the affirmative vote of Directors representing a majority of the members in good standing who are represented by the Directors voting.

(3)    Such recalled officer, upon recall, shall be divested immediately of all authority, prestige, rights and responsibilities pertaining to his office.

B.     Recall of any officer of the Association may also be accomplished in the following manner:

(1)    If twenty-five percent (25%) of the Active members in good standing petition the Vice President-Administration/Secretary requesting a recall of any of said officers, it shall be the duty of the Vice President-Administration/Secretary to circulate such a recall ballot to all Active members. If the Vice President-Administration/Secretary is the officer whose recall is being requested, it shall be the duty of the President to circulate such a recall ballot.  Such ballots shall be returnable to the Election and Ballot Certification Board, and a reasonable deadline date shall be specified thereon. Recall shall require a two-thirds (2/3) vote of all Active members in good standing voting in such recall election.  The Election and Ballot Certification Board shall certify the results of such recall election to the officers, the Board of Directors, and the membership.   When such recall is accomplished, such recalled officer shall immediately be divested of all authority, prestige, and rights commensurate with his office.

## ARTICLE XVII – COMPENSATION AND EXPENSES

### SECTION 1 – PRESIDENT

The salary to be paid to the President shall be as provided in Article X, Section 5.

### SECTION 2 – FIRST VICE PRESIDENT, VICE PRESIDENT-FINANCE/TREASURER, VICE PRESIDENT-ADMINISTRATION/SECRETARY

Compensation of the First Vice President, Vice President-Administration/Secretary and Vice President-Finance/Treasurer shall be established by the Board of Directors.

### SECTION 3 – EXECUTIVE VICE PRESIDENTS

Compensation of Executive Vice Presidents shall be established by the Board of Directors, provided that the Executive Board or Executive Council may establish the compensation for an Executive Vice President temporarily assigned to full time duty with the Association.

### SECTION 4 – MASTER EXECUTIVE COUNCILS AND REPRESENTATIVES OR MEMBERS ASSIGNED TO DUTY WITH THE ASSOCIATION

Master Executive Council officers, Master Executive Council members, and representatives or members assigned to duty with the Association by a Master Executive Council or at the national level, whether assigned to part time or full time duty, shall be compensated in accordance with policy established by the Board of Directors or Executive Board.

### SECTION 5 – PRINCIPLES FOR COMPENSATION POLICY

Flight pay loss, in terms of what an officer, representative or member could earn pursuant to the collective bargaining agreement if engaged in line flying, shall continue to be a part of compensation policy under Sections 2 through 4 above. The Board of Directors or Executive Board may further establish policy which recognizes the need for other methods of fair and equitable compensation and days off for officers, representatives and members assigned to part time or full time duty with the Association.

### SECTION 6 – EXPENSES

Association policy shall be established to provide for and govern payment and reimbursement of expenses incurred by officers, representatives or members while on Association business.

## ARTICLE XVIII - AGREEMENT APPROVAL AND VALIDATION

### SECTION 1 - COLLECTIVE BARGAINING

Conference or negotiations shall not be initiated, carried on, or concluded in the name of ALPA by any member, group, or groups of members thereof to make or establish employment agreements relating to rates of pay, rules, or other conditions of employment, or any other agreements, contracts, or documents of a similar or related character, or any other form of agreements, contracts, or documents without the prior approval of the President. Any and all agreements, contracts, or documents of any and every character whatsoever shall not become effective, binding or operative unless and until they bear the signature of the President.

### SECTION 2 - RATIFICATION

A.    Any contract, letter of agreement or letter of understanding that, in the opinion of the MEC, substantially affects the pay, working conditions, retirement, or career security of member pilots will be subject to membership ratification under the following terms and conditions:

(1)    The MEC will, at its option, ballot the membership of their airline to determine if it is their desire to have membership ratification. Once membership ratification is established it will remain in effect until changed by another ballot of the membership through MEC action.

(2)    Unless the membership is balloted, as described in Section 2A(1) of this Article, membership ratification of individual contracts and agreements will remain the option of the MEC.

### ARTICLE XIX - TRUSTEESHIPS AND WITHDRAWAL OF REPRESENTATION

### SECTION  1 - TRUSTEE ACTION TO PROTECT THE ASSOCIATION

A.    The President of the Association, with the concurrent approval of the Executive Council  and Executive Board, as applicable, is authorized to take corrective action against an airline Master Executive Council or Local Executive Council, or any officer(s) or representative(s) thereof, if any such Council, officer(s) or other representative(s), in the judgment of the President of the Association and the Executive Council and Executive Board, as applicable, violates or fails to comply with any of the provisions of the Constitution and By-Laws of the Association or policies, engages in financial malpractice or corruption (including embezzlement or misappropriation of funds), or exposes the Association to detrimental consequences by engaging in a substantial failure to perform significant legal or representational duties of a bargaining representative.

B.    Such corrective action may include, in the case of a Master Executive Council or Local Executive Council, the suspension or revocation of recognition of such Master Executive Council or Local Executive Council, its dissolution, the suspension or removal of any of its officers or committees or representatives and the designation of a Trustee or Trustees over the affairs and property of the Master Executive Council or Local Executive Council.

C.    The Master Executive Council or Local Executive Council or officer(s) or representative(s) thereof involved, before any corrective action is taken, shall be given written notice of the charges, a reasonable time to prepare a defense and shall be afforded a full and fair hearing before the Executive Board on no less than twenty (20) days written notice, unless the President determines that emergency action under Section 1D should be proposed or the Executive Council defers to the Executive Board after considering emergency action under Section 1D.

D.    The President may determine that emergency corrective action should be proposed and taken with concurrent approval of the Executive Council.  When such emergency corrective action is proposed, the Master Executive Council or Local Executive Council or officer(s) or representative(s) thereof involved shall be given written notice of the charges at least forty-eight (48) hours prior to taking emergency action.  When such emergency action is taken, the affected Master Executive Council or Local Executive Council or officer(s) or representative(s) thereof shall be afforded a full and fair hearing before the Executive Board no more than thirty (30) days after the establishment of the trusteeship, provided that the hearing may be held more than thirty (30) days after establishment of the trusteeship if the affected Master Executive Council or Local Executive Council or officer(s) or representative(s) thereof agree to such later hearing date.  The Executive Board shall affirm, reverse or modify  the decision of the President and Executive Council.

