# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| US AIRWAYS MASTER EXECUTIVE COUNCIL, AIR LINE PILOTS ASSOCIATION, INT'L, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICA WEST MASTER EXECUTIVE COUNCIL, AIR LINE PILOTS ASSOCIATION, INT'L, *et al.*,<br><br>Defendants. | Civil Action No. 07-1309-EGS |

## <u>MOTION TO REMAND</u>

Pursuant to 28 U.S.C. § 1447(c), Plaintiffs US Airways Master Executive Council, Air Line Pilots Association, Int'l ("AAA MEC") and John A Stephan, Chairman of the AAA MEC, move to remand this action to the Superior Court of the District of Columbia.  The defendants' removal is a meritless, transparent attempt to entangle the Air Line Pilots Association, Int'l ("ALPA") in this litigation on behalf of the America West pilots (as illustrated by the defendants' subsequent motion to add ALPA as a defendant).  Defendants pursue this tactic even though ALPA is to remain neutral in the parties' dispute under ALPA Merger Policy and the US Airways MEC does not assert any improper act or omission by ALPA.  Such ulterior use of the federal removal statute is improper.  The further grounds in support of the Plaintiffs' motion are set forth in its supporting memorandum of point and authorities.

Dated: August 20, 2007.           Respectfully submitted,


                                      /s/ William R. Wilder
                                        Roland P. Wilder, Jr. (DC Bar No. 69609)
                                        William R. Wilder (DC Bar No. 450086)
                                        BAPTISTE & WILDER, P.C.
                                        1150 Connecticut Ave., N.W.
                                        Suite 500
                                        Washington, D.C. 20036
                                        (202) 223-0723
                                        (202) 223-9677

# STATEMENT OF POINTS AND AUTHORITIES
# IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

## Table of Contents

Page

TABLE OF AUTHORITES ........................................................................ ii

INTRODUCTION ................................................................................... 1

STATEMENT OF FACTS ........................................................................2

    1.    ALPA's organization and Merger Policy .............................................2

    2.    The seniority list integration dispute between the America West pilots and USAirways pilots, and the parties' agreement to follow ALPA Merger Policy in resolving their dispute .................5

ARGUMENT ..........................................................................................6

I.    Standard for review of motion to remand ...........................................6

II.    The RLA does not have extraordinary preemptive force and cannot be the basis for removal to federal court........................................ 8

III.    Even considering the defendants' arguments under the "artful pleading" doctrine, the plaintiffs' claim for relief in no way implicates federal law..................................................................... 12

    A.    *ALPA Merger Policy is subject to state law* .................................12

    B.    *Since the plaintiffs' claim does not allege any act or omission by ALPA, the exclusive representative of the USAirways' pilots, their complaint does not implicate ALPA's duty of fair representation*.................................15

        1.    The complaint does not name ALPA as a party, only the AWA MEC, showing that the plaintiffs' claim is confined to review of the Nicolau award............................. 15

        2.    The allegations of the complaint do not assert any act or omission by ALPA that could state a claim for breach of its DFR................................................................. 17

C.    *The plaintiffs' complaint does not seek any relief against ALPA, so vacation of the arbitration award cannot conflict with ALPA's duties as exclusive representative* ............................. 20

CONCLUSION ................................................................................23

CERTIFICATE OF SERVICE................................................................ 24

## Table of Authorities

*Page(s)*

*Cases*

*Air Line Pilots Ass'n v. DHL Holdings (USA), Inc.,* 2007 U.S. Dist. LEXIS
40771 (S.D. Ohio 2007) ......................................................................... 13,14

*Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65 (1991)................................................18

*Air Wisconsin Pilots Protection Comm. v. Sanderson,* 909 F.2d
213 (7th Cir. 1990) ....................................................................*passim*

*Baker v. Newspaper and Graphic Communications Union Local 6,* 202
U.S. App. D.C. 156, 628 F.2d 156 (D.C. Cir. 1980)......................................16

*Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1 (2003) ......................................9,10

*Bowers v. Chaney,* 468 F. Supp.2d 102 (D.D.C. 2006).........................................16

*Bush v. Clark Construction Corp.,* 267 F. Supp. 2d 43 (D.D.C. 2003) ...................6

*Caterpillar, Inc. v. Williams,* 482 U.S. 386 (1987)..............................................6,12

*Davenport v. Int'l Brotherhood of Teamsters,* 334 U.S. App. D.C. 228,
166 F.3d 356 (D.C. Cir. 1999) ......................................................................13

*Greene v. American Federation of Gov't Employees Local 2607,*
2005 U.S. Dist. LEXIS 19983 (D.D.C. 2005)...............................................6,7

*Hawaiian Airlines v. Norris,* 512 U.S. 246 (1994) ...................................................7

*International Brotherhood of Teamsters v. Ass'n of Flight Attendants,* 274
U.S. App. D.C. 370, 864 F.2d 173 (D.C. Cir. 1988) ......................................17

*Int'l Brotherhood of Teamsters v. Ass'n of Flight Attendants,* 663 F. Supp.
847 (D.D.C. 1987) ........................................................................................17

*Marcoux v. American Airlines, Inc.,* 2006 U.S. Dist. LEXIS 14130
(E.D.N.Y. 2006) ...........................................................................................15

*National Treasury Employees Union v. Federal Labor Rel. Authority,*
255 U.S. App, D.C. 140, 800 F.2d 1165 (D.C. Cir. 1986)............................16

*Rakestraw v. Air Line Pilots Ass'n,* 981 F.2d 1524 (7th Cir. 1992) ........................21

*Roddy v. Grand Trunk Ry.*, 395 F.3d 318 (6th Cir. 2005) .........................................9

*Shafi v. British Airways, PLC,* 83 F.3d 566 (2d Cir. 1996) ....................................9

**Sullivan v. American Airlines,* 424 F.3d 267 (2d Cir. 2005) ..................8,9,10,12

### Statutes

*29 U.S.C. § 152 .......................................................................................... 13

*29 U.S.C. § 185 .......................................................................................... 13

45 U.S.C. § 153 ........................................................................................... 11

45 U.S.C. § 157 ........................................................................................... 11

45 U.S.C. § 158 ........................................................................................... 11

45 U.S.C. § 184 ........................................................................................... 11

## INTRODUCTION

Plaintiffs move for remand of this action to the Superior Court of the District of Columbia.  Defendants America West Master Executive Council, Air Line Pilots Association, Int'l ("AWA MEC") and John McIlvenna, its chairman, removed this action from the Superior Court to this Court on the asserted basis of federal question jurisdiction. *See Dkt 1, Attachment 2,* Defendants' civil information cover sheet accompanying notice of removal.

