## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                              )
US AIRWAYS MASTER EXECUTIVE         )
COUNCIL, AIR LINE PILOTS                  )
ASSOCIATION, INT'L,                         )
and,                                            )
JOHN A. STEPHAN, in his capacity as     )
MEC Chairman,                                )
                                              )
Plaintiffs,                                     )
                                              )
v.                                            )          Case No. 07-1309 (EGS)
                                              )
AMERICA WEST MASTER EXECUTIVE )
COUNCIL, AIR LINE PILOTS                  )
ASSOCIATION, INT'L,                         )
and,                                            )
JOHN MCILVENNA, in his capacity          )
as MEC Chairman,                             )
                                              )
Defendants.                                   )
_____ )

## OPPOSITION TO MOTION TO REMAND

Defendants America West Master Executive Council and John McIlvena submit this

opposition to the Plaintiffs' motion to remand this action to District of Columbia Superior Court.

Defendants removed this action pursuant to 28 U.S.C. § 1441(a) on the basis of the "complete

preemption" branch of federal question removal jurisdiction, because this action arises within an

area of federal law in which the federal "duty of fair representation" cause of action displaces

state-law doctrines and provides the exclusive remedy for the vindication of rights of the kind

asserted by Plaintiffs here.

# BACKGROUND

The dispute in this case arises in the wake of the merger of America West Airlines and US Airways—two air carriers whose labor relations regimes were regulated by the federal Railway Labor Act (RLA), 45 U.S.C. § 51 *et seq.*—into one new successor company (the "Company") that retained the US Airways name.[1]

Prior to the merger, the Air Line Pilots Association ("ALPA") was the labor organization that, pursuant to RLA § 2, 45 U.S.C. § 152, served as the "exclusive representative" of two distinct bargaining units[2]—the unit consisting of America West pilots and the unit consisting of former US Airways pilots.  As the RLA § 2 "exclusive representative," ALPA possessed the sole authority to negotiate with the respective employers over terms and conditions of employment applicable to bargaining unit members, including seniority.  After the merger, ALPA remains the RLA § 2 "exclusive representative" of both bargaining units composed of the members of each of the separate predecessor units and for whom ALPA is negotiating a single agreement at the post-merger airline.

As the Complaint alleges, a pilot's relative placement on the seniority list applicable to his employer determines, not only the pilot's pay, but also other important terms of employment, including the prospects for promotion into scarce and much-sought-after captaincy positions.  Complaint ¶¶ 28, 59. [3]

---

[1] Although the post-merger airline is called "US Airways," it is a different legal entity than the pre-merger US Airways.  Throughout this submission, when we refer to either "US Airways" or the "Company" without modification, we are referring to the post-merger US Airways.

[2] Under the RLA a bargaining unit of employees is termed a "class or craft." *See* U.S.C. § 152 Fourth. Because a "class or craft" is identical to the more familiar "bargaining unit" nomenclature of the National Labor Relations Act, we will refer to the employee groups as "bargaining units."

[3] The complaint was styled an "Application," but, because applications are treated in every respect as identical to complaints under District of Columbia procedure, *see* D.C. Code § 16-

The merger of America West and US Airways had significant labor-relations implications, for it meant that, going forward, there would be only one pilot bargaining unit, not two, and that there would be a need to combine the two pre-merger collective bargaining agreements, including their separate pre-merger pilot seniority lists, into a single collective bargaining agreement with a single integrated seniority list. Because, as noted, ALPA became the exclusive representative of what will be a new, unitary bargaining unit, ALPA became the sole entity having authority to bargain with, and enter into binding agreements with, the post-merger Company over employment matters, including seniority principles. And that, in turn, meant that ALPA would have to develop a proposed single seniority list to present to the Company at the bargaining table and to urge the employer to adopt going forward.

*Any* proposed integrated seniority list that a union proffers in the wake of a merger between two companies will, by its nature, reflect a series of judgments as to which of two similarly deserving bargaining unit members, or classes of members, should be placed higher than the other. *See generally Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953). Because seniority allocates scarce resources, those judgments will inevitably produce disappointment for the members placed lower on the list than they believe they should be. To ensure that the necessary judgments reflected in an integrated seniority list proposed by ALPA are arrived at pursuant to a fair process, ALPA adopted a procedure many years prior to the merger here called the "Merger and Fragmentation Policy" ("Merger Policy").

The final product that ALPA Merger Policy generates is a *proposed* seniority list—a list that ALPA promises to present to the employer for the employer's consideration and promises to

---

4311, we henceforth refer to the Application as the "Complaint." Further, because both Plaintiff Stephan and Defendant McIlvenna are named in their official capacities with regard to their respective MECs, we will simplify and refer only to the MECs when describing the parties.

use its best efforts to persuade the employer to adopt.  Conversely, the final product of ALPA

Merger Policy is not a *binding* seniority list; a seniority list can be binding and enforceable only

after ALPA proposes the list *and* the employer agrees to it so that it becomes part of the

collective bargaining agreement governing the employees' terms and conditions of employment.

Merger Policy at 9-10.

      To generate the proposed list for ALPA to present to the employer, Merger Policy begins

by directing the "Master Executive Council" ("MEC")[4] from each airline to establish a Merger

Committee , to protect their respective groups' interests internally.  Under Merger Policy, these

Merger Committees are autonomous entities, not subject to direction by the MECs (although the

Committee members can be removed by the MEC consistent with the MECs governing

procedures). Merger Policy at 3.  In this case, the Merger Committee from Plaintiff AAA MEC

(hereinafter "US Airways MEC") acted on behalf of the former US Airways pilots, and the

Merger Committee from Defendant AWA MEC (hereinafter "America West MEC") acted on

behalf of the America West pilots.[5]

      Merger Policy then provides that the two Merger Committees are to attempt to reach a

voluntary agreement as to the content of a proposed integrated seniority list.  If they cannot reach

such an agreement, Merger Policy provides for a neutral Arbitration Panel to hear both sides'

positions and to then create a seniority list for ALPA to present to the carrier.

