## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| US AIRWAYS MASTER EXECUTIVE COUNCIL, AIR LINE PILOTS ASSOCIATION, INT'L, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>AMERICA WEST MASTER EXECUTIVE COUNCIL, AIR LINE PILOTS ASSOCIATION, INT'L, *et al.,*<br><br>Defendants. | Civil Action No.<br>07-1309-EGS |

## PLAINTIFFS' REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO REMAND

Defendants' Opposition to Motion to Remand ("Def. Opp.") contends the duty of fair representation ("DFR") under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151, *et. seq.*, triggers the "complete preemption" doctrine and that plaintiffs' complaint to vacate an arbitration award under District of Columbia law ("state law") is an "artfully pled" DFR claim which can be removed to this Court. In making these arguments, defendants indiscriminately rely upon preemption cases without regard to the kind of preemption at issue in a particular case ("complete" or "ordinary"), among other shortcomings.

A review of the applicable removal principles is first necessary to provide an unambiguous foundation to expose this confusion within defendants' arguments. Plaintiffs then demonstrate that "complete" preemption should not apply, but even if does, remand is nevertheless required because plaintiffs' claim does come "within the scope" of a DFR cause of action.

# I. The Applicable Removal Principles

### A. Federal Jurisdiction and The Well-Pleaded Complaint Rule

A civil action filed in a state court may be removed to federal court if the claim is one "arising under" federal law. 28 U.S.C. §§ 1331, 1441(b).  Whether federal jurisdiction is present is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's complaint.  The plaintiff is the master of the claim and may avoid federal jurisdiction by electing to rely exclusively on state law. *Caterpillar, Inc., v. Williams*, 482 U.S. 386, 392 (1987)  Defendants do not dispute that the well-pleaded complaint rule would require this Court to remand this action because the plaintiffs' complaint in this case, on its face, does not raise a federal question over which the federal courts have jurisdiction.

A preemption defense based on federal law supremacy does not justify removal and is decided by the state court.  *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003); *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 12 (1983); *Caterpillar, Inc. v. Williams, 482 U.S. at 398* ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under [a federal statute] does not establish that they are removable to federal court.")  This type of preemption is often referred to as "ordinary," conflict or defensive preemption. *Sullivan v. American Airlines,* 424 F.3d 267, 272 (2d Cir. 2005); *Air Line Pilots Association, Int'l.  v. DHL Holdings* (USA), Inc., 2007 U.S.Dist. LEXIS 40771, *2 (S.D. Ohio 2007); *Marrero v. Modern Maintenance Building Services, Inc.,* 318 F. Supp. 2d 721, 724, fn. 2 (E.D.Wis. 2004).

Defendants accuse plaintiffs of being "misleading in the extreme" by relying upon *Sullivan v. American Airlines,* 424 F.3d 267, 277 n. 9 (2d Cir. 2005) (summarizing conflict in circuits concerning RLA "complete" preemption[1]/), and *Roddy v. Grand Trunk Ry.*, 395 F.3d 318, 325-26 (6th Cir. 2005), which hold that the RLA does not have the extraordinary preemptive force to trigger a "complete preemption" removal analysis. (Def. Opp. 12, 11-13).  According to defendants, by making this argument, "Plaintiffs pretend that *all* actions brought to vindicate rights arising from the RLA – including actions having nothing to do whatsoever with the DFR – are lumped together indiscriminately by *Sullivan* and similar cases, so as to leave the impression that *no* RLA claims may be brought within the original jurisdiction of the federal courts and thus *none* are removable." (Defs.' Emphasis) (Def. Opp. 12).  Defendants accuse the plaintiffs of arguing that DFR cases "are outside the original jurisdiction of the federal courts or are otherwise not removable" and "are within the exclusive jurisdiction of the adjustment boards." (Def. Opp. 12, 13).  Plaintiffs do not make any of these arguments.  This unjustified criticism of plaintiffs' position reveals either defendants' misunderstanding of the difference between "ordinary" and "complete" preemption, or is a deliberate attempt to misrepresent the plaintiffs' arguments and the "complete preemption" exception to the well-pleaded complaint rule.  We now turn to the complete preemption issue.

---

[1]     The Second, Third, Sixth, Ninth and Eleventh Circuits have concluded that the RLA's preemptive force is not "complete."  The Fifth, Seventh and Eighth Circuits apparently hold that the RLA has "complete" preemptive effect.