E.    The President of the Association may cause written charges to be served, notice to be given and the Executive Council and Executive Board to be convened in order to initiate the procedures herein provided.

### SECTION  2 - APPEAL AND REVIEW

A.    The Master Executive Council or Local Executive Council or officer(s) or any representative(s) thereof involved may appeal the decision of the President and Executive Board to the next ensuing meeting of the Board of Directors of the Association.  Upon written request, the President shall authorize flight pay loss and expenses for the pilot or pilots as to whom the corrective action was taken for attendance at said Board of Directors meeting.  Notice of any such appeal shall be filed in writing with the Association's Vice President - Administration within one hundred twenty (120) days after transmittal of the President's and Executive Board's decision, and an appellant shall have the right to appear before the Board of Directors as provided herein.  During the pendency of any appeal

from the decision of the President and Executive Board, said decision shall remain in full force. The Board of Directors shall affirm, reverse or modify the decision of the President and the Executive Board.

## SECTION 3 - DUTIES, RIGHTS AND OBLIGATIONS OF TRUSTEES

In any case where the President of the Association appoints a Trustee to take charge of and conduct the affairs of a Master Executive Council or Local Executive Council, such Trustee shall have the right, in the name of the Association, upon demand, to all of the funds, properties, books and assets of the suspended Master Executive Council or Local Executive Council whether obtained from the Association's Treasury or from membership assessment or contribution, and shall hold such funds and properties in trust on behalf and for the benefit of the respective membership group involved, and to be expended in the conduct of their affairs. The President may also appoint temporary officers and committees to serve under the supervision of a Trustee. Said Trustee and temporary officers shall be empowered to act in a representative capacity in the same manner and to the same extent as the deposed or suspended officers that they replace in accordance with applicable law. A Trustee appointed under this rule may be removed, with or without cause, by the President at any time.

## SECTION 4 - TERMINATION OF TRUSTEESHIP

Such Trusteeship shall be terminated by direction, if any, of the Board of Directors, or the Executive Board or the Executive Council, or by the President, as soon as in its, or his, judgment the need for the same shall no longer exist, and thereupon the affairs and assets then held in trusteeship shall be returned to the respective local body. If appropriate, the Master Executive Council or the Local Executive Council or any officer or representative thereof shall be reestablished as provided in Article III and/or Article IV of the Constitution and By-Laws of the Association.

## SECTION 5 - REPRESENTATION

A.    The Executive Board at any regular or special session may withdraw representation in respect of any pilot group in the event that such pilot group or its representatives shall have acted so as to place itself at basic variance with the Constitution and By-Laws and policy of the Association. The Executive Board shall treat with the membership status of such entire pilot group pursuant to the provisions of the Constitution and By-Laws.

B.    Such action shall be taken by the Executive Board following a review of all the facts and circumstances, consideration of the views of the affected pilot group, or its representatives, to the extent proffered by them. The Executive Board may effect such withdrawal of representation and treat the membership status on terms it deems appropriate to the circumstances. The Executive Board may provide for the modification or recision of action taken by it at such times and upon such conditions as it deems appropriate.

## SECTION 6 - REVIEW

The Executive Board action shall be the subject of review and consideration at the regular or special meeting of the Board of Directors next ensuing. However, the action of the Executive Board shall take effect at the times and in the manner provided in the Executive Board resolutions.

## ARTICLE XX - CREW COMPLEMENT - CREW REQUIREMENTS

### SECTION 1 - MANDATORY CREW MANNING POLICY

A.    The following shall become mandatory policy of the Air Line Pilots Association as such policy relates to crew complement and crew requirements on turbine powered fixed wing aircraft:

(1)    All members of the flight deck operating crew shall be pilots (defined to include Professional Flight Engineers on airlines which have continuously employed flight deck operating crewmembers holding such qualifications since entry into ALPA representation).

(2)    The third crew member requirement on present aircraft shall be continued and nothing herein shall prevent the addition of pilot crew members to presently certificated aircraft.

(3)    Every effort shall be made to encourage standard usage of the titles Captain, First Officer, Second Officer, Third Officer, etc.

### SECTION 2 - SUPPORT OF ALPA

A.    The full support of the Association, including strike benefits, shall be provided to any pilot and pilot group in fulfilling the Association's crew complement policy.

B.    If any airline attempts to require any member of this Association to fly any aircraft contrary to Association policy, the President shall call a special Board of Directors meeting to convene within thirty (30) days with the express purpose of considering a nationwide withdrawal of service.

C.    If the Federal Aviation Administration fails properly to carry out its certification obligations, the President shall promptly call a Board of Directors meeting to initiate protest action including suspension of service.

### SECTION 3 - CONTRARY CONTRACTS AND AGREEMENTS

If any MEC effects either a contract or a nonbinding agreement contrary to the mandatory crew complement policy of this Association, the President shall call a special Board of Directors meeting to convene within thirty (30) days with the express purpose of initiating appropriate action up to and including trusteeship.

## ARTICLE XXI - CUSTODIANSHIP

### SECTION 1 - AUTHORIZATION

The President of the Association, with the concurrent approval of the Executive Council, is authorized to take emergency action to provide representation for the pilots in the service of any airline which interrupts or ceases all or substantially all operations or which is conducting operations after filing of bankruptcy or reorganization proceedings or pending liquidation, or of any airline or Local Council where there is an insufficient number of eligible members willing to serve to fill vacancies in office or where such action is requested by the MEC or Local Council and is deemed necessary to assure the performance of collective bargaining agreements.

### SECTION 2 - CUSTODIAN REPRESENTATIVES

A.    Such emergency action may include the appointment by the President of custodian representatives, who shall function as representatives in place of or with supervisory authority over the last or current Master Executive Council and Local Executive Councils on the airline and their officers.  Such custodian representatives may include members who served as members and officers of the last Master Executive Council, provided that such members are willing to serve.