This action does not present a federal question.  Rather, it is an action by the plaintiffs to set aside an arbitration award ("the Nicolau award") issued in a pilot seniority list integration arbitration proceeding between the pilots of America West and US Airways under the internal Merger and Fragmentation Policy ("Merger Policy") of the Air Line Pilots Association, Int'l. ("ALPA").  That internal policy constitutes the parties' agreement to arbitrate and it is subject to state, not federal, law.  State law governs ALPA Merger Policy since neither ALPA nor either MEC is a "labor organization" subject to § 301 of the Labor Management Relations Act.  Further, no "carrier" subject to the Railway Labor Act is party to ALPA Merger Policy (or, therefore, a party to the MECs' agreement to arbitrate).

The plaintiffs' complaint filed in the Superior Court alleges only a claim under the District of Columbia Arbitration Act (D.C. Code §§ 16-4311, -4315) to set aside the arbitration award for failing to comply with ALPA Merger Policy. The complaint does not name ALPA (the exclusive representative of US Airways pilots) as a party nor does it allege any act or omission by ALPA as representative. Indeed, under ALPA Merger Policy, ALPA is to remain strictly neutral in the

seniority list integration dispute between the two pilot groups. *See Pltfs' Exh.* 3 at 6 (¶ 2). Accordingly, the complaint does not present a claim for breach of the duty of fair representation by ALPA. Since the complaint presents no federal question, this Court lacks subject matter jurisdiction and this action should be remanded to the District of Columbia Superior Court, with the plaintiffs being awarded their attorneys' fees and costs incurred in prosecuting this motion.

<u>**STATEMENT OF FACTS**</u>

The plaintiffs filed their application to set aside the Nicolau award under D.C. Code §§ 16-4311, 4315, on June 26, 2007 in the Superior Court of the District of Columbia. That action is against the AWA MEC and Capt. McIlvenna, its chairman. The AAA MEC and the AWA MEC are subordinate bodies of ALPA providing day-to-day representation to the USAirways and America West pilots, respectively, who are represented exclusively for collective bargaining purposes by ALPA. [*Complaint* ¶¶ 14-19].**1/**

### 1.    *ALPA's organization and merger policy*

The Air Line Pilots Association represents airline pilots at numerous airlines in the United States. It maintains subordinate bodies, known as Master Executive Councils, which consist of pilot representatives for a particular airline who are elected by the pilots of that airline to represent them. The MEC provides day-to-day representation of the pilots under the collective bargaining agreement between ALPA and their airline. [*Complaint* ¶ 19].

---

[1]    For ease of reference, the plaintiffs' application to set aside arbitration award will be designated "Complaint."

ALPA maintains an internal policy known as the ALPA Merger Policy to deal with instances where a merger transaction occurs between two airlines. *See Complaint Exhibit* 1. A merger of airlines triggers a combination of the two pilot groups of the airlines. Pilots at all ALPA-represented airlines maintain seniority lists, which list pilots in order of their date of hire for purposes of bidding for promotions and work (flight) schedules among other elements of employment. One element of an airline merger typically involves integration of the seniority lists of the two pilot groups of the airlines involved in the merger into a single, combined seniority list. ALPA Merger Policy establishes both the substantive terms on which a combination of seniority lists occurs and the procedures for combining the lists. [*See* Complaint ¶¶ 20-24].

Under ALPA Merger Policy, the MECs representing the two pilot groups agree to follow the policy for combining seniority lists and appoint special committees, known as merger committees, for the purpose of pursuing the procedures established in the policy. ALPA Merger Policy provides that the merger committees of the respective MECs first meet directly in an effort to negotiate an agreed combination of seniority lists. If direct negotiations between the merger committees are unsuccessful, the parties then select a neutral to serve as a mediator/arbitrator. The merger committees are to pursue a negotiated combination of the seniority lists in mediation with the assistance of the selected neutral. [*Complaint* ¶¶ 25-28].

If mediation between the parties is unsuccessful, the parties then proceed to arbitration under ALPA Merger Policy with the neutral serving as chairman of a Board of Arbitration that consists of three persons: the neutral arbitrator

previously selected by the parties and two pilot neutrals (who are ALPA members at other airlines not involved in the merger, with one pilot neutral selected by each merger committee) who will serve with the arbitrator in hearing the presentation of evidence and argument by the parties in arbitration. The pilot neutrals serve as independent decision makers and do not act as representatives of the respective merger committees. [*Complaint* ¶ 29].

The Board of Arbitration conducts hearings at which each merger committee presents a proposal for how the two seniority lists should be combined, supported by argument, testimony and exhibits. The parties are permitted to submit post-hearing briefs arguing in favor of their respective proposals following the conclusion of the hearing. ALPA Merger Policy establishes in its Section 45.G.5 that the basis for the combination of the seniority lists is a "fair and equitable agreement" and further establishes the following goals, "in no particular order":

    a. Preserve jobs.

    b. Avoid windfalls to either group at the expense of the other.

    c. Maintain or improve pre-merger pay and standard of living.

    d. Maintain or improve pre-merger pilot status.

    e. Minimize detrimental changes to career expectations.

[*Complaint* ¶¶ 29-32].

   2.   *The seniority list integration dispute between the*
        *America West pilots and US Airways pilots, and the*
        *parties' agreement to follow ALPA Merger Policy in*
        *resolving their dispute*

The AAA MEC and the AWA MEC are involved in a pilot seniority list integration dispute arising from the merger of USAirways and America West Airlines in 2005. The parties agreed to pursue ALPA Merger Policy, including arbitration under the policy, to resolve their dispute over combining the pilot seniority lists of the two airlines. ALPA Merger Policy therefore constitutes the parties' agreement to resolve their dispute by arbitration. The Merger Committees representing the respective MECs established the Board of Arbitration under ALPA Merger Policy. [*Complaint* ¶¶ 39-41].

The AAA MEC Merger Committee and the AWA MEC Merger Committee pursued the procedures of ALPA Merger Policy through arbitration before a Board of Arbitration consisting of neutral arbitrator George Nicolau, and pilot neutrals Stephen Gillen (selected by the AWA MEC merger committee) and James Brucia (selected by the AAA MEC merger committee).  The Board of Arbitration conducted hearings in Washington, D.C. in December 2006, January 2007 and February 2007, during which both merger committees presented evidence and argument. The parties filed post-hearing briefs in March 2007. The Board of Arbitration issued its opinion and award to the parties on May 1, 2007. [*Complaint* ¶¶ 33-37].  *See also Complaint Exhibit* 2.