      ALPA is required by Merger Policy (i) to "defend that list" from attack by anyone,

including disappointed pilots or groups of pilots; (ii) to present the list to the employer; and (iii)

---

[4] The nature and function of an MEC is fully set out in Defendant's Motion for Joinder *of Airline Pilots Association as a Necessary Party* at 4-5. *See* also McIlvenna Decl.  ¶¶ 3-4.

[5] We say that the MEC Merger Committees represented the respective groups "internally," because, at all times, ALPA and not either MEC was the sole "exclusive representative" of the pilots in dealing with the employer. *See* Motion to Remand at 15.  *See also infra.*

to use "all reasonable means at its disposal to compel the company to accept and implement the merged seniority list." Merger Policy at 9.

In this case, the US Airways Merger Committee and the America West Merger Committee were unable to reach an agreement, and their dispute was presented to an arbitration panel chaired by veteran labor arbitrator George Nicolau. The Nicolau Panel issued an integrated list on May 1, 2007 for ALPA to propose to the post-merger US Airways, accompanied by an opinion explaining the reasons for arriving at that list. Complaint ¶¶ 31-43 and Ex. 2.

## PROCEDURAL HISTORY

### A. The Complaint

This action was commenced through the filing of a complaint in District of Columbia Superior Court on June 26, 2007 by the US Airways MEC and its President John A. Stephan, acting in his official capacity, against the America West MEC and its President John McIlvenna, acting in his official capacity. The Complaint alleges that the Nicolau seniority list, if presented by ALPA and agreed to by US Airways, would be inequitable to the pilots of the former US Airways, because, *inter alia*, the list would "deprive[] long-serving, senior US Airways pilots of their career expectations by putting them below America West pilots who have far less service at America West." Complaint ¶ 12. Plaintiffs' objective in this action is thus to have ALPA present a different seniority list than the one that emerged from the application of ALPA Merger Policy. The Complaint seeks to achieve that objective in its prayer for relief by requesting an order that would "vacate" the Nicolau seniority list on the ground that it is invalid under District of Columbia local law. Complaint ¶ 62.

Notably, in developing the theory that the Nicolau list is inequitable, the Complaint invokes a United States Supreme Court decision involving a federal duty-of-fair-representation cause of action. *Humphrey v. Moore*, 375 U.S. 335 (1964). *See* Complaint ¶ 4. The Complaint quotes that decision for the proposition that "[i]ntegration of seniority lists should ordinarily be accomplished on the basis of each employee's length of service with his original employer." *Id.* (quoting *Humphrey*, 375 U.S. at 347).

The Complaint further states that the US Airways MEC is "pursu[ing] this action for its affected members," that is, for the pilots of the former US Airways. *Id.* ¶ 15. Those members will be "affected" by the Nicolau list if, but only if, *ALPA* presents the list to the employer. That is because, as Plaintiffs assert, ALPA is the "exclusive representative" of the members of the Plaintiff US Airways MEC (as well as of the Defendant America West MEC), and hence ALPA is the *only* entity with the authority under the RLA to present a seniority list to the employer and enter into an agreement with the employer, making such a list binding on the respective pilot groups. Motion to Remand at 15. This lawsuit can therefore provide relief for the "affected members" of the US Airways MEC only if a decision in favor of Plaintiffs would have the effect of precluding *ALPA* from presenting the Nicolau list to the employer.

**B.     The Removal Petition**

On July 24, 2007, Defendants removed this action to federal court. In our Notice of Removal ("Removal Pet."), we stated first that "Plaintiffs' application to 'vacate' an 'arbitration award' that does not establish any enforceable seniority rights in a collective bargaining agreement with the Company, but which merely sets out ALPA's bargaining position to be presented to the Company, is not a state law claim at all but rather an artfully pled federal claim for breach of the duty of fair representation." Removal Pet. ¶ 4. We then cited cases holding

- 6 -

that the federal duty-of-fair-representation (DFR) doctrine so comprehensively regulates the obligations that a union owes to bargaining unit members when it conducts core representational functions—such as negotiating with the employer on behalf of bargaining unit members concerning matters such as seniority—that the DFR doctrine "completely preempt[s]," and hence renders removable to federal court, any purported state-law actions brought within the DFR doctrine's field.  *See* Removal Pet. ¶ 5 (citing *BIW Deceived v. Local S-6, Marine & Ship Building Workers*, 132 F.3d 824, 831-33 (1st Cir. 1997), and *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1165-67 (5th Cir. 1989)).

In response, Plaintiffs have filed the instant Motion for Remand and a brief in support of the Motion.   In that brief, the Plaintiffs have totally ignored the "complete preemption" cases we cited in our removal petition and have instead devoted most of their energy to responding to straw-man contentions not made in the petition.  As we proceed to show, this case was properly removed, and Plaintiffs' arguments in support of remand lack merit.

## ARGUMENT

The federal removal statute, 28 U.S.C. § 1441(a) provides that a state-court action may be removed to federal court if it qualifies as a "civil action … of which the district courts of the United States have original jurisdiction."  In turn, 28 U.S.C. § 1337 provides that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce."

Our submission that this case was properly removed rests on three unassailable propositions:

First, a claim for breach of the RLA § 2 duty of fair representation (DFR) "aris[es] under" an "Act of Congress regulating commerce," namely, the RLA, and therefore is a claim

within the original jurisdiction of "the district courts of the United States" under 28 U.S.C. § 1441(a).  *See* Part A *infra.*

Second, the federal DFR cause of action is among the "select group of claims" that has a "preemptive force … so powerful as to displace entirely any state cause of action" arising within its field, such that claims in that field pleaded in state-law terms are treated as "necessarily federal in character," *BIW Deceived*, 132 F.3d at 831 (internal quotation marks and citations omitted), and thus removable under the "complete preemption" exception to the general rule that complaints purporting to rest solely on state law may not be removed to federal court.  *See* Part B *infra.*

Third, the right that Plaintiffs are attempting to vindicate in the instant lawsuit—the right of members belonging to a collective bargaining unit to restrain their union from presenting or agreeing to provisions in collective bargaining agreements that are either discriminatory or substantively arbitrary—falls squarely within the field regulated exclusively by the DFR cause of action.  It is a right the contours of which are defined exclusively by the federal DFR doctrine, such that the Plaintiffs' effort here to avoid removal by artfully pleading state-law-based theories to vindicate that right is futile.  *See* Part C *infra.*

### A.  A Claim for Violation of the Duty of Fair Respondent Under the RLA is an Action Over Which Federal Courts Have Original Jurisdiction

1. It is well settled that a claim for breach of the RLA duty of fair representation arises under federal law and may be asserted through an action within the original jurisdiction of the federal district courts.  Indeed, in the two companion cases in which the Supreme Court recognized the duty—*Steele v. Louisville & National Railroad*, 323 U.S. 192 (1944), and *Tunstall v. Brotherhood of Locomotive Firemen & Enginemen,* 323 U.S. 210, 211 (1944)—the Supreme Court expressly so held.