### B. Complete Preemption

The "complete preemption" doctrine is an "independent corollary" to the well-pleaded complaint rule. *Franchise Tax Board*, 463 U.S. at 22; *Caterpillar, Inc., v. Williams*, 482 U.S. at 327; *Beneficial Nat'l Bank*, 539 U.S. at 8. On three occasions, the Supreme Court has concluded a statute's preemptive force is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Beneficial Nat'l Bank*, 539 U.S. at 6-8, 10 (National Bank Act, 12 U.S.C. §§ 85, 86; usury cause of action); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987) (ERISA § 502, 29 U.S.C. § 1132 (a)); *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557 (1968) (LMRA § 301, 29 U.S.C. § 185, collective bargaining contracts).

If the preemptive force of a federal statute providing for a cause of action triggers complete preemption, "*a claim which comes within the scope of that cause of action*, even if pleaded in terms of state law, is in reality based on federal law [and] ...then removable under 28 U.S.C. § 1441(b)." (emphasis added) *Beneficial Nat'l Bank*, 539 U.S. at 8; *Franchise Tax Board*, 463 U.S. at 24. A conclusion that a federal statute triggers complete preemption, is, therefore, not the end of the inquiry and does not inescapably lead to the conclusion that removal from a state court of a claim alleging a state law cause of action is proper. *Franchise Tax Board*, 463 U.S. at 24-25 ("It does not follow, however, that either of appellant's claims in this case comes within the scope of one of ERISA's causes of action.") The state law claim must be examined to determine if, in reality, it "comes within the scope of the federal cause of action." In *Franchise Tax Board,* the claim asserted by the Board did not "arise under" ERISA because ERISA §

514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A), makes clear "that Congress did not intend to pre-empt entirely every state cause of action relating to" ERISA benefit plans and "ERISA does not provide an alternative cause of action in favor of the State" in ERISA § 502(a). *Franchise Tax Board*, 463 U.S. at 25, 26

In the labor context, complete preemption arises most often arises in connection with §301 of the Labor-Management Relations Act.[2]/ The preemptive force of Section 301 is complete, but a claim by a unionized employee against his employer may still not be preempted—and may not be removed to federal court— if the claim does not involve interpretation of a collective bargaining agreement, a claim within the scope of a cause of action under § 301. *Caterpillar, Inc. v. Williams*, 482 U.S. at 393, 394 (1987) (Notwithstanding the complete preemptive force of § 301, the validity of individual employment contracts with employer are not preempted by § 301 and not removable to federal court even though the plaintiffs, "bargaining unit members at the time of the plant closing, possessed substantial rights under the collective agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so.") "Section 301 does not … require that all 'employment-related matters involving unionized employees' be resolved through collective bargaining and thus be governed by a federal common law created by § 301." *Id.* at 397, fn. 10.

---

[2]    Section 301(a), 29 U.S.C. § 185(a) provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties."

There are also limits upon the amount of "re-characterizing" of a state law claim within the complete preemption, "artful pleading" analysis. The artful pleading doctrine does not permit changing the facts alleged or adding facts that are not alleged to change the substance of a plaintiff's claim.

> Caterpillar impermissibly attempts to create the prerequisites to removal by ignoring the set of facts (*i.e.*, the individual employment contracts) presented by respondents, along with their legal characterization of those facts, and arguing that there are different facts respondents might have alleged that would have constituted a federal claim. In sum, Caterpillar does not seek to point out that the contract relied upon by respondents is in fact a collective agreement; rather it attempts to justify removal on the basis of facts not alleged in the complaint. The "artful pleading" doctrine cannot be invoked in such circumstances.

*Caterpillar, Inc. v. Williams*, 482 U.S. at 396-97.

Plaintiffs demonstrate below that, even assuming *arguendo* the application of a complete preemption analysis here, defendants' entire remand argument "attempts to justify removal on the basis of facts not alleged in the complaint. The 'artful pleading' doctrine cannot be invoked in such circumstances." *Caterpillar, Inc. v. Williams*, 482 U.S. at 396-97. But before we do, plaintiffs explain why a "complete preemption" analysis is not triggered in this case, and why the decisions in *Sullivan v. American Airlines* and other cases holding the RLA does not have complete preemptive force were correctly decided.

## II. The RLA DFR should not trigger "complete" preemption

Defendants' two authorities cited for the proposition that the DFR should trigger "complete" preemption, the First Circuit's *BIW Deceived v. Local 56, Industrial Union of Marine and Shipbuilding Workers*, 132 F.3d 824 (1st Cir. 1997), and the much earlier decision of the Fifth Circuit in *Richardson v. United*

*Steel Workers*, 864 F.2d 1162 (5th Cir. 1989), were both decided before *Beneficial Nat'l Bank* in which the Supreme Court provided additional guidance with respect to the question of what a defendant seeking to establish a new complete preemption statute must establish.  In *Sullivan v. American Airlines,* because of the Supreme Court's *Beneficial Nat'l Bank* decision, the court re-examined and overruled an earlier decision by a different panel of the Second Circuit which had held that the RLA did have complete preemptive force. (424 U.S. at 274)