B.    The number of such custodian representatives and their respective duties shall be determined by the President and may vary from time to time as circumstances may require.  Upon appointment, the custodian representatives designated for such purpose by the President shall have the right, on behalf of the Association, to all the funds, properties, books, assets, records and files of the former Master Executive Council and Local Executive Councils and their officers, whether obtained from the Association's treasury or from membership assessment or contribution, and shall to the extent provided for in respect of a Master Executive Council or Local Executive Council, hold such funds and properties on behalf of and to be used for the benefit of the respective membership group involved.  Such emergency action may also include establishing a budget for representation activities on the airline.  Any and all custodian representatives appointed under this Section may be removed, with or without cause, by the President at any time.

### SECTION 3 - HEARING BEFORE EXECUTIVE COUNCIL

A.    The President shall notify the MEC Chairman of proposed emergency action at least forty-eight (48) hours prior to taking emergency action with concurrent approval of the Executive Council.  When such emergency action is taken, the affected Master Executive Council and Local Executive Councils and their officers shall be given written notice of the basis for authorization of custodianship under these provisions and a full and fair hearing respecting the custodianship before the Executive Council no more than twenty (20) days after the establishment of the custodianship, provided that the hearing may be held more than twenty (20) days but no later than ninety (90) days after establishment of custodianship if the affected Master Executive Councils and Local Executive Councils agree to such later hearing date.  Upon written request, the President shall authorize expenses for the pilot or pilots as to whom the action was taken for attendance at this hearing.  The Executive Council shall affirm, modify or reverse the prior decision of the President and the Executive Council.

B.    Where the President determines, in his discretion, that immediate emergency action establishing a custodianship is not required prior to a hearing, the President may cause the Executive Council to be convened and conduct a full and fair hearing prior to establishing a custodianship, provided that nothing in this Section shall preclude emergency action establishing a custodianship prior to such hearing.  The President and Executive Council, after such hearing, may take all action authorized by Sections 1 and 2 of this Article.

C.    Nothing in this Article shall preclude any MEC involved in an actual or pending bankruptcy or reorganization or absence of representation as specified in Section 1 of this Article from requesting custodianship under this Article.

## SECTION 4 - APPEAL AND REVIEW

The affected former Master Executive Council or Local Executive Councils or their officers may appeal the decision of the President and Executive Council under Sec. 3, above, to the next ensuing meeting of the Executive Board of the Association or to the next regular Board of Directors meeting when no regular Executive Board meeting is scheduled.  Notice of any such appeal shall be filed in writing with the Association's Vice President-Administration/Secretary within one hundred twenty (120) days after transmittal of the President's and the Executive Council's decision, and an appellant shall have the right to a full and fair hearing before the Executive Board or Board of Directors, or a committee thereof.  Upon written request, the President shall authorize expenses for the pilot or pilots as to whom the action was taken for attendance at this meeting.  During the pendency of any appeal from the decision of the President and Executive Council said decision shall remain in full force.  The Executive Board or Board of Directors shall affirm, reverse or modify the decision of the President and the Executive Council.

## SECTION 5 - ATTENDANCE AT EXECUTIVE BOARD AND BOARD OF DIRECTORS MEETINGS

Custodian representatives who represent Active members in good standing may attend Board of Directors and Executive Board meetings as delegates, provided that they shall not have the right to vote unless they have been elected by secret ballot under the procedures established by Article III. Custodian representatives who do not represent Active members in good standing may attend such meetings with the approval of the President or Executive Council as observers.

## SECTION 6 - TERMINATION OF CUSTODIANSHIP

Such Custodianship shall be terminated by direction, if any, of the Board of Directors, Executive Board or Executive Council or the President, as soon as in its or his judgment the need for the same shall no longer exist, and thereupon the affairs and assets then held in custodianship shall be returned to the respective body or, if appropriate, entered into the National Account. If appropriate, the Master Executive Council and/or Local Executive Council, any officer or representative thereof, shall be re-established as provided in Article III and/or Article IV of the Constitution and By-Laws of the Association.

## SECTION 7 - ACTION UNDER ARTICLE XIX

Nothing in this Article shall preclude action under Article XIX if appropriate under the circumstances.

## ARTICLE XXII - CANADA BOARD

### SECTION 1 - ORGANIZATION

A.    The Canada Board shall be composed of and the members shall be the Canada Board President, Canada Board Vice President/IFALPA Director, Canada Board Secretary-Treasurer and the Chairman of the Master Executive Council of each Canadian airline.

B.    The officers of the Canada Board shall be the Canada Board President, Canada Board Vice President/IFALPA Director and Canada Board Secretary-Treasurer.

C.    The Canada Board shall be governed by the ALPA Constitution and By-Laws, ALPA policy and the Canada Board By-Laws as approved by the Executive Council.  The Canada Board shall be subject to the authority of the Board of Directors, Executive Board and Executive Council under the Constitution and By-Laws.

### SECTION 2 - JURISDICTION AND DUTIES

A.    The Canada Board will have the following jurisdiction and duties:

(1)    Liaison with the government of Canada and Canadian institutions as to the national interests of Canadian pilots.

(2)    Act as the successor to CALPA for purposes of IFALPA membership and IFALPA representation of the pilots of Canada.

(3)    Communicate the national interests of Canadian pilots in Canadian government and IFALPA forums.

(4)    Adopt and amend By-Laws for the Canada Board, consistent with the ALPA Constitution and By-Laws, subject to approval by the Executive Council.

(5)    Establish committees and appoint committee chairmen as may be necessary for conducting its business.

(6)    Subject to its By-Laws as approved by the Executive Council, approval of an annual Canada Board budget and authority to levy assessments on the Master Executive Councils of each Canadian airline, to be paid from the operating income of the respective Master Executive Councils, or on the members in the employ of all Canadian airlines, for any lawful trade union purpose within the jurisdiction and duties of the Canada Board.

### SECTION 3 - MEETINGS

A.    Regular meetings shall be held every six (6) months.

B.    Special meetings may be called at any time by the Canada Board President or President of the Association.  A special meeting shall also be called upon the written request of at least thirty percent (30%) of the members of the Canada Board.