**ARGUMENT**

## I.    Standard for review of motion to remand

Federal courts are courts of limited jurisdiction. The law presumes that "a cause lies outside of 'the court's' limited jurisdiction." *Greene v. American Federation of Gov't Employees, Local 2607*, 2005 U.S. Dist. LEXIS 19983 (D.D.C. 2005)(quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)). Courts must strictly construe removal statutes. *Greene, citing Williams v. Howard University*, 984 F. Supp. 27, 29 (D.D.C. 1997). The court must resolve any ambiguities concerning the propriety of removal in favor of remand. *Id.* When a plaintiff makes a motion to remand, the defendant bears the burden of proving federal jurisdiction. *Id.,* citing *Kokkonen*, 511 U.S. at 377.

A defendant may remove to federal court on the basis of "federal question" jurisdiction—that is, a claim arising under the Constitution, treaties or laws of the United States. *Greene*, 2005 U.S. Dist. LEXIS 19983, *4-5. But the mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction. *Id.* Rather, resolution of the state cause of action must entail a "substantial question of federal law." *Id.* The removing party must therefore show that the plaintiff's right to relief necessarily depends on a question of federal law, and that the question is a substantial one. *Id.*

Under the "well-pleaded complaint rule", federal question jurisdiction "exists only when a federal question is present on the face of the plaintiff's properly pleaded complaint." *Bush v. Clark Construction Corp.*, 267 F. Supp. 2d 43, 45 (D.D.C. 2003)(quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). The plaintiff is master of the claim and may rely exclusively on state law

to avoid federal question jurisdiction. *Id.* If the plaintiff's claim does not rest on a federal question, a defendant generally may not remove a case to federal court based on a federal defense, even if the defense is preemption. *Id.* (citations omitted).

A review of the plaintiffs' application to vacate the Nicolau award in the Superior Court shows that it states expressly that it is brought under the District of Columbia Arbitration Act, D.C. Code §§ 16-4311, 4315. *See Complaint* ¶ 20. It does not assert a claim under federal law. It asserts a claim only against the AWA MEC. *Complaint* ¶¶ 17-19. It nowhere identifies ALPA as a party or alleges any act or omission by ALPA. The plaintiffs did not sue ALPA because they do not allege any violation by ALPA of its DFR to the USAirways pilots.

Further, the plaintiffs' claim for relief does not require interpretation of any collective bargaining agreement—only application of ALPA Merger Policy to the Nicolau award—so it does not constitute a "minor dispute" under the Railway Labor Act subject to mandatory arbitration before the ALPA/USAirways pilot system board of adjustment.[2] *Hawaiian Airlines v. Norris,* 512 U.S. 246, 261, 129 L. Ed. 2d 203, 114 S. Ct. 2239 (1994) (claims under state laws that do not require interpretation of collective bargaining agreements under the RLA are not preempted by federal law.).[3]

---

[2]    A "minor dispute" under the RLA is a dispute between a carrier and its employees over the interpretation or application of a collective bargaining agreement.

[3]    Although, as noted in Section II below, even if the plaintiffs' claim stated a minor dispute, the RLA establishes only ordinary preemption, which is not a basis for removal to federal court.

Moreover, the plaintiffs' right to relief does not depend on a federal question. It rests only on review of the arbitration award under state law and whether the award conforms to the parties' agreement to arbitrate, i.e., ALPA Merger Policy. The relief sought is vacation of the Nicolau award under the DCAA and any other relief the court deems appropriate to the cause of action. *See Complaint* at p. 16 ("Remedy requested"). Accordingly, under the well-pleaded complaint rule, this action should be remanded since the plaintiffs' application asserts only a claim for relief under District of Columbia law.

## II.    The RLA does not have extraordinary preemptive force and cannot be the basis for removal to federal court

Defendants' assert, without citation to authority, that the duty of fair representation under the RLA completely preempts state law causes of action implicating the DFR, and therefore the "artful pleading" exception to the well-pleaded complaint rule applies here to determine if the plaintiffs' claim in fact pleads a federal cause of action. *Notice of Removal* ¶ 4. They also assert that the plaintiffs' challenge to the arbitration award is actually an attempt to dictate ALPA's bargaining position with USAirways. *Id.* ¶ 5. As shown below in Section III, the plaintiffs' complaint in no way implicates ALPA's DFR or its positions in bargaining with USAirways. Even under the more rigorous analysis of the complaint asserted by the defendants, no federal question is presented and this action should be remanded.

But there is a split in the federal circuits regarding whether the RLA (and the DFR doctrine arising under it) presents complete or ordinary preemption. *See, e.g., Sullivan v. American Airlines,* 424 F.3d 267, 277 n. 9 (2d Cir.

2005)(summarizing conflict in circuits on DFR preemption); *Roddy v. Grand Trunk Ry.*, 395 F.3d 318, 325-26 (6th Cir. 2005). While the Fifth, Seventh and Eighth Circuits apparently hold that the RLA has complete preemptive effect, the Second, Third, Sixth, Ninth and Eleventh Circuits have concluded that it does not have extraordinary preemptive effect permitting removal of a state claim to federal court. *Id.*

The current trend favors the position that the RLA effects only ordinary preemption. *Sullivan,* 424 F.3d at 277 ("In holding that there is no complete preemption under the RLA, we align ourselves on one side of a circuit split and follow what seems to be an emerging trend."). The Second Circuit Court of Appeals in *Sullivan* reconsidered its prior ruling of complete preemption under the RLA and concluded that the RLA established ordinary preemption. 424 F.3d at 275-277. Moreover, the Supreme Court has not recognized complete preemption under the RLA. *See Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 7-11 (2003)(identifying three federal statutes the Court recognizes as effecting complete preemption); *Sullivan,* 424 F.3d at 275, *citing Beneficial Nat'l Bank.*

In reconsidering its prior panel ruling in *Shafi v. British Airways, PLC,* 83 F.3d 566 (2d Cir. 1996), the Second Circuit Court of Appeals noted that *Shafi* assumed *Norris* was a complete preemption case and its analogy between the RLA and § 301 was total. 424 F.3d at 274. *Shafi* conflated ordinary and complete preemption in its analysis of *Norris. Id.* Its confusion arose from the fact that ordinary preemption under § 301 also establishes complete preemption for removal, and so the defensive and complete preemption inquiries collapse into one under that statute. *Id.* This is so because the Supreme Court has already

found § 301 to have extraordinary preemptive power. *Id.* at 275. Federal courts thereafter need only look to the state law claim in question to determine if § 301 comprehends the claim. *Id.* If so, then the court may exercise jurisdiction over it.

The court of appeals noted that the complete preemption analysis differs from the analysis under defensive preemption in that it requires consideration of the federal statute in question, rather than the state-law claim. 424 F.3d at 275. Moreover, it noted that the analogy between the RLA and § 301 in *Norris* was not intended to go as far as the *Shafi* court believed. *Id.* The Supreme Court made this clear when in *Beneficial National Bank* it noted as of 2003 it had only recognized preemption under causes of action arising under ERISA and § 301, omitting the RLA. *Id.* at 275.