In *Steele,* a group of African American railway firemen sued to enjoin the enforcement of provisions in a collective bargaining agreement that were racially discriminatory, and to further enjoin their union from making or agreeing to collective bargaining proposals that were racially discriminatory. The Supreme Court began by stating that "[t]he question is whether the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, imposes on a labor organization, acting by authority of the statute as the exclusive bargaining representative of a [bargaining unit] of railway [and air] employees, the duty to represent all the employees in the craft without discrimination … and, if so, whether the courts have jurisdiction to protect the minority of the [bargaining unit] from the violation of such obligation," *Steele*, 323 U.S. at 193-94. The Court answered *both* of those questions in the affirmative.

With respect to the first question, the Court reasoned that, although Congress did not expressly provide for a duty on the part of unions to represent all members of a bargaining unit fairly and without discrimination, such a duty was necessarily implied in RLA § 2, which vests a union with the exclusive power to negotiate on behalf of all members of a bargaining unit. In so holding, the Court invoked the "principle of general application that the exercise [by a representative or agent] of a granted power to act in behalf of others involves the assumption toward them of a duty …to exercise fairly the power conferred upon it in behalf of all those for whom [the representative or agent] acts, without hostile discrimination against them." *Id*. at 202-03.

With regard to the second question, the *Steele* Court held that the right of bargaining unit members to fair representation by their union was enforceable through a civil action for breach of the DFR in the courts, rather than through an administrative action before an RLA-authorized Board of Adjustment. *See id*. at 207.

In *Steele*'s companion case, *Tunstall*, 323 U.S. 210, 211 (1944), the Court stated expressly what was implied in *Steele*—namely, that *federal* courts have original jurisdiction over DFR actions brought pursuant to the RLA, because such actions "aris[e] under an[] Act of Congress regulating commerce." 28 U.S.C. § 1337.

In still a third case decided on the day *Steele* came down, the Supreme Court followed the same "principle of general application" that it had invoked in *Steele,* and implied a parallel duty of fair representation from National Labor Relations Act § 9(a), 29 U.S.C. § 159(a), which, in a manner directly analogous to RLA § 2, provides that a properly designated labor organization shall be the exclusive bargaining representative of employees in an appropriate unit. *Wallace Corp. v. NLRB*, 323 U.S. 248, 255 (1944). And, in subsequent cases, the Supreme Court has held that individual bargaining-unit members represented by NLRA-regulated unions may, like bargaining-unit members represented by RLA-regulated unions, bring a federal DFR cause of action in court under NLRA § 9(a), *Vaca v. Sipes*, 386 U.S. 171, 190 (1967), and that such a cause of action, like an RLA § 2 DFR cause of action, "aris[es] under an[] Act of Congress regulating commerce" and is thus within the original jurisdiction of the federal district courts by reason of 28 U.S.C. § 1337. *Breininger v. Sheet Metal Workers*, 493 U.S. 67, 83-84 (1989). [6]

---

[6] *Breininger* put to rest any notion that federal court jurisdiction to hear DFR claims depends upon § 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, which authorizes suits to enforce collective bargaining agreements between employers and unions.  The Court there made two salient points: (i) that the DFR cause of action derives from § 9(a) of the NLRA, which was enacted 12 years *before* the LMRA; and (ii) that, in the earliest DFR cases, such as *Steele* and *Huffman,* the aggrieved bargaining unit members did not assert that the collective bargaining agreement had been *breached*, but rather that the union violated their rights by proposing and agreeing to collective bargaining agreement provisions that were discriminatory against them (as in *Steele*), or that were unfair in according bargaining unit members who had worked for the employer fewer years than plaintiffs with more seniority (as in *Huffman*). *Breininger,* 493 U.S. at 80-84.

- 10 -

Further, the Supreme Court has held that the scope of the duty of fair representation implied from § 2 of the RLA is *identical* to the scope of the parallel duty implied from § 9(a) of the NLRA, in that a union breaches its duty under either statute if its actions are either "'arbitrary, discriminatory, or in bad faith.'" *Air Line Pilots v. O'Neill*, 499 U.S. 65, 75 (1991) (quoting *Vaca v. Sipes,* 386 U.S. at 190) (holding that the scope of the DFR in RLA cases is precisely the same as that set forth in the NLRA case of *Vaca v. Sipes*). Under *both* statutes, a union, though given wide flexibility in the formulation of bargaining proposals, is prohibited from acting out bad faith or hostility toward bargaining unit members, and is prohibited as well from submitting (or agreeing to) proposals that are either *substantively* arbitrary or discriminatory, or that are tainted by arbitrary or discriminatory *procedures*. *Air Line Pilots v. O'Neill*, 499 U.S. at 75-77.

The critical point for present purposes is that it is clear beyond any question that an action brought to vindicate the right of the members of an RLA-covered bargaining unit to fair representation "aris[es] under" federal law and lies within the original jurisdiction of the federal district courts.

2. Plaintiffs never directly dispute the proposition that an RLA § 2 cause of action for breach of the DFR is within the original jurisdiction of the federal courts. Nevertheless, they seek to obscure that proposition by through a two-step process.