In *Beneficial Nat'l Bank*, the Supreme Court stated it had previously found Congressional intent to completely preempt state law in only two areas, LMRA § 301 and ERISA § 502(a).  In those two categories of claims, Congress had enacted explicit statutory grants of jurisdiction to the federal courts and set forth procedures and remedies for causes of actions under those statutes.  (539 U.S. at 8).  ERISA's jurisdictional provision, enacted after the Court had construed § 301 to have such "unusually" powerful preemptive force, used jurisdictional language similar to § 301(a), indicating to the Court that the two provisions should be construed in the same way. (*Id*. at 8-9)  In addition, the legislative history of ERISA unambiguously described the intent of Congress to treat ERISA actions in similar fashion to those brought under LMRA § 301. (*Id*. at 9)  The Court then addressed the statute at issue, the National Bank Act, and found that it too had great preemptive force and, like the LMRA and ERISA, provided a cause of action for usury parallel to plaintiff's state law claim which contained procedures and remedies governing the cause of action. (*Id*. at 9 - 11)

The Supreme Court's analysis in *Beneficial Nat'l Bank* suggests that a defendant claiming a *statute* to be completely preemptive must show that

Congress intended such result by imbuing it with unusually powerful preemptive force, including a cause of action and jurisdictional grant in it, and also including procedures and remedies governing the cause of action.  See, *e.g.*, *Johnson v. Baylor Univ.,* 214 F.3d 630, 632 (5th Cir. 2000):

> To establish complete preemption, Baylor must show that
>
> (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable.

*Accord, Williams v. Midwest Express Airlines, Inc.,* 315 F. Supp. 2d 975, 979 (E.D. Wis. 2004).

The DFR under both the NLRA and the RLA have none of these attributes. As defendants discuss at pages 8 through 10 of their Opposition, the DFR cause of action is a judicially-implied cause of action created by the judiciary more than sixty years ago, and the rights, procedures and remedies are all creatures of judge-made law.  The DFR is not a "statute."  Plaintiffs submit that defendants' two cases holding that the DFR triggers "complete" preemption are incorrectly decided and are not, as defendants argue (Def. Opp. 13, 15-16), consistent with *Beneficial Nat'l Bank* because the DFR cause of action is not a "statute."  *Sullivan* and the sister circuits it identifies as being in agreement hold that the RLA does not trigger "complete" preemption, only "ordinary" preemption.

Defendants' suggestion that "the reasoning" of *Vaca v. Sipes,* 386 U.S. 171 (1967), and three courts of appeals[3]/ "confirms" that *BIW Deceived* and *Richardson* were correctly decided illustrates how defendants confuse "ordinary" and "complete" preemption. (Def. Opp. 13)   No one debates that federal law controls DFR lawsuits brought in state courts as held in *Vaca v. Sipes*.   The three appellate court decisions are all "ordinary" DFR preemption cases which dismissed state law claims that paralleled DFR claims.   None of the cases involved a removal issue.   All of the cases were originally filed in federal court, jurisdiction was undisputed and all alleged RLA DFR claims.   They add nothing to the issue whether DFR has "complete" preemptive force.   "Ordinary preemption is plainly a viable defense under the RLA." *Sullivan v. American Airlines,* 424 F.3d at 273.   Plaintiffs do not assert that DFR cases do not have "ordinary" preemptive force.   Nor do Plaintiffs claim that DFR cases are not within the original jurisdiction of federal courts.

Even assuming "complete" preemption could somehow arise from an implied cause of action under a statute where the statute itself does not give rise to "complete" preemption, Defendants' discussion of the similarities between NLRA and RLA DFR causes of action (Def. Opp. 8-11) have little persuasive value because of the rationale of the NLRA DFR cases defendants rely upon.   In *BIW Deceived*, the First Circuit concluded the "answer was obvious" because of the relationship between the NLRA DFR and the intent of Congress expressed in

---

[3]        *Nellis v. Air Line Pilots Ass'n.,* 805 F.Supp. 355 (E.D. Va. 1992) ("*Nellis I*"), *aff'd. per curiam,* 15 F.3d 50 (4th Cir. 1992); *Bensel v. Allied Pilots Ass'n.*, 387 F.3d 298 (3rd Cir. 2004), *cert. den.*, 544 U.S. 1018 (2005); *Peterson v. Air Line Pilots Ass'n.*, 759 F.2d 1161 (4th Cir. 1985)