C.    At any meeting of the Canada Board, a majority of the members of the Canada Board shall constitute a quorum for transacting business.

D.    Decisions on all questions shall be determined by a majority vote unless otherwise specified in the Constitution and By-Laws.  Each member of the Canada Board, including officers, shall have one vote, except that a roll call vote shall be taken at the request of any member of the Canada Board.  The chairman of the meeting shall not exercise the right to vote except to break a tie.  When voting by roll call, each Master Executive Council Chairman shall have one vote for each Active member in good standing represented by that MEC Chairman (minus the Canada Board officers entitled to vote on the question) and each Canada Board officer entitled to vote shall have one vote.

E.    The use of proxies at meetings shall be as determined by the Canada Board By-Laws.

F.    Minutes, including at least a record of attendance and compilation of actions, shall be kept of all regular and special meetings.  A copy of such minutes shall be sent to each member of the Canada Board and the Vice President-Administration/Secretary within thirty (30) days after adjournment of each meeting.

## SECTION 4 - CANADA BOARD PRESIDENT

A.    The Canada Board President shall be the Executive Vice President for Group C (All Canadian airlines).  The term of office in both positions shall be simultaneous for all purposes.  Election to office as Executive Vice President for Group C shall constitute election to office as Canada Board President.  Recall or resignation from office as Executive Vice President for Group C shall constitute recall or resignation from office as Canada Board President, and vice-versa.  The Canada Board President may not be charged under Article VIII of the Constitution and By-Laws for acts of omission or commission as a result of his duties in office as Canada Board President, but shall be subject to recall under Article XIV, Section 6.

B.    The Canada Board President shall:

(1)    Be the principal officer of the Canada Board and chair all meetings.

(2)    Be the principal spokesman for the Canada Board on matters within its jurisdiction.

(3)    Be responsible for planning, coordinating and administering the affairs and activities of the Canada Board within established policies.

(4)    Consult with and be assisted by the other officers of the Canada Board in furthering the objectives and policies of the Association.

(5)    Be an ex officio member of all Canada Board committees.

(6)    Be the chief Canadian delegate to IFALPA.

## SECTION 5 -   CANADA BOARD VICE PRESIDENT/IFALPA DIRECTOR AND CANADA BOARD SECRETARY-TREASURER

A.    The Canada Board Vice President/IFALPA Director and Canada Board Secretary-Treasurer shall be elected by the Group C caucus, in session, at each regular Board of Directors meeting, following the election of the Group C Executive Vice President/Canada Board President, pursuant to the same eligibility requirements, nomination procedures and election procedures as applicable to the Group C Executive Vice President election.  The term of office shall be as set forth in Article XIV, Section 2 of the Constitution and By-Laws.

B.    The Canada Board Vice President/IFALPA Director shall:

(1)    Perform such duties as may be specifically assigned to him by the Canada Board President.

(2)    Assist the Canada Board President in furthering the objectives and policies of the Association.

(3)    Perform the duties of the Canada Board President in his absence.

(4)    Perform the duties of IFALPA Director in accordance with the Canada Board By-Laws.

C.    The Canada Board Secretary-Treasurer shall:

(1)    Perform such duties as may be specifically assigned to him by the Canada Board President.

(2)    Assist the Canada Board President in furthering the objectives and policies of the Association.

(3)    Assist the Canada Board President in administering the finances of the Canada Board.

(4)    Maintain Canada Board records.

D.    Either officer may be recalled with or without cause by a two-thirds (2/3) vote of the Canada Board, in session, conducted by secret ballot with each member casting one vote.

## SECTION 6 - VACANCY IN OFFICE

A.    In the event a vacancy in the office of Canada Board President occurs more than sixty (60) days prior to the expiration of a regular term of office, the Canada Board Vice President/IFALPA Director shall become acting Canada Board President, and acting Group C Executive Vice President, pending filling of the vacancy in accordance within the provisions of Article XIV, Section 3B of the Constitution and By-Laws.  If a vacancy in office occurs less than sixty (60) days prior to the expiration of a regular term of office, the Canada Board Vice President/IFALPA Director shall fill the vacancy for the duration of the term.  Filling the vacancy as provided herein shall also fill the vacancy in office of Executive Vice President for Group C.  Article XIV, Section 3 shall not be applicable to the Executive Vice President for Group C except as provided herein.

B.    In the event of a vacancy in either the office of Canada Board Vice President/IFALPA Director or Canada Board Secretary-Treasurer or both offices, the office(s) will be filled by election at the next meeting of the Canada Board.  Pending such meeting, the remaining officer shall serve in the vacant office.  If both offices are vacant, the Canada Board President may appoint acting officers pending an election.

C.    In the event of a simultaneous vacancy in the offices of Canada Board President and Canada Board Vice President/IFALPA Director, the Canada Board Secretary-Treasurer shall serve as acting Canada Board President, subject to Section 6A above.

D.    In the event of a simultaneous vacancy in all Canada Board offices, the President shall convene a special meeting within ten (10) days for elections to fill the vacancies.