The Court in *Beneficial Nat'l Bank* noted that the operative question for determining whether a federal statute completely preempts the state cause of action is whether the statute provides "'the exclusive cause of action' for the state-law claim." *Sullivan,* 424 F.3d at 275, *quoting Beneficial Nat'l Bank.* As the Second Circuit Court of Appeals concluded in *Sullivan,*

> this language from *Beneficial National Bank* makes clear an aspect of the complete preemption doctrine that is often overlooked: removal of state-law claims based on complete preemption becomes possible not solely by virtue of the preemptive force of a substantive federal statute such as the LMRA, ERISA or the National Bank Act, but rather because a federal statute with completely preemptive force also gives rise to original federal jurisdiction, and as a consequence allows removal under 29 U.S.C. § 1441.

442 F.3d at 276.

Here, the plaintiffs' state-law claim is for review of an arbitration award (the so-called "Nicolau award") issued by an arbitration board established under

ALPA Merger Policy. *Complaint* ¶¶ 35, 40, 48. The arbitration did not occur

before a system board of adjustment established under either the ALPA/US

Airways pilot collective bargaining agreement or the ALPA/America West pilot

collective bargaining agreement. While the RLA establishes a procedure for

enforcement and review of the awards of system boards adjustment under its

Sections 3, First(p) and (q), 45 U.S.C. § 153, First (p) & (q), that could fairly be

considered the exclusive cause of action for such relief, the Act says nothing

about review of arbitration awards not arising from system boards of

adjustment[4] or, obviously, awards under arbitration agreements not subject to

the Act. *See* Section III.A, *infra*. The jurisdiction of system boards of adjustment

in the airline industry is strictly confined under Section 204 of the Act, 45 U.S.C.

§ 184, to disputes between carriers and their employees.

Nothing in the RLA establishes an exclusive cause of action for a state-law

claim seeking review of an arbitration award that is not issued by a system board

of adjustment and does not involve a dispute between a carrier and its employees.

The RLA, therefore, cannot completely preempt the plaintiffs' claim under the

D.C. Arbitration Act seeking review of the Nicolau award, since it does not

---

[4]     The RLA also provides in its Section 7 for "special boards of adjustment" established by the parties (a "carrier" and its employees' "representative") to hear particular minor disputes, rather than using the National Railroad Adjustment Board. 45 U.S.C. § 157. These "special boards", however, have not been used in the airline industry, which is covered by Title II of the Act and its Section 204 (providing for the establishment of airline system boards). 45 U.S.C. § 184. It also provides in Section 7 for the parties to establish arbitration boards to resolve "major disputes" over the formation or amendment of collective bargaining agreements. However, the Act provides that the awards of such boards are "final and conclusive" and does not provide for any review. Since interest arbitration under §§ 7, 8 is voluntary to establish a new collective bargaining agreement, it is not surprising that the Act does not provide a mechanism for review. 45 U.S.C. §§ 157, 158.

establish an exclusive cause of action for that state-law claim to vest subject-matter jurisdiction in the federal courts. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)("only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."); *Sullivan,* 424 F.3d at 276.

Plaintiffs submit that the better reading of the law is to hold that the RLA has only ordinary preemptive effect. *Sullivan,* 424 F.3d at 277. As the RLA carries only ordinary preemptive effect, a DFR claim under the RLA similarly effects only ordinary preemption. *See Marcoux v. American Airlines, Inc.,* 2006 U.S. Dist. LEXIS 14130 (E.D.N.Y. 2006). Ordinary preemption does not provide a basis for removal to federal court. *Caterpillar Inc.,* 482 U.S. at 393 (it is "well-settled" that defense created by ordinary preemption does not give rise to a right of removal to federal court). This Court should join the "emerging trend" in favor of ordinary preemption under the RLA and remand this matter to the Superior Court.

## III. Even considering the defendants' arguments under the "artful pleading" doctrine, the plaintiffs' claim for relief in no way implicates federal law

The defendants assert that the plaintiffs' application for vacation of the Nicolau award is an artfully pled claim against ALPA for breach of its duty of fair representation and seeks to proscribe ALPA's actions as representative of the USAirways and America West pilots. *Notice of Removal* ¶¶ 4, 5. Respectfully, this is patent nonsense.

## A.     ALPA Merger Policy is subject to state law

ALPA Merger Policy is not subject to either the Railway Labor Act or the Labor-Management Relations Act.  No "carrier" subject to the RLA is a party to ALPA Merger Policy (which is exclusively an internal policy) and no carrier was party to the seniority list integration arbitration between the AAA MEC and the AWA MEC.  Accordingly, the RLA has no application to this dispute.  *See, e.g., Air Line Pilots Ass'n v. DHL Holdings (USA), Inc.*, 2007 U.S. Dist. LEXIS 40771 (S.D. Ohio 2007).

The Merger Policy is just as plainly not governed by § 301 of the Labor-Management Relations Act (and the defendants do not allege that § 301 applies).  The LMRA is an amendment to the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.*  Its Section 301 regulates actions between employers and labor organizations subject to the NLRA, and actions upon a contract between labor organizations subject to the NLRA (*e.g.*, brought under a union's constitution or internal policies).  Section 301 states that it applies to "[a]ny labor organization which represents employees in an industry affecting commerce as defined in this chapter."  29 U.S.C. § 185 (b).  The NLRA defines a "labor organization" in Section 2 as any organization in which "employees" subject to the Act participate.  29 U.S.C. § 152(5).  However, the NLRA specifically excludes employees covered by the Railway Labor Act from its definition of "employee."  29 U.S.C. § 152(3).  Only employees subject to the RLA participate in ALPA and its MECs.  Accordingly, ALPA and the MECs party to this action are not "labor organizations" subject to the LMRA.  *See Davenport v. Int'l Brotherhood of Teamsters*, 334 U.S. App. D.C. 228, 166 F.3d 356, 365 n.10 (D.C. Cir.

1999)(subordinate union organization whose members are employed by employer subject to RLA is not a "labor organization" within meaning of § 301); *DHL Holdings*, 2007 U.S. Dist. LEXIS 40771, *8 (ALPA not  a labor organization under § 301)..