First, Plaintiffs cite a case, *Sullivan v. American Airlines*, 424 F.3d 267 (2d Cir. 2005), which holds that federal courts lack jurisdiction over a particular type of RLA claim that is distinctly different from a duty-of-fair-representation claim, namely, a claim by an employee that her employer has breached the collective bargaining agreement. *Sullivan* holds that claims alleging an employer's breach of an RLA-covered collective bargaining agreement do not lie

within the original jurisdiction of the federal courts *or* of the state courts, but rather lie within the exclusive jurisdiction of administrative "Boards of Adjustment" created by the RLA.  424 F.3d at 276.  And *Sullivan* then goes on to hold that the appropriate response by a defendant to a complaint filed in state court asserting claims of *that* type is for the defendant to move to dismiss the action (regardless of whether the complaint candidly discloses or artfully hides the RLA basis of the claims) on the ground that no *court*, state or federal, has jurisdiction over it.  Removal, the *Sullivan* court reasoned, is not the appropriate response to such a complaint, because 28 U.S.C. § 1441(a) allows removal only of federal-question actions that are within the original jurisdiction of the federal district courts, not federal-question actions that must originally be presented to an administrative or other non-judicial tribunal.

Second, Plaintiffs pretend that *all* actions brought to vindicate rights arising from the RLA—including actions having nothing whatsoever to do with the DFR—are lumped together indiscriminately by *Sullivan* and similar cases, so as to leave the impression that *no* RLA claims may be brought within the original jurisdiction of the federal courts and thus that *none* are removable.   In particular, Plaintiffs claim that "there is a split in the federal circuits regarding whether the RLA (*and the DFR doctrine arising under it*)" gives rise to removal jurisdiction, Motion to Remand at 9 (emphasis added), and Plaintiffs then cite *Sullivan* and cases like *Sullivan* as if they addressed removability in the context of the DFR doctrine.

That is misleading in the extreme.  *Sullivan* says nothing whatsoever about DFR claims, and neither do the other RLA court of appeals cases that Plaintiffs cite in their effort to suggest either that RLA duty-of-fair-representation cases are outside the original jurisdiction of the federal courts or are otherwise not removable.  Indeed, after the Supreme Court made it clear more than six decades ago in *Steele* and *Tunstall* that DFR claims arise under federal law and

may be brought in court, rather than in a proceeding before a Board of Adjustment, *no* cases have suggested that RLA DFR cases may be within the exclusive jurisdiction of the adjustment boards, or otherwise outside the original jurisdiction of the federal courts and thus non-removable.

> **B**. **Claims For Violation of the Federal Duty of Fair Representation are Removable to Federal Court Under the Doctrine of Complete Preemption**

Because a DFR cause of action plainly *is* within the original jurisdiction of the federal courts and hence removable, the next question is this:  Whether a state-court complaint that arises in the field regulated by the DFR, but that artfully avoids invoking the DFR by asserting state-law theories of recovery, should nevertheless be treated as a DFR claim under the "complete preemption" doctrine, so as to render the action removable.

The answer to this question is "yes."  The two federal courts of appeal that have been presented with this question have expressly so held, *see BIW Deceived*, 132 F.3d at 831; *Richardson*, 864 F.2d at 1167-68, and the reasoning of other court of appeals decisions, as well as of Supreme Court decisions, confirms that those two courts of appeal were correct. *See Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003); *Vaca v. Sipes*, 386 U.S. 171 (1967); *Nellis v. Air Line Pilots Ass'n*, 805 F. Supp. 355 (E.D. Va. 1992) *aff'd*, 15 F.3d 50 (4th Cir. 1994); *Bensel v. Allied Pilots Ass'n*, 387 F.3d 733 (6th Cir. 1985); *Peterson v. Air Line Pilots Ass'n*, 759 F.2d 1161 (4th Cir. 1985).

1.  In *BIW Deceived*, a group of employees brought a tort action in state court against their union, alleging that the union made false representations regarding the expected duration of their employment.  The plaintiffs assiduously avoided pleading any federal claims in their state-court complaint.  The defendant removed the action to federal court on the ground that the complaint was, in reality, a claim sounding in the federal duty of fair representation implied from

NLRA § 9(a), over which federal district courts have original jurisdiction.  The First Circuit held removal was proper. *BIW Received*, 132 F.3d at 831.

In so holding, the court of appeals began by stating that, "in general," under the familiar "well-pleaded complaint rule," federal-question removal is inappropriate where "no federal claim appears within the four corners of the complaint."  *Id.*  The court of appeals then added, however, that there is "a significant exception to the well-pleaded complaint rule—the artful pleading doctrine," or "complete preemption" doctrine, which "empowers courts to look beneath the face of the complaint to divine the underlying nature of the claim" when the ostensible state-law claim arises in an area comprehensively regulated by federal law.  *Id.*  "If the claim appears to be federal in nature …, then the federal court must recharacterize the complaint to reflect that reality and affirm the removal *despite the plaintiff's professed intent to pursue only state-law claims*."  *Id.* (emphasis added).

The First Circuit recognized, to be sure, that there is only a "select group of claims" arising under federal statutes that have a "pre-emptive force … so powerful as to displace entirely any state cause of action" arising within its field, and hence so powerful as to trigger the artful pleading/complete preemption doctrine.  *Id.* at 831 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-6 (1987)).  But the court of appeals held that the federal DFR claim qualifies as a member of that select group; indeed the court stated that it "seems obvious" that the DFR claim so qualifies.  *BIW Deceived,* 132 F.3d at 831.  In particular, the *BIW Deceived* court reasoned that "'[a] union's rights and duties as the exclusive bargaining agent in carrying out its representational functions collectively comprise a field in which the policy of the law is so dominated by the sweep of federal statutes that legal relations which [those rights and duties] affect must be deemed governed by federal law … rather than by local law.'"  *BIW Deceived*,

132 F.3d at 830 (quoting *Condon v. Local*, 2944, 683 F.2d at 594-95 (1st Cir. 1982) (brackets in original)).  *See also id.* at 831 ("federal law completely governs the duties owed by an exclusive collective bargaining representative to those within the bargaining unit").