LMRA § 301.  (132 F.3d at 831)  The Fifth Circuit in *Richardson* was similarly influenced by the close relationship between the NLRA DFR and LMRA § 301. (864 F.2d at 1169-70)  But the RLA DFR has no counterpart to LMRA § 301, as discussed in plaintiffs' Motion To Remand at 13-14.   Defendants do not "engage" this argument of plaintiffs. (Def. Opp., p. 21, fn. 8)  The court in *Sullivan v. American Airlines* overruled the prior decision within the Second Circuit holding the RLA had "complete" preemptive force because "[w]e now know [because of *Beneficial Nat'l Bank*], however, that the analogy between RLA and LMRA preemption in *Hawaiian Airlines* [*v. Norris,* 512 U.S. 246 (1994)] was never meant" to extend to "complete" preemption, but only "ordinary" preemption. (424 F.3d at 274-276)

Plaintiffs submit that the conclusion in *Sullivan* that the RLA does not trigger "complete," but only "ordinary," preemption for one type of RLA claim (actions against employers) should preclude the conclusion that Congress intended the RLA to have "extraordinary" preemptive force with respect to another type of claim implied under the RLA (actions against unions).   This Court should apply the well-pleaded complaint rule and remand this case to the D.C. Superior Court.

This Court can alternatively conclude that remand is required without even deciding the novel and unresolved question of first impression whether the RLA DFR qualifies for complete preemption treatment because any reasonable "artful pleading" analysis compels the conclusion that plaintiffs' complaint to vacate the Nicolau arbitration award does not fall "within the scope" of a DFR cause of action.

### III.    Plaintiffs' claim does not fall within the scope of the duty of fair representation

Every case defendants cite in which a court held that a DFR claim preempted a state law claim, either defensively ("ordinary") or "completely," involved a claim by an employee against his exclusive bargaining representative challenging the union's conduct occurring in the course of representing the employee.[4]/  In every DFR case defendants cite, union members sought to use state law to impose a duty or obligation upon their union representative different and more restrictive than the "arbitrary, discriminatory, or bad faith" duty of fair representation standard imposed by federal law.  *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 69 (1991)

The plaintiffs here do not assert any claiming seeking to alter the scope of the duty of fair representation owed by ALPA to the USAirways pilots or dispute whether ALPA satisfied that DFR in the seniority integration process.  This case involves an intra-union dispute over a seniority list integration arbitration award ("the Nicolau award") involving two groups of pilots *preceding* any action by ALPA, the pilots' exclusive bargaining representative, concerning integration of the seniority lists.  The parties to the arbitration process and this lawsuit are not the exclusive bargaining representatives of any pilots.  They are subordinate Master Executive Councils ("MEC") of ALPA and MEC representatives that have no authority to negotiate with the Company.  Nothing in the complaint alleges

---

[4]    Plaintiffs will not split hairs like defendants and make immaterial criticisms.  When plaintiffs use the word "conduct" herein, we do not exclude the possibility that, in an appropriate case, employees may sue to enjoin their union from engaging in future conduct that allegedly violates the duty of fair representation.

any wrongful conduct by ALPA. Nothing in the complaint seeks to compel or enjoin ALPA from engaging in any future conduct it desires to take in negotiations with the Company concerning the integration of the pilot seniority lists or any other matter. ALPA is not a defendant in plaintiffs' lawsuit. For these reasons, even under the artful pleading doctrine, Plaintiffs' complaint does not fall within the scope of a duty of fair representation claim as required by the complete preemption doctrine.

There is no dispute regarding the "scope" of a duty of fair representation claim. A union breaches its duty of fair representation when its representative actions on behalf of employees are arbitrary, discriminatory or taken in bad faith, and these limitations provide an exclusive bargaining representative substantial discretion in collective bargaining negotiations and other representative actions. (Def. Opp., pp. 11, 17)  Defendants' own words make clear that their contention that removal is permitted in this case is premised on the proposition that "the right that Plaintiffs are attempting to vindicate in the instant lawsuit [is] the right of members belonging to a collective bargaining unit *to restrain their union* from presenting or agreeing to provisions in collective bargaining agreements that are either discriminatory or substantively arbitrary..." (Def. Opp., p. 8) (emphasis added). This underlying premise of defendants' argument is an inaccurate and unreasonable characterization of plaintiffs' claim alleged in their complaint.

The "right" plaintiffs are seeking to vindicate in this lawsuit is to be the recipient of an intra-union arbitration award that is consistent with its agreement to arbitrate and does not exceed the arbitrator's powers. What ALPA decides to

do and actually does with the arbitrator's award is an entirely different issue involving different and distinct facts.