# INDEX

Accused Member ...................................................................................................... 63
Active Member .......................................................................................................... 14
Affiliations ................................................................................................................ 10
Agenda
    Board of Directors Meetings-Regular ................................................................. 55
    Board of Directors Meetings-Special ................................................................. 56
    Executive Board Meetings-Regular .................................................................... 49
    Executive Board Meetings-Special ..................................................................... 49
    Local Council Meetings-Regular ........................................................................ 28
    Local Council Meetings-Special ......................................................................... 28
    Master Executive Council Meetings-Regular ..................................................... 41
    Master Executive Council Meetings-Special ...................................................... 41
Amendments to the Constitution and By-Laws ........................................................ 10
Appeal and Review
    Custodianship ..................................................................................................... 94
    Trusteeship ......................................................................................................... 90
Appeal Board ............................................................................................................ 64
Appeal Procedure ..................................................................................................... 63
Applications .............................................................................................................. 17
Apprentice Member .................................................................................................. 14
Arrangement Plans ................................................................................................... 69
Assessments .............................................................................................................. 69
Associate Members ................................................................................................... 20
Attendance
    Board of Directors Meetings .............................................................................. 56
    Executive Board Meetings .................................................................................. 50
    Executive Council Meetings ............................................................................... 52
    Master Executive Council Meetings ................................................................... 41
Bad Standing And Expulsion .................................................................................... 71
Bills ............................................................................................................................. 9
Bond
    Local Council Members ...................................................................................... 28
    Master Executive Council Members ................................................................... 46
    President ............................................................................................................. 76
    Vice President-Finance/Treasurer ...................................................................... 81
Campaign Literature ................................................................................................. 11
Canada Board ........................................................................................................... 95
Canada Board President ........................................................................................... 96
Canada Board Vice President/IFALPA Director and Canada Board Secretary-Treasurer ... 96
Charters .................................................................................................................... 10
Checks ......................................................................................................................... 9
Classifications .......................................................................................................... 14
Collective Bargaining .............................................................................................. 89
Committee
    Board of Directors Delegate .............................................................................. 58
    Continuing .......................................................................................................... 59
    Credentials-Board of Directors .......................................................................... 58
    Credentials-Executive Board .............................................................................. 51
    Local Executive Council ..................................................................................... 30
    Master Executive Council ................................................................................... 40
    National .............................................................................................................. 59
    Presidential ........................................................................................................ 76
    Special ................................................................................................................ 59
    Steering .............................................................................................................. 58

Crew Complement
    ALPA Support .................................................................................................. 92
    Contrary Contracts and Agreements ................................................................. 92
    Mandatory Crew Manning Policy ..................................................................... 92
Custodian ................................................................................................................. 93
    Action Under Article XIX ................................................................................. 94
    Attendance at Executive Board and Board of Directors .................................... 94
    Authorization .................................................................................................... 93
    Hearing Before Executive Council ................................................................... 93
    Representatives .................................................................................................. 93
    Termination of Custodianship ........................................................................... 94
Defaulted Loan Obligations ..................................................................................... 71
Definitions ................................................................................................................. 7
Dissolution
    ALPA ................................................................................................................. 7
    Local Councils .................................................................................................. 38
Dues
    Annual .............................................................................................................. 66
    Annual Dues Adjustment .................................................................................. 68
    Annual Estimate ............................................................................................... 66
    Dues Rate (Active and Executive Active Members) ......................................... 67
    Flight Pay Loss ................................................................................................. 67
    Income Exempt from Dues ............................................................................... 67
    Payment Methods ............................................................................................. 67
    Refund .............................................................................................................. 73
Duration ..................................................................................................................... 7
Election
    ALPA Officers ................................................................................................. 57
    Executive Vice Presidents ................................................................................ 82
    First Vice President .......................................................................................... 77
    Local Council Representatives and Officers ..................................................... 33
    Master Executive Council Officers ................................................................... 43
    President ............................................................................................................ 75
    Vice President-Administration/Secretary .......................................................... 78
    Vice President-Finance/Treasurer ..................................................................... 80
Election and Ballot Certification Board .................................................................... 12
Election Groups ........................................................................................................ 35
    Executive Vice Presidential .............................................................................. 84
Election Sub-Groups, Executive Vice Presidential ................................................... 84
Eligibility
    Executive Administrator ................................................................................... 86
    Executive Vice Presidents ................................................................................ 82
    First Vice President .......................................................................................... 77
    Local Council Officers ..................................................................................... 24
    Local Council Representatives ........................................................................... 24
    Master Executive Council Officers ................................................................... 43
    President ............................................................................................................ 75
    Vice President - Finance ................................................................................... 80
    Vice President-Administration/Secretary .......................................................... 78
Eligibility for Membership ....................................................................................... 14
Establishment
    Local Councils .................................................................................................. 38
    Master Executive Councils ............................................................................... 46
Executive Member ................................................................................................... 15
EXPENSES .............................................................................................................. 88
Finance Plan ............................................................................................................. 71

Fines ........................................................................................................... 71
Fiscal Responsibility ................................................................................. 74
Fiscal Year .................................................................................................. 9
General Duties of the Local Executive Council ...................................... 30
Grievance Procedure ................................................................................ 61
Hearing Board ........................................................................................... 63
Hearing of Membership Cases ................................................................ 61
Hearing Procedure .................................................................................... 61
Home Office Location ................................................................................. 7
Honorary Member ..................................................................................... 16
Inactive Member ....................................................................................... 15
Initiation Fee ............................................................................................. 66
Jurisdiction and Duties
    Board of Directors ............................................................................. 54
    Canada Board ..................................................................................... 95
    Executive Administrator .................................................................... 86
    Executive Board ................................................................................. 48
    Executive Council .............................................................................. 52
    Executive Vice Presidents ................................................................ 84
    First Vice President ........................................................................... 77
    Local Council Officers ...................................................................... 30
    Master Executive Council ................................................................. 40
    President ............................................................................................. 75
    Vice President-Administration/Secretary ......................................... 78
    Vice President-Finance/Treasurer ................................................... 80
Late Payment Charge ............................................................................... 71
Major Contingency Fund .......................................................................... 72
Meeting Records
    Board of Directors ............................................................................. 60
    Executive Board ................................................................................. 51
    Executive Council .............................................................................. 53
    Local Councils ................................................................................... 30
    Local Executive Councils .................................................................. 31
    Master Executive Councils ............................................................... 43
Meetings
    Board of Directors-Regular .............................................................. 54
    Board of Directors-Special ............................................................... 55
    Canada Board ..................................................................................... 95
    Executive Board-Regular .................................................................. 48
    Executive Board-Special ................................................................... 49
    Executive Council-Regular ............................................................... 52
    Executive Council-Special ................................................................ 52
    Local Council-Regular ...................................................................... 28
    Local Council-Special ....................................................................... 28
    Master Executive Council-Regular .................................................. 41
    Master Executive Council-Special ................................................... 41
Membership Credentials ........................................................................... 10
Name ........................................................................................................... 7
Negotiable Instruments .............................................................................. 9
Net Worth ................................................................................................... 72
Nomination
    ALPA Officers ................................................................................... 57
    Local Council Representatives .......................................................... 31
Notes ............................................................................................................ 9
Notice of Meetings
    Board of Directors-Regular .............................................................. 54