Where neither the RLA nor the LMRA apply to an arbitration agreement—as with ALPA Merger Policy—then a party is free to enforce that agreement or, necessarily, seek review of an award under that agreement, in state court.  ALPA itself pursued such a course this year to compel DHL Holdings (which is not a "carrier" subject to the RLA) to arbitrate a dispute with ALPA under an agreement between the two entities.  ALPA sued DHL in the Court of Common Pleas in Hamilton County, Ohio to compel the company to arbitrate under a letter of agreement.  *DHL Holdings*, 2007 U.S. Dist. LEXIS 40771, *4.  DHL removed the action to the United States District Court for the Southern District of Ohio asserting that it was preempted by the RLA.  *Id.*  ALPA moved to remand arguing that state law governed the parties' agreement.  *Id.* *5.  It noted that the action sought only to compel arbitration before the system board of adjustment established by ALPA and ASTAR Airways (a former subsidiary of DHL Holdings) under their collective bargaining agreement.  *Id.*

The district court recited that the Sixth Circuit holds the RLA "does not have extraordinary preemptive force" and held that removal on this basis was improper.  *Id.* at * 7. It also noted that since ALPA is not a labor organization subject to § 301 of the LMRA, preemption was not warranted based on that statute.  *Id.* at * 8.

Stated simply, if there is no "carrier" under the RLA that is a party to an agreement to arbitrate, and no "labor organization" subject to § 301 is a party either, then the arbitration agreement is subject to state law.  That is the case here.  The arbitration agreement at issue in the plaintiffs' cause of action is between the AAA MEC and AWA MEC, neither of which is subject to § 301.  No carrier is party to the agreement.  The AAA MEC, therefore, is free to enforce the agreement is state court.

**B. Since the plaintiffs' claim does not allege any act or omission by ALPA, the exclusive representative of the USAirways' pilots, their complaint does not implicate ALPA's duty of fair representation**

> 1.    The complaint does not name ALPA as a party, only the AWA MEC, showing that the plaintiffs' claim is confined to review of the Nicolau award

The defendants are wrong when they assert that the DFR under the RLA could completely preempt the plaintiffs' action for vacation of the Nicolau award. *Marcoux v. American Airlines, Inc.,* 2006 U.S. Dist. LEXIS 14130 (E.D.N.Y. 2006).  Their assertion of preemption by the DFR reflects the same confusion of the ordinary and complete preemption analyses that yielded the Second Circuit Court of Appeals' erroneous conclusion in the *Shafi* case.  But even considering their argument, there is no DFR claim that can be imputed to the plaintiffs' cause of action under the D.C. Arbitration Act.

ALPA is the exclusive representative of the US Airways and America West pilots.  "The undoubted broad authority of the union as exclusive bargaining agent in the negotiation and administration of a collective bargaining contract is accompanied by a responsibility of equal scope, the responsibility and duty of fair

representation." *Baker v. Newspaper and Graphic communications Union Local 6*, 202 U.S. App. D.C. 156, 628 F.2d 156, 164-65(D.C. Cir. 1980)(quoting *Humphrey v. Moore*, 375 U.S. 335, 342 (1964). *See also National Treasury Employees Union v. Federal Labor Rel. Authority,* 255 U.S. App, D.C. 140, 800 F.2d 1165 (D.C. Cir. 1986)("NTEU").    Yet the scope of the duty of fair representation is limited to the extent of the union's duties as exclusive representative.    *NTEU*, 800 F.2d at 1169 ("The duty [is] co-extensive with the power [as exclusive representative]; the duty is certainly not narrower than the power, and this formulation indicates that it also is not broader.").    Where a union is not acting as the exclusive representative of employees, the DFR is not implicated.    *Id.* ("This view of the duty as arising from the power and hence coterminous with it is expressed again and again in the case law").

The plaintiffs' application to set aside the Nicolau award is filed only against the AWA MEC.    That entity is not the exclusive representative of the USAirways pilots.    Nor is it ALPA's agent for representing USAirways pilots. Rather, it is merely a subordinate body acting as agent for ALPA in administering the pilot collective bargaining agreement at America West.    Accordingly, the AWA MEC does not owe a DFR to US Airways pilots.    *See Baker,* 628 F.2d at 165 (labor organization that is not certified or acting as exclusive representative owes no DFR).    It also would not be a proper agent for suit against ALPA for breach of the DFR.    *See, e.g., Bowers v. Chaney*, 468 F. Supp.2d 102, 106-07 (D.D.C. 2006)(service of process is proper only against authorized agent).    The defendants are the wrong party for USAirways pilots to bring a DFR action against.    Moreover, the AAA MEC is not the proper plaintiff to bring a DFR action

against ALPA, which owes its DFR to the USAirways pilots, not its subordinate body. *See, e.g., Int'l Brotherhood of Teamsters v. Ass'n of Flight Attendants*, 663 F. Supp. 847, 854 (D.D.C. 1987)(labor union owes DFR only to the members it represents).[5]

Doubtless recognizing that the plaintiffs' refusal to sue ALPA substantiates that they do not allege a DFR action, the defendants have now sought to bring ALPA into this lawsuit. *See Dkt. No.* 2.  The defendants' obvious intent is to entangle ALPA in this action, thereby  creating the appearance of a DFR claim where none exists (and cast plaintiffs in the unfavorable political light of suing their own union), and then move to dismiss themselves as an improper party to that purported DFR action.  But it is the plaintiffs who are master of their complaint, not the defendants.  ALPA is wholly unnecessary to the arbitration award challenge pled by the plaintiffs.  It is only the defendants who wish to bring ALPA into this action in order to evade review of the Nicolau award.  Indeed, the defendants' motion would create the absurd scenario of ALPA suing itself (via a subordinate body) for a supposed breach of its DFR.

> 2.    The allegations of the complaint do not assert
>       any act or omission by ALPA that could state a
>       claim for breach of its DFR

Our application does not allege any act or omission by ALPA.  Because the AWA MEC has no representative status concerning the US Airways pilots, the

---

[5]    The district court in *Teamsters v. AFA* apparently concluded that § 301 preempted the Teamsters' action against the AFA.  For the reasons stated in Section II *supra,* § 301 cannot apply to a dispute involving a labor organization whose members are only covered by the RLA and the district court erred in that conclusion.  The subsequent appeal in the proceeding did not address that issue. *See International Brotherhood of Teamsters v. Ass'n of Flight Attendants,* 274 U.S. App. D.C. 370, 864 F.2d 173 (D.C. Cir. 1988).

application does not allege an act or omission by the AWA MEC relative to the US Airways pilots.  Rather, the application merely challenges an arbitration award. A claim for DFR can only be stated when it alleges that the exclusive representative acted, or failed to act, in a manner that violated its DFR.  *See, e.g., Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 69 (1991)(union "breaches its duty of fair representation if its *actions* are either 'arbitrary, discriminatory, or in bad faith.'").  *See also Davenport*, 166 F.3d at 361, *quoting O'Neill* (focus of DFR inquiry is on whether "a union's actions" are arbitrary, discriminatory or in bad faith).