In holding that the *BIW Deceived* plaintiffs' complaint was removable by reason of complete DFR preemption, notwithstanding that it pleaded only state-law claims, the First Circuit followed the lead of the Fifth Circuit's earlier decision in *Richardson*.  In that case, the plaintiffs filed in state court a complaint alleging no federal claims, but only a common-law count of negligence against the union.  The union removed the case, and the Fifth Circuit held that removal was proper for substantially the same reasons that the First Circuit held removal was proper in *BIW Deceived*.  The Fifth Circuit placed particular emphasis on the fact that the DFR doctrine reflects a *balance* of interests, in that the doctrine recognizes not only important duties that unions owe to bargaining unit members, but also the need for important *limits* on those duties, so that unions do not feel inhibited in exercising the flexibility in negotiations and in processing grievances that is necessary for the uniform federal labor policy envisioned by Congress to be fully realized.  *Richardson*, 864 F.2d at 1167-68.  Allowing union members to pursue state-law causes of action within the field regulated by the DFR would, the court reasoned, threaten to upset the delicate balance and disturb the intended uniformity.  *Id*.

The correctness of *BIW Deceived* and *Richardson* is confirmed by the Supreme Court's subsequent decision in *Beneficial National Bank*, 539 U.S. 1.  In that case, the Supreme Court held upheld the removal of a complaint asserting only state-law claims for usury.  The defendant bank had removed the action based on the contention that the usury cause of action that Congress had established in 1864 in the National Bank Act provided the exclusive cause of action available to persons seeking to vindicate any rights as against usurious lenders. The Supreme

Court agreed.  The Court began by observing that it had, in a series of cases not involving removal, previously construed the National Bank Act's cause of action as giving rise to a comprehensive "system of regulations" that so thoroughly "cover[ed] the entire subject" of usurious loans that "State law would have no bearing whatever" on that subject.  *Id.* at 10.  The Court then reasoned that, because that the National Bank Act both provided for a cause of action to remedy usury and had been construed to provide the "*exclusive* cause of action" to remedy that wrong, it followed ineluctably that any causes of action pleaded in state-law terms but seeking to vindicate rights within the area covered by the National Bank Act, were, in reality, claims that were federal in nature and hence removable.  *Id.*

That is precisely the path that the courts of appeals in both *BIW Deceived* and *Richardson* followed in concluding that the federal DFR cause of action gave rise to complete preemption removal.  Those courts noted that a federal cause of action, the DFR cause of action, was available to vindicate the right of fair representation that bargaining unit members possess by reason of NLRA § 9(a), and correctly concluded, based on an analysis of Supreme Court precedents, that the area of union and bargaining-unit-member rights and duties regulated by the DFR doctrine "comprise[s] a field in which the policy of the law is so dominated by the sweep of federal statutes" that state-law has no bearing on the scope of those rights or duties.[7]

---

[7] Plaintiffs seek to blunt the force of *Beneficial National Bank* by pointing out—twice Motion to Remand at 9, 10—that the Supreme Court in that case reviewed its prior jurisprudence and had identified only two statutes, other than the National Bank Act itself, containing provisions that the Court had held to have complete preemptive force, and that the RLA was not one of the listed statutes.  That fact is meaningless.  The Supreme Court has never *had* a case in which the issue whether the RLA's DFR has complete preemptive force was presented, and has thus never had occasion to opine either way on the matter. On Plaintiffs' logic, the bank that removed the *Beneficial National Bank* case itself would have lost, because the National Bank Act had not been one of the two statutes held by the Court, prior to *Beneficial National Bank*, to have contained provisions generating complete preemptive force.  Moreover, any suggestion that the *Beneficial National Bank* decision *narrowed* the scope of the complete preemption doctrine is

2.  Although both *BIW Deceived* and *Richardson* involved suits involving unions regulated by the DFR implied from NLRA § 9(a), the removal analysis in those cases applies with equal force to the DFR implied from RLA § 2, for, as we have shown, the scope of the role, authority and duty of an NLRA § 9(a) representative parallels that of an RLA § 2(a) representative precisely and down to the last detail.  No court has ever recognized a single distinction between the two DFRs, either with respect to their substantive scope or with respect to the procedures and jurisdictional principles applicable to their civil enforcement.  Indeed, every decision by the Supreme Court concerning a substantive or procedural aspect of the NLRA corresponds to another decision to the exact same effect with regard to the RLA duty.  *Compare Vaca v. Sipes,* 386 U.S. at 177 (DFR is breached in NLRA actions where union's actions are "arbitrary, discriminatory or in bad faith") *with Air Line Pilots Ass'n v. O'Neill,* 499 U.S. at 75-77 (DFR is breached in RLA action where union's actions are arbitrary, discriminatory or in bad faith).  *Compare Breininger,* 493 U.S. at 83 (DFR cause of action under the NLRA "aris[es] under" federal law regulating commerce and is within original jurisdiction of federal district courts under 28 U.S.C. § 1337) *with Tunstall, supra* (same with regard to DFR cause of action under RLA). *Compare Del Costello v. Teamsters*, 462 U.S. 151, 169-72 (1983) (given lack of express statute of limitations for NLRA DFR claims, six-month period applicable to unfair labor practice claims borrowed to supply limitations period) *with United Independent Flight Officers v. United Air Lines*, 756 F.2d 1262, 1270 (7th Cir. 1985) (same with regard to RLA DFR claims; and collecting cases equating the NRLA and RLA DFRs).

Not surprisingly given the foregoing, courts presented with state-law claims asserted within the field regulated by the RLA's duty of fair representation have regularly concluded that

refuted by Justice Scalia's dissent, which expresses dismay at the majority opinion's *expansion* of that doctrine.  *Beneficial Nat'l Bank*, 539 U.S. at 20 (Scalia, J. dissenting).

the RLA's DFR preempts those claims to the same extent that the NLRA's DFR preempts analogous claims within the NLRA's sphere.