Nothing in plaintiffs' complaint seeks "to restrain" ALPA from doing anything. Plaintiffs' claim does not seek to enforce *against ALPA* any term of the ALPA Merger Policy. Plaintiffs' complaint does not seek to enjoin ALPA from complying with any term of the Merger Policy nor does it allege that any aspect of the policy should be invalidated. Plaintiffs' complaint is not an "artfully pled" duty of fair representation claim because it can not reasonably be construed to allege that ALPA has either acted or will act in a wrongful manner in negotiations concerning an integrated pilot seniority list or in any other way. Nor can the relief sought by the complaint restrain ALPA in any way. If plaintiffs prevail and the Nicolau award is vacated, the relief the Superior Court of the District of Columbia could grant would be a rehearing of the arbitration before the same or new arbitrators. (D.C. Code § 16-4311(c)).

## IV. The defendants impute different factual allegations to the plaintiffs' claim in an attempt to characterize it as a DFR claim; such different factual allegations cannot support complete preemption

Defendants never articulate how non-party ALPA could be "restrained" in bargaining under the factual allegations of the complaint so as to present an artfully pled DFR claim. Instead, defendants adopt the tactic rejected in *Caterpillar, Inc. v. Williams*, 482 U.S. at 396-97, by not re-characteriz[ing] plaintiffs' claim, but rather by ignoring the allegations alleged and arguing that completely different factual allegations could have been alleged that may be characterized as a DFR claim.

Defendants argue that *Nellis v. Air Line Pilots Ass'n.,* 805 F. Supp. 355 (E.D. Va. 1992) ("*Nellis I*"), *aff'd. per curiam,* 15 F.3d 50 (4th Cir. 1992) (Def. makes clear that plaintiffs' complaint is an artfully pled DFR claim. (Opp. 19-21) *Nellis* does not and is inapposite to this action.

In *Nellis I,* jurisdiction of the federal court was undisputed because the pilots explicitly alleged a federal claim that ALPA breached its duty of fair representation. (805 F. Supp. at 358)   The preemption involved in *Nellis* was "ordinary" preemption, an affirmative defense which does not support removal. There was no artful pleading issue.  The facts of the case arose out of a strike against Eastern Airlines which resulted in Eastern's demise.  In addition to their DFR claim, the pilots also alleged state law contract, quasi-contract and tort claims. The DFR and state law claims alleged the same facts.  Compare, *Nellis I and Nellis v. Air Line Pilots Ass'n.,* 815 F.Supp. 1522, 1524-29 (E.D. Va. 1992) ("*Nellis II*"), *aff'd. per curiam,* 15 F.3d 50 (4th Cir. 1992).  The DFR and state law claims were all based upon ALPA's Fragmentation Policy.  The pilots alleged that the Fragmentation Policy obligated ALPA to take certain actions in the event airline assets (aircraft, routes, *etc.*) were transferred from one ALPA-represented airline to another.  The pilots also alleged that ALPA induced them to strike by assuring them that ALPA would fulfill its obligations under the Fragmentation Policy.   Instead of complying with promises ALPA allegedly made in and concerning its Fragmentation Policy, the pilots' claims all alleged that ALPA failed to comply with its promises. (*Nellis I,* 805 F. Supp. at 356, 358-59; *Nellis II,* 815 F. Supp. at 1524-29)

The *Nellis I* decision held that the state law claims were preempted because "[i]n essence, the claim in each of these [state law] counts is that plaintiffs were not fairly represented by the Union," and "[f]rom this, preemption follows ..." because the alleged state law contract and tort based duties based on the Fragmentation Policy "would impose on ALPA" duties in collective bargaining, an area encompassed by DFR obligations. (*Id.* at 361).

*Nellis I* does not support finding plaintiffs' complaint to be an artfully plead DFR claim. The pilots in *Nellis I* sought to enforce provisions of ALPA's policy *against ALPA*. Nothing in plaintiffs' complaint here can reasonably be construed as an attempt to "impose on ALPA" any duty or obligation in collective bargaining. Apparently recognizing this determinative distinction, defendants resort to claiming that "[t]he whole point of Plaintiffs' lawsuit is to *cause ALPA to refrain* from presenting at the bargaining table with US Airways the proposal regarding seniority integration that is embodied in the Nicolau seniority list." (Def. Opp. 20, 19-21) (emphasis added). This contention has no relationship to the allegations of the complaint. As previously stated, there is nothing in plaintiffs' complaint which can be reasonably construed as an attempt to "cause ALPA to refrain" from taking an action in bargaining with USAirways..