Local Councils ....................................................................................................... 29
Local Executive Councils ................................................................................... 31
Master Executive Councils ................................................................................. 41
Notice Of Meetings
Executive Board ................................................................................................. 48
Oath of Office ............................................................................................................ 9
Obligation of Members to the Association ............................................................. 11
Officers ..................................................................................................................... 9
Local Council .................................................................................................... 24
Master Executive Councils ................................................................................. 43
Organization
Board of Directors ............................................................................................. 54
Canada Board .................................................................................................... 95
Executive Board ................................................................................................. 48
Executive Council .............................................................................................. 52
Local Councils ................................................................................................... 22
Master Executive Councils ................................................................................. 40
Parliamentary Law and Rules of Order .................................................................. 11
Probation
Apprentice Members ......................................................................................... 14
Proxies
Board of Directors ............................................................................................. 57
Executive Board Meetings ................................................................................. 50
Executive Council Meetings .............................................................................. 53
General ............................................................................................................... 10
Local Council Meetings ..................................................................................... 29
Master Executive Council Meetings .................................................................. 43
Quorum
Board of Directors ............................................................................................. 56
Executive Board ................................................................................................. 50
Executive Council .............................................................................................. 52
Local Councils ................................................................................................... 29
Local Executive Councils ................................................................................... 31
Master Executive Councils ................................................................................. 41
Ratification ............................................................................................................... 89
Reactivated Member ................................................................................................ 16
Reballoting ............................................................................................................... 13
Recall
ALPA Officers ................................................................................................... 87
Executive Vice Presidents .................................................................................. 85
Local Council Representative or Officer ............................................................ 28
Master Executive Council Officers .................................................................... 46
Removal
Executive Administrator ..................................................................................... 86
Representation
Board of Directors Meetings .............................................................................. 57
Clarification of Status Representation ................................................................ 11
Executive Board Meetings ................................................................................. 50
Executive Council Meetings .............................................................................. 53
MEC Meetings ................................................................................................... 42
Members ............................................................................................................. 10
Pilot Groups ....................................................................................................... 91
Review of Executive Board Action .................................................................... 91
Representatives
Custodian ........................................................................................................... 93
Local Council ..................................................................................................... 24

Reserve Account
    Special ................................................................................. 73
Reserves ............................................................................... 72
Retired Member ..................................................................... 16
Roll call
    Master Executive Council Meetings ................................. 42
Roll Call
    Roll Call of Delegates ...................................................... 49
    Roll Call Voting ............................................................... 11
Salary
    Executive Administrator ................................................... 86
    Executive Vice Presidents ................................................ 88
    MECs and Representatives ................................................ 88
    Officers ............................................................................ 88
    President ...................................................................... 76, 88
Scope of Authority and Objectives ......................................... 8
Seal ......................................................................................... 9
Single Council Airline
    Master Executive Councils ............................................... 46
Steering Committee ............................................................... 58
Strike Vote, Strike Ballot ................................................ 40, 76
Suspension of Service ........................................................... 13
Term of Office
    Executive Vice Presidents ................................................ 82
    First Vice President .......................................................... 77
    Local Council Representatives and Officers ..................... 25
    Master Executive Council Officers .................................. 44
    President .......................................................................... 75
    Vice President-Administration/Secretary ......................... 78
    Vice President-Finance/Treasurer .................................... 80
Termination of Membership ................................................. 20
Transfer of Executive Members to Active Membership ....... 19
Transfer of Inactive Members to Active Membership .......... 19
Trustee
    Action to Protect the Association ..................................... 90
    Duties, Rights and Obligations ........................................ 91
    Termination of Trusteeship .............................................. 91
Vacancy in Office
    Canada Board ................................................................... 97
    Executive Vice Presidents ................................................ 83
    First Vice President .......................................................... 77
    Local Council Representative or Officer .......................... 25
    Master Executive Council Officers .................................. 44
    President .......................................................................... 75
    Vice President-Administration/Secretary ......................... 78
    Vice President-Finance/Treasurer .................................... 80
Voting
    Board of Directors ........................................................... 56
    Executive Board ............................................................... 50
    Local Councils ................................................................. 29
    Local Executive Councils ................................................ 31
    Master Executive Councils ............................................... 42

# Attachment B
# to McIlvenna Declaration

**US AIRWAYS MEC**
**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL**

ONE THORN RUN CENTER, SUITE 400 □ CORAOPOLIS, PENNSYLVANIA 15108 □ 412-264-5600

June 26, 2007

Captain John H. Prater, President
Air Line Pilots Association, Int'l
1625 Massachusetts Avenue, N.W.
Washington, DC 20036

Dear Captain Prater:

The ALPA video released on June 22nd relating to the US Airways/America West seniority integration proved disappointing to the US Airways pilots. Although we appreciate the vigor with which you are confronting the serious issues involved in this dispute between MECs, we fear that the video's scripted content contributed little, if anything, to an understanding of those issues. Put simply, it appears that some at ALPA International do not share your enthusiasm for squarely confronting these difficult, contentious issues.

The problem is not our pilots' mere "dissatisfaction" with Arbitrator Nicolau's award. As we have repeatedly expressed to the Executive Council, the Nicolau Award violates the basic tenets of fairness under ALPA Merger Policy, in that it advances none of the goals prescribed by that Policy, and thus does not provide for fair and equitable seniority integration.

The award violates the requirements of ALPA Merger Policy to "Avoid windfalls to either group at the expense of the other." There are many issues that substantiate the US Airways pilots' position, but the following are two classic bellwether examples:

- Narrow Body Captain Years:  AWA Gain.........2,090
                              AAA Loss..........2,090

- Wide Body Captain Years:    AWA Gain.........2,373
                              AAA Loss..........2,373

Additionally the award mixes US Airways pilots with approximately 17 years of active service and no furlough time with America West new hires, who at the time of the announcement of the merger, were still in initial ground school. It would deprive these same US Airways pilots of their attrition-based promotional opportunities to Captain and wide body international Captain jobs (including hundreds of wide body Captain jobs for aircraft that the America West pilots had no expectation of ever flying prior to the merger). Instead, it would transfer those promotional opportunities to America West new hires as depicted above. ALPA Merger Policy prohibits such gratuitous destruction of one pilot group's pay, lifestyle and careers in order to benefit the other group.