The plaintiffs also do not allege any unfairness in the merger integration process established by ALPA.  Such an allegation of unfair process is the only potential basis for a DFR against ALPA in the seniority integration context.  *See, e.g., Air Wisconsin Pilots Protection Comm. v. Sanderson*, 909 F.2d 213, 219 (7th Cir. 1990).  Indeed, the respective representatives of the US Airways pilots (Captain Thomas Zerbarini) and the America West pilots (Captain Russ Weber) on ALPA's Executive Council each voted in favor of a resolution on July 19, 2007 that stated the seniority integration process was not questioned by either the AAA MEC or the AWA MEC.  *See Plaintiffs' Exhibit* 3 at 6 (¶ 4).  Since the AAA MEC does not contest the fairness of the seniority list integration process under ALPA Merger Policy—only the validity of the arbitration award itself under that policy— its application cannot implicate ALPA's DFR.

ALPA, in fact, has not taken any action regarding the Nicolau award.  The unanimous resolution passed by its Executive Council last month asserts that it will not take action on the award and, instead, it established an internal

committee to consider existing issues between the America West and US Airways pilots. *See Pltfs' Exh.* 3, p. 2. The plaintiffs have not alleged conduct on ALPA's part that could rise to a DFR claim and ALPA has represented that it does not intend to do anything with the Nicolau award at this point. There is nothing before this Court that could state a claim for breach of ALPA's DFR.

The AAA MEC is following the Seventh Circuit Court of Appeals in *Air Wisconsin* (which the defendants misstate in their notice of removal). There, the court of appeals considered a DFR claim against ALPA arising out of a seniority integration process between the Air Wisconsin pilots and the Mississippi Valley Aviation pilots. In affirming dismissal of the Air Wisconsin pilots' claim for breach of the DFR, the court of appeals noted that ALPA satisfied its DFR "by establishing, long before the case arose, a fair *process* for determining seniority in an airline resulting from a merger." 909 F.2d at 216. It went on to note that

> ALPA's belief that such arbitrations should be final and binding and its corollary that ALPA shall be obligated to defend them would not have prevented the pilots from challenging the arbitration award in court, if the award were infected by fraud or by a serious conflict of interest or were inconsistent with the terms of reference to arbitration. ALPA's policy signifies only that if the award is valid, it is definitive so far as ALPA is concerned.

*Id.*

The court went on to observe that the DFR action by the Air Wisconsin pilots was a collateral attack on the validity of the arbitration award. In further rejecting the claim, the court of appeals noted

> if the plaintiffs thought the arbitration award invalid because it was rendered in violation of the union's constitution and merger policy statement, the way to raise the point was to challenge the award in court, which they had six months to

do. *United Independent Flight Officers, Inc. v. United Air Lines, Inc.,* 756 F.2d 1262, 1269-73 (7th Cir.1985). They have mounted a collateral attack on the award [through their DFR claim] without even trying to bring themselves within the narrow limits of the rules that permit such attacks.[6]/

The USAirways MEC is following just the course advised by the court of appeals in *Air Wisconsin*—challenging the validity of the Nicolau award in court. Contrary to the erroneous assertion of the defendants (*Notice of removal* ¶ 4), such an award cannot be challenged in a DFR action. A challenge to the award could not allege any act or omission by ALPA, the exclusive representative, since ALPA is providing a neutral process through its Merger Policy. 909 F.2d at 216. *See also Pltfs. Exh.* 3 at 6 (¶¶ 2-4). Such a DFR action would be an improper collateral attack that seeks to evade the standard of review typically accorded arbitration awards. *Id.* Accordingly, since the plaintiffs have not alleged an act or omission by their exclusive representative in violation of the DFR and are properly seeking to challenge the validity of the Nicolau award in a court of competent jurisdiction, this action should be remanded to the Superior Court of the District of Columbia.

### C. The plaintiffs' complaint does not seek any relief against ALPA, so vacation of the arbitration award cannot conflict with ALPA's duties as exclusive representative

The defendants again show their confusion of ordinary and complete preemption by asserting as a basis for removal that the vacation of the Nicolau

---

[6]     To the extent the Seventh Circuit Court of Appeals assumed, without actually holding, that such a challenge to the validity of an arbitration award under ALPA Merger Policy would arise under the RLA, it erred for the reasons already noted by the plaintiffs in discussing why the RLA does not apply to the policy.

award would somehow conflict with ALPA's bargaining duty on behalf of the US Airways pilots. *Notice of Removal* ¶ 5. This asserted conflict with the statutory scheme focuses on the plaintiffs' state law claim and so it assumes that complete preemption applies under the RLA, contrary to the better reading of the law. But again, even considering this assertion by the defendants, it fails. The relief sought by the plaintiffs is not directed to ALPA. No order of the Superior Court would grant relief against ALPA if the plaintiffs succeeded in vacating the Nicolau award.

The defendants really just assert that vacating the Nicolau award may change the award produced by ALPA Merger Policy and that would then change the integrated seniority list ALPA presents to the carrier as the result of that policy. But ALPA does not claim to exercise any discretion regarding the seniority list it presents as the result of its merger process. As Judge Posner noted, "ALPA's policy signifies only that if the award is valid, it is definitive so far as ALPA is concerned." *Air Wisconsin,* 909 F.2d at 216. Indeed, ALPA designed its Merger Policy so it would not exercise discretion over the integrated seniority list and would therefore be insulated against any claim for breach of DFR resulting from its presentation of the list to the carrier. *Rakestraw v. Air Line Pilots Ass'n,* 981 F.2d 1524, 1533 (7th Cir. 1992)("adhering to this policy insulates the union against a charge that advocating the arbitrators' award in negotiations with the employer violates the duty of fair representation.").

So the defendants' assertion that vacation of the award would constrain ALPA's discretion as exclusive representative is meritless. ALPA's Merger Policy

is designed to remove ALPA's discretion from the process of determining seniority integration and presenting the award in bargaining.

ALPA has properly decided to take no action concerning the Nicolau award, since the validity of that award is disputed in the plaintiffs' Superior Court action.  Pltfs Exh. 3 at 7; *Air Wisconsin*, 909 F.2d at 216 (award is definitive for ALPA if it is "valid").  If the Superior Court vacates the Nicolau award that means it was not "valid" for purposes of ALPA Merger Policy.  A new award would presumably then be obtained from the process and that award, when valid, would be the award presented by ALPA to USAirways.  But ALPA is simply waiting to receive a valid award from the Merger Policy process.  The plaintiffs' Superior Court action is designed to test whether the Nicolau award is valid under ALPA Merger Policy (contending that it is not). So the Superior Court litigation supports the Merger Policy process—and reinforces its purpose to "insulate" ALPA from DFR liability for presenting the ultimate award to the carrier in bargaining—by resolving the legal dispute between the AAA MEC and the AWA MEC over the validity of the Nicolau award.