For example, in *Bensel*, 378 F.3d at 321, the Third Circuit applied the precise same DFR preemption analysis in an RLA case that the First Circuit had applied in the NLRA case of *Condon v. Local 2944, United Steelworkers, supra.* Accordingly, the *Bensel* court recognized that, under the RLA, as under the NLRA, the field of law implicating the rights and duties of unions in relation to the representation of bargaining unit members is a field in which "the policy of the law is so dominated by the sweep of federal statutes" that there is no room for "local law" to operate. 387 F.3d at 321. (internal quotation marks omitted). And, in *Peterson*, 759 F.2d at 1169, the Fourth Circuit stated that, although the RLA and NLRA diverge as to matters *other* than the DFR when it comes to preemption, they are parallel with regard to DFR preemption, such that "we refer to NLRA cases" in determining whether state-law claims brought against a union under the district court's pendent jurisdiction are preempted by the RLA DFR. The *Peterson* court then held, consistent with NLRA principles, that because "Peterson's state claims seek to vindicate rights largely secured by federal law, the potential conflict between remedies and administration are too great to permit the state claims to stand." *Id.* at 1171.

In the light of the foregoing, it is plain that the RLA's DFR cause of action, just like the NLRA's DFR cause of action, is among the "select group of claims" that have a "pre-emptive force … so powerful as to displace entirely any state cause of action" arising within its field.

### C.  Plaintiffs Claim to Vacate the Arbitration Award is an Artfully Pled Claim for Violation of the Duty of Fair Representation

Given that the duty of fair representation cause of action, both under the NLRA *and* the RLA, triggers application of the complete preemption doctrine, the final question is whether the

facts alleged in the Complaint here bring this case within the field covered by the DFR.  The answer to that question is also "yes."

1.       A Fourth Circuit RLA case closely in point makes that answer clear.  *Nellis v. Air Line Pilots Ass'n,* 15 F.3d 50, 51-52 (4th Cir. 1994) (per curiam), *adopting Nellis v. Air Line Pilots Ass'n*, 805 F. Supp. 355, 358-361 (E.D. Va. 1992).

In *Nellis*, the Fourth Circuit affirmed the dismissal, on DFR preemption grounds, of pendent state-law claims brought by ALPA-represented bargaining unit members disappointed with their seniority positions.  The aggrieved pilots' principal state-law theory was that the ALPA Fragmentation Policy (a component of the same "Merger and Fragmentation Policy" at issue here) was, in essence, a contract between ALPA and its bargaining-unit members, and that "the state common law of contract prohibited ALPA from making explicit enforceable promises to its members and then reneging on those promises, even if such conduct was not sufficiently 'arbitrary, discriminatory, or in bad faith' to satisfy the federal standard for breach of the duty of fair representation."  805 F. Supp. at 358-59.

The court in *Nellis* soundly rejected that theory, holding that to enforce under state-law contract principles the Merger and Fragmentation Policy promises on which plaintiffs were suing would be to impose on ALPA "additional duties" in the sensitive area of formulating "bargaining positions"—a core representation function regulated by the DFR doctrine and its carefully calibrated standard of union conduct.  805 F. Supp. at 360.  That standard is designed to accord unions wide flexibility in carrying out that function by imposing liability on unions in connection with the presentation of bargaining proposals if, but *only* if, the union's proposals are "arbitrary," "discriminatory," or arrived at "in bad faith." *Id.* at 360.

The *Nellis* court elaborated that, even on the assumption that an RLA union can, by making promises *unrelated* to the manner in which the union will bargain with the employer over terms and conditions of employment, take on additional duties enforceable under state-law contract principles, that would not rescue the claims there from federal preemption.  805 F. Supp. at 360.  For the claims in *Nellis* sought to enforce union promises, set forth in Merger Policy, that *were* related to that core representational function, and thus were subject *only* to a *federal* cause of action predicated on breach of the DFR.  805 F. Supp. at 360.  In that *federal* action, the court explained, "evidence that ALPA … failed to honor a pre-existing negotiation policy," such as the Merger and Fragmentation Policy, "might well be *relevant* to whether ALPA's actions … were 'arbitrary, discriminatory or in bad faith'" but the bare proof of a deviation from such a policy would not be *dispositive*, as it might be under a state contract-law analysis.  *Id.* at 361 n.6 (emphasis added).  To apply state law to union promises that amount to "mere refinements of what constitutes the duty of fair representation," or to union explanations to members as to how the union intends to carry out its DFR, would, the court concluded, threaten to "conflict with … the federal duty of fair representation," making preemption of state law in that field necessary.

Under the reasoning of *Nellis,* it is plain that the state-law claim presented by Plaintiffs here concerns a subject that lies within the area exclusively regulated by the federal DFR. The whole point of Plaintiffs' lawsuit is to cause ALPA to refrain from presenting at the bargaining table with US Airways the proposal regarding seniority integration that is embodied in the Nicolau seniority list.  Furthermore, as alleged in Plaintiffs' Complaint, the essential reason why Plaintiffs believe that incorporation of the list into the collective bargaining agreement would be unjust is that "[i]ntegration of seniority lists should ordinarily be accomplished on the basis of each employee's length of service with his original employer," and the Nicolau list, if adopted,

would, in their view, improperly depart from that principle, unfairly disadvantaging the longer-serving pilots of the former US Airways pilots and unfairly conferring what Plaintiffs term a "windfall" on the shorter-serving America West pilots.  Complaint ¶¶ 4, 7.  It is very telling in this regard that, in articulating the principle that they believe Nicolau improperly cast aside, Plaintiffs have cited to and quoted from a United States Supreme Court decision, *Humphrey v. Moore*, 375 U.S. 335, 347 (1964), in which the central issue was whether a union had violated its duty of fair representation in agreeing to particular integrated seniority list.  Complaint ¶ 4.