Plaintiffs will not ignore, as defendants point out, that the Merger Policy "promises" that ALPA will (i) defend the list emerging from the Merger Policy from attack; (ii) present the list to the employer; and (iii) use "all reasonable means at its disposal to accept and implement the merged seniority list." (Def. Opp., 4-5). Plaintiffs obviously hope to be successful in vacating the Nicolau award, prevailing in a new arbitration rehearing and obtaining a new award that

is subject to the Merger Policy.  But plaintiffs have not alleged a claim to support relief which would enjoin ALPA from presenting the Nicolau seniority list to the Carrier.  Plaintiffs have not alleged that ALPA has a duty or obligation "to refrain" from defending the Nicolau seniority list.[5]/

The entire Merger Policy procedure is, of course, intended to influence ALPA's negotiations with the Company concerning an integrated seniority list. The determinative issue in the "complete" preemption analysis of this remand motion is, however, not how ALPA may be influenced or elect to act because of the claim alleged in the complaint.  The determinative issue is whether the complaint alleges a claim which comes within the scope of a DFR cause of action. The answer to that issue seems clear to plaintiffs because they have not alleged any wrongful conduct by ALPA and seek no relief directed at ALPA.  Plaintiffs' complaint is solely focused upon the validity of the arbitration award within the intra-union proceedings.    Calling this "artful pleading" of a DFR claim, as defendants do, is transparent name-calling without substance.

Nothing in *Nellis* suggests that contractual obligations imposed upon ALPA's subordinate bodies by ALPA Merger Policy are preempted by ALPA's duty of fair representation, as defendants contend. (Def. Opp. 21).  ALPA's subordinate bodies owe no duty of fair representation in negotiations with employers because they are not exclusive bargaining representatives.  Defendants erroneously extend *Nellis* beyond its holding to mean that "[a]ny state law cause

---

[5]     Of course, as the Seventh Circuit Court of Appeals noted in *Air Wisconsin*, ALPA Merger Policy presumes that ALPA will receive a "valid" award to present to the carrier in bargaining.  Nonetheless, ALPA's position on the Nicolau award is a separate question from that presented in the plaintiffs' Superior Court action.

of action that would portray ALPA merger policy as an ordinary contract enforceable through state law procedures ... would have to give way to the RLA, just as the state-law contract cause of action in *Nellis* had to give way." (Def. Opp 21).[6]/ But *Nellis* did not address the state law enforceability of ALPA Merger Policy by ALPA subordinate bodies against each other.

## V. The NLRA cases relied upon by the defendants to assert complete preemption of plaintiffs' claim are inapposite

The two "complete" NLRA DFR preemption cases defendants cite demonstrate that an "artful" pleading analysis can not bring plaintiffs claim against defendants in this case within the scope of a DFR claim.   In *BIW Deceived*, the court considered an alleged state law negligent representation claim against an exclusive bargaining representative by former employees. (132 F.3d at 827, 833)  The union had participated in their job interviews pursuant to the terms of an existing collective bargaining agreement and the employees alleged the union had induced them to their detriment to accept jobs with the employer by making misrepresentations about the anticipated duration of their employment during the interviews.   (132 F.3d at 827, 833).    The former employees alleged in their complaint that the union owed them a duty of care during the interviews because of their "special relationship," and the court held that "the Union plainly acted in a representational capacity during the recruitment process." (132 F.3d at 833).    Having so found, the court

---

[6]     Plaintiffs presume that defendants mean that ALPA Merger Policy "would have to give way" to the DFR implied under the RLA, and not because of any statutorily explicit cause of action under the RLA. Defendants do not dispute plaintiffs' showing that no express cause of action exists under the RLA to review the Nicolau award. (Pl. Mot. To Remand, pp. 11, 13-14).

unsurprisingly held the negligence claim was completely preempted because "when recharacterized [pursuant to the complete preemption doctrine], [it] sufficiently resembles a DFR claim to … support the exercise of federal question jurisdiction."  Defendants here are not exclusive bargaining agents.  In *BIW Deceived*, like *Nellis*, the employees' state law claim alleged that the union had breached a duty owed to them while acting in a representative capacity.  Such a claim is clearly "within the scope" of a DFR cause of action.  Plaintiffs here do not allege any breach of a duty by ALPA while acting in a representative capacity.

Similarly in *Richardson v. United Steel Workers*, former employees filed a lawsuit in state court alleging, in substance, that their exclusive bargaining representative breached a duty owed to them by failing to advise them that they could be permanently replaced when they went on strike. (*Id.* at 1164-65).  The case was removed to federal court.  In the course of a dispute regarding the applicable statute of limitations, the former employees argued their complaint alleged a state law negligence claim.   After concluding that the DFR claim triggered a complete preemption analysis, the court held that, "[b]ecause plaintiffs alleged that the Union breached a duty owed them by virtue of its position as their collective bargaining agent, the district court correctly characterized their claim as a federal duty of fair representation claim under the NLRA over which it had removal jurisdiction," and affirmed the district court's dismissal of the complaint based upon the statute of limitations applicable to DFR claims under federal law. (*Id.* at 1170).  Thus, in *Richardson,* the employees' state law claim alleged that the union had breached a duty owed to them because of the union's representative capacity.   These factual allegations brought the

claim alleged within the scope of a DFR cause of action.   Again, the plaintiffs'
complaint here, by contrast, does not allege any breach of duty by ALPA as
representative and so cannot fall within the scope of a DFR cause of action.