The seriousness of our pilots' substantive position on the merits of the Nicolau Award was not fairly communicated to our brother and sister ALPA pilots by the video's

SCHEDULE WITH SAFETY    AFFILIATED WITH AFL-CIO

assertion that our "dissatisfaction" somehow warranted an exception to the finality of ALPA Merger Policy. As veterans of numerous air carrier transactions, you and I both know that complete satisfaction with any seniority integration is an unattainable goal. In framing the dispute in terms of whether or not the award was "to our liking," the video unfairly trivializes the US Airways pilots' position that the Nicolau Award violates ALPA Merger Policy by providing undoubted windfalls to the America West Pilots at the expense of the US Airways pilots. We ask that future communications to ALPA-represented pilots set forth our actual objections to the Nicolau Award.

A seniority integration award such as this, that outright violates ALPA Merger Policy, is not insulated from review by the Policy's "final and binding" standard. As we have urged the Executive Council, this arbitration award cannot serve as the basis for an integrated seniority list. This is especially true because of the award's unfair impact on the careers of most US Airways pilots, in terms of status, pay and quality of life.

Recall that the Executive Council stated, in part, in its May 24th resolution that it "is also acutely aware of the negative consequences that may result if the MECs fail to come together to explore consensual approaches that promote career protection and mutual success . . . ." Because the America West MEC has refused to comply with this Executive Council resolution, we will initiate litigation later today in order to vacate the Nicolau Award. A copy of the Application To Vacate Arbitration Award is enclosed for your information. In our judgment, this action is necessary to protect the legitimate interests of our pilots under the rules and policies of the Association. It should not be understood as an abandonment of the process initiated by you and the Executive Council. We remain committed to that process.

You have repeatedly emphasized, publicly and privately, that ALPA International must remain neutral in this seniority integration dispute, while attempting to facilitate a settlement between the two pilot groups. This would require, at minimum, denial of the AWA MEC's demand for release of the seniority list appended to the Nicolau Award to US Airways, and continuation of the settlement efforts during the pendency of the litigation. To release the list while its validity under ALPA Merger Policy is being determined by the Court would constitute a serious breach of ALPA's neutrality and doom any attempts to solve the issues facing these two pilot groups.

Fraternally,

Captain Jack Stephan
US Airways MEC Chairman

cc:    Captain John McIlvenna
        AAA MEC
        ALPA Executive Council
        ALPA Executive Board
        Roland P. Wilder, Jr., Esq.

# Exhibit B
# (Nicolau CV)

**GEORGE NICOLAU, ESQ.**
240 East 39th Street-Ste.
New York, NY 10016-7209
Tel. (212) 777-5032; Fax (212) 777-7397
E-Mail: GNicolau@aol.com

34G Clonmeen Lodge
Banteer, Co. Cork, Ireland
Tel. 029 56952; Fax 56953
E-Mail GNicolau@aolcom

**DATE OF BIRTH:** 2/14/25

**EDUCATION:**

University of Michigan (B.A. Political Science, 1948)

Columbia University School of Law (J.D. 1951)

**OCCUPATION:** Full-time arbitrator, mediator and attorney

**UMPIRESHIPS:**

Industry Chairman, League of Voluntary Hospitals/1199 National Health & Human Services Employees Union (1993--)

International Ice Hockey Federation/National Hockey League (2000--)

National Basketball Association Agency Regulations (1986--)

Impartial Member, New York City Office of Collective Bargaining (1987--)

New York City Transit Authority & Transit Supervisors Organization, TWU (1995)

Mediation Chairman, Dispute Resolution Protocol, American Airlines/Allied Pilots Association (1999--)

Chairman, Major League Baseball/Major League Baseball Players Ass'n. (1986-1995)

National Hockey League/NHL Players Ass'n. (1993-1996)

National Basketball Association & NBA Players Ass'n. (1979-1981)

Major Indoor Soccer League & MISL Players Ass'n. (1980--)

NBC & NABET, (Washington 1976-87, New York & Chicago 1980-1987)

ABC & NABET (New York, Washington & Chicago 1980-1987)

Tanker Service Committee & District No. 4, NMU/MEBA (1991 -1998)

Maritime Service Committee & NMU/MEBA (1991 -1998)

Tanker Service & Dry Cargo Service Committees & MEBA-No. 1, Pacific Coast Division (1999-2003)

Local 144, SEIU & Southern New York Health Care Facilities Ass'n. (1988-92)

**PANELS:**

Alaska Airlines & ALPA/AFA/IAM/AMFA/TWU

Aloha Airlines & ALPA/AFA; American Eagle Airlines & ALPA/AFA

Continental Airlines & ALPA/IBT; Delta Airlines & ALPA; Northwest Airlines & ALPA

United Airlines & ALPA/AFA

UPS & Independent Pilots Association

Actors Equity Association & League of American Theatres & Producers/League of Off-Broadway Theatres & Producers

Writers Guild/Directors Guild & MMPA/ABC/CBS/NBC

SAG & MMPA

New York Times & Newspaper Guild of New York; CSX & MEBA

UPS & IBT (National Panel)

Verizon NY/ NJ/ PA/VA,WVA & CWA/IBEW

Bell South & CWA; AT&T & CWA

AT&T & CWA/IBEW (Neutrality and Consent Election Agreement)

City of New York & PBA/Sergeants Benevolent Association

New York Shipping Association & ILA

Independent Film & Television Alliance

UAL & AFA (Grievance Mediation Panel—New York Domicile)