Accordingly, the plaintiffs' Superior Court action in no way conflicts with ALPA's role as exclusive representative.  This action should be remanded to the Superior Court.

## <u>CONCLUSION</u>

Wherefore, the premises considered, the plaintiffs' respectfully request that the Court grant their motion and remand this matter to the Superior Court of the District of Columbia, and award plaintiffs their fees and costs incurred in this motion.

Dated: August 20, 2007.        Respectfully submitted,


/s/ William R. Wilder
Roland P. Wilder, Jr. (DC Bar No. 69609)
William R. Wilder (DC Bar No. 450086)
BAPTISTE & WILDER, P.C.
1150 Connecticut Ave., N.W., Suite 500
Washington, D.C. 20036
(202) 223-0723/(202) 223-9677 [fax]
wwilder@bapwild.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 20, 2007, a true copy of the foregoing, together with supporting memorandum of points and authorities and exhibit, was served on counsel for the defendants via the Court's ECF System.

/s/ William R. Wilder
William R. Wilder

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| US AIRWAYS MASTER EXECUTIVE COUNCIL, AIR LINE PILOTS ASSOCIATION, INT'L, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICA WEST MASTER EXECUTIVE COUNCIL, AIR LINE PILOTS ASSOCIATION, INT'L, *et al.*,<br><br>Defendants. | Civil Action No.<br>07-1309-EGS |

## ORDER

This matter coming before the Court upon the Plaintiffs' Motion to Remand, the Court having considered the parties' evidence and arguments, and being fully advised in the premises, it is this _____ day of _____ 2007,

ORDERED that the Plaintiffs' motion to remand this civil action to the Superior Court of the District of Columbia be, and hereby is, granted;

FURTHER ORDERED that the Plaintiffs be awarded their just costs, including attorneys' fees, incurred as a result of the removal;

FURTHER ORDERED that this case is remanded to the Superior Court of the District of Columbia.

_____
UNITED STATES DISTRICT JUDGE

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL
98TH REGULAR EXECUTIVE COUNCIL MEETING
July 17-19, 2007

SUBJECT
AAA/AWA Seniority Integration Award

SOURCE
President John Prater (06/07 EXCL, AT #1)

BACKGROUND INFORMATION
An ALPA Arbitration Board under Part 1, Section H of ALPA Merger
and Fragmentation Policy has rendered an Opinion and Award in the
Matter of the Seniority Integration of the Pilots of US Airways, Inc. and
the Pilots of America West Airlines, Inc. (the "Award"). The
Arbitration Board was chaired by a neutral selected by the Merger
Representatives of the two MECs and having considerable experience
as a labor arbitrator and as a neutral chair in seniority integration
procedures. The Award has nonetheless generated considerable
negative reaction among many US Airways pilots.

The AAA MEC, on behalf of the AAA pilots, requested that the
Executive Council set aside the "Award" on the ground that the it is not
fair and equitable and therefore fails to satisfy ALPA Merger and
Fragmentation Policy, and resubmit the matter to a new Arbitration
Board sitting with a different arbitrator.

The AWA MEC, on behalf of the AWA pilots, opposed that request on
the grounds that the Executive Council lacks jurisdiction to set aside
an arbitration award rendered under ALPA Merger and Fragmentation
Policy and that, if the Council possessed such jurisdiction, no sufficient
ground for exercising it was offered.

The Executive Council, acutely aware of the importance of these issues
to the pilots of both airlines as well as to the entire Association, desires
to fully consider the views of each group and fully deliberate all issues
raised in order to effectively discharge its responsibilities. The
Executive Council is also acutely aware of the negative consequences
that may result if the MECs fail to come together to explore consensual
approaches that promote career protection and mutual success, and


PLAINTIFF'S
EXHIBIT
3
07-1309-EGS

achieve an acceptable single collective bargaining agreement that improves pay, benefits, work rules and job security for both pilot groups.

At the May 2007 meeting, the Executive Council directed that the President continue to employ all the resources of the Association to assist the MECs in achieving these goals.

At a special meeting held on June 26, 2007, the Executive Council further considered the issues related to the differences between the AAA MEC and AWA MEC over the Award.  President John Prater reported that additional work remains to be done to carry out the May 2007 Executive Council resolution.

The Council directed the President to establish a committee, chaired by First Vice President Paul Rice and including Executive Board members, to work with both MECs and the JNC to assist them in developing consensual approaches that promote mutual career protection and mutual success.  The committee was directed to assist with a communications program established to provide AAA and AWA members with accurate information on issues concerning the Award.

The committee will report to the Council at its July meeting, where continued consideration of issues as to the Award will take place.

PROPOSED RESOLUTION
1    To be developed.


2    FINAL RESOLUTION
WHEREAS the AAA MEC, on behalf of the AAA pilots, has requested that the Executive Council set aside the Opinion and Award in the Matter of the Seniority Integration of the Pilots of US Airways, Inc. and the Pilots of America West Airlines, Inc. (the "Award") and resubmit the matter to a new Arbitration Board sitting with a different arbitrator, and

WHEREAS the AWA MEC, on behalf of the AWA pilots, has urged that the Executive Council lacks jurisdiction to review or set aside the Award and that, in any event, there is no basis for doing so, and

WHEREAS the Executive Council, acutely aware of the importance of these issues to the pilots of both airlines as well as to every member of the Association, has continued to fully consider the views of each group, and

WHEREAS the premise of ALPA Merger and Fragmentation Policy, ("Merger Policy"), as stated in its Preamble, is that"[t]he role of ALPA in seniority integration is solely to provide the process by which the affected pilot groups on ALPA airlines arrive at the merged seniority list for presentation to management, through their respective merger representatives, using arbitration if necessary," and

WHEREAS the Preamble to Merger Policy plainly states that "[r]esponsibility for the merged seniority list falls upon the respective merger representatives with ALPA National in a neutral position on the merits," and

WHEREAS Part 1, Section G.5. of Merger Policy also places upon the respective MEC merger representatives, and not upon ALPA National, the responsibility to "carefully weigh all the equities inherent in their merger situation" and to "attempt to match equities to various methods of integration until a fair and equitable agreement is reached," but does not obligate the merger representatives to do more than "keep in mind" a series of "goals," with "no particular order" of preference for these goals, and

WHEREAS the Executive Board in 1991 removed all mention of "date of hire" from Merger Policy, and

WHEREAS MECs and their merger representatives who submit their dispute to an arbitrator of their selection understand that the "purpose of arbitration shall be to reach a fair and equitable resolution consistent with ALPA policy," but that the Preamble to Merger Policy, as adopted by the Executive Board in 1991, provides that ["i]t must be understood that what appears to be truly 'fair and equitable' often differs depending upon the eyes of the beholder and that there may be no consensus of what is 'fair and equitable,'" and

WHEREAS when MECs and their merger representatives submit a dispute to arbitration, they are charged with knowledge that Merger Policy provides that "the Award of the Arbitration Board shall be final

and binding on all parties to the arbitration," that the Award "shall be defended by ALPA" and that the "merged seniority list will be presented to management and ALPA will use all reasonable means at its disposal to compel the company to accept and implement the merged seniority list," and

WHEREAS Part 1, Section N., paragraph 1. of ALPA Merger Policy (Merging of Employment Agreements) provides, "In no event, except by mutual agreement of all parties, will the company be given the right to use the merged seniority list prior to the successful conclusion of the merged working agreement," and

WHEREAS Section IV. of the Letter of Agreement dated September 23, 2005, between the Association, America West Holding Corporation, America West Airlines, Inc., US Airways Group, Inc., and US Airways, Inc. (the "Transition Agreement"), as approved by the America West and US Airways MECs and ratified by the respective AWA and AAA memberships provides that management may not use an integrated pilot seniority list prior to Operational Pilot Integration as defined in Section VI.A. of the Transition Agreement (i.e. negotiation of the Single Agreement and issuance of a single FAA operating certificate), and

WHEREAS no schedule has been specified in Merger Policy or the Transition Agreement for presentation of a merged seniority list to US Airways management, and

WHEREAS no merged collective bargaining agreement will take effect without separate membership ratification votes by the AAA and AWA membership, and

WHEREAS the Executive Council has resolved that the AAA and AWA MECs explore consensual approaches that promote mutual career protection and mutual success, as part of achieving acceptable collective bargaining outcomes that improve pay, benefits, work rules and job security for both pilot groups, and

WHEREAS the President, pursuant to direction of the Executive Council, established a committee (the "Committee") chaired by First Vice President Paul Rice and including Executive Board member David Webb and Executive Council member Ray Miller, to work (with other designees and advisors) with both MECs and the Joint Negotiating

Committee and to assist them in achieving the goals set forth above, with the expectation that the MECs and JNC will cooperate and participate in this process, and

WHEREAS the Committee has met with the JNC in accordance with the direction of the Executive Council, and

WHEREAS the President, the entire Executive Council, and the Committee met at length with both MECs at the headquarters of the AFL-CIO on July 17, 2007, where the Committee explored with the MECs strategies as to possible collective bargaining outcomes including a merged agreement, umbrella agreement, and multiple agreements, and

WHEREAS, on the basis of the Executive Council's July 17 meeting with the MECs and the reports of the Committee, the Executive Council recognizes that there are serious issues as to the potential for negotiation, ratification, and implementation of a merged collective bargaining agreement at this time, and therefore that serious issues exist as to the possibility of implementing the Award at this time,

THEREFORE BE IT RESOLVED that the Executive Council finds and determines as follows:

1.  The Opinion and Award in the Matter of the Seniority Integration of the Pilots of US Airways, Inc. and the Pilots of America West Airlines, Inc. (the "Award") has generated considerable controversy, including strong condemnations and strong defense. These contrasting responses present issues of great importance just at the time when our profession, led in part by the AAA and AWA pilots, is poised to make significant strides toward recovery from the concessionary contracts of the past several years. An important task of union leadership is to take all such concerns into account and to attempt to maintain bonds of trust and solidarity -- the foundation of our great trade union. An equally important task of union leadership is to function within the boundaries laid down by the members' elected representatives. The Executive Council takes both of these responsibilities seriously in discharging its duties.

2.  The Executive Council is a body of limited jurisdiction and authority with regard to seniority integration under Merger Policy. Although Part 1, Section B.3. of Merger Policy provides that "[i]ssues as to application or interpretation of Merger Policy shall be determined by the Executive Council," this authority is subject to other provisions in Merger Policy. In particular, Merger Policy provides that ALPA's role in seniority integration "is solely to provide the process," and that "ALPA National" is confined to "a neutral position on the merits."

3.  The Executive Council's authority as to seniority integration is also subject to several provisions of Merger Policy setting forth the role of the MECs, their merger representatives, and the Arbitration Board in resolving the issues. Under Merger Policy, when the parties submit their dispute to arbitration, it is up to the Arbitration Board, not ALPA National, to decide how best to express the Board's view of the equities.

4.  Given that ALPA National's role is solely to provide the process for seniority integration, the appropriate question for the Executive Council is whether it has done so in this case. No evidence has been presented of any impropriety in any aspect of the process which would support a finding that ALPA has not provided the exact process that it was obligated to provide, including negotiations, mediation, and arbitration.

5.  After meeting with and hearing from the AAA MEC and the AWA MEC, and receiving reports on recent contract negotiations, in the judgment of the Executive Council serious issues exist affecting the ability of both pilot groups to complete and ratify a merged collective bargaining agreement which would provide the basis for implementation of the Award at this time. Merger Policy calls for a contract negotiation and agreement process as well as seniority integration, making it evident Merger Policy must at all times be interpreted and applied in the most practicable manner so as to achieve actual results in the interests of the flight deck crewmembers involved rather than stalemate and deadlock that lead nowhere.

6.  It is the judgment of the Executive Council that the Association's resources should at this time be devoted to pursuing practical

results by continuing the efforts of the Executive Council and the Committee to bring about solutions that can benefit our membership. Further, for the reasons stated above, the Executive Council is of the opinion that taking other action on this agenda item could divert attention from this endeavor and is neither called for nor appropriate at this time. Rather, the Executive Council directs that the work of the Committee be continued, that reports be made by the Committee and the MECs to the Executive Council at its next meeting, and that consideration then be given as to whether further action on this agenda item is warranted, and

BE IT FURTHER RESOLVED that the Committee continue to assist the MECs and JNC in achieving the goal of developing consensual approaches that promote mutual career protection and mutual success, as part of achieving acceptable collective bargaining outcomes that improve pay, benefits, work rules and job security for both pilot groups, and

BE IT FURTHER RESOLVED that, in the absence of full cooperation with the process for achieving consensual solutions, the President, in consultation with the Committee, develop other procedures for solutions that will best fulfill our union's representation responsibilities, and

BE IT FURTHER RESOLVED that the Committee continue to report to the Executive Council and to the members of the Executive Board in a timely and ongoing manner so that the Executive Council and members of the Executive Board will have the benefit of being kept up to date on a matter of great importance to our union, and

BE IT FURTHER RESOLVED that the President, with the advice and assistance of the Committee, continue to deploy and strengthen the communications program previously directed by the Executive Council to provide information to the AAA and AWA membership and all other members of the Association on the issues concerning the Award and collective bargaining solutions.