In light of all this, there can be no mistaking the reality that the subject matter of this case lies squarely within the exclusive province of the DFR cause of action.  Any state-law cause of action that would portray ALPA Merger Policy as an ordinary contract enforceable through state-law procedures applicable to quotidian breach-of-contract cases would have to give way to the RLA, just as the state-law contract cause of action in *Nellis* had to give way.  The rights that Plaintiffs seek to vindicate can therefore be remedied, if at all, only through the vehicle of a federal DFR cause of action.[8]

The "complete preemption" doctrine, as we have explained, instructs federal courts "to look beneath the face of the Complaint to divine the underlying nature of the claim" and provides that, "if the claim appears to be federal in nature… the[] federal court must recharacterize the Complaint to reflect that reality and affirm the removal despite the plaintiff's professed intent to pursue only state-law claims."  *BIW Deceived,* 132 F.3d at 826. (emphasis added).  Here, as we

---

[8] Plaintiffs make a great effort to portray ALPA Merger Policy as a contract between ALPA's MECs, and to distinguish ALPA Merger policy from the constitutions and bylaws of international unions regulated by the NLRA, which constitutions are enforceable in federal court under LMRA § 301.  We need not engage Plaintiffs on those points, because, even if Plaintiffs are correct in their characterization of Merger Policy, that would *not* aid Plaintiffs here.  For, as we have shown, *Nellis* holds that, on the assumption Merger Policy otherwise would be enforceable under state law, DFR preemption nevertheless precludes such state-law enforcement.

have shown, Plaintiffs' professed state-law claim is plainly federal in nature. The Complaint must therefore be recharacterized to reflect that reality, and the removal of this case should accordingly be affirmed.

2. Plaintiffs, however, ask this Court to blink at that reality, making a series of unpersuasive arguments.

a. Plaintiffs first argue that, because they did not choose to name ALPA, the pilots' exclusive bargaining representative, as a defendant, their claim cannot be recharacterized under the complete preemption doctrine as one that falls within the scope of the DFR cause of action. Cite. Plaintiffs are mistaken.

Removal based on complete pre-emption turns on whether the *subject matter* of the lawsuit falls within an area where federal law displaces state remedies with an exclusive federal cause of action, and *not* on the happenstance of which parties the plaintiff in a state-court action chooses to name as defendants in the state-court complaint. The Second Circuit's decision *Plumbing Industry Bd. v. E.W. Howell, Inc.*, 126 F.3d 61 (2d Cir. 1997), makes that abundantly clear.

In *Plumbing Industry,* the Second Circuit sustained removal jurisdiction, on complete pre-emption grounds, of a claim pleaded entirely in state-law terms against a defendant who could not be sued under ERISA § 502(a), the provision of ERISA that gives rise to complete pre-emption of benefit claims. The court of appeals explained that "[a] suit need not be a cognizable, winning claim under § 502(a) in order to fall within the scope of the provision for purposes of the jurisdiction analysis. Rather, a state cause of action that acts as an alternative means of vindicating the rights protected by § 502(a) is within the scope of the section *even if the suit is*

*directed against a defendant not liable under ERISA*."  *Plumbing Industry,* 126 F.3d at 69

(emphasis added).

That result is not surprising.  As the discussion in Part B.1, shows, the whole point of the

complete preemption doctrine is to make the plaintiffs' particular pleading choices irrelevant—

and the question of the *underlying subject matter* of the complaint dispositive—as to whether the

claim is federal in nature and hence removable.  Indeed, were it otherwise, classes of defendants

whom Congress intended to free from liability by omitting them from a statutory provision

specifying who may be sued would, perversely, be less able to have that Congressional choice

vindicated in federal court by means of removal than classes of defendants whom Congress

intended to subject to suit.[9]

Clearly, then, the fact that Plaintiffs have named defendants who would be the wrong

defendants in a proper DFR action does not defeat complete pre-emption removal.

---

[9] Furthermore, on Plaintiffs' conception of the law, artful pleading taking the form of omitting of the crucial defendant would be treated more favorably than other forms of artful pleading.  That proposition is flawed on its face, but the facts of this case further illustrate why the proposition should be rejected.  For it appears here that Plaintiffs' belief that omitting ALPA as a defendant would avoid removal jurisdiction caused Plaintiffs to contrive a peculiar lawsuit that, as presently configured, cannot—even if every ruling runs in their favor—produce anything but a Pyrrhic victory.  The *most* Plaintiffs could accomplish if the case were to proceed in the manner they urge would be the issuance of an advisory opinion from the Superior Court that disparages the Nicolau seniority list with sound and fury but that signifies nothing—and that binds no one who matters.  The opinion would be advisory precisely because Plaintiffs have omitted to sue ALPA, which, as the exclusive bargaining representative of all of the affected pilots, is the *only* entity with authority to present a seniority list to US Airways and authority to enter into the agreement with the Company necessary to make such a list binding.  In contrast, the entity Plaintiffs *have* chosen to sue, Defendant Air West MEC, has *no* authority to deal with the employer and thus *no* capacity to bring about a binding seniority list.

We develop this point in detail in the opening and reply briefs that we have submitted in support of our motion to join ALPA as a necessary party.  The point merits only footnote attention here, because, as set forth above in text, and as the *Plumbing Industry* court held, a complaint that is otherwise removable by reason of the complete preemptive force of a given statute is not rendered non-removable because the complaint happens to be directed at a defendant who cannot be held liable under that statute.

b.  After tendering their "wrong defendant" argument, Plaintiffs next offer a "wrong plaintiff" argument.  In particular, Plaintiffs contend that the US Airways MEC "is not the proper plaintiff to bring a DFR action," because ALPA "owes its DFR to the US Airways pilots, not its subordinate body."  Remand Br. at 16-17.  This argument fails, not only for all of the reasons just stated in Part C.2.a, but for an additional reason as well.  Paragraph 15 of the Complaint alleges that the US Airways MEC is "pursu[ing] this action *for its affected members*."  Complaint ¶ 15 (emphasis added).  Plaintiff is therefore suing in a representative capacity for the pre-merger US Airways pilots who claim they would be "affected" were the Nicolau list to be adopted.   Indeed, Paragraph 15 sets forth the *sole* ground as to why the US Airways MEC has standing to bring the action; the MEC does not allege any harm or injury other than that which it claims will flow to *the bargaining-unit members* whose interests the MEC has been championing throughout the merger process.  *Id.*[10]

c.  Plaintiffs next suggest that a DFR action can be brought only against a union that *already* has "acted, or failed to act" in a manner that violated the DFR.  Motion to Remand at 18.  Any such notion is refuted by the Supreme Court's very first DFR decision, *Steele*, where Court made it clear that a DFR claim could be brought solely to enjoin a union from making a *future* discriminatory proposal.  *Steele*, 332 U.S. at 203.

d.  Plaintiffs further argue that, because they "do not allege any unfairness in the merger integration process established by ALPA," this lawsuit cannot be viewed as within the scope of the DFR.  Motion to Remand at 18.  This argument is doubly defective.  To begin with, the

---

[10] Precisely because Plaintiff US Airways MEC is pursuing this action in a representative capacity on behalf of the "affected members" of the pre-merger US Airways bargaining unit, Defendants' motion to join ALPA as a necessary party will not, as Plaintiffs contend "create the absurd scenario of ALPA suing itself (via a subordinate body) for a supposed breach of its DFR."   Motion to Remand at 17.  Joining ALPA will mean only that the pilots who would be adversely affected by adoption of the Nicolau list will be suing ALPA.

argument disregards the case law discussed above establishing that "[a] suit need not be a cognizable, winning claim … in order to fall within the scope" of a statutory provision that generates complete preemptive force. *See supra* Part C.2.a. (quoting *Plumbing Industry*, 126 F.3d at 61). Compounding the problem, the argument proceeds from a clearly erroneous premise. The Supreme Court squarely held in *Air Line Pilots v. O'Neill*, that the DFR cause of action may be invoked in cases where a union has proposed or agreed to a *substantively* arbitrary or discriminatory collective bargaining term, even where it is undisputed that the union followed fair procedures and acted in good faith in deciding to propose or agree to the term in question. *O'Neill*, 499 U.S. at 75, 77. In so holding, the Supreme Court rejected the position that the Seventh Circuit had taken on that matter since 1983, *see id.* at 75 (*citing Dober v. Roadway Express, Inc.*, 707 F.2d 292, 295 (7th Cir. 1983)). And the only case Plaintiffs cite for the proposition that procedural regularity insulates proposals from DFR scrutiny is a pre-*O'Neill* Seventh Circuit decision, *Air Wisconsin Pilots Protection Committee v. Sanderson*, 909 F.2d 213, 216 (7th Cir. 1990). *Air Wisconsin* is no longer good law on that point.

e. Finally, Plaintiffs misuse the Seventh Circuit's *Air Wisconsin* decision in an even more fundamental way. In particular, they contend that *Air Wisconsin* establishes that the federal DFR is *not* the appropriate vehicle through which pilots disappointed by a seniority list generated

by an arbitrator pursuant to ALPA Merger Policy may seek relief, when in fact that case stands

for the exact opposite proposition.  The passage on which Plaintiffs rely states as follows:

> If the plaintiffs thought the arbitration award [setting out a post-merger integrated seniority list] invalid because rendered in violation of the union's constitution and merger policy statement, the way to raise the point was to challenge the award in court, which they had *six months* to do.  *United Independent Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1269-73 (7th Cir. 1985).  They have mounted a collateral attack on the ward without even trying to bring themselves within the narrow limits of the rules that permit such attacks.

*Air Wisconsin*, 909 F.2d at 218 (emphasis added).  The only conceivable cause of action to

which the Seventh Circuit could have been referring in holding that the *Air Wisconsin* pilots'

attack on the arbitration award was time-barred for being filed more than six months after the

award, is the RLA's DFR cause of action.  The statute of limitations for DFR causes of action,

under both the NLRA and RLA, is six months—as the *United Independent Flight Officers*

decision cited in the block-quoted passage had held.

Plainly, then, the *Air Wisconsin* decision supports *Defendants'* position here that actions

to challenge a seniority list in an arbitration award must be brought within the strictures of the

RLA's cause of action for breach of the duty of fair representation.  Indeed, lest there be any

doubt on that score, the *Air Wisconsin* court, in an earlier part of its opinion that foreshadowed

the passage block-quoted above, said this:  "If the [Merger Policy] system is fine and only the

specific arbitration award is improper, the plaintiffs … should have challenged the award in

court when it was rendered, as in *Beardsly v. Chicago & North Western Transportation Co.,* 850

F.2d 1255, 1270-71 (8th Cir. 1988).  As we shall see, such a challenge is now time barred."  *Air

Wisconsin*, 909 F.2d at 217.  The *Beardsly* challenge to which the court referred was, not

surprisingly, a challenge brought as a DFR challenge under the RLA.  *See Beardsly*, 850 F.2d at

1270-71.

In the face of all this, Plaintiffs insist that, in avoiding federal law and federal court and proceeding instead on a local-law theory in a local court, they are "following just the course advised by the court of appeals in *Air Wisconsin*." Remand Br. at 20. That assertion exhausts Plaintiffs' credibility, for, as we have shown, every relevant passage in *Air Wisconsin* points to the conclusion that a federal RLA claim—and in particular a federal DFR claim under RLA § 2—is the vehicle the *Air Wisconsin* court was contemplating when it stated that the plaintiffs there had missed the opportunity to present their challenge to the arbitration award's seniority list at a proper time and in a proper forum. Conversely, *nothing* in *Air Wisconsin* so much as hints that state law might be relevant to adjudicating a grievance over an ALPA merger policy seniority award.

Furthermore, the decision that addresses most directly and comprehensively the question whether ALPA Merger Policy is in the nature of a contract that can be enforced under state law—*Nellis v. Air Line Pilot's Association,* discussed in detail *supra* Part C.1.—holds clearly and unequivocally that, no matter how characterized, Merger Policy can *not* be enforced through state-law causes of action, because such causes of action are preempted by the RLA duty of fair representation. As the *Nellis* court explained, the commitments ALPA makes to bargaining unit members in Merger Policy are simply "refinements" of ALPA's duty of fair representation, and deviations from Merger Policy are not independently actionable under state law but instead constitute relevant evidence as to whether ALPA has breached its federal duty. *See supra* Part C.1.

CONCLUSION

For the foregoing reasons, this action was properly removed, and Plaintiffs' Motion to Remand should be denied.

Respectfully submitted,

_____/s/_____
Jeffrey R. Freund (D.C. Bar No. 163881)
Leon Dayan (D.C. Bar No. 444144)
Robert Alexander (D.C. Bar No. 465673)
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W.
Washington, D.C.  20005
Tel: (202)842-2600
Fax: (202)842-1888

Dated: September 20, 2007.