## VI.  Defendants' "wrong defendant" criticism

Plaintiffs have noted that ALPA was not named as a defendant to illustrate
that it would be absurd to re-characterize plaintiffs' allegations as a DFR claim
because ALPA is not alleged to have done anything wrong and no relief of any
kind is sought against ALPA.  A DFR cause of action requires that the defendant
be an exclusive bargaining representative and be alleged to have committed
wrongful acts in a representative capacity.   As shown above, these were the
determinative facts in *BIW Deceived* and *Richardson* for the conclusions in those
cases that the plaintiffs were alleging claims which, under the complete
preemption doctrine, could be re-characterized as DFR causes of actions.  These
essential elements of a DFR cause of action are not alleged here.

Defendants belittle plaintiffs' argument that the absence of ALPA as a
defendant in their complaint supports plaintiffs' position that their claim can not
be reasonably re-characterized under the complete preemption doctrine as one
that falls within the scope of a DFR cause of action.  Citing *Plumbing Industry
Bd. v. E.W. Howell, Inc.*, 126 F.3d 61 (2d Cir. 1997), an ERISA case, defendants
say removal based on complete preemption depends only upon the "subject
matter" of the lawsuit and not on the "happenstance" of which parties in a state
court lawsuit the plaintiff names as defendants.  (Def. Opp. 22-23).  This
argument need not detain us long since the language of ERISA makes it
inapposite to an analysis of preemption under the duty of fair representation.

In *Plumbing Industry Bd.*, an ERISA benefit fund filed a state law claim to enforce a lien for unpaid benefit contributions against a defendant general contractor based upon a state law imposing liability on a general contractor for unpaid benefit contributions owed by a sub-contractor on a public works project. Defendants removed the case to federal court based upon complete ERISA preemption. Under an ERISA substantive provision, the general contractor could not be held liable for the benefit contributions of its subcontractor.[7]  The court held that removal was permitted because the "within the scope" test for ERISA complete preemption had been stated by the Supreme Court to be whether a "state cause of action ... acts as an alternative means of vindicating the rights protected by § 502(a)." (126 F.3d at 69).  ERISA's remedial provision identifies plaintiffs who may bring civil actions and "[s]imply put, § 502(a) sets forth a comprehensive civil enforcement scheme that reflects the legislature's desire to include certain remedies and exclude others, and states are not free to add or subtract additional remedies to the mix ..." (*Ibid.*). It was in this context of comprehensive remedial scheme that the court stated the obvious - that a suit need not be a winning claim to fall within the scope of ERISA's remedial provision. (*Ibid.*)

The *Plumbing Industry Bd.* case does not establish a general principle that the subject matter of a dispute defines the "within the scope" test of *every* complete preemption analysis, no matter what the statute says, and the identity of the defendant is always irrelevant.  It depends upon the language of the

---

[7]      ERISA § 515, 29 U.S.C §1145, provides that an "employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or ... a collective bargaining agreement shall ... make such contributions..."

"statute" at issue and the intent of Congress.  For example, the "subject matter" of LMRA § 301 includes breach of contract actions between labor organizations, but we know that not all such actions are removable because it does not apply to and its preemptive force does not extend to RLA labor organizations.  Thus, the identities of both plaintiff and defendant are elements of the cause of action under § 301.

Similarly, defendants would not contend that *Beneficial Nat'l Bank* makes every state law usury cause of action removable to the federal courts without regard to the identity of the defendant.  The defendant institution must be an "association" within the meaning of the National Bank Act's statutory provisions at issue in *Beneficial Nat'l Bank*, 12 U.S.C. §§ 85, 86.  Yet the defendants' argument would mean a usury claim against a state chartered bank would be removable under the National Bank Act.  The defendants' broadly-stated construction of *Plumbing Industry Board's* "subject matter" rule under ERISA is similarly inapplicable to a DFR claim which may be asserted only against the exclusive representative.  The defendant broad-brush "wrong defendant" argument has no merit.

## VII. Defendants' advisory opinion argument

Defendants have argued in all their briefs that, by omitting ALPA as a defendant, plaintiffs' complaint seeks an "advisory opinion" that "binds no one who matters" because ALPA "is the *only* entity with authority to present a seniority list to US Airways and authority to enter into the agreement with the Company..." (Def. Opp., p. 23, fn. 9) (Defendants' emphasis).  This "advisory opinion" contention is both wrong and ironic.  It is wrong because the claim

alleged in plaintiffs' complaint will, if successful, bind the defendants and require them to participate in a rehearing from which a different seniority list could emerge. Within the context of the Merger Policy, that does "matter."

Defendants' "advisory opinion" argument is ironic because a lawsuit which sought a ruling whether ALPA is in breach of DFR obligations for presenting, negotiating about or agreeing to the Nicolau seniority list with the Company before ALPA does anything with the Nicolau seniority list is the classic example of a non-justiciable, unripe claim seeking an "advisory" opinion. To date, ALPA is on record as stating it will take no action regarding the Nicolau award pending resolution of the dispute between the parties. (Pl. Ex. 3 at 7 attached to Pl. Opp. To Def. Mot. To Compel Joinder, *etc.*).

## VIII. The *Air Wisconsin* Debate

Plaintiffs have illustrated the absence of any elements of a DFR claim in their complaint by noting that their complaint contained no allegations or claims that the Merger Policy established by ALPA was unfair. Defendants argue this argument is "doubly defective." (Def. Opp. 25). They assert that plaintiffs incorrectly cite *Air Wisconsin Pilots Protection Committee v. Sanderson*, 909 F.2d 213 (7th Cir 1990), for the proposition that procedural regularity insulates bargaining proposals from DFR scrutiny because this aspect of *Air Wisconsin* is no longer good law after *Air Line Pilots v. O'Neill*. The continued validity of *Air Wisconsin* is irrelevant to the motion to remand. The point is that plaintiffs did not allege procedural irregularity by ALPA or any other wrong by ALPA as part of their claim, not whether such a claim would be successful.

Then defendants claim plaintiffs "misuse" *Air Wisconsin* in a "more fundamental way" by contending that that it states that a direct action to vacate an arbitration award under ALPA's Merger Policy, not a collateral attack on the award through a DFR claim, is the appropriate vehicle through which pilots disappointed by an arbitrator's seniority award should proceed.  The pilots in *Air Wisconsin* did not file an action to vacate the arbitration award.  Seizing upon references in the *Air Wisconsin* to a six-month statute of limitations and a citation in the *Air Wisconsin* decision to *Beardsly v. Chicago & N.W. Trans. Co.*, 850 F.2d 1255, 1270-71 (8th Cir. 1988), defendants interpret the dicta in *Air Wisconsin* to mean that the appropriate vehicle to challenge an ALPA Merger Policy arbitration award is a DFR claim, not a direct action to vacate the award.  Defendants conclude by stating that, "[t]he *Beardsley* challenge to which the court referred was, not surprisingly, a challenge brought as a DFR challenge under the RLA."  See *Beardsley*, 850 F.2d at 1270-71." (Def. Opp. 26)

The fact of the matter is the *Beardsley* challenge referred to by the *Air Wisconsin* court appears to be a complaint which contained both a claim to vacate an arbitration award and a DFR claim.  Defendant presumably relies upon the court's discussion and holding at the cited pages that the implementing agreements were "irrevocably flawed by unfair representation" to conclude that *Beardsley* was a DFR challenge.  (*Id.* at 1270*).  But the court goes on to discuss the standards for vacating an RLA arbitration award, holds that "the arbitrator exceeded his jurisdiction under the Railway Labor Act" and remanded with directions to enter an order vacating the arbitration decision. (*Id.* at 1271*).

Fortunately, it is unnecessary for the purposes of the motion to remand to come to a definitive conclusion as to what the *Air Wisconsin* court's meant by its references in dicta to a six-month limitations periods or what were the precise claims alleged in *Beardsley*, which are not clearly identified in the opinion. The issue before this Court is solely a complete preemption jurisdictional issue and neither *Air Wisconsin* nor *Beardsley* shed any light on that issue.

## CONCLUSION

Plaintiffs have not alleged an artfully pled DFR claim, assuming *arguendo* that the DFR under the RLA even triggers complete preemption, and it should not. This case should be remanded to the Superior Court of the District of Columbia.

Dated: October 5, 2007.            Respectfully submitted,


                                   /s/William R. Wilder
                                   Roland P. Wilder, Jr.
                                   William R. Wilder
                                   Baptiste & Wilder, P.C.
                                   1150 Connecticut Ave., N.W., Suite 500
                                   Washington, D.C. 20036
                                   (202) 223-0723/(202) 223-9677
                                   wwilder@bapwild.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served via the Court's ECF system on counsel for the defendant this 5th day of October 2007.


                                   /s/William R. Wilder
                                   William R. Wilder

24