**Former Panel Member:**

Pan Am World Airways & ALPA

Pan Am & Independent Union of Flight Attendants

TWA & ALPA, TWA & Independent Federation of Flight Attendants

City University of New York & Professional Staff Congress

## PROFESSIONAL AFFILIATIONS:

National Academy of Arbitrators, President, (1996-97);President-Elect (1995-96), Vice President (1992- 94), Executive Committee (1988-89, 1992-94), Board of Governors (1986-89); Member (1975-)

Charter Member, International Society of Professionals in Dispute Resolution (1973), Member, Board of Directors (1984-87) and President (1987-88)

Member, International Society for Labor Law & Social Security (1980-), Executive Board, American Branch (1995); Vice Chairman, U.S. Branch & Member, International Executive Committee (2000-)

Board of Directors, College of Labor & Employment Lawyers (2000-2006)

Member, Association of the Bar of the City of New York (1951-)

Chairman, Committee on Labor & Employment Legislation (1972-75)

Member, ABA

Industrial Relations Research Association and Panels of AAA, FMCS, New York State PERB and New York City Office of Collective Bargaining

## FORMER POSITIONS:

Navigator, 8th Air Force (1944-45)

Labor Relations Attorney, Sheehan & Harold (1951-54)) and Cooper, Ostrin & DeVarco (1954-63)

Deputy Director, Special Projects, U. S. Peace Corps (1963-65)

Deputy Regional Director, U. S. Office of Economic
Opportunity (1965-66)

Commissioner, New York City Community Development Agency (1966-68)

Executive Director, The Fund for the City of New York (1968-70)

Vice President & Executive Director, Institute for Mediation & Conflict Resolution (1970-1980)

**VISITING PROFESSORSHIPS:**

Pepperdine Law School (1990, 1992, 1994) & 1996)

Cardozo Law School (1991, 1993, 1994 & 1997)

Cornell University School of Industrial & Labor Relations (1984- )

**PUBLISHED WORKS:**

Community Disputes and the Resolution of Conflict: Another View (with Gerald Cormack); (Arbitration Journal, Vol. 27, No. 2, 1972)

Grievance Arbitration In A Prison: The Holton Experiment (Resolution, Vol. 1, No. 3, 1975)

Effective Advocacy In Arbitration, (NYU 38th National Conference on Labor, Matthew Bender & Co. 1985)

Can the Labor Arbitration Process Be Simplified? (Proceedings of the 39th Annual Meeting, National Academy of Arbitrators, BNA Books, Inc 1987)

The Qualifications Dilemma: the Pros and Cons of Setting Mediator Qualifications (Fifth New York Conference on Dispute Resolution, NYS Office of Court Administration 1988)

Wait 'Til Next Year: Musings of Baseball's Arbitrator, (NYU 42nd National Conference on Labor, Matthew Bender & Co. 1989)

Post-Discharge Conduct: A Look Back and A Look Ahead (Proceedings of the 43rd Annual Meeting, NAA, BNA Books, Inc.1990)

Arbitral Response To The Troubled Employee (Paper presented at the 15th Annual Collective Bargaining Conference of the FMCS and the IRRA, Northwest Chapter, Seattle, Washington, 1991)

After-Acquired Evidence In Arbitration: Will McKennon v. Nashville Banner Make a Difference?, (Arbitration Journal, Fall 1995)

The Future of Labor Arbitration, (Dispute Resolution Journal, April-Sept.,1996)

The National Academy of Arbitrators at Fifty, (Dispute Resolution Journal, April 1997)

Whatever Happened to Arbitral Finality: Is it Their Fault of Ours?, (CCH Labor Law Journal, Vol. 48, No. 5, May 1997)

Gilmer: Its Implications and Ramifications for Employees, Employers & Practitioners, (University of Pennsylvania Journal of Labor & Employment Law (Vol. 1, No. 1, Spring 1998)

The Presidential Address: The Challenge and the Prize, Proceedings of the 50th Annual Meeting, National Academy of Arbitrators, BNA Books, Inc. 1998

O Functus Officio: Is It Time To Go?, Proceedings of the 51st Annual Meeting, National Academy of Arbitrators, BNA Books, Inc.,1999

Discipline In Sports, Hofstra Labor & Employment Law Journal (Vol. 17, No. 1, Fall 1999)

A Comparison of Union and Non-Union Employee Protections in Ireland and the United States, New York International Law Review, Winter 2001, Vol.14, No. 1 (2001)

Reminiscences, Proceedings of the 56th Annual Meeting, National Academy of Arbitrators, BNA Books, Inc. 2003

Implementing Remedies and Retaining Jurisdiction: The United States Perspective, Proceedings of the 57th Annual Meeting, National Academy of Arbitrators, BNA Books, Inc. 2004

Is It Time for a National Unfair Dismissal Act? Proceedings of the 59th Annual Meeting, National Academy of Arbitrators, BNA Books, Inc. 2006

Recipient, Distinguished Service Award of the American Arbitration Association (Arbitration Day, New York, NY, May 1987

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

US AIRWAYS MASTER EXECUTIVE )
COUNCIL, AIR LINE PILOTS )
ASSOCIATION, INT'L, et al. )
)
Plaintiffs, )
)
v. )        Case No. 07-1309 (EGS)
)
AMERICA WEST MASTER EXECUTIVE )
COUNCIL, AIR LINE PILOTS )
ASSOCIATION, INT'L, et al. )
)
Defendants. )
_____ )

**PROPOSED ORDER**

Upon consideration of the motion submitted by Defendants America West Master

Executive Council and John McIlvenna to Compel Joinder of Air Line Pilots Association

("ALPA") as Necessary Party Pursuant to Fed. R. Civ. P. 19(a), its accompanying

memorandum and exhibits thereto, and any opposition and reply, it is hereby ORDERED:

That the Defendants' motion is GRANTED.  It is further ordered that

1. Plaintiffs make ALPA a party defendant in this action;

2. That Plaintiffs file an amended complaint that names ALPA as a party
   defendant within _____ days after the date of entry of  this order; and

3. That Plaintiffs serve a copy of the amended complaint and a summons on
   ALPA within _____ days after entry of this order, pursuant to Fed. R. Civ. P. 4.

SO ORDERED this _____ day of _____, 2007.

_____
HON. EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE